UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JAVON BOYD,

                     Petitioner,

                                     9:21-CV-00174
v.                                    (AMN/ML)

EARL BELL, Superintendent, Clinton Correctional Facility,

                     Respondent.

_____

APPEARANCES:                              OF COUNSEL:

JAVON BOYD
  Petitioner, *Pro Se*

LETITIA A. JAMES                              JAMES F. GIBBONS, ESQ.
New York State Attorney General                 Assistant Attorney General
  Counsel for Respondent
28 Liberty Street
New York, New York 10005

MIROSLAV LOVRIC, United States Magistrate Judge

## <u>REPORT-RECOMMENDATION</u>

On February 16, 2021, Javon Boyd ("Petitioner") filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a judgment of conviction in Oneida County Court for three counts of criminal sexual act in the first degree, one count of rape in the first degree, one count of strangulation in the second degree, two counts of criminal obstruction of breathing, and one count of assault in the third degree, following a jury trial in May 2013. (Dkt. No. 1 Petition ("Pet.") at 1.)  For the reasons set forth below, I recommend that all of Petitioner's claims be rejected and the Petition be denied and dismissed.

I.      BACKGROUND AND PROCEDURAL HISTORY

On May 15, 2023, this Court issued a narrowly tailored order granting Respondent's motion to file an unredacted memorandum of law and the state court record under seal in order to protect the privacy of the sexual assault victim mentioned throughout those documents. (Dkt. No. 42.)  Consistent with that order and Local Rule 5.2(a)(6), this Court will refer to that individual as "Victim" and only discuss such details as are necessary to evaluate the habeas corpus petition.

A.      Factual Background

At approximately three p.m on November 23, 2012, a dispatcher for Oneida County 911 received a transfer call from Madison County 911. (Dkt. No. 44, Attach. 2 at 147.)  The woman on the line conferenced in Victim, who reported that she had been sexually assaulted multiple times that day by Petitioner Javon Boyd. (*Id*. at 149.)  Victim had texted her friend for assistance because she was afraid of alerting Petitioner, who was asleep in the next room. (*Id*. at 150-151, 158-159.)

When officers from the City of Rome Police Department arrived at the residence where Victim had placed the call, they met Victim at the back door and learned that Boyd was asleep on the couch in an adjoining room. (Dkt. No. 44, Attach. 3 at 111.)  As described in trial testimony, Victim told the responding officers that Petitioner had raped her. (*Id*. at 87.)  The responding officers arrested Boyd without incident, and escorted Victim to an area hospital for medical evaluation and collection of forensic evidence.

B.      New York State Proceedings

1.      Grand Jury Indictment

On January 8, 2013, a grand jury in Oneida County handed up an indictment charging Petitioner with three counts of Criminal Sexual Act in the First Degree (New York Penal Law §

130.50(1)), one count of Rape in the First Degree (New York Penal Law § 130.35), one count of Strangulation in the Second Degree (New York Penal Law § 121.12), two counts of Criminal Obstruction of Breathing (New York Penal Law § 121.11(a)), two counts of Assault in the Third Degree (New York Penal Law § 120.00(1)), three counts of Endangering the Welfare of a Child (New York Penal Law § 260.10(1)), and three counts of Criminal Mischief in the Fourth Degree (New York Penal Law § 145.00)).  (Dkt. No. 44 at 33-37.)  The child endangerment and criminal mischief counts were dismissed prior to trial.  (Dkt. No. 44 at 97.)

### 2. New York State Court Trial and Appeals

#### a. Three Day Trial

Petitioner's jury trial commenced in Oneida County Court on May 6, 2013 before Judge Barry M. Donalty. (Dkt. No. 44, Attach. 2 at 20.)  Over the course of the three day trial, the prosecution presented testimony from a number of witnesses including Victim, the friend she initially contacted about the assault, the responding police officers, and experts who had collected and reviewed the relevant medical and forensic evidence. (Dkt. Nos. 44, Attach. 1-3.) The defense did not call any witnesses.

#### b. Victim's Trial Testimony

At the outset of her May 7, 2013 trial testimony, Victim recounted a February 2013 telephone call from Petitioner during which he discouraged her from testifying against him. (Dkt. No. 44, Attach. 3 at 10.)  She then described Petitioner's repeated sexual assault of her that took place on the morning and early afternoon of November 23, 2012. (*Id*. at 11-83.)  Victim testified that Petitioner became angry during an argument in an upstairs bedroom and put his hands on her

throat. (*Id*. at 14.) Petitioner then dragged Victim by the throat into a bathroom down the hall, pinned her against the mirror over the sink, and choked her. (*Id*. at 15-16.)

As described in Victim's testimony, Petitioner then forced Victim back into the bedroom and pulled her onto the floor by her hair. (*Id*. at 17.) Petitioner ripped Victim's clothes off and asked her "what possible way can I humiliate you?" (*Id*. at 19.) He then sexually assaulted her while holding her down on the floor. (*Id*. at 22-23.) Victim testified that she attempted to fight back, and called Petitioner a "rapist," but her resistance only made Petitioner more aggressive. (*Id*. at 23-24.) During this assault, Petitioner bit Victim on her face, leaving a mark on her right cheek. (*Id*. at 24-25.)

Victim testified that Petitioner kept his arm wrapped around Victim's neck after the first sexual assault until she passed out. (*Id*. at 26-27.) Petitioner woke her up by squirting rubbing alcohol in her face and slapping her. (*Id*. at 26-27.) Petitioner then asked Victim if she was "ready for Round 2" and sexually assaulted her on the bed. (*Id*. at 28-30.) In her testimony, Victim quoted Petitioner as telling her that "[y]our mouth is the reason this happened to you. You made me angry, so I'm going to take my anger out on your ass." (*Id*. at 29-31.)

Victim testified that following this second assault, Petitioner allowed her to dress and leave the bedroom but followed her throughout the house. (Dkt. No. 44, Attach. 3 at 31-35.) This included watching Victim use the toilet and attempt to take a shower. (*Id*.at 32-33.) Victim testified that Petitioner then sat with her on a downstairs couch but became angry when she again accused him of rape. (*Id*. at 34.) Victim testified that Petitioner forced her back upstairs to the bedroom and sexually assaulted her again. (*Id*. at 35-36.) Eventually, Petitioner went back

downstairs and fell asleep on the couch. (*Id*. at 40.)  Victim took this opportunity to text her friend for assistance, leading to the 911 call and Petitioner's arrest. (*Id*. at 41.)

Petitioner's counsel cross-examined Victim regarding the assault, the photographic and forensic evidence, and the scope of her injuries and medical treatment, as well as her statements to responding officers and medical personnel regarding the scope of her injuries. (Dkt. No. 44, Attach. 3 at 55-80.)

### c.    Inattentive Juror Inquiry

In addition to Victim's testimony, the jury also heard testimony on May 7, 2013 from the responding police officers, the nurse who evaluated Victim, and forensic experts who tested the swabs, clothing, bedding, and other material obtained during the police investigation. (Dkt. No. 44, Attach. 3 at 187-216.)  After the final witness for the day testified, Judge Donalty excused the jury but asked one female juror to stay behind to clarify her behavior during the day's testimony.  The following discussion ensued, with all counsel present:

> **The Court:**    It would appear to me on a couple of occasions this afternoon that you had your eyes closed.  And I'm not certain whether you were asleep or paying attention with your eyes closed or what.  Can you - -
>
> **Juror:** It's a combination of both.  I have epilepsy, and sometimes that causes me to lose consciousness for a few seconds.
>
> **The Court**: Okay.  But –
>
> **Juror**: I was listening.  Towards the end I did, yes, at one time.
>
> **The Court**: Did you feel you heard all the testimony, and when and if the case - -
>
> **Juror**: Yes.
>
> **The Court**: - - the case is presented to you for your consideration, you'll be able to deliberate with the other jurors, as well?
>
> **Juror**: Yes, I do.

**The Court** : Any questions?

**[Prosecution]**: No, thank you.

**[Petitioner's counsel]**: No.

**The Court**: Are you taking medication for that?

**Juror**: Absolutely.

**The Court**: Okay.

**Juror**: I'll keep my fingers jammed into my palm to stay awake. Sorry about that. I apologize.

**The Court**: You're all set. Thanks for coming in.

(Dkt. No. 44, Attach. 3 at 217-218.)

### d.    Guilty Verdict and Sentencing

On May 8, 2013, the jury heard from a forensic expert witness before the prosecution rested. (Dkt. No. 44, Attach. 4 at 2-34.) Petitioner's counsel moved for dismissal on the basis that the prosecution had not proven a prima facie case, but Judge Donalty denied the motion. (*Id*. at 35.) The defense elected not to present additional evidence, and Judge Donalty confirmed with Petitioner that he did not intend to testify. (*Id*. at 36.) Following jury instructions and summations by both parties, the jury deliberated and found Petitioner guilty of three counts of criminal sexual act in the third degree, one count of rape in the first degree, one count of strangulation in the second degree, two counts of criminal obstruction of breathing or blood circulation, and one count of assault in the third degree. (*Id*. at 96-98.) The jury found Petitioner not guilty of one count of assault in the third degree. (*Id*.)

On June 25, 2013, Judge Donalty sentenced Petitioner to consecutive sentences of fifteen years incarceration and twenty years of post-release supervision for each conviction of Criminal Sexual Act in the First Degree and the conviction of Rape in the First Degree as well as

concurrent sentences of seven years incarceration and three years post-release supervision on the conviction for Strangulation in the Second Degree and one year of incarceration each for the two Criminal Obstruction of Breathing convictions and the Assault in the Third Degree conviction. (Dkt. No. 44 at 30.)  Petitioner's aggregate sentence was thus sixty years in prison followed by twenty years of post-release supervision. (*Id*.)

<strong>e.  State Court Direct Appeal</strong>

On August 22, 2019, the New York Supreme Court Appellate Division, Fourth Department decided Petitioner's direct appeal and modified the judgment by reducing the sentences to an aggregate of twenty five years incarceration followed by twenty years post-release supervision, but otherwise affirmed Petitioner's conviction. (Dkt. No. 44 at 157-159); *People v. Boyd*, 175 A.D.3d 1030 (4th Dep't 2019).  More specifically, the Appellate Division unanimously held, *inter alia*, that Petitioner's sentence should be modified in the interest of justice by reducing the sentences imposed for each of the three counts of criminal sexual act in the first degree to determinate terms of incarceration of six years and a period of post-release supervision of twenty years, reducing the sentence imposed for rape in the first degree to a determinate term of incarceration of seven years with twenty years of post-release supervision, to run consecutively. (Dkt. No. 44 at 157); *Boyd*, 175 A.D.3d at 1032.

Addressing the other issues raised in the brief filed by Petitioner's appellate counsel, the Appellate Division found that the jury's verdict was not against the weight of the evidence, and there was "no reason to disturb the jury's credibility determinations here." (Dkt. No. 44 at 158); *Boyd*, 175 A.D.3d at 1031.  The Appellate Division also rejected the arguments raised in Petitioner's supplemental pro se brief.  Specifically, the appellate panel found that Petitioner's contention that the indictment should have been dismissed as multiplicitous had not been

preserved for review and was without merit, because each count was based on a separate and distinct criminal act. (Dkt. No. 44 at 158-159); *Boyd*, 175 A.D.3d at 1032.  It further found that Petitioner had received effective assistance of counsel[1], and that Petitioner's contention that the court's failure to dismiss a "sleeping juror" had not been preserved for appeal, and there was no reason for the appellate court to exercise its discretionary power to consider the question in the interest of justice. (Dkt. No. 44 at 159); *Boyd*, 175 A.D.3d at 1032.

On November 13, 2019, the New York Court of Appeals denied leave to appeal.  (Dkt. No. 44 at 162); *People v. Boyd*, 31 N.Y.3d 1018 (N.Y. 2018).

### f.    Coram Nobis Application

On or about April 28, 2021, Petitioner filed a pro se motion in the Appellate Division, Fourth Department for a writ of error coram nobis to vacate the Appellate Division's August 22, 2019 Order. (Dkt. No. 44 at 570-654.)  In his application, Petitioner argued that appellate counsel was ineffective for failing to argue that the evidence was legally insufficient "to prove the unwillingness and 'forcible compulsion' element of rape in the first degree and Criminal Sexual Act in the First Degree" and that he received ineffective assistance of trial counsel for "failing to challenge the Unwillingness element of Rape in the first Degree during his trial order of dismissal." (Dkt. No. 44 at 165.)  Petitioner's arguments were premised on select excerpts of Victim's testimony that "she did not fight him," "did not scream or cause a scene," and was able to communicate. (Dkt. No. 44 at 182-183.)

On August 20, 2021, the Appellate Division, Fourth Department summarily denied Petitioner's application. (Dkt. No. 44 at 188.)  On June 8, 2022, the Court of Appeals denied

---

[1]    Petitioner's pro se supplemental appellate brief made only general reference to "numerous deficiencies in counsel's performance." (Dkt. No. 44 at 154.)

leave to appeal. (Dkt. No. 44 at 197.)

### C.    Federal Habeas Proceeding

On February 16, 2021, Petitioner commenced this proceeding by the filing of a verified Petition for writ of habeas corpus, along with a motion to proceed in forma pauperis ("IFP"). (Dkt. Nos. 1, 2.)  On February 17, 2021, District Court Judge David N. Hurd[2] issued an Order denying Petitioner's IFP Application as incomplete, and directing the clerk to administratively close the action, pending timely compliance with the filing fee or IFP requirements. (Dkt. No. 3.) The matter was reopened on April 5, 2021 upon payment of the appropriate filing fee. (Dkt. No. 5.)

On May 13, 2021, I issued a Decision and Order that, in relevant part, stayed the Petition to allow Petitioner an opportunity to exhaust his state court remedies by pursuing a writ of error coram nobis with the appropriate state court. (Dkt. No. 8.)  Petitioner filed a coram nobis application as described above.  On July 5, 2022, I lifted the stay in light of Petitioner's notification that his state court proceedings had concluded, and I allowed Petitioner an opportunity to file a motion to amend his Petition by August 1, 2022. (Dkt. No. 25.)  The Court did not receive any motion to amend.  Therefore, on August 16, 2022, I directed respondent to file and serve an answer to the original Petition. (Dkt. No. 26.)

On November 14, 2022, January 13, 2023, March 14, 2023, and April 13, 2023, I granted Respondent's successive motions for an extension of time to answer. (Dkt. Nos. 30, 32, 35, 38.) On May 15, 2023, I granted Respondent's motion for leave to file an unredacted memorandum of law and the state court record under seal to protect Victim's privacy and accepted

---

[2]    This case was reassigned from District Court Judge Hurd to District Court Judge Anne M. Nardacci on January 19, 2023. (Dkt. No. 33.)

Respondent's answer and a redacted memorandum of law for filing. (Dkt. Nos. 40, 41, 42.)  On

May 23, 2023, I issued an order advising Petitioner of the June 22, 2023 deadline to file a

traverse or reply, if any. (Dkt. No. 45, 46.)

Petitioner did not file a traverse by the deadline.  Therefore, the matter is considered fully

briefed, and it has been referred to me for the issuance of a report and recommendation, pursuant

to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See* Fed. R.

Civ. P. 72(b).

## II.    SUMMARY OF PARTIES' ARGUMENTS

Petitioner argues that he is entitled to habeas corpus relief because (1) the evidence

presented against Petitioner was legally insufficient because "the testimonial evidence submitted

to the jury was inconsistent with the physical evidence in the case;" and (2) Petitioner's trial

counsel was ineffective for failing to seek dismissal of a juror who fell asleep during the trial and

failing to move for dismissal due to the lack of the purportedly required "unwillingness" element

to support conviction of Rape in the First Degree. (Dkt. No. 1 at 4-5.)

Generally, Respondent makes the following arguments in support of the answer: (1)

Petitioner's legal sufficiency claim is unexhausted, procedurally barred, and meritless; and (2)

Petitioner's ineffective assistance of counsel claims are unexhausted and meritless. (*See*

*generally* Dkt. No. 40 at 13-23 [Resp't's Redacted Mem. of Law].)

More specifically, Respondent asserts that Petitioner failed to explicitly argue that the

evidence was legally insufficient during his state court appeals, and thus this claim is

unexhausted. (Dkt. No. 40 at 14.)  Respondent contends that because there are no other state

10

avenues for Petitioner to raise this claim, it should be considered "technically exhausted" [3] but procedurally defaulted. Respondent further argues that this default cannot be excused because Petitioner has not established "cause and prejudice" for the default, or shown that a miscarriage of justice has occurred. (*Id*. at 14-15.) Respondent makes the alternative argument that, if the court were to consider the substance of Petitioner's legal sufficiency claim, it would find the claim meritless because the jury was entitled to credit Victim's testimony describing the violence of her sexual assault. (*Id*. at 16.)

With regard to Petitioner's dual claims of ineffective trial counsel, Respondent argues that both claims are unexhausted. (*Id*. at 17.) While Petitioner raised a generic ineffective assistance of trial counsel claim in his August 2019 direct appeal to the Appellate Division, Fourth Department, he failed to mention the specific claims raised in this Petition. Petitioner also omitted any ineffective assistance of counsel claim from his application for leave to appeal to the New York Court of Appeals. Despite this failure to exhaust, Respondent suggests that Petitioner could still potentially raise the issues in a state court motion for relief available under N.Y. C.P.L. § 440.10(1)(h). Thus, Respondent argues that the ineffective assistance of counsel claim cannot qualify as technically exhausted.

Respondent further contends that setting aside Petitioner's failure to exhaust his ineffective assistance of counsel claims, his arguments on this point are clearly meritless because Petitioner cannot show that (1) his counsel's acts or omissions were outside the range of professionally competent assistance, and (2) that there is a reasonable probability that, but for

---

[3]    If a state court would dismiss a habeas petitioner's claims for their procedural failures, such claims are technically exhausted because, in the habeas context, "state-court remedies are ... 'exhausted' when they are no longer available, regardless of the reason for their unavailability." *Shinn v. Ramirez*, 596 U.S. 366, 378, 142 S. Ct. 1718, 1732, 212 L. Ed. 2d 713 (2022) (internal quotation omitted).

counsel's unprofessional errors, the result of the proceeding would be different.  With respect to the purportedly sleeping juror, Respondent cites the juror's explanation that she closed her eyes and may have "lost consciousness" for a few seconds due to epilepsy, but that she could manage her symptoms and would not allow it to impact her consideration of the evidence. (Dkt. No. 44, Attach. 3 at 217-218.)  Respondent argues that Petitioner's claim fails to identify any prejudice that resulted from this episode during the trial or jury deliberations, and that Petitioner's counsel may have had a "reasonable strategic justification" for failing to object to this particular juror. (Dkt. No. 40 at 20.)

Similarly, Respondent contends that trial counsel's failure to seek dismissal of the rape charge is meritless because "unwillingness" is not an element of the charged crime.  In addition, Respondent contends that Victim's testimony that she was slapped, pinned against a mirror, squirted in the eyes with rubbing alcohol, and choked by the larger and stronger Petitioner was more than enough evidence to support the actual "forcible compulsion" element of a first degree rape charge. (Dkt. No. 40 at 22.)  Therefore, Respondent argues, Petitioner's counsel cannot be deemed ineffective for failing to raise a meritless point.

## III.    LEGAL STANDARDS

Many of Petitioner's claims and Respondent's arguments raise similar issues of state law, exhaustion, and procedural default.  In the interest of efficiency, I will recite the generally applicable legal standards here, and apply those standards to the individual arguments as they arise.

### A.    Legal Standard Governing Review of a *Habeas Corpus* Petition

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996) a federal court may grant habeas corpus relief with respect to

a claim adjudicated on the merits in state court only if, based upon the record before the state court, the adjudication of the claim (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing 28 U.S.C. § 2254(d)); *Premo v. Moore*, 562 U.S. 115, 120-21 (2011); *Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007) (Sotomayor, J.).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)); *accord, Cullen*, 563 U.S. at 181. Federal habeas courts must presume that the state court's factual findings are correct "unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting 28 U.S.C. § 2254(e)(1)); *see also Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro*, 550 U.S. at 473 (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

As required by section 2254, on federal habeas review, a court may only consider claims that have been adjudicated on the merits by the state courts. 28 U.S.C. § 2254(d); *Cullen*, 563 U.S. at 181; *Washington v. Schriver*, 255 F.3d 45, 52-55 (2d Cir. 2001). The Second Circuit has held that, when a state court adjudicates a claim on the merits, "a federal habeas court must defer in the manner prescribed by 28 U.S.C. § 2254(d)(1) to the state court's decision on the federal claim—even if the state court does not explicitly refer to either the federal claim or to relevant

federal case law." *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001); *see Willson v. Sellars*, 138 S. Ct. 1188, 1192 (2018) (holding that a federal habeas court reviewing an unexplained state court decision on the merits "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning," but that "the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision").

### B.    Legal Standard Governing State Law Claims in Habeas Proceeding

State courts are "the ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *see also Ring v. Arizona*, 536 U.S. 584, 603, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).  Therefore, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).  Even where there has been no pertinent decision by the state's highest court, and "we are left only with the state intermediate court's interpretation of the terms in the state statute[,] ... we are bound by that interpretation." *Ponnapula v. Spitzer*, 297 F.3d 172, 183 (2d Cir.2002); *see, e.g., McGuire*, 502 U.S. at 66, 67–68, 112 S.Ct. 475 (rejecting federal court's holding that a state-intermediate-court error with respect to state law constituted a basis for federal habeas relief).  "Simply put, "'federal habeas corpus relief does not lie for errors of state law.'" *DiGuglielmo v. Smith*, 366 F.3d 130, 137 (2d Cir. 2004) (quoting *McGuire*, 502 U.S. at 67, 112 S.Ct. at 475).

### C.    Legal Standard Governing Exhaustion of Remedies

Before seeking federal habeas relief, a petitioner must exhaust available state remedies or establish either an absence of available state remedies or that such remedies cannot adequately

protect his rights. *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (quoting 28 U.S.C. § 2254(b)(1)); *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994). The exhaustion doctrine recognizes "respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions." *Daye v. Attorney Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1982); *see also Galdamez v. Keane*, 394 F.3d 68, 72 (2d Cir. 2005) ("Comity concerns lie at the core of the exhaustion requirement."). Although both federal and state courts are charged with securing a state criminal defendant's federal rights, the state courts must initially be given the opportunity to consider and correct any violations of federal law. *Galdamez*, 394 F.3d at 72 (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)). "The chief purposes of the exhaustion doctrine would be frustrated if the federal habeas court were to rule on a claim whose fundamental legal basis was substantially different from that asserted in state court." *Daye*, 696 F.2d at 192 (footnote omitted).

This exhaustion requirement is satisfied if the federal claim has been "fairly present[ed]" to the state court. *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). A claim has been "fairly presented" if the state court was apprised of "both the factual and the legal premises of the claim [the petitioner] asserts in federal court." *Daye*, 696 F.2d at 191. Thus, "the nature or presentation of the claim must have been likely to alert the court to the claim's federal nature." *Id.* at 192.

Significantly, "[t]he exhaustion doctrine 'requires only that a petitioner present his claim once on direct or collateral review.'" *Salahuddin v. Strack*, 97-CV-5789, 1998 WL 812648, at *5 (E.D.N.Y. Aug. 12, 1998) (quoting *Sanford v. Senkowski*, 791 F. Supp. 66, 69 (E.D.N.Y. 1992)); *see Fielding v. LeFevre*, 548 F.2d 1102, 1106 (2d Cir. 1977) ("In order to meet the exhaustion requirement, a petitioner must have presented his claim to the state courts at least

once, on direct or collateral review."). "Therefore, even if a claim is not raised at trial or on direct appeal, a claim pursued throughout a full round of state post-conviction proceedings is exhausted." *Salahuddin*, 1998 WL 812648, at *5 (citing, *inter alia, Castille v. Peoples*, 489 U.S. 346, 350-51 (1989)); *see also Harvey v. Portuondo*, 98-CV-7371, 2002 WL 2003210, at *5 (E.D.N.Y. Aug. 5, 2002). Unexhausted claims are generally barred from habeas corpus review by the rules concerning procedural default. *See Aparicio*, 269 F.3d at 90 (2d Cir. 2001) (citing *Coleman v. Thompson*, 501 722, 735 n.1, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)).

### D.    Legal Standard Governing Procedural Default

Procedurally defaulted claims are not subject to habeas review unless a petitioner shows cause for the default and that actual prejudice results, or that the denial of habeas relief would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536-539, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006); *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). To meet the "cause" requirement, a petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. *Maples v. Thomas*, 565 U.S. 266, 280, 132 S.Ct. 912, 181 L.Ed.2d 807 (2012); *Coleman*, 501 U.S. at 753, 111 S.Ct. 2546. Prejudice requires a petitioner to show "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray v. Carrier*, 477 U.S. 478, 494, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (quoting *United States v. Frady*, 456 U.S. 154, 170 (1982).

Additionally, there is an exception to the procedural bar in cases where a petitioner can prove actual innocence. *McQuiggin v. Perkins*, 569 U.S. 383, 392, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013) ("[A] credible showing of actual innocence may allow a prisoner to pursue his

constitutional claims ... on the merits notwithstanding the existence of a procedural bar to relief."). "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (quoting *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts or critical physical evidence— that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851*; see also Whitley v. Senkowski*, 317 F.3d 223, 225 (2d Cir. 2003). In addition, "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.' " *House*, 547 U.S. at 536-37, 126 S.Ct. 2064 (quoting *Schlup*, 513 U.S. at 327, 115 S.Ct. 851); *see also Doe v. Menafee*, 391 F.3d 147, 160-62 (2d Cir. 2004).

## IV. LEGAL FINDINGS AND ANALYSIS

For many of the reasons stated in Respondent's memorandum of law, I find that (1) Petitioner's legal sufficiency claim, to the extent it relies upon federal law, is unexhausted and procedurally barred, and if the Court were to consider the substance of Petitioner's arguments, meritless; and (2) Petitioner's ineffective assistance of counsel claims are partially unexhausted[4] and meritless. As a result, I recommend all of Petitioner's claims for habeas relief be denied.

### A. Whether Petitioner's Legal Sufficiency Claim Should be Dismissed

As discussed previously, Petitioner contends that the evidence presented against him is legally insufficient because the "testimonial evidence submitted to the jury was inconsistent with

---

[4]    In arguing that all of Petitioner's ineffective assistance of counsel claims are unexhausted, Respondent did not address the content of Petitioner's April 2021 coram nobis application.

the physical evidence in the case." (Dkt. No. 1 at 4.)  After carefully considering the matter, this court recommends dismissal of Petitioner's legal sufficiency claim.

To begin with, to the extent that Petitioner's legal sufficiency claim is based upon state law, that portion of his claim is non-cognizable in federal habeas proceeding.  *McGuire*, 502 U.S. at 63, 112 S. Ct. at 477, 116 L. Ed. 2d at 385.  The record before this court also shows that any federal legal sufficiency claim is unexhausted and procedurally defaulted because Petitioner did not raise the argument in any of his state court appeals.  Petitioner raised a "weight of the evidence" question before the Appellate Division, Fourth Department involving a purported disparity between Victim's testimony and the physical evidence, but framed the question solely in terms of state law, and the Appellate Court treated it as such. (Dkt. No. 44 at 15-16, 157-159.) Petitioner's leave application requested review by the Court of Appeals of only two state law questions:

    a.) Whether Mr. Boyd's conviction should be vacated as a matter of law as a result of the conviction being against the weight of the evidence.

    b.) Whether Mr. Boyd's sentence as modified by the Appellate Division, Fourth Department is unduly harsh as a matter of law.

(Dkt. No. 44 at 160.)

Accordingly, habeas review is unavailable for a federal legal sufficiency argument because Petitioner's failure to "explicitly alert" the New York Court of Appeals to the issue "does not fairly present such claims."  *Jordan v. Lefevre*, 206 F.3d 196, 198-99 (2d Cir. 2000) (holding that "counsel may not transfer to the state courts the duty to comb through an applicant's appellate brief to seek and find arguments not expressly pointed out in the application for leave); *see also Smith v. Duncan*, 411 F.3d 340, 345 (2d Cir. 2005) (finding evidentiary issue procedurally defaulted because petitioner's correspondence to the New York Court of Appeals

never raised the issue). Courts have generally found a distinct difference between "weight of the evidence" under state law and "legal sufficiency" under federal law.[5] *Hughes v. Sheahan*, 312 F. Supp. 3d 306, 343 (N.Y.N.D. 2018) ("Recent cases which have examined the nature of the weight of the evidence and sufficiency claims have concluded that "the two claims are no more than somewhat similar.") (quoting *Pham v. Kirkpatrick*, 209 F. Supp. 3d 497, 512 (N.D.N.Y. 2016)), *aff'd* 711 F. App'x 67 (2d Cir. 2018). Thus, a weight of the evidence claim may not "stand in" for a legal sufficiency claim. *See Romero v. Miller*, No. 9:18-CV-381, 2019 WL 5743500, at *5-6 (N.D.N.Y. Apr. 18, 2019), *report-recommendation adopted*, 2019 WL 5703612 (N.D.N.Y. Nov. 5, 2019), *cert. of appeal. denied*, No. 19-4033, 2020 WL 2945010 (2d Cir. May 14, 2020 (collecting cases).

Because Petitioner's federal legal sufficiency claim is unexhausted, Petitioner has no avenue in state court to exhaust his claim. *See Grey v. Hoke*, 933 F.2d 117, 120-21 (2d Cir. 1991); N.Y. Crim. Proc. Law § 440.10 (2)(c) (barring collateral review if a claim could have been raised on direct review). Therefore, he is barred from litigating the merits of that claim in federal habeas proceedings, absent a showing of cause and prejudice. *Grey*, 933 F.2d at 121. In his coram nobis application, Petitioner argued that his appellate counsel was ineffective for failing to raise a different legal sufficiency argument, but Petitioner did not pursue the claim in this federal habeas proceeding.[6] Additionally, on the record before the Court, there is no basis to

---

[5]    Some courts have found the exhaustion requirement met where a habeas petitioner's state court pleadings at least imply a federal legal sufficiency argument, but this court finds no such implication in Petitioner's arguments to the Appellate Division, Fourth Department or the New York State Court of Appeals. *C.f,. Tripp v. Superintendent*, No. 9:21-CV-0406 (TJM/DJS), 2023 WL 7383170, at *8 (N.D.N.Y. November 8, 2023) (collecting cases).

[6]    Even if Petitioner had raised an appropriate ineffectiveness of appellate counsel argument in this federal habeas proceeding, it is highly unlikely that it would have provided sufficient cause to excuse his procedural default. *See Wright v. LaManna*, No. 9:18-CV-1063, 2021 WL 5095292, at *8 n.5 (MAD/TWD) (N.D.N.Y. April 21, 2021), report and recommendation

conclude that the failure to consider the merits of Petitioner's legal sufficiency claim would result in a fundamental miscarriage of justice or other prejudice.  Accordingly, the procedural default bars federal review of Petitioner's legal sufficiency claim, and this Court recommends that portion of his Petition be denied and dismissed on this ground.

Even if this court considered Petitioner's legal sufficiency claim on the merits, it would still recommend dismissal of this claim.  A convicted defendant seeking federal habeas review for sufficiency of evidence to support a conviction bears a heavy burden.  *Fama v. Comm'r of Corr. Svcs.*, 235 F.3d 804, 822 (2d Cir. 2000); *see also Flowers v. Fisher*, 296 F. App'x 208, 210 (2d Cir. 2008).  A petitioner making this claim is entitled to habeas relief only if it is found "that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).

When making an analysis concerning sufficiency of the evidence, the reviewing court is required to "consider the evidence in the light most favorable to the prosecution and make all inferences in its favor[,] and must defer to the credibility assessments made by the jury without substituting its view for that of the factfinder.  *Fama*, 235 F.3d at 811; *see also Jackson*, 443 U.S. at 319.  Viewing the evidence in this light, the habeas court must uphold the verdict "if any rational trier of fact could have found the essential elements of the crime [of conviction] beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319 (emphasis in original).

Here, Petitioner's legal sufficiency argument is essentially that the jury should have disbelieved Victim's testimony and instead adopted the defense interpretation of the physical and forensic evidence. (Dkt. No. 1 at 10, 12.)  Arguments that merely contest the credibility of the

---

adopted, 2021 WL 4452094 (September 29, 2021) (reciting principle that ineffective assistance of counsel may be sufficient to show cause only when counsel's performance was so ineffective that the representation violated the petitioner's Sixth Amendment right to counsel).

prosecution's evidence are insufficient to disturb a jury verdict. *See Marshall v. Lonberger*, 459 U.S. 422, 432-435 (1983) (holding that a federal court reviewing a habeas petition may not revisit the fact-finder's credibility determinations); *Vera v. Hanslmaier*, 928 F. Supp. 278, 284 (S.D.N.Y. 1996) (noting that a habeas court is not free to make a credibility judgment about the evidence or weight of conflicting testimony).  Here, as in many cases,

> the jury's decision was largely a matter of choosing whether to believe
> [Petitioner's] version of the events or to believe the version offered by the State.
> The jury chose to believe the State's witnesses, despite the inconsistencies in the
> evidence . . . We cannot say that no reasonable jury could have found guilt
> beyond a reasonable doubt on all the evidence.

*Gruttola v. Hammock*, 639 F.2d 922, 928 (2d Cir. 1981).  Based on the record before this Court, it does not appear "more likely than not that no reasonable juror would have convicted. *Schlup*, 513 U.S. at 329; *see also Flowers v. Noeth*, No. 9:20-CV-997 (BKS/ATB), 2021 WL 4267814, at *7 (N.D.N.Y. July 27, 2021) (finding victim's testimony was legally sufficient for rational trier of fact to find petitioner guilty of Rape in the First Degree, despite "lack of overwhelmingly corroborative evidence."); *Williams v. McCoy*, 7 F.Supp.2d 214, 221-222 (E.D.N.Y. June 3, 1998) (victim's testimony provided legally sufficient evidence of rape despite lack of corroborating medical evidence).  Accordingly, if this Court were able to consider the merits of Petitioner's legal sufficiency claim, it would still recommend dismissal.

### B.    Whether Ineffective Assistance of Counsel Claim Should Be Dismissed

In his pro se supplemental brief to the Appellate Division, Fourth Department, Petitioner made a general claim that he received ineffective assistance of trial counsel but did not specify any particular errors that impeded his defense. (Dkt. No. 44 at 153-154.)  In his application for leave to appeal to the New York State Court of Appeals, Petitioner did not raise any ineffective assistance of counsel claims. (*Id*. at 160.)

Petitioner's habeas corpus petition argues that his trial counsel was ineffective on two grounds: (1) failure "to move to withdraw a juror who fell asleep during the trial", and failure to "place a trial order of dismissal in regards to the legal insufficiency of the 'unwillingness' element of rape in the first degree." (Dkt. No. 1 at 5.)  Because the petition made clear that these claims had not been exhausted, this Court imposed a stay on May 13, 2021 to allow Petitioner an opportunity to exhaust his state court remedies. (Dkt. No. 8.);  *Boyd v. Bell*, No. 9:21-CV-174 (DNH/ML), 2021 WL 1920539, at *2-3 (N.D.N.Y. May 13, 2021).

When this proceeding was stayed, Petitioner filed an application for a writ of coram nobis that argued, in relevant part, that "Trial Counsel was ineffective for failing to challenge the Unwillingness element of Rape in the first Degree during his trial order of dismissal." (*Id*. at 165.)  As described above, the Appellate Division, Fourth Department and the New York State Court of Appeals denied Petitioner's application. (Dkt. No. 44 at 188,197.)

**1.  Counsel's Failure to Seek Dismissal Based on "Unwillingness" Element**

Because he raised the specific question in his application for a writ of coram nobis, Petitioner adequately exhausted his state court remedies with regard to his claim that trial counsel should have sought dismissal for the prosecution's failure to prove the "unwillingness element" of Rape in the First Degree.  However, dismissal of this claim is still warranted on the merits.

Under the well-established standard governing ineffective assistance of counsel claims,

> the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984); *accord, Murden v. Artuz*, 497 F.3d 178, 198 (2d Cir. 2007).

To be constitutionally deficient, the attorney's conduct must fall "outside the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690; *accord, Rivas v. Fischer*, 780 F.3d 529, 547 (2d Cir. 2015). An attorney's performance is judged against this standard in light of the totality of the circumstances and from the perspective of counsel at the time of trial, with every effort made to "eliminate the distorting effects of hindsight[.]" *Strickland*, 466 U.S. at 689; *see also Rivas*, 780 F.3d at 547 (quoting *Strickland*, 466 U.S. at 689) (noting the court's "scrutiny of counsel's performance must be 'highly deferential'").

Addressing the second prong of the *Strickland* test, courts have generally held that prejudice is established by showing that there is a "reasonable probability" that, but for the attorney's deficient conduct, "the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694; *see also Murden*, 497 F.3d at 198 ("Under *Strickland*, a defendant must show that . . . there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (quotation marks omitted)).

In short, Petitioner's claim should be dismissed because "unwillingness" is not a required element of Rape in the First Degree. As Respondent points out, the lack of consent element of Rape in the First Degree is established by "forcible compulsion," a statutory term of art including implicit or explicit threats which place the victim in fear of immediate death or physical injury to herself or others." *See* N.Y. Penal Law §§ 130.00(8)(b), 130.05(2)(a), 130.35(1)[7].

---

[7]     By contrast, lack of consent for the lesser charge of Rape in the Third Degree may be proven by evidence that the victim's words or actions "clearly expressed an unwillingness to engage in the sexual act." *People v. Perry*, 154 A.D.3d 1168, 1169 (3d Dep't 2017) (citing N.Y. Penal Law § 130.05(2)(d)).

Effective assistance of counsel does not require the filing of every possible motion, rather only those that have a solid foundation. *See Carpenter v. Unger*, Nos. 9:10-CV-1240, 2014 WL 4105398, at *24 (N.D.N.Y. August 20, 2014) (refusal of client's request to file frivolous motion was not ineffective assistance of counsel). "The failure to include a meritless argument does not fall outside the 'wide range of professionally competent assistance' to which [a p]etitioner [i]s entitled." *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001). Therefore, counsel's failure to seek dismissal over the "unwillingness" element does not meet the performance prong of *Strickland*. Petitioner has also failed to show prejudice, due to the impossibility that the indictment would have been dismissed on this imaginary ground. This Court also notes that regardless of whether the statute required a showing of "unwillingness" or "forcible compulsion," Petitioner would have been unable to establish prejudice in light of Victim's testimony detailing Petitioner's threats and violent acts, several of which occurred after she accused him of being a rapist.

### 2. Counsel's Failure to Seek Dismissal of Purportedly Sleeping Juror

Petitioner has not provided any evidence that he presented his ineffective assistance of counsel claim related to the purportedly sleeping juror to the Appellate Division or any other state court. Without presentation of this specific argument to a state court, "the matter is not ripe for adjudication on the instant habeas petition." *See Tripp v. Superintendent*, No. 9:21-CV-0406 (TJM/DJS), 2023 WL 7383170, at *8 (N.D.N.Y. November 8, 2023); *see also Caballero v. Keane*, 42 F.3d 738, 740 (2d Cir. 1994) ("To reach the merits of an ineffective representation claim, all of the allegations must have been presented to the state courts."); *Beniquez v. Johnson*, No. 21 CIV.v1467 (PAE), 2023 WL 3948738, at *15 (S.D.N.Y. June 12, 2023) ("To exhaust an ineffective assistance of counsel claim, a petition must have 'asserted in state court the specific conduct giving rise to the claim.'") (quoting *Moreno-Gratini v. Sticht*, No. 19 Civ. 05964

(GHW) (SN), 2022 WL 1425712, at *7 (S.D.N.Y. Apr. 18, 2022), report and recommendation adopted, 2022 WL 1423298 (S.D.N.Y. May 5, 2022).  Thus, Petitioner's ineffective assistance of counsel claim can only be considered partially exhausted, and his claim related to trial counsel's failure to seek removal of the purportedly sleeping juror should be dismissed on procedural grounds.

Even if this Court were to consider the merits of Petitioner's second ineffective assistance of counsel claim, it would still recommend dismissal.  At the outset, the record evidence shows that the juror in question was not asleep or deliberately inattentive but was instead having a medical episode. (Dkt. No. 44, Attach. 3 at 217-218.)  But even assuming that she was sleeping, the court cannot conclude that trial counsel's performance was deficient, where "counsel's decision not to object may well have been based on his desire to retain the inattentive juror rather than to seek to replace [her] with an alternate." *Ciaprazi v. Senkowski*, 151 F.App'x 62, (2d Cir. 2005) (holding that trial counsel's decision not to object to juror who was possibly sleeping during key stages of trial was not ineffective assistance of counsel).  This Court notes that trial counsel had an opportunity to use a peremptory challenge to remove this individual during jury selection but found her acceptable. (Dkt. No. 44, Attach. 2 at 111-112.)  *See United States v. Lawes*, 292 F.3d  123, 128 (2d Cir. 2002) (characterizing jury selection and trial strategy as "inseparable").

Petitioner also cannot show that the retention of this juror prejudiced the outcome of the trial.  Petitioner does not demonstrate, and the record does not suggest, that the purportedly sleeping juror "adversely affected the jury's deliberations or had a substantial and injurious effect on its ultimate conclusions." *Ragsdale v. Warden*, No. 11-CV-1681 (DLI), 2015 WL 5675867, at *5 (E.D.N.Y. September 24, 2015) (internal citation omitted).

## V.    CERTIFICATE OF APPEALABILITY

To appeal a final order denying a request by a state prisoner for habeas relief, a petitioner must obtain from the court a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1)(A); *see also* Fed. R. App. P. 22(b)(1) ("[T]he applicant cannot take an appeal unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c).").  In the absence of a COA, a federal court of appeals lacks jurisdiction to entertain an appeal from the denial of a habeas petition.  *Hoffler v. Bezio*, 726 F.3d 144, 152 (2d Cir. 2013).  A COA may issue only "if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *Hoffler*, 726 F.3d at 154.  A petitioner may demonstrate a "substantial showing" if "the issues are debatable among jurists of reason; . . . a court could resolve the issues in a different manner; or . . . the questions are adequate to deserve encouragement to proceed further."[8] *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks omitted).

In this instance, I find that jurists of reason would not find it debatable as to whether the petition in this matter is meritorious.  Accordingly, I recommend against the issuance of a COA.

**ACCORDINGLY**, it is

**RECOMMENDED** that the Petition be **DENIED and DISMISSED**, and that a certificate of appealability not be issued to Petitioner; and it is further

---

[8]    A similar standard applies when a COA is sought to challenge the denial of a habeas petition on a procedural basis.  *See Slack v. McDaniel*, 529 U.S. 473, 478 (2000) ("[A] COA should issue . . . if the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.").

**ORDERED** that the Clerk of the Court shall file a copy of this Report and Recommendation on the parties, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[9]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated:   January 23, 2024

Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[9]    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

1998 WL 812648
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Abdullah Y. SALAHUDDIN, Petitioner,

v.

Wayne L. STRACK, Superintendent, Fishkill Correctional Facility, Respondent.

No. 97–CV–5789.
|
Aug. 12, 1998.

**Attorneys and Law Firms**

Abdullah V. Salahuddin, Fishkill Correctional Facility, Beacon, for Petitioner Pro Se.

Charles J. Hynes, District Attorney, Kings County, Brooklyn, By Camille O'Hara Gillespie, Assistant District Attorney, for Respondent.

MEMORANDUM AND ORDER

GLEESON, District J.

 **\*1** Abdullah Y. Salahuddin, also known as James Murph, petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is denied.

FACTS

On July 4, 1976, at approximately 9:30 p.m., Victoria Sostre and Celiano Perez were working at a grocery store owned by Rudolfo Montoya at 99 Fourth Avenue in Brooklyn when petitioner and a male companion entered the store. Petitioner placed a gun at the back of Perez's head and announced a holdup. When Montoya entered the store from the back room, petitioner pointed the gun at him, at which point Perez attempted to seize the gun from petitioner. The two men struggled, moving out of the store and into the street. When Montoya came out of the store, petitioner fired the gun and fatally shot Montoya in the head.

Petitioner was charged with two counts of Murder in the Second Degree (New York Penal Law 125.25[1],[3] ), and one count of Criminal Possession of a Weapon in the Second Degree (New York Penal Law 265.03). On September 19, 1977, pursuant to petitioner's motion to suppress identification testimony, a *Wade* hearing was held in the New York Supreme Court, Kings County, before Justice Rinaldi. Perez, Sostre, and two others testified as prosecution witnesses. On or about September 30, 1977, at the conclusion of the hearing, the court denied the motion to suppress the identification testimony of Perez and Sostre, ruling that the lineup from which Perez had identified petitioner was proper and that Perez and Sostre had an independent source for their in-court identifications of petitioner.

At petitioner's trial, on October 3, 1977, the third count of the indictment, Criminal Possession of a Weapon, was dismissed by Justice Rinaldi shortly before the jury was charged. On October 24, 1977, the jury began deliberations. On the following day, the jury requested a readback of various portions of the testimony. As the requested material was being located, the jury informed a court officer that it no longer wanted the information and soon thereafter sent a note stating that it was divided. The court gave the jury an *Allen* charge and the jury retired for further deliberations. Shortly thereafter, the forelady announced that

1998 WL 812648

the jury remained irreconcilably divided and that further deliberations would be fruitless. Thereafter, over defense objection, the court declared a mistrial.

On October 27, 1977, petitioner instituted an "Article 78" proceeding in the Appellate Division, Second Department for a writ of prohibition forbidding a retrial on double jeopardy grounds. In the same application, petitioner sought a writ of habeas corpus. On November 23, 1977, the Appellate Division denied both applications. *Matter of Murph v. Justices of the Supreme Court, Kings County,* No. 5725 (2d Dep't 1977).

A second jury trial was held on January 12, 1978, before Justice Kooper. In addition to Perez and Sostre, the prosecution presented the testimony of Robert Akers. Akers testified that on the night of the shooting, petitioner confessed to him that he had just held up a store and shot a person. Also testifying as a prosecution witness was Jose Perez, to whom petitioner made various incriminating statements, including an account of the crime, while he and Perez both prisoners at the Brooklyn House of Detention. [1]  On January 26, 1978, the jury returned a verdict acquitting petitioner of intentional murder and First Degree Manslaughter and finding him guilty of Murder in the Second Degree (felony murder) and Manslaughter in the Second Degree. On March 21, 1978, Justice Kooper sentenced petitioner as a second felony offender to concurrent terms of imprisonment of twenty-five years to life for the felony murder count and seven and one-half to fifteen years for the second degree manslaughter count. Petitioner is presently incarcerated pursuant to these convictions.

*Procedural History*

**\*2**  On March 23, 1978, petitioner filed a notice of appeal. On October 17, 1978, petitioner moved *pro se,* pursuant to New York Criminal Procedure Law (N.Y.C.P.L.) §§ 440.10 and 440.20, to vacate his judgement of conviction and sentence on the grounds that (1) misconduct by Justice Rinaldi during the *Wade* hearing tainted the identification of him at trial; (2) misconduct by Justice Kooper during the second trial denied him a fair trial; (3) the People procured his conviction by duress, misrepresentation, and fraud; (4) newly discovered evidence would have resulted in a more favorable verdict had it been presented; and (5) his sentence was illegal.

On or about December 4, 1978, petitioner's motion was denied. On March 7, 1979, the Appellate Division, Second Department, denied petitioner's application for leave to appeal the order denying his motion. On March 26, 1979, the Court of Appeals denied petitioner's application for leave to appeal from the Appellate Division's order.

On June 25, 1982, petitioner appealed his conviction to the Appellate Division, Second Judicial Department, presenting the following six claims: (1) the court acted without manifest necessity and in derogation of New York law when it declared a mistrial; (2) Victoria Sostre's in-court identification of petitioner should have been suppressed because her prior viewing of two photographs of him was impermissibly suggestive; (3) the court deprived petitioner of a fair trial and his right to confront witnesses when it undermined and denigrated defense counsel's efforts to cross-examine the prosecution witnesses; (4) the prosecutor deprived petitioner of due process and a fair trial when he argued on summation that the defense was an illusion created by defense counsel; (5) the case should be remanded for a hearing to determine whether introduction of the testimony of his fellow inmate, Jose Perez, violated petitioner's right to counsel under the New York Constitution; and (6) his sentence was excessive. On October 4, 1982, the Appellate Division unanimously affirmed the judgment of conviction without opinion. *People v. Murph,* 90 A.D.2d 695, 454 N.Y.S.2d 567 (2d Dep't 1982).

By letters dated October 18, 1982 and January 14, 1983, petitioner applied for permission to appeal to the New York Court of Appeals. In his application, petitioner raised four issues: (1) the trial court acted without manifest necessity and in derogation of New York law when it declared a mistrial; (2) Sostre's in-court identification of petitioner should have been suppressed; (3) the trial court deprived petitioner of a fair trial and his right to confront witnesses when it undermined and denigrated defense counsel's efforts to cross-examine prosecution witnesses; and (4) the case should be remanded for a hearing to determine whether

admission of Jose Perez's testimony violated petitioner's state constitutional right to counsel. By certificate dated April 8, 1983, petitioner was denied permission to further appeal. *People v. Murph,* 59 N.Y.2d 678, 463 N.Y.S.2d 1037, 450 N.E.2d 261 (1983).

**\*3** Twelve years later, on February 1, 1995, petitioner filed a *pro se* motion pursuant to N.Y.C.P.L. § 440.20 in New York Supreme Court, Kings County, seeking to set aside his sentence on the ground that it was imposed in violation of his state and federal constitutional rights because the sentencing court allegedly relied upon false and inaccurate information contained in the pre-sentence report. By order dated May 15, 1995, the New York Supreme Court, Kings County, denied petitioner's motion. *People v. Salahudder* [sic], Ind. No. 597/77. Petitioner's application for leave to appeal to the Appellate Division was denied on July 6, 1995. *People v. Salahuddin,* Ind. No. 95–05234.

By petition dated August 22, 1995, petitioner sought a writ of habeas corpus in the United States District Court for the Southern District of New York. By order dated November 20, 1995, the Honorable Chief Judge Thomas P. Griesa transferred the petition to this Court. Petitioner alleged that he was entitled to habeas relief because (1) his conviction violated Fifth and Fourteenth Amendment protections against double jeopardy when the court, without manifest necessity, declared a mistrial over defense objection and without honoring five outstanding jury requests; (2) Victoria Sostre's in-court identification of petitioner was tainted by a suggestive pre-trial photo display in violation of the Fourteenth Amendment; (3) his conviction violated the Sixth and Fourteenth Amendments because the state court deprived him of a fair trial and the right to confront witnesses when it undermined and denigrated defense counsel's efforts to cross-examine prosecution witnesses; (4) his conviction violated due process under the Fourteenth Amendment in that the prosecutor argued on summation that the defense was an illusion; (5) his conviction was obtained in violation of his right to counsel under the Sixth and Fourteenth Amendments because at trial the prosecution introduced testimony of Jose Perez in violation of that right; and (6) his sentence violated the Fourteenth Amendment in that the sentencing court imposed a maximum sentence based upon false, fabricated and inaccurate information contained in his pre-sentence report. By order dated July 17, 1996, this Court, adopting the report and recommendation dated May 8, 1996 by Magistrate Judge John L. Caden, dismissed petitioner's application for writ of habeas corpus without prejudice because it included unexhausted claims. *Salahuddin v. Keane,* No. 95–CV–4978.

On September 30, 1996, petitioner moved *pro se* in the New York Supreme Court, Kings County, to vacate his conviction and set aside his sentence pursuant to N.Y.C.P.L. § 440.10 on the grounds that (1) the introduction of Jose Perez's testimony concerning petitioner's statements made to Perez violated petitioner's federal and state constitutional right to counsel; and (2) the prosecutor's statements on summation deprived petitioner of due process and a fair trial. By a supplemental motion made on January 19, 1997, petitioner sought to include the additional claim that he was denied effective representation at trial. By decision and order dated May 15, 1997, the New York Supreme Court, Kings County, denied defendant's motion as amended, finding all claims procedurally barred and the latter claim unsupported by the record, presenting no reasonable possibility that the allegations were true. *People v. Salahuddin,* Ind. No. 597/77.

**\*4** On June 5, 1997, petitioner submitted an application for certificate granting leave to appeal to the Appellate Division from the denial of his motion to vacate the judgment. Petitioner's application was denied on September 10, 1997. *People v. Salahuddin,* No. 97–07379.

The present petition for writ of habeas corpus was filed on October 6, 1997. Petitioner advances the following seven claims for habeas review: (1) his conviction violated the Fifth and Fourteenth Amendment protections against double jeopardy in that the trial court, without manifest necessity, declared a mistrial over defense objection and without honoring five outstanding jury requests; (2) Victoria Sostre's in-court identification of petitioner should have been suppressed; (3) he was deprived of a fair trial and the right to confront witnesses when the court undermined and denigrated defense counsel's attempts to cross-examine prosecution witnesses; (4) the prosecutor deprived him of due process by arguing on summation that the jury should disregard the defense because it was an illusion created by defense counsel, who did not believe in petitioner's innocence; (5) he was denied his right to counsel by the introduction of the testimony of Jose Perez; (6) he was denied a fair trial under the Fifth, Sixth and Fourteenth Amendments because the trial court failed to disclose a cooperation agreement made with Jose Perez for his

1998 WL 812648

testimony against defendant; and (7) his sentence violated the Fourteenth Amendment in that the sentencing court imposed a sentence based upon false, fabricated, and inaccurate information.

DISCUSSION

A. *The Exhaustion Requirement*

Before a federal court may consider a petitioner's application for a writ of habeas corpus, the petitioner must have exhausted all available state judicial remedies. 28 U.S.C. § 2254(b); *Picard v. Conner,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Taylor v. Mitchell,* 939 F.Supp. 249, 253 (S.D.N.Y.1996). The Second Circuit has established a two-pronged test to determine whether a petitioner has exhausted all available state remedies. First, he must have "fairly presented" his federal constitutional claims to the highest state court. *Reid v. Senkowski,* 961 F.2d 374, 376 (2d Cir.1992); *Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir.1982), *cert. denied,* 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984). A petitioner fairly presents a claim when he informs the state court of both "the factual and the legal premise of the claim he asserts in federal court." *Lebron v. Mann,* 40 F.3d 561, 567 (2d Cir.1994) (quoting *Daye,* 696 F.2d at 191).

The second prong generally requires the petitioner to utilize all avenues of appellate review within the state court system before proceeding to federal court. *Daye.* 696 F.2d at 190; *Bossett v. Walker,* 41 F.3d 825, 828 (2d Cir.1994) (quoting *Pesina v. Johnson,* 913 F.2d 53, 54 (2d Cir.1990), *cert. denied,* 514 U.S. 1054 (1995)); *Levine v. Commissioner of Correctional Services,* 44 F.3d 121, 124 (2d Cir.1995).

 **\*5** The exhaustion doctrine "requires only that a petitioner present his claim once on direct or collateral review." *Sanford v. Senkowski,* 791 F.Supp. 66, 69 (E.D.N.Y.1992) (citing *Udzinski v. Kelly,* 734 F.Supp. 76, 81 n. 4 (E.D.N.Y.1990)); *Fielding v. LeFevre,* 548 F.2d 1102, 1106 (2d Cir.1977). Therefore, even if a claim is not raised at trial or on direct appeal, a claim pursued throughout a full round of state post-conviction proceedings is exhausted. 2 J. Liebman & R. Hertz, *Federal Habeas Corpus Practice and Procedure* § 23.3b, at 671 (1994) (citing *Castille v. Peoples,* 489 U.S. 346, 350–51, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989)).

Previously, if a petition contained both exhausted and unexhausted claims the petition was dismissed. Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a federal district court now has discretion to deny a petition that contains both exhausted and unexhausted claims on the merits. 28 U.S.C. § 2254(b)(2).

B. *The Procedural Default Jurisprudence*

Apart from the exhaustion requirement, a federal court generally will be precluded from reviewing any claim for which "a state court rests its judgment on an adequate and independent state ground, including a state procedural bar." *Reid v. Senkowski,* 961 F.2d 374, 377 (2d Cir.1992). A petitioner's failure to meet the state's procedural requirements for presenting his federal claims "deprives the state courts of an opportunity to address those claims in the first instance." *Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). However, when a petitioner defaults his federal claims in state court, he meets the technical requirements for exhaustion because there are no longer any state remedies "available" to him. *Id.* at 732; 28 U.S.C. § 2254(b). Therefore, a federal court does not need to require that a federal claim be presented in state court if it is clear that the state court would hold the claim to be procedurally barred. *Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991) (citing *Harris v. Reed,* 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989)).

If a claim is procedurally barred, a federal court may review the claim only if the petitioner can show "cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 749–50 (quoting *Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)); *Keeney v. Tamayo–Reyes,* 504 U.S. 1, 2, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992). Cause exists if "the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray,*

477 U.S. at 488 (1986); *see Armadeo v. Zant,* 486 U.S. 214, 222, 108 S.Ct. 1771, 100 L.Ed.2d 249 (1988). For example, cause may be demonstrated by showing that (1) "the factual or legal basis for a claim was not reasonably available to counsel"; or that (2) "some interference by state officials made compliance impracticable"; or that (3) "the procedural default is the result of ineffective assistance of counsel." *Bossett,* 41 F.3d at 829 (quoting *Murray,* 477 U.S. at 488 (1986)). Prejudice exists if the outcome of the case would likely have been different absent the complained of constitutional violation. *See Reed v. Ross,* 468 U.S. 1, 12, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984).

 **\*6**  Respondent does not dispute that petitioner has exhausted his claims with respect to grounds one, two, and three or five. However, respondent contends that petitioner's (1) fourth claim that the prosecutor deprived him of his rights by arguing on summation that the defense was an illusion; (2) his fifth claim that the admission of Perez's testimony violated his right to counsel; (3) sixth claim that the prosecutor's failure to disclose a cooperation agreement with Perez deprived him of a fair trial; and (4) seventh claim that he was improperly sentenced because of false information in his presentence report are procedurally barred. Furthermore, respondent argues that petitioner has not and cannot show cause or prejudice for his default.

C. *The Declaration of a Mistrial*
Petitioner asserts that a mistrial was declared in his first trial without manifest necessity, and this his second trial violated his double jeopardy rights.[2]  A retrial following a mistrial violates double jeopardy protections only if the mistrial was declared without "manifest necessity." *Illinois v. Somerville,* 410 U.S. 458, 461, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). However, nothing in the record suggests that the mistrial was declared improperly, and so habeas relief is not warranted on this ground.

The jury in petitioner's first trial reported, without prompting from the court, that it was deadlocked in its deliberations. The trial court then issued an *Allen* charge, which the jury considered before reiterating its inability to arrive at a verdict. It thus appears that the trial court had little choice but to declare a mistrial. A jury's declaration that it cannot arrive at a verdict is the "prototypical example" of a situation in which the declaration of a mistrial becomes a manifest necessity. *Oregon v. Kennedy,* 456 U.S. 667, 672, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). The trial court's declaration of a mistrial was justified by the circumstances, and the retrial did not constitute a double jeopardy violation.

Petitioner's claim is based in part on the fact that the jury made requests for readbacks prior to reporting its deadlock. However, the unanswered requests do not compel the conclusion that the mistrial, and subsequent second trial, occurred in violation of petitioner's constitutional rights. *See United States v. Young,* 140 F.3d 453, 456 (2d Cir.1998). The jury's outstanding requests for testimony do not suggest that further deliberations should have been forced by the court; the record indicates that those requests had been withdrawn and that the members of the jury felt that no amount of discussion or information would have resolved the deadlock.

Likewise, the fact that the defense objected to the declaration of a mistrial does not render the decision improper. A trial court may declare a mistrial if "the ends of justice cannot be attained" otherwise. *Gori v. United States,* 367 U.S. 364, 368, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961); *U.S. v. Millan,* 17 F.3d 14, 19 (2d Cir.1993); *United States v.. Pavloyianis,* 996 F.2d 1467, 1472 (2d Cir.1993). Petitioner has failed to establish that the mistrial declaration was not manifestly necessary, given the jury's impasse. Habeas relief on this ground is thus denied.

D. *The Suppression of Sostre's Testimony*
 **\*7**  Petitioner's second ground for habeas relief is that Victoria Sostre's testimony was admitted in violation of the Fifth and Fourteenth Amendments. Petitioner contends that the pre-trial display of two photographs of him to Sostre rendered her later in-court identification unreliable.

Prior to the first trial, a *Wade* hearing was conducted with respect to this issue, and the court determined that Sostre's testimony would be allowed because she had an independent source for her identification. The federal habeas statute precludes federal courts from granting habeas relief on a claim that has been considered in the state system unless the state's rulings were contrary

**Salahuddin v. Strack, Not Reported in F.Supp.2d (1998)**

1998 WL 812648

to or an unreasonable application of federal law or involved an unreasonable finding of fact. 28 U.S.C. § 2254(d). Without such a showing, I cannot grant habeas relief on this ground.

Even where a witness has been subjected to a suggestive pre-trial photographic identification procedure, federal law maintains that convictions based on eyewitness identifications at trial "will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a 'very substantial likelihood of irreparable misidentification." ' *Manson v. Brathwaite,* 432 U.S. 98, 116, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) (quoting *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)). Whether a due process violation has occurred is determined after a consideration of the entirety of the circumstances surrounding the identification. Thus, even if Sostre had been shown photographs in a suggestive manner, her in-court identification of petitioner would still be admissible under federal law provided that the totality of the circumstances could establish the reliability of her testimony. *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

The evidence before the trial court [3] established that Sostre's in-court identification rested on her observations during the crime and not on any suggestive pre-trial identification. During the trial Sostre testified that she was working in the store on July 4, 1976, when, between seven and seven-thirty p.m., two men, one light-skinned man and the other dark-skinned, entered the front door of the store. She identified the darker-skinned man as the petitioner. The two men passed Sostre, who was standing at a "very short distance" from the front door. Both men walked down an aisle, approximately five or six feet from Sostre to a refrigerator in the rear of the store. The petitioner argued with Celiano Perez over the price of frankfurters. Then the petitioner and the other man walked to the other side of the store, and the other man took a bag of potato chips and threw it down. The two men then left the store. The incident took approximately five minutes.

Later that same evening, around nine p.m., Sostre observed the two men re-enter the store. From a distance of approximately six feet away, Sostre observed the petitioner display a revolver, place it against Celiano Perez's back, and heard petitioner announce a hold-up. Sostre saw Perez struggle with petitioner, and Rudolfo Montoya join the struggle. The struggle then moved outside, and Sostre heard what sounded like several shots. Sostre saw Perez return to the store and observed Montoya on the ground.

**\*8** Sostre's testimony was sufficient to permit the court to conclude reasonably that an independent source existed for her in-court identification of the petitioner, even assuming, arguendo, that she was improperly shown two isolated photographs of the petitioner. *See Neil v. Biggers,* 409 U.S. at 199. Certainly such a finding is not an unreasonable determination in view of the facts available to the lower court, and was not contrary to or an unreasonable application of federal law.

Finally, even if Sostre's testimony were irreparably tainted by the allegedly suggestive photograph display, inclusion of her testimony was harmless in light of the overwhelming evidence of petitioner's guilt. *See Brecht v. Abrahamson,* 507 U.S. 619, 637–638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *Meadows v. Kuhlman,* 812 F.2d 72, 76–77 (2d Cir.), *cert. denied,* 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987). Sostre was not the only eyewitness who identified petitioner; the prosecution also presented the testimony of Celiano Perez, who grappled with petitioner moments before the shooting observing Montoya's. Accordingly, even if the admission of Sostre's testimony was error, there is no basis for federal habeas relief.

### E. *Right to Cross Examine Witnesses*
Petitioner contends that the trial court violated his Sixth and Fourteenth Amendment rights when it undermined and denigrated defense counsel's attempts to cross-examine witnesses. The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him ...." This right applies to state as well as federal prosecutions via the due process clause of the Fourteenth Amendment, and federal law holds that "the right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him." *Pointer v.. Texas,* 380 U.S. 400, 404, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). Both the Appellate Division and Court of Appeals concluded that petitioner's contention that he was denied a fair trial was meritless, and I find that neither decision presents either an unreasonable application of Federal law or unreasonable determination of the facts available.

1998 WL 812648

Defendants are entitled to a fair trial, not a perfect one. Only judicial misconduct that renders the trial so fundamentally unfair as to violate federal due process under the Constitution requires habeas relief. *United States v. Robinson,* 635 F.2d 981, 984 (2d Cir.1980), *cert. denied* 451 U.S. 992, 101 S.Ct. 2333, 68 L.Ed.2d 852 (1981); *Gayle v. Scully,* 779 F.2d 802, 806 (2d Cir.1985), *cert. denied,* 479 U.S. 838, 107 S.Ct. 139, 93 L.Ed.2d 82 (1986). More specifically, habeas relief on the ground of judicial misconduct at the state trial level is warranted only if the federal court determines that the alleged improprieties, taken in the context of the total trial, undermined fundamental fairness to the defendant. *Daye,* 712 F.2d at 1572.

A review of the trial record indicates that the court's conduct never approached the level of impropriety that would constitute a deprivation of petitioner's right to fundamental fairness. The court's commentary presented nothing other than ordinary attempts to guide the course of the proceedings and keep them moving at an acceptable pace. Rulings did not disproportionally advantage one side over the other, but were routinely made in favor of either side, often over the objection of the other, and represented perfectly acceptable exercises of judicial discretion. Even if viewed in a highly critical light, none of the court's conduct would have tainted the trial to such an extent that petitioner's right to a fair trial was denied. Accordingly, this claim is insufficient to support habeas relief for the petitioner.

F. *The Prosecutor's Summation*

 **\*9** Petitioner's fourth ground for habeas relief is that the prosecutor's summation, arguing that the defense counsel did not believe in petitioner's innocence, deprived petitioner of his rights to a fair trial under the Sixth and Fourteenth Amendments. Specifically, the portions of the closing that petitioner points to include: [4] (1) Mr. Scotto [the defense attorney] "turne[ed] the evidence in a way that did not really reflect what occurred in this trial [or] on the 4th of July ...." Tr. 1113; (2) "I submit to you that Mr. Scotto was trying, in the course of his summation, to create for you an illusion, faced with the overwhelming evidence against his client ...." Tr. 1113; (3) "So, you see, again we have an illusion trying to be created in front of you." Tr. 1115; (4) "But this is just something that Mr. Scotto is throwing in here, smoke to distract your attention and take your attention away from what the real issues are in this case." Tr. 1116; (5) "Render a verdict which speaks the truth in this case—- not based upon any illusions ...." Tr. 1146.

Unlike the first three claims of the petition, this ground was not raised in petitioner's application to the Court of Appeals. Accordingly, the claim is deemed exhausted but procedurally barred, and may only be reviewed on the merits if petitioner can show cause and prejudice for his procedural default. *Coleman,* 501 U.S. at 749–50; *Bossett,* 41 F.3d at 829.

The fact that this claim was included in petitioner's application for leave to appeal to the Appellate Division, but not in the application for leave to appeal to the Court of Appeals, suggests that no factor external to the defense prevented the claim from being properly exhausted. Petitioner offers no explanation for, and alleges no prejudice resulting from his default. I conclude, therefore, that there was no "objective factor external to the defense" which impaired petitioner's "efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. at 488.

Furthermore, petitioner's claim is meritless. While the state court standards for determining prosecutorial misconduct may differ, a prosecutor's remarks on summation raise a federal question only if they so infect the trial proceedings with unfairness that they deprive a defendant of due process. *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986); *Donnelly v. DeChristophoro,* 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *Garofolo v. Coomb,* 804 F.2d 201, 206 (2d Cir.1986). In this case, the prosecutor's comments constituted a permissible rebuttal to a defense argument which impugns the government's integrity or the integrity of its case. *United States v. Rivera,* 22 F.3d 430, 438 (2d Cir.1994) (prosecutor's comments evaluated in context of trial as a whole because government is allowed to respond to argument which impugns the integrity of its case); *United States v. Thai,* 29 F.3d 785, 807 (2d Cir.), *cert. denied,* 513 U.S. 977, 115 S.Ct. 456, 130 L.Ed.2d 364, *and cert. denied,* 513 U.S. 993, 115 S.Ct. 496, 130 L.Ed.2d 406 (1994). In his summation, defense counsel labeled the prosecution "not really the whole truth," but rather a fabrication, prepared in the course of several prior proceedings. He claimed that the prosecution witness, Celiano Perez's story was incredible and that prosecution witnesses Akers and Jose Perez were

1998 WL 812648

both liars. In short, the defense summation constituted an attack on the prosecution's case to which the government was entitled to respond. *See United States v. Perry,* 643 F.2d 38, 51 (2d Cir.) (in light of defense counsel's attack on credibility and honesty of government's case in closing arguments, government's statements describing defendant's attack as a desperate, struggling tactic were permissible), *cert. denied,* 454 U.S. 835 (1981). Viewed in this context, the prosecutor's closing arguments did not so infect the proceedings with unfairness that petitioner was denied a constitutional right.

**\*10** Finally, any error occasioned by the prosecutor's summation was harmless in light of the overwhelming evidence of defendant's guilt. The weight of the evidence presented to the jury would have compelled a verdict of guilty even absent the prosecutor's comments to which petitioner objects. Accordingly, habeas relief on this ground is denied.

### G. *Right to Counsel*

Petitioner's fifth claim is that the introduction at trial of testimony of petitioner's fellow inmate, Jose Perez, concerning statements made by petitioner in the absence of counsel, violated his right to counsel afforded by the Fifth, Sixth, and Fourteenth Amendments.[5]

#### 1. *Procedural Default*

Petitioner's right to counsel claim, as advanced in his September 1996 motion to vacate, was denied on the basis of a procedural default, which constitutes an independent and adequate state ground. This procedural default acts as a bar to federal habeas review unless petitioner can show cause and prejudice for his default, or that a failure to consider his claims now would result in a fundamental miscarriage of justice. Again, petitioner has been unable to satisfy these conditions to permit review of the merits his claim.

#### 2. *The Merits*

In any event, the claim is meritless. The statements petitioner made to Perez in jail were not protected by the federal constitution. The Sixth Amendment right to counsel attaches only after adversary judicial criminal proceedings have commenced. *McNeil v. Wisconsin,* 501 U.S. 171, 175 (1991); *Neighbor v. Covert,* 68 F.3d 1508, 1511 (2d Cir.1995), *cert. denied,* 516 U.S. 1174 (1996). Perez testified to statements made to him by petitioner in the latter part of 1976, before petitioner was charged or even arrested in connection with Montoya's murder. Thus, his federal right to counsel had not yet attached with respect to those statements.

Furthermore, conversations between suspects and undercover agents, when the suspect is unaware of the other's status as a police agent, do not implicate the concerns underlying *Miranda. Illinois v. Perkins,* 496 U.S. 294, 296 (1990). The Court in *Perkins* held that "[t]he essential ingredients of 'police-dominated atmosphere' and compulsion are not present when an incarcerated person speaks freely to someone whom he believes to be a fellow inmate .... *Miranda* forbids coercion, not mere strategic deception by taking advantage of a suspect's misplaced trust in one he supposes to be a fellow prisoner." *Id.* at 296–97. Therefore, even if Perez is seen as an undercover government agent, a proposition in support of which petitioner has only been able to offer mere allegations, and petitioner did not receive *Miranda* warnings before making statements to Perez, the statements were admissible under federal constitutional law. *See also Alexander v. Connecticut,* 917 F.2d 747, 751 (2d Cir.1990), *cert. denied,* 501 U.S. 1219, 111 S.Ct. 2831, 115 L.Ed.2d 1000 (1991).

Because petitioner's incriminating statements were not collected in violation of petitioner's right to counsel, Perez's testimony was properly admitted at trial. Thus, even if petitioner's fifth claim were not barred from habeas review on the merits, it advances insufficient grounds upon which to provide habeas relief.

### H. *The Alleged Violation Of Brady v. Maryland*

Petitioner next claims that the prosecutor failed to disclose a cooperation agreement between Jose Perez and the state, thereby depriving petitioner a fair trial. Petitioner contends that had such an agreement been presented to the jury, the trial would have had a more favorable outcome for him.

Under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1983), the prosecution has the duty to disclose to a defendant any information in its possession which is favorable to the accused and material either to guilt or punishment. This obligation is ongoing and extends to impeachment evidence as well. *United States v. Wong,* 78 F.3d 73, 79 (2d Cir.1996). The state court found in its January 1997 ruling on petitioner's N.Y.C.P.L. § 440 motion that prosecutors had fulfilled their *Brady* obligations in this matter, and I find no reason to disturb that determination today. Petitioner points to the trial record, in which Perez's criminal history and the effect of his cooperative testimony on the disposition of other criminal matters pending against him at the time were discussed at length, both in and outside of the jury's presence.[6] Petitioner sought an order for "discovery" of additional documents which would reveal a formal cooperation agreement between Perez and the State, if any existed, in connection with his 1996 motion to vacate. In dismissing the melange of motions, amendments, and a reply submitted by petitioner, the court rejected the discovery motion on procedural grounds, citing petitioner's failure to raise the issue in the previous nineteen years and holding the claim barred by N.Y.C.P.L. § 440.10(3)(a).[7]

 **\*11**  Petitioner is now seeking habeas relief on the basis of the very transcript which was at his disposal in lodging his initial appeal, and has been unable to demonstrate cause for his default.

Furthermore, any prejudice which petitioner contends he suffered as a result of this default is negligible. The cause and prejudice standard requires more than just the "*possibility* of prejudice;" as noted above, it requires actual disadvantage to the petitioner. *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) (emphasis in original). The jury was well aware of the consideration Perez received as a result of his testimony, and there is no reason to believe that, if petitioner had been made aware of and been allowed to present additional evidence concerning a more elaborate cooperation agreement between Perez and the state, the verdict would have been affected. Without a showing of cause for the default and actual prejudice suffered as a result, this court is precluded from considering the claim on the merits.

In any event, petitioner's claim is meritless. Petitioner has not demonstrated that the state has withheld any information which details an arrangement other than the promises disclosed prior to and during trial. The decision dismissing petitioner's 1996 motion to vacate noted that there was no basis on which to assume such a cooperation agreement existed. There is no basis for disturbing that finding.

I. *The Challenge To The Pre–Sentence Report*

Petitioner's final ground for habeas relief is that his sentence was determined on the basis of false, fabricated, erroneous, and inaccurate information, in violation of the Fifth and Fourteenth Amendments. He presented this issue to the state court in February of 1995 in a motion to vacate his sentence pursuant to N.Y.C.P.L. § 440.20.

Petitioner has not articulated what, precisely, in the pre-sentence report in this case constituted false, fabricated, erroneous, and inaccurate information. It is not even clear that petitioner is referring to the pre-sentence report used in this case .[8] In any event, none of the information in the challenged pre-sentence report is erroneous. Petitioner appears to claim that the reference to a 1969 incident should not have appeared on the report because he was given a youthful offender adjudication instead of criminal conviction.[9] Inasmuch as the pre-sentence report reflected the disposition of that matter, and all other criminal incidents (even when charges were later dropped or dismissed), it reflects information which is entirely truthful and accurate. Because the pre-sentence report did not contain any false, fabricated, erroneous, or inaccurate information, and because petitioner's criminal record played little role in the sentencing decision, petitioner's final claim does not warrant habeas relief.

CONCLUSION

For the foregoing reasons, Salahuddin's petition for writ of habeas corpus is denied. In addition, I hereby refuse to issue a certificate of appealability, since petitioner has not presented a "substantial showing of the denial of a constitutional right." *See Reyes v. Keane,* 90 F.3d 676, 680 (2d. Cir.1996) (quoting Section 102 of the Antiterrorism and Effective Death Penalty Act).

**\*12**  So Ordered.

**All Citations**

Not Reported in F.Supp.2d, 1998 WL 812648

## Footnotes

1    Jose Perez also apparently testified against petitioner in the first trial. No transcripts of the first trial have been found.

2    To the extent that petitioner alleges a breach of state law, he has not presented a federal issue capable of habeas review.

3    As stated earlier, respondent has been unable to obtain the transcript from petitioner's first trial, including the transcript of the *Wade* hearing. Respondent, therefore, relies on citations to the *Wade* hearing transcript contained in the People's brief to the Appellate Division. Respondent states that Sostre testified that she was working behind the counter at Rudolfo Montoya's store when two men entered the premises and she observed the men in the store from a distance of fourteen to fifteen feet while they attempted to rob the store.

4    Petitioner does not make reference to specific portions of the transcript, however, his brief to the Appellate Division, with the assistance of counsel, referred to the following portions.

5    Respondent argues that this claim is partially unexhausted because petitioner advances the Fifth Amendment as legal support for his claim for the first time in this petition. Petitioner's presentation of this claim to the state courts relied on the New York state constitutional right to counsel and the federal right to counsel under the Sixth and Fourteenth Amendments. For habeas purposes, a petitioner has fairly presented his claims in state court when he sets forth "the factual and legal premise of the claim he asserts in federal court." *Dave,* 696 F.2d at 191. The fair presentation requirement is satisfied "if the legal basis of the claim made in state court was the 'substantial equivalent' of the habeas claim." *Id.* at 192. I conclude that petitioner sufficiently alerted the New York Supreme Court of the federal constitutional nature of his claim.

6    Transcripts reveal that the consideration Perez was shown in exchange for his testimony was discussed prior to the retrial, with counsel for both the petitioner and the witness present. The prosecutor offered a detailed description of the plea adjustments and sentencing promises made to Perez (on unrelated pending charges) for his testimony. Furthermore, the trial court permitted defense counsel to examine Perez at length before the jury concerning his criminal history, pending sentences, and any arrangement made between him and the state concerning his cooperative testimony against petitioner. Perez's answers corroborated the prosecutor's earlier statements to the court. Defense counsel was even permitted to question Perez at trial about consideration for his testimony of which he may not have been aware.

7    Petitioner has advanced an explanation for his failure to have raised this issue previously. His application to the Appellate Division for leave to appeal asserted that petitioner had been unaware of evidence (all contained within the trial transcripts) which he thought bolstered his claims of an undisclosed cooperation agreement. He happened to have found

1998 WL 812648

in a stack of papers which had been left in the corner of his cell portions of the trial transcript which prompted him to amend his pending motion to vacate and seek further documentation from the state regarding Perez's testimony. However, this amount of bad housekeeping does not constitute cause for procedural default of a claim in the New York state criminal justice system. Merely being unaware that portions of the trial transcript (which sow the seeds of suspicion concerning a prosecution witness) are lying in the corner of the room, does not excuse failure to properly raise a claim in state court. Nor does it constitute "an objective factor external to the defense" which impeded petitioner or his counsel from complying with the state's procedural rules. *Murray v. Carrier,* 477 U.S. at 488.

8       Exhibit 1 to petitioner's February 1995 motion to vacate, described as the pre-sentence report used by the sentencing court in this matter, appears in fact to be a report prepared in connection with petitioner's indictment for an August 1975 armed robbery, a charge which was later dismissed. The pre-sentence report prepared for this case notes both that indictment and its later dismissal for lack of prosecution.

9       Petitioner argued in support of his February 1995 motion to vacate that he had believed the records were sealed with respect to the 1969 incident. He notes that at the time of sentencing for this matter, the court stated it was "looking at his criminal history dating back to 1969," and concludes that information about that incident was available to the sentencing court.

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2002 WL 2003210

Only the Westlaw citation is currently available.

United States District Court, E.D. New York.

Gregory HARVEY, Petitioner.

v.

Leonard PORTUONDO, Superintendent, Shawangunk Correctional Facility, Respondent.

No. 98–CV–7371(JG).

|

Aug. 5, 2002.

**Synopsis**

Defendant was convicted of two counts of second-degree felony murder, one count of first-degree arson, and one count of third-degree arson, affirmed at 224 A.D.2d 713, 638 N.Y.S.2d 963. Following denial of his application for coram nobis relief, 247 A.D.2d 407, defendant petitioned for a writ of habeas corpus. The District Court, Gleeson, J., held that: (1) claim that admission of defendant's written statement at trial violated his right not to be convicted based on a coerced confession was unexhausted and procedurally barred; (2) any violation of federal law in the use of a defendant's written confession was harmless; (3) evidence that defendant had previously broken his wife's jaw during an argument and threatened to burn down the house was admissible; and (4) defendant was procedurally barred from raising a claim of ineffective assistance of trial counsel.

Petition denied.

**Attorneys and Law Firms**

Gregory Harvey, Shawangunk Correction Facility, Wallkill, New York, Petitioner pro se.

Richard A. Brown, District Attorney, Queens County, Kew Gardens, New York, By: John M. Castellano, Robin A. Forshaw, Assistant District Attorneys, for Respondent.

*MEMORANDUM AND ORDER*

GLEESON, J.

**\*1** Gregory Harvey has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is denied.

*BACKGROUND*

A. *The Facts*

During the early morning hours of March 5, 1990, petitioner intentionally set fire to his mother-in-law's home in Queens County, New York, where he had been living with his pregnant wife, Theresa Harvey, and their two-year-old son, Julian. Theresa and Julian, who were asleep in the house, were both killed in the fire.

Petitioner fled the burning building and called a friend. Wilbert Gray, telling Gray that he had set the fire in order to commit suicide, but that he had changed his mind and escaped. Petitioner asked Gray to take him to the hospital, where Detective Erroll

Garner arrested him that evening. Petitioner waived his constitutional rights and told Garner that he had set the fire in an effort to commit suicide, but had decided instead to escape from a window. Petitioner then invoked his right to counsel, and Garner stopped questioning him. A few minutes later petitioner told Garner that he was willing to speak without an attorney. Petitioner then said nothing, but upon Garner's saying "okay," petitioner was removed from his cell and gave a detailed statement. Again he admitted that he had set the fire in order to commit suicide (because of various marital and family problems with his wife and mother-in-law), but he had decided to escape. He added that he did not know that his wife and baby were in the house. The confession was reduced to writing, which petitioner signed and dated.

### B. *The Procedural History*

Petitioner was subsequently charged with six counts of Murder in the Second Degree (two counts each of intentional murder, depraved indifference murder, and felony murder), one count of Arson in the First Degree, one count of Arson in the Third Degree, and one count of Reckless Endangerment in the First Degree (Queens County Indictment Number 1370/90).

Petitioner was initially found unfit to proceed to trial, but upon a second examination he was found competent to stand trial. He then moved to suppress his statements to the police on the ground that he was mentally incapable of making them knowingly and voluntarily. After a hearing, the New York State Supreme Court, Queens County (Berkowitz, J.), denied his motion, holding that petitioner had knowingly and voluntarily waived his constitutional rights.

Petitioner waived his right to a jury trial and proceeded to a bench trial before Justice Thomas A. Demakos of the New York State Supreme Court, Queens County. [1] He did not deny setting the fire, but instead asserted an insanity defense. In a written verdict dated August 12, 1993, the court found that petitioner had failed to meet his burden of proving his insanity defense by a preponderance of the evidence, and found him guilty of two counts of second-degree felony murder, one count of first-degree arson, and one count of third-degree arson. The court acquitted petitioner of the intentional and depraved indifference murder counts, and of the reckless endangerment count.

**\*2** On November 9, 1993, the court sentenced petitioner to concurrent prison terms of twenty-five years to life on each of the murder counts and arson in the first degree, and five to fifteen years on the third-degree arson count. In June of 1995, petitioner perfected his direct appeal to the New York State Supreme Court, Appellate Division, Second Department ("Appellate Division"). He contended that the statements he made after invoking his right to counsel were erroneously admitted at trial under New York's "indelible right to counsel" because his waiver of counsel was made in the absence of counsel, *see People v. Cunningham,* 49 N.Y.2d 203, 424 N.Y.S.2d 421, 400 N.E.2d 360 (1980), and because Garner "encouraged" petitioner to make his statement by saying "okay" after petitioner, without prompting, said that he was willing to speak without an attorney.

On February 26, 1996, the Appellate Division affirmed the conviction, concluding that petitioner's right to counsel had been violated, but the error was harmless. The court held that the statements petitioner made after invoking his right to counsel should have been suppressed because they were not "spontaneous" under New York law. *See People v. Harvey,* 224 A.D.2d 713, 638 N.Y.S.2d 963 (2d Dept.1996) (citing, *inter alia, People v. Lucas,* 53 N.Y.2d 678, 439 N.Y.S.2d 99, 421 N.E.2d 494 (1981)). The court held the error to be harmless beyond a reasonable doubt, however, because of the other evidence proving petitioner's guilt and disproving his insanity. *See id.* at 713–14, 638 N.Y.S.2d 963. It noted that it was undisputed, "especially through the defendant's oral admission made before he requested counsel," that petitioner had deliberately set the fire. *See id.* at 713–14, 638 N.Y.S.2d 963. The evidence also showed that petitioner was aware that people were present in the house when he set the fire because he had jumped from a window on the second floor, where Theresa and Julian Harvey were sleeping and were later found dead in their beds. In addition, petitioner had admitted to one of his psychiatrists that he ran through all the floors of the house after he set the fire. *See id.* Even though the trial court had partially relied on the written statement to reject petitioner's insanity defense, the Appellate Division found that the testimony of an examining psychiatrist (that petitioner did not lack substantial capacity to know that (a) he was setting a fire; (b) the fire could injure anyone in the building; and (c) that conduct was wrong) established that petitioner was not insane when he set the fire. The court also noted the trial court's reliance on petitioner's failure to mention his alleged hallucinations and delusions to his friend Wilbert Gray, whom he had

2002 WL 2003210

called immediately after the fire, to the doctors at the hospitals where he was treated after the fire, or to Garner in any of his statements. Rather, petitioner first claimed that he had hallucinations and delusions more than a year and a half after the fire, when he was preparing for trial. The court concluded that, "even without resort to the statements which he made subsequent to requesting counsel, the defendant failed to prove by a preponderance of the evidence that he lacked criminal responsibility for his acts by reason of mental disease or defect." *Id.* at 714, 638 N.Y.S.2d 963 (citations omitted).

 **3**  In letters dated March 12, 1996, and April 8, 1996, petitioner applied for leave to appeal to the New York State Court of Appeals, arguing that harmless error analysis should not be applied when evidence is erroneously admitted at a bench trial and the trial court relies on that evidence in its written verdict. On May 13, 1996, Judge Richard D. Simons denied petitioner's application for leave to appeal. *See People v. Harvey,* 88 N.Y.2d 879, 645 N.Y.S.2d 454, 668 N.E.2d 425 (1996). Petitioner sought a writ of certiorari from the United States Supreme Court. On March 17, 1997, the Supreme Court denied the petition. *See Harvey v. New York,* 520 U.S. 1121, 117 S.Ct. 1257, 137 L.Ed.2d 337 (1997).

In October of 1997, petitioner filed a motion for a writ of error *coram nobis* in the Appellate Division, claiming that he had received ineffective assistance of appellate counsel [2] because there were a number of issues that appellate counsel had failed to address on petitioner's direct appeal. First, petitioner claimed that counsel should have raised a federal constitutional claim with respect to petitioner's written confession, and the failure to do so resulted in (a) the Appellate Division's determination that any error was harmless; (b) the New York Court of Appeals' decision to deny leave to appeal; and (c) the United States Supreme Court's decision to deny certiorari. Second, petitioner alleged that appellate counsel erred in not challenging the admission of uncharged crimes evidence at trial without the benefit of a hearing under *People v. Ventimiglia,* 52 N.Y.2d 350, 438 N.Y.S.2d 261, 420 N.E.2d 59 (1981). Third, he claimed that appellate counsel unreasonably failed to challenge the admissibility of opinion testimony of the People's expert psychiatric witness, Dr. Lawrence Siegel. Fourth, petitioner argued that appellate counsel should have challenged the admission of Dr. Siegel's testimony on hearsay grounds.

In a decision and order dated February 2, 1998, the Appellate Division denied petitioner's application for *coram nobis* relief. *See People v. Harvey,* 247 A.D.2d 407 (2d Dept.1998). Citing *Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983), the court held that petitioner had failed to establish that he was denied the effective assistance of appellate counsel.

Next, petitioner filed a motion to vacate his judgment of conviction pursuant to N.Y. CPL § 440.10, dated March 17, 1998, in which he claimed that he received ineffective assistance of counsel at trial. [3]  In support of his claim, petitioner argued that trial counsel did not (a) request a *Ventimiglia* hearing with respect to evidence of certain uncharged crimes or bad acts (specifically, that petitioner had broken his wife's jaw and had threatened to burn down the house) introduced on the People's direct case; (b) object to Dr. Siegel's rebuttal testimony that petitioner gave unreliable and inconsistent accounts of the events surrounding the fire; (c) object to Dr. Siegel's reliance on hearsay in forming his expert opinions; and (d) present a claim to the trial court that petitioner's confession was inadmissible because it had been obtained after petitioner invoked his right to counsel.

 **4**  In a memorandum decision dated May 28, 1998, Justice Demakos denied the motion. The court found that petitioner's claims were procedurally barred from review as a result of petitioner's failure to raise them on direct appeal, and that they were without merit. Petitioner sought leave to appeal to the Appellate Division, which was denied on September 9, 1998.

C. *The Instant Petition*

In the instant petition, Harvey raises the following four claims: (a) that his conviction was obtained by the use of his involuntary confession; (b) that the use of those statements cannot be deemed harmless error in a bench trial in which the trial judge's written decision identified these statements as the best evidence for the verdict; (c) that he was denied the effective assistance of appellate counsel; and (d) that he was denied the effective assistance of trial counsel.

*DISCUSSION*

A. *The Standard of Review*

When a habeas court is considering a claim that was decided on the merits in a state court proceeding, it may grant relief only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). [4] The two clauses of this provision have independent meaning. *Williams,* 529 U.S. at 404–05. Under the first clause, a state court decision will be considered "contrary to" federal law if it either "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Id.* at 405–06.

Under the second clause, a habeas petitioner may win relief if the state court decision "identifies the correct governing legal rule ... but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407. The habeas court's determination that the state court wrongly decided the case is a necessary, but not a sufficient, condition to relief under this provision. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411; *see also id.* at 412 (explaining that "an *unreasonable* application of federal law is different from an *incorrect* or *erroneous* application of federal law"); *id.* at 409 (holding that the standard is one of "objective[ ]" reasonableness). Interpreting *Williams,* the Second Circuit has added that although "[s]ome increment of incorrectness beyond error is required ... the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (citing *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000) (internal quotation marks omitted.). This standard of review applies whenever the state court has adjudicated the federal claim on the merits, regardless of whether it has alluded to federal law in its decision. *See Sellan v. Kuhlman,* 261 F.3d 303 (2d Cir.2001).

B. *Petitioner's Confession*

**5** Petitioner argues (1) that the admission of his written statement at trial violated his Fifth and Fourteenth Amendment right not to be convicted based on a coerced confession, and (2) that the trial court's error was not a harmless one. I will address each in turn.

1. *The Exhaustion Requirement*

Petitioner's federal constitutional claim—that the admission of his statement violated his right against self-incrimination—is procedurally barred because it has not been exhausted in state court. Before a federal court can grant a petition for a writ of habeas corpus, the petitioner must exhaust all available state judicial remedies. *See* 28 U.S.C. § 2254(b)(1); *see also Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) ("This Court has long held that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims.") (citing *Ex parte Royall,* 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886)). In order to exhaust state remedies, a petitioner must fairly present his federal constitutional claims to the highest state court. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). This exhaustion requirement ensures, as matter of comity, that state courts have an opportunity to correct any violations of the federal constitutional rights of prisoners within their jurisdiction before the claims are reviewed by federal courts. *See id.* at 844; *Duncan v. Henry,* 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Daye v. Attorney General,* 696 F.2d 186, 191 (2d Cir.1982) (en banc). [5]

To exhaust federal constitutional claims, a prisoner must fairly present to the state court the same federal constitutional claims, legally and factually, as he raises in his petition to the federal court. *See O'Sullivan,* 526 U.S. at 845–47; *Daye,* 696 F.2d at 191. Even if a petitioner raises precisely the same legal claim in state and federal proceedings, reliance in the two proceedings

upon different factual grounds that "fundamentally alter the legal claim already considered by the state courts" will foreclose a conclusion that the claim is exhausted. *Vasquez v. Hillery,* 474 U.S. 254, 260, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986).

The exhaustion doctrine "requires only that a petitioner present his claim once on direct or collateral review." *Sanford v. Senkowski,* 791 F.Supp. 66, 69 (E.D.N.Y.1992); *See also Fielding v. LeFevre,* 548 F.2d 1102, 1106 (2d Cir.1977). Therefore, even if a claim is not raised at trial or on direct appeal, a claim pursued throughout a full round of state post-conviction proceedings is exhausted. *See* 2 J. Liebman & R. Hertz, *Federal Habeas Corpus Practice and Procedure* § 23.3b, at 671 (1994) (citing *Castille v. Peoples,* 489 U.S. 346, 350–51, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989)).

Here, neither petitioner's Appellate Division brief nor his application for leave to appeal to the New York Court of Appeals raised his claim of a coerced confession. In both courts, petitioner alleged only that the admission of his statements violated the state law. Similarly, in his *coram nobis* petition and his § 440 motion, petitioner failed to raise this federal constitutional claim. Indeed, in his *coram nobis* petition, he argued that appellate counsel was ineffective for failing to raise the claim on direct appeal, essentially conceding that the claim was unexhausted at that time. Likewise, in his § 440 motion, petitioner contended that trial counsel was ineffective for failing to preserve the claim at the suppression hearing. Under the standard set forth in *Dave,* petitioner did not present his Fifth Amendment claim to the state courts, and therefore he has failed to exhaust his claims.

**\*6** There are currently no means by which petitioner can present this unexhausted claim to the state's highest court because (1) "sufficient facts appear on the record of the proceedings underlying the judgment" to have permitted petitioner to raise these claims on direct appeal, N.Y. CPL § 440.10(2)(c); and (2) petitioner has "already made the one request for leave to appeal to which he is entitled." *Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991) (citing N.Y. Court Rules § 500.10(a)). Since the New York courts would find these unexhausted claims procedurally barred from review, they are deemed exhausted here. *See id.* (citing *Harris v. Reed,* 489 U.S. 255, 263 n. 9, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ("[A] federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state would hold the claim procedurally barred.")).

Under these circumstances, a federal court may review the procedurally defaulted claims on their merits only if the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that the court's refusal to consider the claims would result in a miscarriage of justice. *See Coleman,* 501 U.S. at 750: *Reyes v. Keane,* 118 F.3d 136, 139 (2d Cir.1997). The petitioner can prove "cause" by demonstrating that "some objective factors external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986); *see also Coleman,* 501 U.S. at 752–53. A showing that "the factual or legal basis for a claim was not reasonably available to counsel," for example, or that "some interference by state officials made compliance impracticable," may demonstrate cause. *Bossett v. Walker,* 41 F.3d 825, 829 (2d Cir.1994) (citing *Murray,* 477 U.S. at 488), *cert. denied,* 514 U.S.1954 (1995). To meet the prejudice requirement, the petitioner "must show 'not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." ' *Murray,* 477 U.S. at 494 (alteration in original) (quoting *United States v. Frady,* 456 U.S. 152, 166, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)).

Petitioner has not alleged the existence of factors that constitute cause. Moreover, the reason this coerced confession claim was never raised in state court is obvious from the petitioner's own statements. He never asserted facts that could amount to coercion. As he put it in his letter to counsel dated April 12, 1995 (attached as Exhibit A to the 63–page memorandum submitted in support of the petition),

> My statement to police should have been suppressed at the Huntley hearing because I requested an attorney—thus invoking my Right to Counsel—before the statement was made. While I was locked in the cell—handcuffed and barefoot on the cold floor—the police were typing up their reports formally charging me with Murder 2 et al. They were engaged in a conversation on these charges, which they wanted me to hear. It was these conversations which led me to believe that they were not going to "scrupulously honor" my request for an attorney. After 20 minutes of hearing this conversation—and seeing that no attempt was being made to contact an attorney for me—I called out and said, "I'll tell you what you want to hear". I was suffering from Major Depression at the time; and since the police did not scrupulously honor my request for an attorney—my statement was

Harvey v. Portuondo, Not Reported in F.Supp.2d (2002)
Case 9:21-cv-00174-AMN-ML    Document 47    Filed 01/23/24    Page 44 of 194
2002 WL 2003210

neither voluntary nor spontaneous, and therefore should have been suppressed (See: People v. Cunningham, 49 N.Y.2d 203, 424 N.Y.S.2d 421, 400 N.E.2d 360; People v. Grant, 45 N.Y.2d 366, 408 N.Y.S.2d 429, 380 N.E.2d 257; People v. Ringer, 1988, 140 A.D.2d 642, 528 N.Y.S.2d 674).

**\*7**  Because I was in the least (sic) suffering from "extreme emotional disturbance" at the time of making the inculpatory statement, I am not sure how much of the statement is truth and how much of it is assumption, conjecture and indoctrination based on the conversations of the police which I had overhead. Still to this day, I am not 100% sure if my accounts of what happened are what really happened if they are the accounts of other people's assumptions and interpretations which have related to me and I accepted this as truth and related them as such.

As pointed out by appellate counsel's letter to petitioner dated July 2, 1996, which is attached as Exhibit B to the same memorandum, no federal claim was made because the facts would not support one. The mere fact that petitioner had not seen a lawyer for 20 minutes after invoking his *Miranda* rights does not mean that he was coerced when he "called out and said, 'I'll tell you what you want to hear.' ' Rather than pursue a baseless federal claim of a coerced confession, appellate counsel pursued the New York State right to counsel claim. This was astute advocacy, as the Appellate Division found that claim to have merit, although it further found the error to be harmless.

Not only was there no cause for the default, there was no prejudice either. The federal claim had no merit; there was not even a hint of coercion in the procurement of the written confession. Even if there were, the state court's finding that the use of the confession was harmless beyond a reasonable doubt was clearly correct. Petitioner confessed to Garner even before he exercised his *Miranda* rights. Moreover, as the Appellate Division noted, other evidence contributed to the court's finding of petitioner's guilt and absence of insanity. *See Harvey,* 224 A.D.2d at 714, 638 N.Y.S.2d 963.

### B. *The "Harmless Error" Claim*

Petitioner claims in Point II of his memorandum that the improper use of involuntary statements can never be harmless error in a bench trial where the fact-finding judge explicitly relies on the challenged statements. This claim has no merit.

 First, as discussed above, this case does not involve "involuntary" statements. The only right of which petitioner was deprived was the New York State "indelible" right to counsel. A claim asserting a violation of state law is not cognizable in a petition seeking federal habeas relief.

 Second, even if the use of the written confession violated federal law, the state court found that the use of that evidence (which, it found, violated *state* law) was harmless beyond a reasonable doubt. I agree with that conclusion. At the very least, it cannot reasonably be characterized as an unreasonable application of that standard.

### C. *Ineffective Assistance of Appellate Counsel*

Petitioner claims that his appellate counsel was ineffective because he failed (1) to challenge the admission of petitioner's confession on Fifth Amendment grounds; (2) to argue that uncharged crimes evidence was improperly admitted in the absence of a *Ventimiglia* hearing; (3) to argue that the People's psychiatric expert gave improper opinion testimony; and (4) to challenge the admission of the psychiatric expert's testimony, which was based in part on hearsay.

 **\*8**  Petitioner's claim fails because the state appellate court determined that petitioner's counsel was effective, and that determination was neither contrary to nor an unreasonable application of federal law. Indeed, I agree with it entirely. *See Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). To the extent the claim is based on counsel's failure to raise the Fifth Amendment claim, it fails because, as set forth above, there was no Fifth Amendment violation. Appellate counsel's failure to seek reversal on the ground that a *Ventimiglia* hearing should have been held is simply absurd. Petitioner was charged with murdering his wife by burning down the house. The evidence at issue was that he had previously (1) broken his wife's

jaw during an argument; and (2) threatened to burn down the house. A motion to preclude such evidence, which plainly was admissible to prove petitioner's motive and intention to commit the crime, would have been frivolous.

Finally, appellate counsel's decision not to press unfounded challenges to unobjectionable expert testimony did not deprive petitioner of his right to effective counsel.

D. *Ineffective Assistance of Trial Counsel Claim*
Following the Appellate Division's denial of petitioner's writ of error *coram nobis,* petitioner filed a motion to vacate his judgment of conviction pursuant to N.Y. CPL § 440.10, asking that his judgment be set aside on account of his having been denied the effective assistance of trial counsel. Petitioner claimed that his counsel (1) had not requested a *Ventimiglia* hearing or objected to the admission of uncharged crimes evidence; (2) had not objected to Dr. Siegel's rebuttal testimony; and (3) had failed to raise a claim during trial that petitioner's confession was taken in violation of his right to counsel and was therefore, inadmissible. That motion was denied on May 28, 1998. Petitioner now raises the same ineffective assistance of trial counsel claim in this habeas petition.

 Petitioner is procedurally barred from raising a claim of ineffective assistance of trial counsel because he failed to pursue that claim on direct appeal. *See supra* (discussing petitioner's Fifth Amendment claim). As noted by the Appellate Division in its decision, petitioner's claim is based in facts that were part of the trial record, and available to him at the time of his direct appeal. *See* May 28, 1998, Appellate Division Decision; *see generally Daye,* 696 F.2d at 190 n. 3 (stating that an applicant "shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section [2254(b) and (c) ], if he has the right under the law of the State to raise, by any available procedure, the question presented"). Petitioner has not shown cause for his procedural default or that prejudice or a fundamental miscarriage of justice would result, and he is therefore unable overcome the procedural bar. *See Murray,* 477 U.S. at 492. Nor can petitioner succeed on the merits of his claim, as he has not shown that the trial counsel's conduct was ineffective. The decision not to seek a *Ventimiglia* hearing was sound, as stated above. The decision not to assert that the written confession was involuntary was compelled by petitioner's own version of the facts. The failure to make evidentiary challenges to the psychiatric testimony no doubt reflects trial counsel's correct judgment that those challenges would have had no merit.

CONCLUSION

 **\*9**  For the foregoing reasons, the petition is denied. Because the petitioner fails to make a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue.

**All Citations**

Not Reported in F.Supp.2d, 2002 WL 2003210

**Footnotes**

1     A full discussion of the trial evidence is included in the People's Appellate Division brief and in the People's brief in opposition to the petition for a writ certiorari, and is not repeated here.

2     Petitioner was represented on appeal by Frank J. Loss of the Legal Aid Society.

2002 WL 2003210

3   Petitioner was represented at trial by Michael W. Warren.

4   This provision, added to the habeas statute by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (1996), governs review of this petition, since it was filed after AEDPA's enactment. *See Williams v. Taylor,* 529 U.S. 362, 402–03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

5   Although a petition containing an unexhausted claim may not be granted, it may be denied on the merits notwithstanding the failure to exhaust. *See* 28 U.S.C. § 2254(b)(2). Unexhausted claims that are not denied on the merits require either the dismissal of the petition without prejudice (to renewal after the claim has been exhausted or dropped) or a stay of further proceedings pending exhaustion of state remedies. *See Zarvela v. Artuz,* 254 F.3d 374 (2d Cir.2001).

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Romero v. Miller, Not Reported in Fed. Supp. (2019)

2019 WL 5743500

2019 WL 5743500
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Pedro ROMERO, Petitioner,

v.

Christopher MILLER, Superintendent, Respondent.

9:18-CV-381 (GLS/ATB)
|
Signed 04/18/2019

**Attorneys and Law Firms**

PEDRO ROMERO, Petitioner, pro se.

MARGARET A. CIEPRISZ, AAG for Respondent.

DENNIS A. RAMBAUD, AAG, for the Respondent.

**REPORT-RECOMMENDATION**

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

**\*1** This matter has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c), by the Honorable Gary L. Sharpe, Senior United States District Judge.

Presently before this court is a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254. (Petition ("Pet.")) (Dkt. No. 1). Petitioner challenges a judgment of conviction, dated June 27, 2014, rendered after a jury found him guilty of Second Degree Murder; Attempted Second Degree Murder; First Degree Assault; and two counts of Second Degree Criminal Possession of a Weapon. (Pet. at ¶ 5). Petitioner was sentenced to an indeterminate term of 25 years to life incarceration, consecutive determinate terms of 25 years for the attempted murder and first degree assault convictions which were to be served concurrent to each other. Petitioner was sentenced to a determinate term of 15 years for each of the weapons counts which were to be served concurrent to all the other counts. The judge also imposed a five year period of post-release supervision to follow each of the determinate prison terms. (Sentencing Transcript ("ST") at 9-10).[1] On February 10, 2017, the Appellate Division, Fourth Department reduced the first degree assault conviction to second degree assault, and remanded for resentencing on that count, but affirmed petitioner's conviction in all other respects.[2] *People v. Romero*, 147 A.D.3d 1490, 1491-92 (4th Dep't 2017), *amended on reargument*, 148 A.D.3d 1726 (4th Dep't 2017). The New York Court of Appeals denied leave to appeal on May 31, 2017. *People v. Romero*, 29 N.Y.3d 1036 (2017) (SR at 668).

Petitioner raises the following claims for this court's review:

    1. The evidence was insufficient to establish petitioner's guilt beyond a reasonable doubt. (Pet. Grd. 1).

Respondent argues for denial of the petition, claiming that petitioner has failed to exhaust his state court remedies, and the claim is thus barred by procedural default. In the alternative, respondent argues that petitioner's claim is without merit. (Dkt. No. 7). Petitioner has filed a Supplemental Memorandum and a Traverse in support of his arguments. (Dkt. Nos. 1-1, 13). For the following reasons, this court agrees with the respondent and finds that the petition may be denied and dismissed.

## DISCUSSION

### I. FACTS

As stated by the Appellate Division in its 2017 decision, this case arose from an incident in which "three men ambushed two victims on a residential street in the City of Syracuse." *People v. Romero*, 147 A.D.3d at 1491. The victims were two brothers: Andre Rosario-Claudio ("Andre") and Edgardo Torres-Claudio ("Edgardo"). Earlier that day, Andre was involved in an altercation with petitioner's co-defendant, Efrain Santos. The chain of events began when another young man, Gilberto Rodriguez ("Rodriguez"), got into an argument with Santos, who was also known as "Papito," at the front entrance of the two-family home in which they both lived. (Rodriguez: (T2) at 169-70) (Dkt. No. 9-3 at 377-78).[3] Rodriguez was friends with Andre and his brother Edgardo. (*Id.* at 171-72) (Dkt. No. 9-3 at 379-80). Andre came over from across the street and asked why Rodriguez and Santos were arguing. Apparently, due to a miscommunication between Andre and Santos, based on a language barrier, they started a fist fight. (*Id.* at 172) (Dkt. No. 9-3 at 380).

**\*2** Andre's brother Edgardo testified that he had been sitting on the front porch of his grandmother's house, when he saw the argument between Andre and Santos which was taking place in Pepito's hallway. (Edgardo: (T) at 454-57) (Dkt. No. 9-2 at 457). Edgardo testified that by the time that he went across the street, he saw Santos come out of the house with his "eye ... all messed up." (*Id.* at 457) (Dkt. No. 9-2 at 460). By the time Edgardo reached Andre, Rodriguez had already broken up the fight. (Rodriguez (T2) at 173) (Dkt. No. 9-3 at 381). Andre sustained only a few minor cuts, but Santos's face was swollen, and he was bruised and bleeding. Andre left after the fight and went to a store nearby. (*Id.*) Santos telephoned his friend, Maximino Alvarez, told him about the fight, and told Alvarez that both Andre and Edgardo were involved. (Alvarez: T. at 656-58) (Dkt. No. 9-3 at 123-25). Alvarez decided to go to Santos's house and find out what was going on. (*Id.* at 659) (Dkt. No. 9-3 at 126). He asked his sister, Leslie Vasquez, to give him a ride in her van. (*Id.*) Their nephew, Francisco Rodriguez, was with them in the van. (*Id.* at 659-60) (Dkt. No. 9-3 at 126-27).

On the way, Alvarez decided to stop and borrow a weapon "for [his] own protection" because he knew that Andre and Edgardo sometimes carried weapons. (*Id.* at 661) (Dkt. No. 9-3 at 128). They stopped at the corner of Elliot and Geddes Streets, where Alvarez asked petitioner if he could borrow a weapon. (*Id.*) Alvarez testified that he knew petitioner, but did not spend time with him. Alvarez asked petitioner to borrow a gun. (*Id.* at 662) (Dkt. No. 9-3 at 129). Petitioner handed Alvarez a dark colored gray pistol. (*Id.* at 662-63) (Dkt. No. 9-3 at 129-30). After petitioner gave Alvarez the gun, he "just decided to jump in the van also." (*Id.* at 663) (Dkt. No. 9-3 at 130). Alvarez testified that at that time, he did not know whether petitioner also had a gun. (*Id.* at 664) (Dkt. No. 9-3 at 131).

Edgardo testified that, while Andre was still at the store, Edgardo saw the van pull up, and Edgardo saw petitioner and Alvarez get out of the van and go into Santos's backyard. (Edgardo: T. 461-62) (Dkt. No. 9-2 at 464-65). Edgardo testified that he knew Alvarez from the neighborhood, but only recognized petitioner because he had seen him a couple of times before. (*Id.* at 460-61) (Dkt. No. 9-2 at 463-64). Edgardo did not know petitioner's name at the time. (*Id.* at 462) (Dkt. No. 9-2 at 465). Alvarez and petitioner met Santos in his backyard, where Alvarez noticed that petitioner also had a gun. Alvarez testified that he began having second thoughts about the situation, so he asked Santos to call Alvarez's sister to come and pick him up. Santos made the call, as he was walking toward his front yard.

Andre returned from the store and stopped by Rodriguez's house to look for a ring that he believed to have lost during the fight. As he and Rodriguez were looking for the ring, Santos brushed by Andre and stated: "If you want some more, come in the back." (Rodriguez: (T2) at 173-74) (Dkt. No. 9-3 at 381-82). Santos walked into the backyard, followed by Andre. Edgardo

2019 WL 5743500

testified that he was on his front porch when he saw Andre follow Santos into Santos's backyard. Edgardo got up and ran across the street, yelling at Andre that this was "a setup." (Edgardo: T. at 466, 494-95) (Dkt. No. 9-2 at 466, 497-98). Edgardo encountered Alvarez while running toward the backyard on the left side of the house. (*Id.* at 466) (Dkt. No. 9-2 at 469). Edgardo testified that Alvarez was holding a gun to his back. (*Id.* at 466) (Dkt. No. 9-2 at 469). Alvarez told Andre and Edgardo to "just leave the situation alone." (Alvarez: T. 674) (Dkt. No. 9-3 at 141). Andre and Edgardo then turned back and headed to the front yard. (*Id.*) Andre was running, but Edgardo walked slowly because he was worried that Alvarez had the gun pointed at his back. (Edgardo: T. at 466) (Dkt. No. 9-2 at 469). As he stood at the front of the house, Rodriguez saw Andre returning from the backyard. (Rodriguez: (T2) at 175) (Dkt. No. 9-3 at 383). Andre had nearly reached the street when petitioner appeared from the opposite side of the house and began shooting at Andre. (*Id.*) Rodriguez identified petitioner as the individual who was shooting at Andre. (*Id.* at 176-77) (Dkt. No. 9-3 at 384-85). Rodriguez ran away when the shooting started. (*Id.* at 178) (Dkt. No. 9-3 at 386).

 **\*3** Edgardo was still on the left side of the house when he heard the first gunshots. (Edgardo: T. 466) (Dkt. No. 9-2 at 469). Edgardo testified that when he reached the front of the house, he saw petitioner shooting at Andre as he lay on the ground. Edgardo approached Andre to help him. (*Id.*) Alvarez heard the shots and thought that Edgardo and Andre were shooting at him, so he headed toward the front of the house and began firing his gun. (Alvarez: T. at 676) (Dkt. No. 9-3 at 143). Alavarez shot and wounded Edgardo, who fell on the ground next to Andre.[4] (*Id.* at 677-78; Edgardo: T. at 467) (Dkt. No. 9-3 at 144; Dkt. No. 9-2 at 470-71). Edgardo identified Alvarez as the individual who shot him. (Edgardo: T. 471) (Dkt. No. 9-2 at 474). Alvarez did not actually see petitioner shoot Andre. (Alvarez: T. at 675) (Dkt. No. 9-3 at 142). The defendants fled the scene in a van, driven by Alvarez's sister. (*Id.* at 681) (Dkt. No. 9-3 at 148). Edgardo suffered two gunshot wounds to his leg and was hospitalized. (Edgardo: T. at 476) (Dkt. No. 9-2 at 479). Andre suffered four gunshot wounds and died from his injuries. (Dr. Deborah Johnson: T. 620-23, 640) (Dkt. No. 9-3 at 87-90).

Rodriguez admitted at trial giving conflicting accounts of the shooting. When he first spoke to the police, he gave a detailed statement which turned out to be false, and he acknowledged this fact to the jury. (Rodriguez: T. at 204-207, 209-12) (Dkt. No. 9-3 at 412-15, 417-20). However, he testified that when he spoke to the police on June 8, 2013, he told them the correct facts to which he testified in court. (*Id.* at 212) (Dkt. No. 9-3 at 420). In fact, Rodriguez appeared in court with his own attorney, who was representing him on an unrelated criminal case in which he stabbed another individual. (T. 189-199) (Dkt. No. 9-3 at 397-407).

The court also notes that Alvarez pled guilty, pursuant to a cooperation agreement to first-degree assault in connection with the instant crime in return for a negotiated sentence of 15 to 20 years incarceration, followed by 5 years of post-release supervision. (Alvarez: (T. 687-89) (Dkt. No. 9-3 at 154-56). This fact was also considered by the jury. (*Id.*) Petitioner's defense counsel cross-examined most of the prosecution's witnesses regarding inconsistencies in their identification of petitioner and in their description of the shooting.[5] All of the information was before the jurors for their consideration. Three of Andre and Edgardo's relatives testified at trial. Respondent's brief outlines their testimony, including the inconsistencies that were brought out on both direct and cross examination. (Resp.'s Br. at 8-10). After hearing all the evidence, the jury convicted both petitioner and Santos on all counts.


## II. EXHAUSTION/PROCEDURAL DEFAULT

### A. Legal Standards

#### 1. Exhaustion

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, ... thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotation and other citations omitted)); 28 U.S.C. § 2254(b)(1). The prisoner must "fairly present" his claim in each appropriate state court, including the highest court with powers

2019 WL 5743500

of discretionary review, thereby alerting that court to the federal nature of the claim. *Id.*; *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994).

**\*4**  "A habeas petitioner has a number of ways to fairly present a claim in state court without citing 'chapter and verse' of the Constitution, including '(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.' " *Hernandez v. Conway*, 485 F. Supp. 2d 266, 273 (W.D.N.Y. 2007) (quoting *Daye v. Attorney General*, 696 F.2d 186, 194 (2d Cir. 1982)).

### 2. Procedural Default

A federal judge may not issue a writ of habeas corpus if an adequate and independent state-law ground justifies the prisoner's detention, regardless of the federal claim. *See Wainwright v. Sykes*, 433 U.S. 72, 81-85 (1977). A federal habeas court generally will not consider a federal issue if the last state court decision to address the issue " 'rests on a state law ground that is independent of the federal question and adequate to support the judgment.' " *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007) (quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)) (emphasis added). This rule applies whether the independent state law ground is substantive or procedural. *Id.*

There are certain situations in which the state law basis for decision will not be considered "adequate": (1) where failure to consider a prisoner's claims will result in a "fundamental miscarriage of justice," *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); (2) where the state procedural rule was not " 'firmly established and regularly followed,' " *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991); *James v. Kentucky*, 466 U.S. 341, 348-349 (1984); and (3) where the prisoner had "cause" for not following the state procedural rule and was "prejudice[d]" by not having done so, *Wainwright v. Sykes*, 433 U.S. at 87. In certain limited circumstances, even firmly established and regularly followed rules will not prevent federal habeas review if the application of that rule in a particular case would be considered "exorbitant." *Garvey v. Duncan*, 485 F.3d at 713-14 (quoting *Lee v. Kemna*, 534 U.S. at 376).

In order to find that the application of a generally sound rule is exorbitant, the court considers (1) whether the alleged procedural violation was actually relied upon by the state court and whether perfect compliance with the state rule would have changed the court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner "substantially complied" with the rule given the realities of trial and whether demanding perfect compliance with the rule would serve a legitimate governmental interest. *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003).

In addition, if the court finds that petitioner has failed to exhaust his claims, but he cannot return to state court, petitioner's claims would then be "deemed" exhausted, but would be barred by procedural default. *Bossett v. Walker*, 41 F.3d 825, 828-29 (2d Cir. 1994). As stated above, a state prisoner who has procedurally defaulted on a federal claim in state court may only obtain federal habeas review of that claim if he can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, or if he can show that the constitutional violation has resulted in the conviction of one who is "actually innocent." *Rivas v. Fischer*, 687 F.3d 514, 540 (2d Cir. 2012); *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (internal quotation and citations omitted). The actual innocence prong is referred to as the fundamental miscarriage of justice exception. *Rivas, supra*. "Cause" exists if "the prisoner can show that some objective factor external to the defense impeded counsel's effort to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice exists if there is a "reasonable probability" that the result of the proceeding would have been different absent the alleged constitutional violation. *Stickler v. Greene*, 527 U.S. 263, 289 (1999).

2019 WL 5743500

**B. Application**

**\*5**  In this application, petitioner argues that "The evidence did not establish Petitioner's guilt beyond a reasonable doubt as constitutionally required." (Pet. Ground One). His petition raises a federal constitutional argument. Respondent argues that petitioner has failed to exhaust his state court remedies with respect to his only ground for relief. On direct appeal, petitioner raised only a claim that his conviction was "against the weight of the evidence."

Under New York State law, a "weight-of-the-evidence" claim and a constitutional "legal sufficiency" claim are related, but have distinctly different standards. *See People v. Bleakley*, 69 N.Y.2d 490 (1987). A claim that the verdict is against the "weight-of-the-evidence" is a purely state law claim, based upon N.Y. Crim. Proc. Law § 470.15, whereas a legal sufficiency claim is based upon federal constitutional principles. *See Garbez v. Greiner*, No. 01 Civ. 9865, 2002 WL 1760960, at \*8 (S.D.N.Y. July 30, 2002) (citing *People v. Bleakley*, 69 N.Y.2d 490 (1987)).

The Appellate Division cited *Bleakley*, 69 N.Y.2d at 495, and concluded that "viewing the evidence in light of the elements of the remaining crimes as charged to the jury ... the verdict is not against the weight of the evidence.... 'The jury's resolution of credibility and identification issues is entitled to great weight,' ... and we decline to disturb the jury's determination of those issues. 147 A.D.3d at 1492 (citations omitted). The court did consider a "legal sufficiency" argument on petitioner's separate claim, which challenged his conviction for first degree assault. The Appellate Division reversed the conviction for first degree assault because there was "insufficient evidence that the surviving victim suffered serious physical injury," an element of first degree assault. *Id.* at 1491. However, the Appellate Division also concluded that the evidence was legally sufficient to convict petitioner of *second degree* assault and sent the case back for resentencing on that particular count. *Id.* at 1491-92.

As respondent notes, petitioner made different arguments based on legal sufficiency of his assault conviction than he made for his "weight" of the evidence argument, which addressed the remaining convictions. *Compare* SR 19-35 (weight-of-the-evidence argument focusing on credibility of witnesses) *with* 49-54 (specifically arguing legal sufficiency of first degree assault conviction). The People responded by addressing the weight-of-the-evidence in petitioner's first appellate argument as distinguished from the sufficiency of the evidence which was his fifth claim. (SR 72-78 (weight), 89-90 (legal sufficiency)). Thus, neither petitioner, nor the People alerted the state court to a federal constitutional claim, other than that which was addressed to the first degree assault conviction, a conviction which petitioner does not challenge in this court.

To the extent that petitioner now seeks to bring a legal sufficiency claim, with respect to his weight of the evidence argument, the claim is not exhausted. A "legally sufficient verdict can be against the weight of the evidence." *People v. Davidson*, 9 N.Y.3d 342, 349 (2007) (citing *People v. Cahill*, 2 N.Y.3d 14, 62 (2003)). Thus, bringing a "weight-of-the-evidence" claim in New York State Court does not necessarily raise the legal sufficiency claim, even though the weight of the evidence claim must be determined "in light of the elements of the crime as charged." *Id.* at 348-49. However, in a weight-of-the-evidence claim, the court sits "as the thirteenth juror and decides which facts were proven at trial." *Id.* (citing *Tibbs v. Florida*, 457 U.S. 31, 42 (1982)). Legal sufficiency does not test credibility of the witnesses at trial. *See Cavazos v. Smith*, 565 U.S. 1, 6-7 (2011) (trier of fact resolves conflicts in the evidence, and the court must defer to that resolution); *United States v. Elder*, No. 17-CR-4376796, at \*3 (W.D.N.Y. Sept. 14, 2018) (in reviewing the legal sufficiency of the evidence, the court gives deference to the jury's assessment of the witnesses' credibility and the jury's resolution of conflicting evidence) (citations omitted).

**\*6**  The court notes that in *Tibbs*, the Supreme Court held that a reversal based on the "weight" of the evidence does not preclude a retrial, unlike a reversal based on insufficient evidence, highlighting the difference between the two analyses. 457 U.S. at 42. It has subsequently been held in the exhaustion context, that a "weight-of-the-evidence" claim may not "stand in" for a legal sufficiency claim. *Hughes v. Sheahan*, 312 F. Supp. 3d 306, 343 (N.Y.N.D. 2018) (citing *Pham v. Kirkpatrick*, 209 F. Supp. 3d 497, 512 (N.D.N.Y. 2016)), *aff'd* 711 F. App'x 67 (2d Cir. 2018); *Shuler v. Artus*, No. 9:15-CV-399, 2016 WL 698106, at \*4 (N.D.N.Y. Feb. 19, 2016) (collecting cases).

In *Parker v. Ercole*, 666 F.3d 830, 833 (2d Cir. 2012), the Second Circuit outlined the differences between weight-of-the-evidence claims and legal sufficiency claims, stating that the New York standard "requires more exacting review than an

2019 WL 5743500

insufficiency claim, because it entails a weighing of the evidence and an assessment of the credibility of the state's witnesses." [6] The court in *Schuler* further stated that "[i]n fact, '[t]he difference in standards is more than semantic; it can be outcome-dispositive.' " *Shuler*, 2016 WL 698106 at *4 (quoting *Lopez v. Sup't Five Points Corr. Fac.*, No. 1:14-CV-4615, 2015 WL 1300030 at *12 (S.D.N.Y. Mar. 23, 2015)).

Thus, petitioner's only ground for relief is unexhausted. To the extent that the sufficiency claim is "unexhausted," the petitioner would have no avenue in state court to exhaust the claim. Petitioner raised the weight-of-the-evidence claim on appeal, and if he attempts to bring a motion to vacate his conviction in the trial court, the court would either deny the claim because the Appellate Division has already decided the issue or, more likely, to the extent that he brings a legal sufficiency claim that is different than the weight of the evidence claim, would deny the federal constitutional claim because petitioner unjustifiably failed to raise the issue on appeal – a procedural default under New York Law. See N.Y. Crim. Proc. Law § 440.10 (2)(c).

In his reply, petitioner now argues that if the court should find that he procedurally defaulted on his habeas claim, a failure to review the merits of his claim would result in a "fundamental miscarriage of justice." (Dkt. No. 13 at 5). However, petitioner then appears to argue that his appellate attorney was "difficult to work with" and that he made it clear to her that he was "100% innocent [and] that the witnesses ... falsified their eyewitness accounts [and] that 'the evidence should be considered legally insufficient.' " (*Id.*) Petitioner emphasizes that he spoke little English and had "no grasp of New York criminal law and procedure," and as a result had to rely on counsel. At the same time, petitioner argues that *he* "emphatically and persistently - requested she raise a legal sufficiency claim on his direct appeal," but that counsel "inexplicably raised a mixed claim of weight of the evidence [and] sufficiency of the evidence claim." (*Id.*)

 **\*7** Petitioner then states that the Appellate Division "did not even address the claim," and that "there is no record that the Appellate Court even considered the elements of the crime beyond a reasonable doubt, whether the prosecution witnesses were credible, and if the state proved its case beyond a reasonable doubt." [7] (*Id.* at 5-6). Finally petitioner argues that "whether it is a weight of the evidence review or a legal sufficiency review, the witnesses were not credible and did not provide sufficient evidence to support the jury verdict." (*Id.* at 6). Petitioner is incorrect on most of his arguments.

First, to the extent that he is attempting to assert ineffective assistance of counsel on appeal as "cause" for his procedural default, he cannot succeed. Ineffective assistance of counsel may suffice to show cause to excuse a procedural default. *Hawkins v. Graham*, No. 1:12-CV-643, 2014 WL 317842 at *6 (W.D.N.Y. Jan. 29, 2014) (citing *Edwards v. Carpenter*, 529 U.S. 446, 451-53 (2000); *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). However, petitioner would have to separately exhaust an ineffective assistance of counsel claim in state court in order to allege that his appellate attorney's failure to raise the issue on appeal was "cause" for his procedural default. *See id.* (a claim of ineffective assistance of counsel must generally be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default).

There is no question that petitioner has failed to bring a claim of ineffective assistance of appellate counsel in New York State court. Such a claim would have to be brought by way of an application for a writ of error coram nobis in the Appellate Division, and any denial of the application would have to be appealed to the New York Court of Appeals. *Rodriguez v. Uhler*, No. 15-CV-9297, 2017 WL 9807068, at *6 (S.D.N.Y. Oct. 23, 2017) (citing inter alia N.Y. Crim. Proc. Law §§ 450.90(1), 460.10(5)(a)). Thus, petitioner may not assert ineffective assistance of appellate counsel as "cause" for his procedural default. [8] If petitioner has not established "cause," then the court need not consider whether petitioner suffered actual prejudice because both elements must be established. *Murray v. Carrier*, 477 U.S. at 496.

Petitioner then argues that if the court declines to address the procedurally defaulted claim, there will be a fundamental miscarriage of justice. Essentially, petitioner makes the argument that the witnesses were "incredible," and therefore failing to consider the merits of his claim will result in a miscarriage of justice. He asserts that he speaks little English, and that he has always maintained his innocence of all the charges. (Dkt. No. 13 at 5).

**\*8**  The miscarriage of justice exception to consideration of a procedurally defaulted claim deals with "actual" as opposed to "legal" innocence. *Schuler v. Artus*, 2016 WL 698106 at \*6 (quoting *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)). A claim of "actual innocence," must be based on " 'new reliable evidence' not presented at trial, and demonstrate that in light of the new evidence, 'it is more likely than not that no reasonable juror would have found the petitioner guilty.' " *Whitfield v. Graham*, No. 10-CV-3038, 2016 WL 11270092, at \*3 (S.D.N.Y. Sept. 2, 2016), (*Rep't Rec.*), *adopted*, 2017 WL 4060571 (S.D.N.Y. Sept. 13, 2017) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)), *reconsideration denied*, 2018 WL 1662782 (S.D.N.Y. Feb. 7, 2018). [9]  The court then assesses " 'how reasonable jurors would react to the overall, newly supplemented record.' " [10] *Id.* (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)).

In this case, petitioner has not come forward with any new evidence that was not presented at trial. Although he claims that all six witnesses who identified him lied, he argues only that, based on the evidence presented at trial, they were inherently incredible. Petitioner states that the "lack of cross-corroboration" was not based on "minor contradictions" that were "immaterial," but was based on "implausible and even physically impossible accounts of material events." (Dkt. No. 13 at 6). Although the petitioner claims that the witnesses were lying, there is no new evidence that supports petitioner's allegations. The gateway actual innocence standard is not the same as the *Jackson v. Virginia* standard for insufficient evidence because the "actual innocence" standard requires evidence that was not before the jury. *House v. Bell*, 547 U.S. at 538; *Brewer v. Lee*, No. 16-CV-4051, 2019 WL 1384074, at \*3 (E.D.N.Y. Mar. 26, 2019) (citations omitted).

All the bases for rejecting the credibility of the witnesses' testimony were brought out on cross-examination. The jury was aware of all the alleged inconsistencies in the evidence and the testimony, in addition to the original failure of any of the witnesses to identify the petitioner. The jury was also made aware of the witnesses' interests in testifying and whether they had been given a "benefit" in exchange for their testimony. The jury was clearly aware of the relationship between several of the witnesses and the deceased. These facts all went to the weight that the jury was entitled to give the witnesses' testimony. It is not this court's province to retry the case or to redetermine the credibility of the witnesses or determine the weight that the jury should have given to the witnesses's statements based on the petitioner's claims. Because petitioner has failed to come forward with any "new" evidence that was not presented at trial, he cannot establish that the failure to address his claim will result in a fundamental miscarriage of justice, and his claim remains subject to dismissal for procedural default.

**\*9  WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**, and it is

**RECOMMENDED**, that a certificate of appealability be **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 5743500

**Footnotes**

2019 WL 5743500

1    The sentencing transcript appears at (Dkt. No. 9-4, CM/ECF pp.189-99). The judge imposed the sentence at pp.197-98.

2    On March 1, 2017, petitioner was resentenced to 7 years incarceration for the second degree assault conviction. (Pet. ¶ 2(b)).

3    The state court records have been electronically filed in four separate documents (Dkt. Nos. 9-1 - 9-4). Docket Number 9-1 contains the State Court Records, including the parties' briefs, the appellate decision, and various other documents. These records are Bates-stamped and will be cited ("SR"). The trial transcripts, including sentencing are filed in the last three CM/ECF documents. The first four volumes of the transcript are consecutively paginated. However, volumes five through nine restart the page numbering at 1 but are then consecutively paginated. (Dkt. Nos. 9-3 at 203 - 9-4 at 188). The sentencing transcript is also separately paginated and appears at (Dkt. No. 9-4 at 189-99). Respondent's counsel has differentiated between the two consecutively paginated transcripts, referring to Volumes 5-9 of the transcript as (T2). Although for ease of reference the court will follow respondent's counsel's citations, I will also note the CM/ECF docket number and page.

4    Alvarez testified that once he realized that he shot Edgardo, Alvarez did not wait to see him fall. He just "left." (Alvarez: (T. at 144) (Dkt. No. 9-3 at 677).

5    One such identification issue was based on the fact that within days of the shooting, Edgardo's girlfriend showed Edgardo photographs of an individual who she found on Santos's Facebook page and who Edgardo believed was the individual who shot Andre. (Edgardo: T. at 472-73) (Dkt. No. 9-2 at 475-76). However, it was later determined that the individual whose picture Edgardo identified was conclusively eliminated as a suspect based on a confirmed alibi. (Det. Walsh: T. at 363; Det. Jeffrey Okon (T2) at 249-50) (Dkt. No. 9-2 at 366; Dkt. No. 9-3 at 457-58). Edgardo's girlfriend also showed Edgardo a photo of petitioner, who Edgardo then recognized as Andre's shooter. (Edgardo: T. 473, 475-76; Det. Walsh: T. 365-66) (Dkt. No. 9-2 at 473-76; 368-69). Detective Walsh testified that by the time the police received petitioner's photograph from Edgardo's second identification, the petitioner was already a suspect. (Det. Walsh: T. 365-66) (Dkt. No. 9-2 at 368-69).

6    Although the court notes that in *Parker*, the court commented that "to the extent the Appellate Division decided that Parker's conviction was not against the weight-of-the-evidence, it necessarily decided that there was sufficient evidence to support the verdict. 666 F.3d at 833. However, the court also found that there was no question that Parker "failed to preserve" his insufficiency claim, even though he raised, and the state court decided the merits of, a weight-of-the-evidence claim. *Id.* at 834. Parker raised both his legal sufficiency and his weight-of-the-evidence claim in the Appellate Division, unlike the petitioner in this case, and the Appellate Division specifically found that petitioner's counsel had failed to preserve a sufficiency of the evidence claim, rendering it procedurally defaulted. *Id.*

     Although the Second Circuit ultimately considered the sufficiency of the evidence, it did so only in conjunction with the procedural default analysis because petitioner claimed that his failure to preserve was due to ineffective counsel. *Id.* Therefore, the Second Circuit was required to determine whether ineffective assistance of counsel was the "cause" for petitioner's procedural default, a question which the Second Circuit decided in the negative. *Id.* at 834-35.

7    To the extent that petitioner claims that the Appellate Division "did not even address the claim, he is correct that the Appellate Division did not address the "legal sufficiency" claim because petitioner did not raise a legal sufficiency claim with respect to his first ground for relief, and that is the reason why his claim is unexhausted. To the extent that petitioner argues that the Appellate Division did not consider his weight-of-the-evidence claim, he is incorrect. As stated above, the Appellate Division specifically decided the weight-of-the-evidence claim on the merits as it related to New York law. 147 A.D.3d at 1492. The court "decline[d] to disturb the jury's resolution of [credibility and identification] issues." *Id.*

8    Petitioner also forgets that appellate counsel obtained the reversal of one of his convictions based on her claim that the evidence was "legally" insufficient to sustain the conviction, and petitioner was resentenced on the reduced charge.

9       The Second Circuit denied a certificate of appealability. *Whitfield v. Graham*, No. 17-3096, 2018 WL 4772424 (2d Cir. Mar. 14, 2018).

10      Although actual innocence claims may serve as a " 'gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits,' " the Supreme Court has not resolved whether such a claim may be an independent ground for habeas relief, and the Second Circuit has declined to recognize a free-standing actual innocence claim as a federal constitutional right to be released from prison. *Whitfield*, 2016 WL 11270092 at *3 (citing *Herrera v. Collins*, 506 U.S. 390, 404 (1993); *House v. Bell*, 547 U.S. 518, 555 (2006); *United States v. Quinones*, 313 F.3d 49, 67 (2d Cir. 2002)).

---

**End of Document**                                                © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Romero v. Miller, Not Reported in Fed. Supp. (2019)

2019 WL 5703612

Case 9:21-cv-00174-AMN-ML    Document 47    Filed 01/23/24    Page 56 of 194

2019 WL 5703612
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Pedro ROMERO, Petitioner,

v.

Christopher MILLER, Respondent.

9:18-cv-381 (GLS/ATB)
|
Signed 11/05/2019

**Attorneys and Law Firms**

Pedro Romero, Comstock, NY, pro se.

Margaret A. Cieprisz, New York State Attorney General, New York, NY, for Respondent.

## <u>ORDER</u>

Gary L. Sharpe, U.S. District Judge

**\*1** On April 18, 2019, Magistrate Judge Andrew T. Baxter issued a Report-Recommendation (R&R), which recommends that petitioner *pro se* Pedro Romero's petition for a writ of habeas corpus, (Pet., Dkt. No. 1), be denied and dismissed. (Dkt. No. 14.) Pending before the court are Romero's objections to the R&R. (Dkt. No. 15.)

Only specific objections warrant de novo review. *See Almonte v. N.Y. State Div. of Parole*, No. Civ. 904CV484, 2006 WL 149049, at \*3-5 (N.D.N.Y. Jan. 18, 2006). Objections that are general, conclusory, frivolous, or a mere reiteration of an argument already made to the Magistrate Judge trigger only clear error review. *See id.* at \*4-5.

To the extent that Romero raises specific objections, he misapprehends the law. For instance, Romero argues that he "did not voluntarily elect to consent to the exercise of jurisdiction by the magistrate judge," and that he, instead, "expected the entire panel of District Court Judge's to consider his petition." (Dkt. No. 15 at 2-3.) The court has previously recited the authority afforded both by statute and rule to refer habeas corpus petitions to magistrate judges, and the standards of review this court employs when evaluating all report and recommendation orders. *See Almonte*, 2006 WL 149049, at \*2-3. Accordingly, Romero's argument is fundamentally flawed because Romero does not have to "voluntarily elect to consent" to Judge Baxter's review of his petition and proposed recommendation. *See* 28 U.S.C. § 636(b); N.D.N.Y. L.R. 72.1(a). Further, there are no "adverse substantive consequences," (Dkt. No. 15 at 2), to Romero because all report and recommendation orders are reviewed by the district court, and the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Almonte*, 2006 WL 149049, at \*3 (citations omitted). Romero's other "specific" objection fares no better. Romero argues that Judge Baxter's "iteration of the actual innocence standard are [sic] superfluous and not at all relevant," (Dkt. No. 15 at 9), but, again, he is simply mistaken. Judge Baxter's analysis of an "actual innocence" claim is relevant, because it addresses Romero's argument that "if the court declines to address the procedurally defaulted claim, there will be a fundamental miscarriage of justice." (Dkt. No. 14 at 16-17); *see Rivas v. Fischer*, 687 F.3d 514, 540-41 (2d Cir. 2012).

Romero's remaining arguments are general, conclusory, and reiterate his original arguments, and, thus, are reviewed only for clear error. Finding no clear error, the R&R, (Dkt. No. 14), is adopted in its entirety.

**Romero v. Miller, Not Reported in Fed. Supp. (2019)**

2019 WL 5703612

Accordingly, it is hereby

**ORDERED** that the Report-Recommendation (Dkt. No. 14) is **ADOPTED** in its entirety; and it is further

**ORDERED** that the petition (Pet.) is **DENIED and DISMISSED**; and it is further

**ORDERED** that no certificate of appealability pursuant to 28 U.S.C. § 2253(c) shall issue; and it is further

**ORDERED** that the Clerk provide a copy of this Order to the parties.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 5703612

---

**End of Document**                                                © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Romero v. Miller, Not Reported in Fed. Rptr. (2020)

2020 WL 2945010

2020 WL 2945010
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Pedro ROMERO, Petitioner-Appellant,

v.

Christopher MILLER, Superintendent, Great Meadow Correctional Facility, Respondent-Appellee.

19-4033
|
May 14, 2020

N.D.N.Y., 18-cv-381, Sharpe, J., Baxter, M.J.

**Attorneys and Law Firms**

Pedro Romero, Pro Se

Margaret Ann Cieprisz, Esq., New York State Office of the Attorney General, New York, NY, for Respondent-Appellee

Present: Amalya L. Kearse, José A. Cabranes, Peter W. Hall, Circuit Judges.

**Opinion**

 **\*1**  Appellant, pro se, moves for a certificate of appealability and to proceed in forma pauperis. Upon due consideration, it is hereby ORDERED that the motion is DENIED and the appeal is DISMISSED because Appellant has not shown that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling," as to Appellant's procedural default, nor would jurists of reason "find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

**All Citations**

Not Reported in Fed. Rptr., 2020 WL 2945010

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Flowers v. Noeth, Not Reported in Fed. Supp. (2021)

2021 WL 4267814

2021 WL 4267814
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jeffrey FLOWERS a/k/a Jeffrey Flower, Petitioner,

v.

Joseph NOETH, Superintendent Respondent.

9:20-CV-997 (BKS/ATB)
|
Signed 07/27/2021

**Attorneys and Law Firms**

JEFFREY FLOWERS, Petitioner, pro se.

MICHELLE MAEROV, AAG, for Respondent.

**REPORT-RECOMMENDATION**

ANDREW T. BAXTER, U.S. MAGISTRATE JUDGE

**\*1** This matter has been referred to me for Report and Recommendation by the Honorable Brenda K. Sannes, United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. Local Rule 72.3(c).

Petitioner, incarcerated at Attica Correctional Facility, filed this petition pursuant to 28 U.S.C. § 2254, challenging a September 1, 2016 judgment of conviction after a Albany County Court jury found him guilty of two counts of Rape in the First Degree, one count of Rape in the Third Degree, and two counts of Endangering the Welfare of a Child. (Petition ("Pet.") at 1) (Dkt. No. 1). Petitioner was sentenced to serve twenty-five years of imprisonment, followed by fifteen years of post-release supervision.[1] (Sentencing 12-13) (Dkt. No. 18-3).

On September 12, 2016, petitioner filed a post-trial motion to vacate the judgment of conviction pursuant to N.Y. Crim. Proc. Law § 330.30. (State Court Record ("SR") 774-79) (Dkt. No. 18-1). The trial court denied petitioner's motion on October 3, 2016. (SR 784-86).

Prior to perfecting his direct appeal, petitioner filed a pro se motion to vacate his conviction pursuant to N.Y. Crim. Proc. Law § 440.10. (SR 521-53). The motion was denied by the trial court on July 5, 2017. (SR 561-63). The Appellate Division, Third Department ("Appellate Division") granted petitioner leave to appeal the denial on April 30, 2018, and ordered that this appeal be heard together with the appeal from petitioner's judgment of conviction. (SR 519).

The Appellate Division considered petitioner's consolidated appeal and affirmed petitioner's conviction on June 20, 2019. *People v. Flower*, 173 A.D.3d 1449 (3rd Dep't 2019) (SR 648-60). Petitioner applied for leave to appeal to the New York Court of Appeals, which request was denied on August 26, 2019. *People v. Flower,* 34 N.Y.3d 931 (2019) (SR 860).

In his federal habeas corpus application filed on August 28, 2020, petitioner raises the following grounds for relief:

(1) Petitioner's convictions based on counts one, three, and five of the indictment were against the weight of the evidence and not supported by legally sufficient evidence.

Flowers v. Noeth, Not Reported in Fed. Supp. (2021)

2021 WL 4267814

(2) The trial court violated petitioner's rights under the Confrontation Clause of the Sixth Amendment.

(3) Petitioner received ineffective assistance of counsel.

(4) Trial testimony regarding petitioner's invocation of his rights (i) to counsel, and (ii) to remain silent deprived petitioner of his right to a fair trial.

(5) The trial court improperly denied petitioner's pre-trial motion to sever the charges as they pertained to the two separate complainants.

**\*2**  (6) Petitioner's sentence was excessive.

(Pet. 6-12). Respondent filed a response to the petition, together with the pertinent state court records and a memorandum of law. (Dkt. Nos. 16, 17, 18). For the following reasons, this court agrees with respondent and will recommend denying the petition.

## DISCUSSION

### I. Relevant Facts

Respondent has included a detailed description of the facts and procedural history of this case. (Resp. MOL at 7-26). This court will summarize the relevant facts as set forth in the state court record for clarity, and will discuss specific facts as necessary in the analysis of petitioner's claims.

#### A. Indictment and Pre-Trial Proceedings

On December 11, 2015, petitioner was charged in a five-count indictment filed in Albany County. (SR 673-77). The first and third counts were brought pursuant to N.Y. Penal Law § 130.35(1), and charged petitioner with committing first-degree rape by engaging in sexual intercourse with GR [2] by forcible compulsion on two separate occasions - the first incident occurring in approximately December 2012, and the second in March 2015. (*Id.*). GR was the daughter of petitioner's long-time girlfriend, CR. The second count was brought pursuant to N.Y. Penal Law § 130.25(2) and pertained to the previously referenced December 2012 incident, charging petitioner with committing third-degree rape by engaging in sexual intercourse with GR, who was under 17 years of age at the time. (*Id.*). The fourth count was brought under N.Y. Penal Law § 260.10(1), and charged petitioner with endangering the welfare of a child by knowingly acting in a manner likely to be injurious to the physical, mental, or moral welfare of GR between December 2012 and January 2014. (*Id*)

The fifth count of the indictment was also brought pursuant to N.Y. Penal Law § 260.10(1), and charged petitioner with endangering the welfare of a child by knowingly acting in a manner likely to be injurious to the physical, mental, or moral welfare of DD. (*Id.*). DD was the daughter of petitioner and CR's friends.

Petitioner was arraigned in Albany County court on December 16, 2015, at which time the public defender's office was appointed as counsel. (Arraignment 1-9). On May 18, 2016, the parties appeared for a *Huntley* [3] hearing, which motion was denied over petitioner's opposition. (5/18/16 Appearance 1-14). In a written proffer pursuant to *Sandoval* [4] and *Molineux*, [5] dated August 26, 2016, the prosecution sought, among other things, permission to introduce at trial proof of petitioner's prior domestic violence toward GR. (SR 761-69). Petitioner opposed the request. (SR 770-73).

#### B. The Trial

**\*3**  A jury trial was held in Albany County Court before the Honorable Debra C. Young on August 29, 2016. (Trial ("T")1-807). Prior to jury selection, Judge Young granted the prosecution's request to introduce evidence of petitioner's prior "bad acts." (T 3).

2021 WL 4267814

The prosecution presented the following evidence from twelve witnesses at trial, including DD and GR. GR's mother, CR, began dating petitioner when GR was a toddler. (T 512-13). CR gave birth to petitioner's son, JF, in 2002. (T 530, 615). In 2004, CR, petitioner, GR, JF, and CR's oldest child, BR, moved into a two-bedroom apartment in Colonie, New York. (T 355-56, 512-13, 615). Several witnesses testified that during this period of time petitioner drank heavily, often abusing CR and the children both physically and verbally. (T 513-15, 531-39, 619-20, 635).

When they first moved into the apartment, BR and GR shared one bedroom, CR and petitioner shared the other bedroom, and JF slept in the living room. (T 532-33). BR moved out of the apartment by 2012. (T 530, 570). For a period of time, GR slept on a futon in her previously shared bedroom. The futon was uncomfortable and aggravated her scoliosis, but her mother refused to buy her a different bed. (T 543-44).

In October 2012, fifteen-year-old GR and petitioner became sick with colds. (T 542-43). In an effort to avoid spreading germs, CR made GR sleep in the same room, and in the same bed, with petitioner. (T 543, 548, 615-16). CR moved to sleep on a love seat in the living room. (*Id.*). These sleeping arrangements continued after GR and petitioner recovered from their colds, as CR insisted that GR continue to sleep in a bed to help alleviate her scoliosis symptoms. (T 544-45).

Several months later, with the same sleeping arrangements in place, petitioner began forcing GR to have sexual intercourse with him in their shared bed. (T 549-55). The first time petitioner raped GR, around December 2012, she awoke to find herself naked and with petitioner straddling her and pinning her arms to the bed. (*Id.*). GR felt helpless and repeatedly tried to lift her arms and get away, but she could not. (*Id.*). Afterward, petitioner threatened GR and told her not to tell anyone he had raped her. (T 556-58). GR did not tell anyone about the rape. (*Id.*).

Petitioner raped GR on a weekly basis for the following two and a half years. (T 558-64). She turned eighteen years old in January 2015. (T 564-68, 570). In March 2015, petitioner held her down in bed and forced her to have sexual intercourse with him for the last time. (T 565-68). A month later, GR moved out of the apartment and eventually moved in with her aunt, CR's sister Susan M. (T 573-74). After GR moved in with her aunt, petitioner communicated to GR's friend that petitioner and GR had been in a consensual sexual relationship for the past year. (T 458, 491-94). Upon learning this, GR called her mother to dispute petitioner's claims and to disclose that petitioner had forced her to have sexual intercourse. (T 579). GR's mother called her a liar and hung up the phone. (*Id.*). GR then told her aunt and uncle that she had been raped by petitioner, and they immediately took her to the Colonie Police Department. (T 384, 388, 432-34, 580-81). The case was assigned to an investigator; however it was closed in July 2015 for lack of evidence. (T 384).

 **\*4** A few months after GR moved out of the apartment, petitioner and CR took their son, JF, along with family friend DD (13 years old) and DD's brother, AD (11 years old), to a local lake to go swimming. (T 255-56, 265, 301, 313). After the group returned to CR's apartment, CR immediately showered then went to the grocery store. AD and JF also left to play baseball nearby. DD and petitioner remained in the apartment alone. (T 268-69, 301-02).

Eventually, DD also showered. While she was undressed and in the shower, petitioner entered the bathroom. DD heard petitioner urinate in the toilet, and before he left the bathroom, she asked him to hand her a bottle of soap. He handed her the soap and left the bathroom. (T 272, 294-95). A few minutes later, petitioner returned to the bathroom and told DD that there was a leak in the shower bathtub. He told her that if the neighbors found out, they would call the landlord and get him into trouble.[6] (T 273). Petitioner told DD that she needed to turn off the shower immediately. He stated that he could hand her a towel, or she would have to "trust him while he checked the sides of the bathtub, to make sure there was not a leak." DD told petitioner to hand her a towel, and he complied. DD, believing the situation was urgent, held up the towel to shield her body from petitioner's view. Petitioner opened the curtain and inspected the bathtub. (T 273-74). DD asked him if she could finish rinsing her hair, and petition replied that she should "make it quick." (T 274). Petitioner closed the curtain and left the bathroom. When DD was finished showering, she saw no sign of a leak. (T 274-76).

Case 9:21-cv-00174-AMN-ML    Document 47    Filed 01/23/24    Page 62 of 194
Flowers v. Noeth, Not Reported in Fed. Supp. (2021)
2021 WL 4267814

DD exited the bathroom and went into JR's room to get dressed. She then walked into the living room, where petitioner was seated in a recliner. (T 276-77). After briefly stepping outside onto the attached porch, DD returned inside and saw that petitioner was red-faced and breathing heavily. (T 277). DD became concerned that petitioner was ill, and asked if he was okay. Petitioner eventually replied that he was "trying to look at [DD]," and that he felt "so guilty." (T 277-79). DD did not respond. The boys returned from playing baseball a few minutes later. AD observed that his sister was upset, and repeatedly asked what was wrong. DD did not respond, but petitioner kept repeating, "Your sister hates me. Your sister hates me." (T 280, 303-04).

The following week, petitioner and CR repeatedly attempted to communicate with DD. (T 283-84). DD's mother, Linda D., noticed this was upsetting DD and instructed her to not respond. (T 316). DD eventually told her mother "what had happened." (T 317). DD's mother and father reported the incident to the Colonie Police Department on September 13, 2015. (T 317, 337, 372). Two days later, both of DD's parents made controlled recorded calls to petitioner inquiring about the shower incident with DD. (T 319-20, 322, 340-42, 373-76). During the calls, petitioner denied trying to look at DD. The police also interviewed DD, who told the interviewing detective that GR had previously filed a police report against petitioner. (T 379-80). The police arrested petitioner on September 17, 2015 for endangering DD's welfare. The investigation into GR's complaints against petitioner were subsequently reopened, and petitioner was arrested for the charged crimes against her on December 9, 2015. (T 381, 383-85, 393).

 **\*5** Petitioner testified in his own defense. (T 674-714). He admitted to having consensual sexual intercourse with GR, but not until she was seventeen years old. (T 684-86). He admitted that he did not have much of a relationship with GR's mother by the fall of 2012. He corroborated the sleeping arrangements in the apartment when he and GR became ill that year, however claimed that GR was adamant about continuing to sleep in petitioner's bed even after they were sick. (T 681, 702-04). Petitioner became romantically involved with GR in the spring of 2014, after GR suggested that she "could be [petitioner's] girlfriend." (T 682-84).

The jury found petitioner guilty of all charges. (T 794-803).

## II. <u>Generally Applicable Law</u>

### A. Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")
The AEDPA provides that, when a state court has adjudicated the merits of a petitioner's constitutional claim, a federal court may grant an application for a writ of habeas corpus only if "the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). *See also, e.g.*, *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001); *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir. 2008). This is a "difficult to meet," and "highly deferential standard for evaluating state-court rulings, which demands that state court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted).

To determine whether a state-court decision is contrary to clearly established Supreme Court precedent, the federal court must consider whether the state court decision " 'applies a rule that contradicts [such] law' and how the decision 'confronts [the] set of facts' that were before the state court." *Id*. at 182 (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)) (alterations in original). A state court decision involves an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal principle, but unreasonably applies or unreasonably refuses to extend that principle to the facts of a particular case. *See Williams*, 529 U.S. at 413; *Ramdass v. Angelone*, 530 U.S. 156, 166 (2000).

Under the AEDPA, a state court's factual findings are presumed correct, unless that presumption is rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). If the state court failed to decide a claim "on the merits," the pre-AEDPA standard of review applies, and both questions of law and mixed questions of law and fact are reviewed *de novo*. *Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001). Finally, the Supreme Court has held that circuit and district court decisions do not constitute "clearly established Federal Law, as determined by the Supreme Court." *Parker v. Matthews*, 567 U.S. 37, 40 (2012). Instead,

2021 WL 4267814

circuit court decisions may illustrate the "possibility" of fairminded disagreement, sufficient to justify denying the writ. *White v. Woodall*, 572 U.S. 415, 422 n.3 (2014).

**B. Exhaustion**

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, ... thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotation and other citations omitted)); 28 U.S.C. § 2254(b)(1). The prisoner must "fairly present" his claim in each appropriate state court, including the highest court with powers of discretionary review, thereby alerting that court to the federal nature of the claim. *Id.*; *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994).

**\*6** "A habeas petitioner has a number of ways to fairly present a claim in state court without citing 'chapter and verse' of the Constitution, including '(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.' " *Hernandez v. Conway*, 485 F. Supp. 2d 266, 273 (W.D.N.Y. 2007) (quoting *Daye v. Attorney General*, 696 F.2d 186, 194 (2d Cir.1982)).

Where a petitioner has failed to exhaust his claims, but he cannot return to state court, petitioner's claims are then "deemed" exhausted, but barred by procedural default. *Bossett v. Walker*, 41 F.3d 825, 828-29 (2d Cir.1994). The merits of such a procedurally defaulted claim may not be reviewed by a federal court unless the petitioner can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, or if he can show that the constitutional violation has resulted in the conviction of one who is "actually innocent." *Rivas v. Fischer*, 687 F.3d 514, 540 (2d Cir. 2012); *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (internal quotation and citations omitted). The actual innocence prong is referred to as the fundamental miscarriage of justice exception. *Rivas, supra*. "Cause" exists if "the prisoner can show that some objective factor external to the defense impeded counsel's effort to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice exists if there is a "reasonable probability" that the result of the proceeding would have been different absent the alleged constitutional violation. *Stickler v. Greene*, 527 U.S. 263, 289 (1999).

**C. Adequate and Independent State Ground Doctrine**

A federal judge may not issue a writ of habeas corpus if an adequate and independent state-law ground justifies the prisoner's detention, regardless of the federal claim. *See Wainwright v. Sykes*, 433 U.S. 72, 81-85 (1977). A federal habeas court generally will not consider a federal issue if the last state court decision to address the issue " 'rests on a state law ground that is independent of the federal question and adequate to support the judgment.' " *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007) (quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)) (emphasis added). This rule applies whether the independent state law ground is substantive or procedural. *Id.* When the independent and adequate state ground supporting a habeas petitioner's custody is a state procedural default, additional concerns come into play. *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *see also Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011) (quoting *Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir.1999) ("[P]rocedural default in the state court will ... bar federal habeas review when the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.") (internal quotation marks omitted)).

There are certain situations in which the state law basis for decision will not be considered "adequate": (1) where failure to consider a prisoner's claims will result in a "fundamental miscarriage of justice," *Coleman*, 501 U.S. at 750; (2) where the state procedural rule was not " 'firmly established and regularly followed,' " *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991); *James v. Kentucky*, 466 U.S. 341, 348-349 (1984); and (3) where the prisoner had "cause" for not following the state procedural rule and was "prejudice[d]" by not having done so. *Wainwright v. Sykes*, 433 U.S. at 87. In certain limited circumstances, even firmly established and regularly followed rules will not prevent federal habeas review if the application of that rule in a particular case would be considered "exorbitant." *Garvey v. Duncan*, 485 F.3d at 713-14 (quoting *Lee v. Kemna*, 534 U.S. at 376).

2021 WL 4267814

**\*7** In order to find that the application of a generally sound rule is exorbitant, the court considers (1) whether the alleged procedural violation was actually relied upon by the state court and whether perfect compliance with the state rule would have changed the court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner "substantially complied" with the rule given the realities of trial and whether demanding perfect compliance with the rule would serve a legitimate governmental interest. *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003).

### III. Weight of the Evidence

Petitioner asserts that his convictions are against the weight of the evidence. (Pet. at 6). As respondent points out, "[i]t is well-settled that claims attacking a verdict as against the weight of the evidence are not cognizable in a federal habeas proceeding." *Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 360 (N.D.N.Y. 2013); *see also McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 Fed. App'x 69, 75 (2d Cir. 2011) ("[T]he argument that the verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus.") (citing cases). Accordingly, petitioner's claims regarding the weight of the evidence may be denied and dismissed.

### IV. Legal Sufficiency

Petitioner next asserts that the evidence was legally insufficient to support his convictions for Rape in the First Degree (counts one and three) and Endangering the Welfare of a Child as to DD (count five). (Pet. at 6). Specifically, petitioner contends that (1) GR made "no prompt outcry to anyone of authority" during the period of the alleged sexual assault; (2) the prosecution's witnesses were biased against petitioner; and (3) GR's testimony was inconsistent and contradicted. (*Id.*).

In assessing a petitioner's request for habeas relief, "the critical inquiry on review of [a claim challenging] the sufficiency of the evidence ... [is] whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). The reviewing court must determine if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original); *see also McDaniel v. Brown,* 558 U.S. 120, 132-33 (2010) (reaffirming standard).

In so doing, the reviewing court must be mindful that, when "faced with a record of historical facts that supports conflicting inferences [it] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos v. Smith*, 565 U.S. 1, 7 (2011) (internal quotation marks and citations omitted); *see also Cole v. Miller,* No. 9:19-CV-01093 (JKS), 2021 WL 1267802, at \*5 (N.D.N.Y. Apr. 6, 2021) ("[The reviewing court] may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inference, or considered the evidence at trial."). A habeas petitioner who claims that the evidence was insufficient to sustain a conviction bears a "very heavy burden." *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000).

Based on the record presently before this court, the testimony and other proof presented at trial provided sufficient evidence to sustain petitioner's convictions, and petitioner is not entitled to habeas relief on the basis of legal insufficiency. Turning first to petitioner's convictions for Rape in the First Degree,[7] the Appellate Division accurately summarized GR's trial testimony establishing that when she was fifteen years old and sleeping in the same bed as petitioner, she awoke one night to discover that she was no longer clothed. GR eventually realized that petitioner was holding her down in the bed and forcing his penis into her vagina. GR further explained that she tried to get away, but petitioner prevented her from moving. GR also testified that petitioner subsequently threatened her about the consequences of disclosing the incident. GR described how, over the following several years, petitioner continued to wake her up approximately once per week to engage in sexual intercourse, and that GR eventually stopped resisting. She testified that the last time petitioner had sexual intercourse with her was in March 2015, and described how she woke up to the realization that petitioner had put his penis into her vagina, and he was holding her down,

Case 9:21-cv-00174-AMN-ML    Document 47    Filed 01/23/24    Page 65 of 194

Flowers v. Noeth, Not Reported in Fed. Supp. (2021)

2021 WL 4267814

preventing her from moving. The Appellate Division went on to note the testimony of other witnesses, including GR's mother, neighbor, and friend, as well as of petitioner's own testimony regarding his sexual conduct with GR.

**\*8** Petitioner presently attempts to assert that minor inconsistencies between witness testimony, and a lack of overwhelmingly corroborative evidence, [8] should render invalid his convictions of Rape in the First Degree. However, this court's role "is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain [a] conviction." *Lane v. Graham*, No. 9:14-CV-01261 (JKS), 2016 WL 154111, at \*8 (N.D.N.Y. Jan. 12, 2016) (citing *Schlup v. Delo*, 513 U.S. 298, 330 (1995)). Viewing the evidence in the light most favorable to the prosecution, this court is satisfied that a rational trier of fact could have convicted petitioner of two counts of Rape in the First Degree, specifically in that he forcibly compelled GR to engage in sexual intercourse in December 2012 and March 2015.

Likewise, the court finds no grounds to disturb petitioner's conviction for Endangering the Welfare of a Child as to DD on the basis of legal insufficiency. As relevant to petitioner's case, under New York law a person is guilty of endangering the welfare of a child "when he knowingly acts in a manner likely to be injurious to the physical, mental, or moral welfare of a child less than seventeen years old[.]" N.Y. Penal Law § 260.10(1).

The Appellate Division summarized DD's testimony at trial, describing the events which took place in September 2015 when she was thirteen years old. In essence, DD's testimony established that petitioner observed DD while she was in the shower, and that moments later he expressed feelings of guilt and remorse to DD for attempting to look at her naked. Testimony from DD, her brother, and her mother established that she was emotionally distressed as a result of the incident. To this end, petitioner's contention that DD's testimony "displayed actions inconsistent of the charge" is meritless, and the fact that petitioner did not actually see DD naked does not invalidate his conviction on the basis of legally insufficient evidence. *See, e.g., People v. Doe*, 521 N.Y.S.2d 636 (Sup. Ct. N.Y. Co.1987) (rejecting defendant's argument that his conduct did not support the charge of endangering the welfare of a child, where defendant asked an eleven-year-old girl to undress and get into his bed, but the child declined to do so).

Based on the foregoing, the jury could have reasonably concluded that petitioner knew he was acting in a manner likely to be injurious to DD's mental welfare when he attempted to look at her naked in the shower. Therefore, in upholding petitioner's conviction in this regard, the Appellate Division's decision did not "result[ ] in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," nor did it "result[ ] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2). Accordingly, petitioner's legal sufficiency claim should be denied and dismissed.

## V. Confrontation Clause

**\*9** Petitioner next argues, as he did in state court, that the trial court violated his rights under the Confrontation Clause in ruling that he could not cross-examine GR with a copy of certain text messages. (Pet. at 8). At trial, GR testified on direct examination that after she moved out of the apartment in April 2015, both petitioner and CR sent her text messages demanding that she return home. (T 573-74). Immediately after the prosecution completed its direct examination of GR, petitioner apparently informed his attorney that he was in possession of some of the text messages as testified by GR. (T 589-91). Defense counsel explained to the trial court that she had attempted to have petitioner's phone analyzed prior to trial, in an attempt to retrieve such communications, but this endeavor had proven unsuccessful. Defense counsel then requested the ability to use petitioner's newly recovered text messages to cross-examine GR. (*Id.*). The prosecution opposed petitioner's request to cross-examine GR with these text messages, arguing that they were unauthenticated and prejudicial. (T 591-93). The trial court agreed, and precluded the defense from cross-examining GR with the text messages. (T 594-95).

"The Sixth Amendment's confrontation right, which applies equally to defendants in state prosecutions, 'means more than being allowed to confront the witness physically[,]' [and] includes a right of cross-examination, which provides 'the principle

2021 WL 4267814

means by which the believability of a witness and the truth of his testimony are tested.' " *Nappi v. Yelich,* 793 F.3d 246, 250 (2d Cir. 2015) (quoting *Davis v. Alaska,* 415 U.S. 308, 315, 316 (1974)); *see also Pennsylvania v. Ritchie,* 480 U.S. 39, 52 (1987) (explaining Confrontation Clause right is "designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination"). "The Confrontation Clause does not, however, guarantee unfettered cross-examination." *Alvarez v. Ercole,* 763 F.3d 223, 230 (2d Cir. 2014) (citing *Delaware v. Fensterer,* 474 U.S. 15, 20 (1985)). "The trial court has broad discretion ... to impose reasonable limits on ... cross examination based on concerns about ... harassment, prejudice, confusion of the issues, ... or interrogation that is repetitive or only marginally relevant." *Id.* (internal citation and quotation marks omitted).

"Combining the standard for restricting cross-examination with the AEDPA standard, in order to grant a habeas petition we would have to conclude not only that the trial court abused its 'broad discretion' by precluding cross-examination ... but also that the state appellate court could not reasonably have determined that the evidence would have been excludable had the trial court properly applied standard rules of evidence[.]" *Alvarez,* 763 F.3d at 230 (citing *Watson v. Greene,* 640 F.3d 501, 510 (2d Cir. 2011)); see also *Watson,* 640 F.3d at 511 ("On habeas corpus, ... we do not sit to review the trial judge's exercise of discretion, but rather to assess whether the state court's denial of [the defendant's] Confrontation Clause claim was reasonable."). "Moreover, for habeas to be warranted, the trial court's denial must not have been harmless." *McGhee v. Uhler,* No. 17-CV-01103, 2019 WL 4228352, at *8 (S.D.N.Y. Apr. 18, 2019), *report and recommendation adopted,* 2019 WL 3852514 (S.D.N.Y. Aug. 12, 2019).

For a myriad of reasons, petitioner's claim under the Confrontation Clause does not withstand habeas review. At the outset, the Supreme Court "has never held that the Confrontation Clause entitles a criminal defendant to introduce *extrinsic evidence* for impeachment purposes." *Smith v. Lee,* No. 12 Civ. 6215, 2015 WL 5011422, at *8 (S.D.N.Y. Aug. 24, 2015) (citing *Delaware,* 474 U.S. at 15) (observing that "the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to ... expose [testimonial] infirmities through cross-examination"); *see also Nevada v. Jackson,* 569 U.S. 505, 512 (2013). Thus, the trial court's preclusion of extrinsic evidence of GR's allegedly prior inconsistent statements did not violate clearly established Supreme Court precedent.

Moreover, even if the Confrontation Clause can be interpreted to encompass the admission of extrinsic evidence, petitioner's claim still fails. As noted above, trial courts have wide discretion to impose limits on cross-examination, and habeas relief is not warranted in the absence of establishing that a violation in this regard deprived petitioner of a fair trial. *See Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986); *see also Watson v. Greene,* 640 F.3d 501, 510 (2d Cir. 2011); *Cusamano v. Donelli,* No. 06 Civ 6047, 2007 WL 7216166, at *15 (S.D.N.Y. Dec. 19, 2007), *report and recommendation adopted,* 2010 WL 2653653 (S.D.N.Y. July 1, 2010) (quoting *inter alia Zarvela v. Artuz,* 364 F.3d 415, 418 (2d Cir. 2004)) (To prevail on such a claim, "a petitioner must demonstrate that the state court's evidentiary error 'deprived [him] of a fundamentally fair trial.' "). "[T]he test for determining whether [a] ruling denied the defendant a fair trial is whether [the evidence] would have created 'a reasonable doubt that did not otherwise exist.' " *Cusamano v. Donelli,* 2007 WL 7216166 at *15 (quoting *Collins v. Scully,* 755 F.2d 16, 18 (2d Cir. 1985)) (citation omitted).

 **\*10** Here, preclusion of the April 2015 text messages did not deprive petitioner of a fair trial, because their introduction would not have created a reasonable doubt that otherwise would not have existed. The text messages were received as court exhibits at trial, and are contained in the state court record. (SR 491-510). In these messages, petitioner pleaded with GR to come home, telling GR that he loved and missed her. He repeatedly asked GR whether her departure meant that they had broken up. GR responded that she did not know how she felt, and that she would come home at some point to retrieve her belongings. As respondent points out, nothing in the text messages suggests that GR consented to sexual intercourse with petitioner in December 2012 or March 2015, much less that GR even reciprocated petitioner's belief that GR and he were in a romantic relationship. To the extent these text messages failed to dispute any of the critical elements of Rape in the First Degree, their impeachment value was slight.

It was, furthermore, reasonable for the state court to conclude that it would be prejudicial for petitioner to use the text messages to cross-examine GR, due to their suspicious production mid-trial, lack of reliability, and perceived incompleteness.

Flowers v. Noeth, Not Reported in Fed. Supp. (2021)

2021 WL 4267814

Notwithstanding, petitioner was permitted to conduct an otherwise extensive cross-examination of GR, and was clearly able to convey the defense's theory of consent for the jury to consider.

For the foregoing reasons, the trial court's refusal to allow petitioner to cross-examine GR with these text messages was not contrary to clearly established Supreme Court precedent and did not deprive petitioner of a fundamentally fair trial. The Appellate Division's decision rejecting this claim was, at the very least, well within the range of reasonableness. *See Smith v. Lee*, 2015 WL 5011412, at *9-10 (rejecting petitioner's Sixth Amendment claim where trial court denied application to recall the victim-witness to lay the foundation for the admission of his allegedly inconsistent prior statement); *Cusamano v. Donelli*, 2007 WL 7216166, at *14-15.

## VI. Ineffective Assistance of Trial Counsel

Petitioner next claims that his trial counsel was ineffective for a number of reasons, depriving him of his right to a fair trial. (Pet. at 9-9A).

The relevant federal law governing ineffective assistance of counsel claims was set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on a claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test set forth in *Strickland*. First, the defendant must show that counsel's performance was deficient. "This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth amendment." *Hudson v. New York*, No. 07-CV-1327, 2007 WL 3231970, at *2–3 (E.D.N.Y. Oct. 30, 2007) (citing *Strickland v. Washington*, 466 U.S. at 687). Under this prong, "[j]udicial scrutiny of counsel's performance must be highly deferential ... a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v. Washington*, 466 U.S. at 689 (internal quotation marks and citations omitted).

Second, the defendant must satisfy the prejudice prong set forth in *Strickland* by showing that any deficiencies in counsel's performance actually prejudiced the defendant. *Id.* at 692–93. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In making the determination whether the specific errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." *Id.* at 694.

 *11 Upon review of an habeas petition claiming ineffective assistance of counsel, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, [the district court] were adjudicating a *Strickland* claim on direct review of a criminal conviction[.]" *Paige v. Lee*, 99 F. Supp. 3d 340, 345 (E.D.N.Y. 2015) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)). Therefore, to the extent a habeas petitioner must show both that counsel's performance was unreasonable and that the state court's decision to the contrary was unreasonable, a "doubly deferential" standard of judicial review applies to ineffective assistance of counsel claims analyzed under 28 U.S.C. § 2254(d)(1). *Santana v. Capra*, 284 F. Supp. 3d 525, 538 (S.D.N.Y. 2018) (citing *Knowles v. Mirzayance*, 556 U.S. 111 (2009)).

Here, petitioner raises four categories of ineffective assistance on the part of his trial counsel, including counsel's failure to:

(1) Subpoena the April 2015 text messages and a "relevant police report" prior to trial;

(2) Move to dismiss the three counts of rape as to GR as duplicitous;

(3) Object to the "opinion testimony of ... Cathy Wydronkowski[;]" and

(4) Seek limiting instructions regarding evidence of petitioner's prior bad acts, and/or present evidence of petitioner's good character.

(Pet. at 9-9A). This court will address each argument in turn.

## A. Failure to Obtain Text Messages and Police Report

Petitioner argues that trial counsel should have subpoenaed (1) the April 2015 text messages between him and GR, and (2) an unidentified police report, with which to cross-examine GR at trial. (Pet. at 9). Turning first to trial counsel's alleged failure to obtain the April 2015 text messages, this claim is unexhausted and procedurally barred. Although petitioner raised this claim in his post-trial motion pursuant to N.Y. Crim. Proc. Law § 440.10 (SR 1-33), and on appeal to the Appellate Division (SR 95-102), he failed to assert this claim in his leave application to the Court of Appeals.[9] (SR 847-59).

Petitioner's unexhausted claim should be deemed exhausted but procedurally defaulted, because petitioner has no state-court forum in which to raise it. Petitioner cannot again seek leave to appeal this claim in the Court of Appeals, because he has already made the one request for leave to appeal to which he is entitled. *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) (citing N.Y. Court Rules § 500.10(a)). Furthermore, collateral review of this claim is barred because the issue was previously raised on direct appeal and determined on the merits. (SR 658-59). Thus, this court must determine whether cause and prejudice exists as a result of the procedural bar, or if the failure to consider petitioner's claim will result in a "fundamental miscarriage of justice."

Petitioner advances no cause for his default, or prejudice attached thereto. There is nothing in the record to suggest that plaintiff was precluded from including this issue in his request for leave to the Court of Appeals. Nor has petitioner alleged that appellate counsel was ineffective for failing to raise this issue. Furthermore, petitioner has not come forward with new evidence tending to demonstrate that he is factually innocent, and so cannot fulfill the requirements of the "fundamental miscarriage of justice" exception. Accordingly, petitioner's claim on this basis is subject to an unexcused procedural default, and should be dismissed.

**\*12** As for petitioner's claim that counsel should have subpoenaed an unidentified police report authored by Investigator Cazasta, this claim is unexhausted because petitioner never raised it in state court. Conceivably, petitioner could exhaust this claim by filing another motion pursuant to N.Y. Crim. Proc. Law § 440.10. Notwithstanding, this court has the discretion to deny petitioner's claim pursuant to 28 U.S.C. § 2254(b)(2), as it is plainly meritless. *See Gandarilla v. Artuz*, 322 F.3d 182, 186 (2d Cir. 2003) ("Gandarilla's petition contained unexhausted claims, not all of which were procedurally barred. Under AEDPA, the district court has the authority to deny a habeas petition 'on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.' ") (quoting 28 U.S.C. § 2254 (b)(2)).

Petitioner's claim is meritless because it is vague and unsupported by any substantive argument. Other than generally complaining of counsel's failure to subpoena a "relevant police report (Inv. Cazasta)," petitioner does not otherwise identify the context of such report, or explain how such evidence would have supported his defense. Accordingly, petitioner is not entitled to habeas relief on this basis. *See Vasquez v. United States*, Nos. 96 Civ. 2104, 91 CR 153, 1997 WL 148812, at \*1-2 (S.D.N.Y. Mar. 28, 1997) ("Petitioner's allegations with regard to alleged counsel errors in pre-trial preparation and investigation and trial advocacy are vague, conclusory, and unsupported by citation to the record, any affidavit, or any other source, and, accordingly, the vague and unsubstantiated nature of the claims defeated petitioner's claim of ineffective assistance of counsel.") (brackets, internal quotation marks, and ellipses omitted).

## B. Failure to Seek Dismissal Based on Duplicitous Charges

Petitioner next contends that counsel was ineffective for failing to make a motion seeking dismissal of the indictment, based on the ground that counts one, two and three of the indictment were duplicitous. (Pet. at 9). Petitioner argued this point in his direct appeal to the Appellate Division (SR 83-85), but did not raise the claim in his leave application to the Court of Appeals. (SR 847-59). Thus, it is unexhausted. Because petitioner can no longer raise this record-based claim in state court, it is deemed

2021 WL 4267814

exhausted but procedurally barred. Petitioner cannot overcome this procedural bar because he cannot satisfy the cause-prejudice test. Petitioner identifies no cause for his failure to include this claim in his leave application, and "given the absence of cause, this Court need not address the prejudice." *Gomez v. Brown*, 655 F. Supp. 2d 332, 345 (S.D.N.Y. 2009). Moreover, petitioner has not established any fundamental miscarriage of justice. Accordingly, petitioner's claim on this basis should be denied and dismissed.


### C. Failure to Object to Wydronkowski's Testimony

Petitioner also argues that trial counsel was ineffective for allowing certain testimony from Cathy Wydronkowski, petitioner's downstairs neighbor, without objection. (Pet. 9A). At trial, Ms. Wydronkowski described an interaction with petitioner, during which he revealed to her that he had maintained a sexual relationship with GR since she was fifteen years old. (T 632). The following testimony was taken:

> Q: Did anything ever get physical or –

> A: No. I kind of restrained myself a little bit.

> Q: What do you mean by that?

> A: I was angry. I was angry at what I was being told, and I was angry, at [CR], for sitting there on the couch not doing anything, and I happen to see [JF's] baseball bat by the window. I asked [CR] what was wrong with her. Why was she allowing him to live there, and be there, after what was told, and then I told her if it was me, I would have had the baseball bat and he would be crawling out of the door.

> **\*13** Q: Did [CR] have any reaction to that?

> A: None. She just cried.

(*Id.*).

Petitioner sufficiently exhausted this claim at the state level, having raised it to both the Appellate Division and Court of Appeals. The Appellate Division did not address the merits of this claim individually, however it held that petitioner's "remaining claims of ineffective assistance due to counsel's failure to make various objections throughout the trial are also without merit ... and [petitioner] has failed to establish the absence of strategic or other legitimate explanations for counsel's alleged deficient conduct." (SR 658).

Assuming, for the sake of argument, that Ms. Wydronkowski's testimony was improper, petitioner has failed to overcome the strong presumption that defense counsel's "failure" to object to such testimony was sound trial strategy. *See Eze v. Senkowski*, 321 F.3d 110, 112 (2d Cir. 2003) (Counsel's conduct will fall outside the range of reasonableness if it "cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness."). As petitioner sets forth, defense counsel did not object to Ms. Wydronkowski's testimony, perhaps realizing that the comment had already been heard by the jury and raising an objection after the fact would be ineffectual. Instead, defense counsel let the testimony stand and used it to undermine the witness's credibility, eliciting on cross-examination that despite being "so upset" by the news of petitioner's egregious conduct, Ms. Wydronkowski failed to reach out to the police to report his admitted crime. (T 641-43). Accordingly, defense counsel's strategic decision does not constitute ineffective assistance. *See Quinones v. Miller*, 224 Fed. App'x 44, 49 (2d Cir. 2007) (finding that counsel could have made a strategic decision not to object, believing that an objection would only serve to highlight the statement to the jury, and instead used the testimony to impeach the witness on cross-examination); *see also United States v. Cohen,* 427 F.3d 164, 170 (2d Cir. 2005) ("Decisions such as when to object and on what grounds are primarily matters of 'trial strategy and tactics,' and thus are 'virtually unchallengeable' absent exceptional grounds for doing so.") (internal citations omitted).

Flowers v. Noeth, Not Reported in Fed. Supp. (2021)
Case 9:21-cv-00174-AMN-ML    Document 47    Filed 01/23/24    Page 70 of 194
2021 WL 4267814

Because petitioner has not satisfied the first *Strickland* prong, the court need not evaluate whether petitioner has satisfied the second *Strickland* prong. *See Strouse v. Leonardo*, 928 F.2d 548, 556 (2d Cir. 1991) (concluding that the failure to meet the first prong of the *Strickland* test precludes the necessity to analyze the second prong because a petitioner must satisfy both elements of the test to establish the ineffective assistance of counsel). In any event, petitioner has not established any reasonable probability that the outcome of the trial would have been different were it not for the defense counsel's alleged ineffectiveness. Accordingly, habeas relief is not warranted on this basis.

### D. Failing to Request Limiting Instruction Relative to Prior Bad Acts

**\*14** Last, petitioner alleges that trial counsel should have challenged trial evidence of his prior bad acts, specifically testimony regarding (1) physical violence exhibited by petitioner toward his son, GR's half-brother JF; (2) petitioner's unauthorized residence at CR's apartment; and (3) petitioner's argument with GR and her friend, KN. (Pet. at 9A).

On direct appeal, the Appellate Division held that the trial testimony concerning petitioner's prior bad acts was "probative of material issues of fact and its probative value outweighed any undue prejudice[.]" (SR 655). The court went on to note that any error in failing to provide limiting instructions was harmless, given "the overwhelming evidence of defendant's guilt." (*Id*). The Appellate Division further found that petitioner's related ineffective assistance of counsel claim was meritless. (SR 658).

"Under New York and federal law, evidence of prior crimes or bad acts is admissible where it is relevant to an issue other than the defendant's propensity to commit the crime with which he is charged." *Howard v. Potter*, No. 9:06-CV-0982 (GTS/GHL), 2009 WL 3259080, at \*6 (N.D.N.Y. Oct. 7, 2009). New York and federal courts frequently admit evidence of prior bad acts, including uncharged crimes, "as background material and to 'complete the narrative of events." *Id.*; *see also United States v. Gonzales*, 110 F.3d 936, 942 (2d Cir.1997) (holding that evidence of bad acts is admissible under Federal Rule of Evidence 404(b) if it is "necessary to complete the story of the crime on trial") (quotations and citation omitted). The probative value of such evidence, however, must outweigh its potential for prejudice. *See Ballard v. Walker*, 772 F. Supp. 1335, 1342 (E.D.N.Y.1991) (citing *People v. Ely*, 68 N.Y.2d 520, 536 (1986)).

Here, petitioner's claims challenging the trial evidence of his prior bad acts do not warrant habeas relief. At the outset, the trial transcript makes clear that defense counsel objected to the introduction of evidence regarding petitioner's prior bad acts, including his physical abuse of JF and verbal altercation with GR and KN, as early as pre-trial motion practice. (SR 761-65, 770-73). In her opposition to the prosecution's motion to introduce such evidence at trial, defense counsel conceded that such evidence may be proper under certain circumstances, but argued that the probative value of the alleged prior bad acts could be outweighed by their prejudicial effect on the jury. (SR 770-73). The trial court ultimately ruled against petitioner and granted the prosecution's request to introduce the proffered *Molineux* evidence at trial.

Furthermore, petitioner's argument that counsel was deficient for failing to request limiting instructions as to evidence of his prior bad acts is meritless. The trial transcript makes clear that throughout the trial, the court instructed the jury that certain evidence of petitioner's prior bad acts should not be considered as proof of petitioner's predisposition toward criminal behavior. (T 457, 541-42, 620-21). Admittedly, such an instruction was not given immediately after GR's testimony that petitioner kicked JF, and when the court reiterated its limiting instruction at the close of evidence, it referred to evidence of certain acts by petitioner "against [GR] and her mother," but did not specifically refer to JF. (T. 781-82). Nevertheless, the trial court repeatedly emphasized through limiting instructions that evidence of domestic violence in petitioner's home was being offered as background evidence, and not for the purpose of proving that petitioner had a propensity to commit the subject crimes.

**\*15** Petitioner's claim that counsel was ineffective for not requesting a limiting instruction as to KN's testimony that petitioner "screamed" at her and GR is also meritless. Immediately after such testimony was elicited, the court interjected and instructed the jury accordingly. (T 457-58). Thus, defense counsel would have had no reason, or opportunity, to request a limiting instruction, as one was already given by the court.

2021 WL 4267814

As to testimony evidencing petitioner's status as an unauthorized tenant in CR's apartment, this court is skeptical that such evidence rose to the level of a "prior bad act" for which a limiting instruction would have been required. In any event, it is clear that establishing petitioner's unsanctioned residence in CR's home was a necessary element of petitioner's defense, as argued by defense counsel. Specifically, this testimony supported petitioner's claim that he had to rush into the bathroom while DD was showering, in order to prevent further maintenance in the apartment which might lead to the discovery that he was living there without approval. Applying, as we must, *Strickland*'s "strong presumption" that counsel's representation fell "within the wide range of reasonable professional assistance," this court finds that relying on petitioner's unauthorized residence in CR's apartment, as opposed to challenging it, was not a unreasonable defense strategy under the circumstances. *See United States v. D'Souza*, No. 16-CR-253, 2019 WL 652599, at *2 (S.D.N.Y. Feb. 15, 2019) (quoting *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)) ("In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices.").

Last, the court agrees that any claim by petitioner about his attorney's failure to introduce "good character evidence" at trial is unexhausted, and should be dismissed as meritless pursuant to 28 U.S.C. § 2254(b)(2). Petitioner's vague assertion does not advance any facts indicating what evidence of his good character should have been introduced by defense counsel, nor has he shown a reasonable probability that, but for counsel's failure to introduce such evidence, he would not have been convicted of the crimes charged. Accordingly, petitioner's request for habeas relief is denied on this basis. *See Smith v. Ercole*, No. 9:08-CV-351 (GLS/ATB), 2010 WL 6595338, at *22 (N.D.N.Y. June 16, 2010), *report and recommendation adopted*, 2011 WL 1748545 (N.D.N.Y. May 6, 2011) (quoting *Strickland v. Washington*, 466 U.S. at 689) ("vague and conclusory allegations of ineffective assistance of counsel are insufficient to overcome the 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' ").

## VII. Trial Evidence of Petitioner's Pre-Arrest Silence and Retention of Counsel

Petitioner next claims that testimony evidencing the invocation of his constitutional rights to counsel and to remain silent rendered his trial unfair. During his direct examination at trial, prosecution witness Colonie Police Investigator Jeffrey Lockart [10] testified that when he reopened GR's rape investigation, he found a letter from petitioner's attorney in the file, stating that petitioner was represented by counsel and should not be interviewed outside the presence of counsel. (T 384, 386). At the close of Lockart's direct examination, the prosecution requested at a sidebar conference that the jury be instructed to draw no negative inference from petitioner's retention of an attorney before his arrest. (T 395-96). Defense counsel initially conceded to the curative instruction, however ultimately moved for a mistrial based on Investigator Lockart's testimony, which the court denied. (T 399, 403). Alternatively, the court gave the following instruction to the jury:

> **\*16** During the testimony of Investigator Lockart you heard testimony that the defendant was represented by an attorney and, because of that, was not interviewed. You may not, repeat, you may not, draw any inference from the fact that the defendant was represented by counsel. The defendant has an absolute right to counsel, and you may not draw any inference against the defendant for exercising that right to counsel.

(T 409-10).

Upon review of this claim, the Appellate Division determined that Lockart's testimony violated New York law, stating that a criminal defendant's "invocation of his or her right to counsel or right against self-incrimination cannot be used against him or her on the [prosecution's] direct case." (SR 656-57). The Appellate Division also conceded that the trial court's curative instruction only partially cured the error, referencing only petitioner's right to counsel and not his right to remain silent. (*Id.*). Nevertheless, the Appellate Division found that reversal was not required because the error was "harmless beyond a reasonable doubt." (SR

Flowers v. Noeth, Not Reported in Fed. Supp. (2021)

2021 WL 4267814

657). In particular, the court found that the proof of defendant's guilt was overwhelming, and there was no reasonable possibility that the error might have contributed to petitioner's convictions. (*Id.*).

As previously discussed, petitioner is entitled to habeas relief if he can show that the state court's adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. In this regard, petitioner's claim falls short. With respect to the evidence of petitioner invoking his right to remain silent, the Supreme Court has "left open the question whether pre-arrest silence can be used as substantive evidence of guilt in the government's case-in-chief," and there remains a split [11] among the circuits as to this issue. [12] *United States v. Enix,* No. 1:15-CR-142, 2018 WL 852116, at *2 (W.D.N.Y. Feb. 12, 2018). Accordingly, and notwithstanding the fact that the Second Circuit has answered such question in the negative, the Appellate Division's finding of harmless error is not contrary to clearly established federal law as set forth by the Supreme Court. *See Sellan v. Kuhlman*, 63 F. Supp. 2d 262, 271 (E.D.N.Y.1999), *aff'd*, 261 F.3d 303 (2d Cir.2001) (under AEDPA, district courts are to follow Supreme Court precedent, not circuit court law interpreting Supreme Court precedent); *Pearson v. Ercole,* No. CV-06-5315, 2007 WL 2128350, at *5 (E.D.N.Y. July 25, 2007), *aff'd,* 310 F. App'x 445 (2d Cir. 2009).

**\*17** Nor can it be said that the Appellate Division's decision with respect to evidence of petitioner retaining counsel before being taken into custody, much less contacted by, law enforcement was inconsistent with Supreme Court precedent. This court is not aware of any Supreme Court precedent prohibiting the use of such evidence at trial. Moreover, the court agrees that, to the extent such evidence was improper, the trial court's curative instruction sufficiently addressed the error. The Supreme Court has repeatedly accepted the legal presumption that "a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an 'overwhelming probability' that the jury will be unable to follow the court's instructions ... and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant." *Greer v. Miller*, 483 U.S. 756, 767 n. 8 (1987) (internal citations omitted); *see also Richardson v. Marsh*, 481 U.S. 200, 211(1987) ("juries are presumed to follow their instructions"); *Shotwell Mfg. Co. v. United States*, 371 U.S. 341, 367 (1963) (When a limiting instruction is clear, "[i]t must be presumed that the jury conscientiously observed it.").

Here, there is no reason to believe that the jury was incapable of obeying the trial court's instruction to disregard evidence of petitioner's pre-arrest retention of counsel. Moreover, and to respondent's point, the fact of petitioner's pre-arrest retention of counsel was not 'devastating,' nor did it deprive petitioner of a fair trial. The challenged testimony was not introduced as evidence of petitioner's guilt, but rather to describe the circumstances surrounding the initial closure of the investigation into GR's complaint by the Colonie Police Department. The court did not allow any further inquiry into the fact of petitioner's representation, and it was the prosecution who sought a limiting instruction. Accordingly, petitioner is not entitled to habeas relief on this basis.

## VIII. Pretrial Motion to Sever

Petitioner next contends that the trial court erred in denying his pre-trial motion to sever the first four counts of the indictment charging crimes against GR from the last count charging a single crime against DD. (Pet. at 9B). In a pre-trial omnibus motion, petitioner argued that severance was appropriate pursuant to New York Crim. Proc. Law § 200.20(3) because (1) there was a substantial likelihood that the jury would be unable to consider the proof separately as it related to each offense, and (2) petitioner's interests were best served giving testimony as to the count of child endangerment against DD, but refraining from testifying as to the counts of rape and child endangerment against GR. (SR 139-41). The trial court denied petitioner's motion, finding no good cause for severance. (SR 156). Incidently, petitioner only testified in his defense as to the crimes against GR, and did not testify about DD. On direct appeal, the Appellate Division held that the trial court did not abuse its discretion in denying severance. (T 655-56).

Petitioner's severance claim is unexhausted, but must be deemed exhausted and found procedurally defaulted because petitioner did not exhaust his state-court remedies as required for habeas review. Specifically, petitioner did not present his severance claim as a Federal constitutional claim on appeal to the Appellate Division. Instead, he relied on New York State case law and

Case 9:21-cv-00174-AMN-ML    Document 47    Filed 01/23/24    Page 73 of 194
Flowers v. Noeth, Not Reported in Fed. Supp. (2021)
2021 WL 4267814

statutes when he raised his severance claim on direct appeal, arguing that severance was improperly denied under § 200.20(3). In limiting the scope of his claim to violations of state law, petitioner rendered the claim unexhausted for habeas review. *See Aparicio v. Artuz*, 269 F.3d 78, 89–90 (2d Cir. 2001) ("To satisfy § 2254's exhaustion requirement, a petitioner must present the substance of the same federal constitutional claims that he now urges upon the federal courts to the highest court in the pertinent state.") (internal quotation marks and citation omitted); *see also Martinez v. Capra,* No. 6:14-CV-06222, 2016 WL 2619642, at *3 (W.D.N.Y. May 9, 2016) (finding denial of severance claim unexhausted, but deemed exhausted and procedurally defaulted, where petitioner relied on New York State law to argue claim on direct appeal). Petitioner is barred from attempting to raise this record-based claim in state court, since he has already used the one direct appeal to which he is entitled.

 **\*18**  To overcome the procedural default of his severance claim, petitioner must either show cause and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice. Petitioner has made no attempt to overcome either threshold in order to defeat his default, nor does the court find a basis on which to do so on the present record. Thus, this claim should be denied and dismissed as subject to an unexcused procedural default.


## IX. Excessive Sentence

Last, petitioner argues that his sentence of twenty-five years imprisonment, and fifteen years post-release supervision, is excessive and should be reduced in the interest of justice. In support of this contention, petitioner cites to various "positives in his life," including his three years of service in the United States Marine Corp.

Petitioner's claim is unexhausted, because petitioner did not present this claim in his leave application to the New York Court of Appeals. However, even assuming that petitioner had sufficiently exhausted this claim, it is not cognizable on habeas review. "It is well settled that an excessive sentence claim may not be raised as grounds for habeas corpus relief if the sentence is within the range prescribed by state law." *Williams v. Lavalley*, No. 9:12-CV-01141 (JKS), 2014 WL 1572890, at *5 (N.D.N.Y. Apr. 17, 2014). As petitioner conceded in state court, his sentence was within the permissible range under New York law – petitioner only argued that his sentence was "harsher" than it "should have been," based on his "good character traits" and status as a "contributing member of society for many years." (SR 119-121). Accordingly, petitioner is not entitled to habeas relief on this basis.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**, and it is

**RECOMMENDED**, that a certificate of appealability be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


**All Citations**

Not Reported in Fed. Supp., 2021 WL 4267814


**Footnotes**

2021 WL 4267814

1   The court sentenced petitioner to the following concurrent prison terms: twenty-five years for each first-degree rape count; four years for the third-degree rape count; and one year for each child endangerment charge. (Sentencing 12-13). Although the court initially ordered one of the child endangerment sentences to run consecutive to the other prison terms, by operation of law, that charge ran concurrent to the felony sentences. *See* Respondent's Memorandum of Law ("Resp. MOL") at 19) (Dkt. No. 17).

2   The indictment identified the complainants, whom this court will identify as GR and DD, by their dates of birth and as persons known to the grand jury. (SR 673-77).

3   A *Huntley* hearing is held to determine the admissibility of a defendant's statements to police. *See People v. Huntley*, 15 N.Y.2d 72 (1965).

4   A *Sandoval* hearing is held to determine the extent to which a defendant will be subject to impeachment by cross-examination about prior convictions if he testifies. *See People v. Sandoval*, 34 N.Y.2d 371(1974).

5   A *Molineux* hearing is held to determine whether the prosecution may use a defendant's prior bad acts or crimes to prove an element of the crime for which the defendant is charged. *See People v. Molineux*, 168 N.Y. 264 (1901).

6   Petitioner was apparently concerned the landlord would discover that he was living in the apartment, which CR paid for through public assistance.

7   The relevant elements of the crime of Rape in the First Degree are set forth in New York Penal Law § 130.35, stating that "A person is guilty of rape in the first degree when he or she engages in sexual intercourse with another person by forcible compulsion."

8   Specifically, petitioner contends that the lack of 'prompt outcry' evidence renders his conviction of Rape in the First Degree invalid. Under New York law, "evidence of a 'prompt outcry' is admissible to corroborate the allegation that a sexual assault took place[.]" *Felix v. Conway*, No. 08-CV-0452 (MAT), 2011 WL 467087, at *4 (W.D.N.Y. Feb. 4, 2011). Although New York recognizes this exception to the hearsay rule, GR's timely report of sexual abuse by petitioner was not a required element of the crime of Rape in the First Degree, and petitioner's defense attorney took ample opportunity to cross-examine GR on her repeated failure to report petitioner's conduct.

9   To be clear, in his petition for habeas relief petitioner claims that defense counsel was ineffective for her failure to subpoena the April 2015 text messages sent from him to GR, in which he asked her to move back home. (SR 491-510). In his leave application to the New York Court of Appeals, petitioner only argued that the trial court improperly denied him the right to use these text messages to cross-examine GR. (SR 853-55).

10  Investigator Lockart was assigned to the criminal investigation into DD's complaint against petitioner. He testified that after interviewing DD and learning of GR's prior complaint, he reopened GR's rape investigation. (T 381, 383-85).

11  *See Combs v. Coyle*, 205 F.3d 269, 286 (6th Cir. 2000) (holding use of a defendant's pre-arrest silence as substantive evidence of guilt violates Fifth Amendment privilege against self-incrimination); *United States v. Burson*, 952 F.2d 1196, 1200-01 (10th Cir. 1991) (same); *Coppola v. Powell*, 878 F.2d 1562, 1568 (1st Cir. 1989) (same); *United States ex rel. Savory v. Lane*, 832 F.2d 1011, 1017-18 (7th Cir. 1987) (same); *cf. United States v. Oplinger*, 150 F.3d 1061, 1066-67 (9th Cir. 1998), *overruled on other grounds by United States v. Contreras*, 593 F.3d 1135 (9th Cir. 2010) (holding use of a defendant's pre-arrest silence as substantive evidence of guilt does not violate Fifth Amendment); *United States v. Zanabria*, 74 F.3d 590, 593 (5th Cir. 1996) (holding Fifth Amendment did not protect the defendant's pre-arrest silence because silence was not induced by the government); *United States v. Rivera*, 944 F.2d 1563, 1568 (11th Cir. 1991) (stating government may comment on a defendant's silence if it occurs prior to time that defendant is arrested and *Mirandized*).

2021 WL 4267814

12   This court further notes that the two New York cases cited by the Appellate Division are not directly on point with the underlying facts herein. *See People v. Capers,* 129 A.D.3d 1313 (3d Dep't 2015); *People v. Johnson,* 150 A.D.3d 1390 (3d Dep't 2017). In both *Johnson* and *Capers*, the challenged testimony appears to reference the criminal defendant's invocation of his right to silence and/or counsel *after* being taken into custody and read his *Miranda* rights. *See id.* Here, the challenged testimony referred to petitioner's conduct prior to any arrest.

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

---

2021 WL 1920539

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Javon BOYD, Petitioner,

v.

Earl BELL, Superintendent of Clinton Correctional Facility, Respondent.

9:21-CV-0174 (DNH/ML)

|

Signed 05/13/2021

**Attorneys and Law Firms**

JAVON BOYD, 13-B-1963, Petitioner, pro se, Clinton Correctional Facility, P.O. Box 2000, Dannemora, NY 12929.

**DECISION and ORDER**

MIROSLAV LOVRIC, United States Magistrate Judge

## I. INTRODUCTION

 **\*1** Petitioner Javon Boyd seeks federal habeas relief pursuant to 28 U.S.C. § 2254. Dkt. No. 1, Petition ("Pet."). Upon initial review, petitioner was granted thirty days leave to either (1) file proof of commencement of his collateral state court action or (2) voluntarily withdraw his plainly unexhausted claim. Dkt. No. 6, Decision and Order ("April Order").

On May 10, 2021, the Court received petitioner's motions requesting (1) a stay; (2) appointment of counsel; and (3) permission to file an amended petition. Dkt. No. 7. For the reasons which follow, petitioner's motion for a stay is granted; however, he must still file proof of commencement of his writ of error coram nobis within thirty days of this Order. Further, petitioner's remaining motions are denied without prejudice.

## II. THE PETITION

Petitioner challenges a 2013 conviction from Oneida County, pursuant to a jury verdict, to three counts of criminal sexual act in the first degree, first degree rape, second degree strangulation, two counts of criminal obstruction of breathing, and third degree assault. Pet. at 1-2; *see also People v. Boyd*, 175 A.D.3d 1030, 1031 (4th Dep't 2019).[1] The New York State Supreme Court, Appellate Division, Fourth Department, modified petitioner's judgment in the interest of justice. *Boyd*, 175 A.D.3d at 1030. The Fourth Department affirmed the conviction, as modified, and, on November 13, 2019, the New York Court of Appeals denied petitioner's application for leave to appeal. *Boyd*, 175 A.D.3d at 1030, *lv. denied*, 34 N.Y.3d 1015 (2019); *accord* Pet. at 2. It does not appear that petitioner sought certiorari in the United States Supreme Court. Pet. at 2, 6.

Petitioner contends that he is entitled to habeas relief because (1) his conviction is supported by legally insufficient evidence as the testimonial evidence was inconsistent with the physical evidence, Pet. at 4-5, and (2) his counsel was constitutionally ineffective, *id.* at 5-6.

## III. DISCUSSION

### A. Motion to Stay

As the April Order indicated, petitioner plainly stated that his second claim was not exhausted. April Order at 4 (citing Pet. at 5-6). Petitioner has filed the present motion seeking a stay and indicating that he has filed a writ of error coram nobis in the Appellate Division. Dkt. No. 7 at 1, 11. [2]

**\*2**  In support of his motion, petitioner argues that good cause exists for any delay in filing his state court collateral proceedings due to the COVID-19 pandemic and the resulting executive order which suspended all state court filings. Dkt. No. 7 at 8; *accord* Dkt. No. 7 at 24-28, Duwe Affidavit ("Duwe Aff."), ¶ 6. Specifically, petitioner explains that "navigating the criminal justice system during an unprecedented pandemic presented additional challenges to those incarcerated and our pro se filings." Dkt. No. 7 at 17 (citing Duwe Aff. ¶ 11). Further exacerbating this issue was the fact that inmates had limited access to the law library and their assigned legal assistants due to pandemic protocols including social distancing and limited room capacities. Dkt. No. 7 at 8; *accord* Duwe Aff. ¶ 5. In sum, "[d]ue to executive order No. 202 and its extensions through January 2021," in combination with the difficulty attending the law library and meeting with one's assistant, "[petitioner] was unable to file the necessary [collateral challenge in state court] that [petitioner] intended to file in anticipation of his Federal Habeas Deadline[.]" Duwe Aff. ¶ 6. However, petitioner and his legal assistant both represent that they "have filed the appropriate motion for review in the intermediate appellate division." Duwe Aff. ¶ 13; *accord* Dkt. No. 7 at 10-11.

When a district court is presented with a "mixed petition" containing both exhausted and unexhausted claims, it may dismiss the petition without prejudice or retain jurisdiction over the petition and stay further proceedings pending exhaustion of state remedies. *Rhines v. Weber*, 544 U.S. 269, 275-76 (2005). This "stay and abeyance" procedure should be "available only in limited circumstances" where the petitioner can show (1) "good cause" for failing to "exhaust his claims first in state court" and (2) that his unexhausted claims are not "plainly meritless." *Id.* at 277. A stay may become "the only appropriate course [of action] in cases ... where an outright dismissal could jeopardize the timeliness of collateral attack." *Zarvela v. Artuz*, 254 F.3d 374, 380 (2d Cir. 2001); *see also Duncan v. Walker*, 533 U.S. 167, 182-83 (2001) (Stevens, J., with whom Souter, J. joins, concurring in part and in judgment) ("[T]here is no reason why a district court should not retain jurisdiction over a meritorious claim and stay further proceedings pending the complete exhaustion of state remedies [especially] ... when the failure to retain jurisdiction would foreclose federal review of a meritorious claim because of the lapse of the AEDPA's 1-year limitations period."); *Evans v. Senkowski*, 228 F. Supp. 2d 254, 261 (E.D.N.Y. 2002) ("In sum, [the Second Circuit] holds that a mixed petition, filed on the eve of the running of the AEDPA statute of limitations, should be stayed rather than dismissed.").

Under the circumstances presented in this case, the Court finds that, at this time, a stay is warranted. For purposes of section 2244, a state conviction becomes "final" when the United States Supreme Court denies an application for a writ of certiorari or when the time to seek certiorari has expired, which is ninety days after the date on which the highest court in the state has completed direct review of the case. *Gonzalez*, 565 U.S. at 150; *Saunders v. Senkowski*, 587 F.3d 543, 547-49 (2d Cir. 2009). In this case, petitioner's conviction became final on February 11, 2020, when his time to seek certiorari had expired. Therefore, petitioner had until February 10, 2021, to timely file a habeas petition. The petition was signed February 9, 2021. [3] Therefore, the petition was timely filed with just one day left in the statute of limitations. However, dismissal of the petition without prejudice at this point would result in any future petition being subject to dismissal as time-barred. Accordingly, a stay, as opposed to dismissal, is warranted. *Zarvela*, 254 F.3d at 380; *Duncan*, 533 U.S. at 182-83; *Evans*, 228 F. Supp. 2d at 261.

Moreover, the Court cannot say, based on the current submissions, that petitioner's claims are plainly meritless or that he engaged in any dilatory tactics. *Rhines*, 544 U.S at 278.

**\*3**  Therefore, petitioner's motion to stay his petition is granted. However, federal courts should not "be turned into a jurisdictional parking lot for unexhausted claims." *Hust v. Costello*, 329 F. Supp. 2d 377, 380 (E.D.N.Y. 2004) (internal quotation marks omitted); *see also Rodriguez v. Griffin*, No. 9:16-CV-1037 (DNH), 2017 WL 1283766, at *2 (N.D.N.Y. Apr. 5, 2017) (same); *Zarvela*, 254 F.3d at 381 (addressing "the concern about excessive delays in seeking exhaustion and ... returning to federal court ... by allowing a habeas petitioner no more than reasonable intervals of time to present his claims to the state courts and to return to federal court after exhaustion.").

Mindful of the aforementioned concerns, the Court will grant petitioner a stay at this point. However, petitioner **must** file proof with this Court that he has commenced his collateral state court action, namely his writ of error coram nobis, within the **next thirty (30) days**.

Moreover, assuming that petitioner files proof of a writ of error coram nobis and the Court continues the stay, petitioner must advise the Court in writing **every thirty (30) days** of the status of the pending state court proceeding, including the date upon which any decision is reached. **Within thirty (30) days** of the date upon which the final state court capable of reviewing petitioner's application has reached a decision, petitioner must notify the Court in writing of the decision. Petitioner is cautioned that if he fails to comply with the terms of this Decision and Order, the stay shall be immediately lifted and the file returned to the Court for further proceedings.

### B. Motion for Counsel

Petitioner also seeks appointment of counsel for his habeas petition. Dkt. No. 7 at 1-2. Specifically, petitioner argues that "[s]ince it is difficult for a state inmate to prevail in a 2254 claim based upon his incarcerated status and lack of expansive knowledge of the law, the petitioner asks this [C]ourt to assign [him] counsel." *Id.* at 18. Further, petitioner clarifies that "although [he] ... has been assigned a legal assistant through his correction facility law library, the combined legal knowledge and experience [of he and his assistant] are sub par ... against the experience and knowledge of a seasoned attorney[.]" *Id.* at 20. Thus, "assignment of an attorney to handle [the present motions and any potential needed discovery in the future] ... is integral to the petitioner's chances of success on this petition." *Id.*

There is no constitutional right to representation by counsel in habeas corpus proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("Our cases establish that the right to appointed counsel extends to the first appeal of right, and no further."). A court may, in its discretion, appoint counsel for "any financially eligible person" where "the interests of justice so require[.]" 18 U.S.C. § 3006A(a)(2)(B). In determining whether to appoint counsel, a habeas court

> should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

 **\*4** *Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1986); *see also Soto v. Walker*, No. 9:00-CV-0197 (TJM/DEP), 2005 WL 2260340, at \*4 (N.D.N.Y. Sept. 15, 2005) (outlining the factors to "consider[:] the petitioner's likelihood of success on the merits of his petition, the complexity of legal issues raised by such application and the petitioner's ability to investigate and present his case to the federal habeas court."). When a petitioner's claims may " 'fairly be heard on written submissions,' a habeas petitioner's request for counsel should ordinarily be denied." *Reynolds v. Greene*, No. 9:05-CV-1539 (DNH), 2010 WL 604179, at \*2 (N.D.N.Y. Feb. 16, 2010) (quoting *Brito v. Burge*, No. 1:04-CV-1815, 2005 WL 1837954, at \*1 (S.D.N.Y. Aug. 3, 2005)). However, pursuant to Rule 8(c) of the Rules Governing Section 2254 Cases, counsel must be appointed if a hearing is required.

While the Court has not determined whether petitioner's claims are likely to be of substance, even assuming that to be true, it is clear that petitioner has not identified any "special reason" why appointing counsel to assist him is warranted. *Hodge*, 802 F.2d at 62. To the extent petitioner is under the impression that he is entitled to representation, he is not. *Pennsylvania*, 481 U.S. at 555. Therefore, the fact that he is indigent, incarcerated, or unable to independently retain counsel does not compel the Court to appoint him an attorney. *Id.* Furthermore, counsel is not required solely if petitioner thinks appointment of an

attorney is necessary because counsel would be more skilled in presenting petitioner's legal arguments. *See Voymas v. Unger*, No. 6:10-CV-0645, 2011 WL 2670023, at *12-13 (W.D.N.Y. July 7, 2011) (holding that despite petitioner's "layman" status, petitioner failed to demonstrate that (1) he was "unable to present the facts relevant to disposition of his habeas petition or to understand his legal position," (2) "the legal issues in his case are so complicated as to require the assistance of an attorney," or (3) "appointment of counsel would lead to a more just determination.").

Moreover, the proceedings thus far contradict the conclusion that "appointment of counsel would be more likely to lead to a just determination." *Brito*, 2005 WL 1837954 at *2 (citing *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994)). Petitioner has successfully moved to stay the present petition, as well as file a collateral motion attacking his criminal conviction in state court. Accordingly, at this juncture, there appears to be no special reason to appoint counsel. Further, there is certainly nothing mandating the Court to do so.

Additionally, petitioner's assumptions that discovery will be needed or evidentiary hearings will be held is, at best, premature. Therefore, counsel need not be appointed now for that potential future occurrence.

Thus, at least at this time, the Court finds appointment of counsel is not warranted. Accordingly, petitioner's motion is denied without prejudice.

### C. Motion to Amend

Petitioner also requests permission to amend his petition to "reflect any and all new issues of law that may have been exhausted upon the litigation at the state court level[.]" Dkt. No. 7 at 1-2. Liberally construing petitioner's request, it appears that he seeks permission to amend his petition to include any additional claims he is presently bringing in his writ of error coram nobis in state court; however, he did not specify what those additional claims may be.

Petitioner's request is denied for several reasons. First, petitioner failed to comply with the rules regarding formatting of the present motion. Local Rule 15.1 requires that a petitioner seeking to amend attach a complete proposed amended petition that raises both the claims now raised in his pending petition and the new claim(s) that petitioner wants to add. See N.D.N.Y. L.R. 15.1(a) ("A party moving to amend a pleading pursuant to Fed. R. Civ. P. 14, 15, 19-22 must attach an unsigned copy of the proposed amended pleading to its motion papers. Except if the Court otherwise orders, the proposed amended pleading must be a complete pleading, which will supercede the original pleading in all respects. A party shall not incorporate any portion of its prior pleading into the proposed amended pleading by reference."). This is a sufficient reason to deny petitioner's motion to amend as it precludes the Court from "examin[ing] the exact amendment that it is being asked to permit[;] ... ensur[ing] that all of the allegations asserted against the [respondents] are contained in a single document[;] ... [and] eliminat[ing] the confusing nature of piecemeal amended pleadings." *See Cusamano v. Sobek*, 604 F.Supp.2d 416, 508 (N.D.N.Y. 2009) (holding that compliance with this Court's local rules is "not merely technical in nature.") (internal quotation marks and citations omitted).

**\*5** Second, petitioner is attempting to add unidentified, new, unexhausted claims to his pending petition. Any proposed amended petition must fully satisfy Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts, which provides:

(c) Form. The petition must:

(1) specify all the grounds for relief available to the petitioner;

(2) state the facts supporting each ground;

(3) state the relief requested;

(4) be printed, typewritten, or legibly handwritten, and

(5) signed under penalty of perjury by the petitioner or by a person authorized to sign it for the petitioner under 28 U.S.C. § 2242.

Rule 2(c), Rules Governing Section 2254 Cases in the United States District Courts. Here, petitioner has failed to identify the claims he wishes to add and the facts supporting each ground. Therefore, any amendment would be futile because it fails to satisfy Rule 2. Furthermore, a motion to amend filed prior to the exhaustion of petitioner's state court remedies would also be denied as futile. *See Simpson v. Yelich*, No. 9:18-CV-0417 (GTS/TWD), 2018 WL 4153928, at *3 (N.D.N.Y. Aug. 30, 2018) (citations omitted) (denying motion to amend a petition to add an admittedly unexhausted claim as futile).

## IV. CONCLUSION

**WHEREFORE**, it is

**ORDERED**, that petitioner's motions for appointment of counsel and permission to amend his petition, Dkt. No. 7, are **DENIED WITHOUT PREJUDICE**; and it is

**ORDERED**, that petitioner's motion to stay his petition, Dkt. No. 7, is **GRANTED**; and it is

**ORDERED**, that petitioner must advise the Court in writing and attach proof of the commencement of his writ of error coram nobis, asserting the second unexhausted claim from his petition, **within thirty (30) days of the date of this Decision and Order**; and it is further

**ORDERED**, that, from the date of petitioner's submission of proof of filing his writ of error coram nobis, petitioner must advise the Court, in writing, **every thirty (30) days** on the status of the pending state court application, including the date upon which any decision is reached; and it is

**ORDERED**, that **within thirty (30) days** of the date upon which the final state court capable of reviewing petitioner's application reaches a decision, petitioner must notify the Court of that decision; and it is

**ORDERED**, that if petitioner fails to comply with the terms of this Decision and Order, the stay will be immediately lifted and the file returned to the Court for further proceedings; and it is

**ORDERED**, that no response to the petition will be required until petitioner completes exhaustion of his unexhausted claim and the stay is lifted, or until the stay is lifted pursuant to the preceding ordering paragraph; and it is

**ORDERED**, that the Clerk serve a copy of this Decision and Order upon the parties in accordance with the Court's Local Rules of Practice.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 1920539

## Footnotes

1       Citations to the petition and exhibits refer to the pagination generated by CM/ECF, the Court's electronic filing system.

2      The April Order indicated that petitioner needed to file a 440 motion to exhaust his state court remedies. April Order at 5-6. Petitioner's law library assistant indicated that it was "determined that the original 440 motion [they] had intended to file was not the procedural avenue to pursue as the issue ... was preserved on the trial record and therefore the issue of ineffective assistance of counsel ... raised in Ground 2 ... could have been raised by appellate counsel on Direct Appeal." Duwe Aff. ¶ 9. Accordingly, the decision was made to "present the claim to the appellate division for review through a writ of error coram nobis to avoid a potential procedural bar since the evidence relied upon to make the claim is evident within the trial record and could have been raised on direct appeal." *Id.* ¶ 10.

3      Under the prison "mailbox rule," a petitioner's application is deemed filed on the date he delivers it to the prison authorities for mailing. *Houston v. Lack*, 487 U.S. 266, 270 (1988).

---

**End of Document**                                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.   6

2014 WL 4105398
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Frederic C. CARPENTER, Jr., Petitioner,

v.

David UNGER, Superintendent of Wyoming Correctional Facility, Respondent.
Frederic C. Carpenter, Jr., Petitioner,

v.

David Unger, Superintendent of Wyoming Correctional Facility, Respondent.

Nos. 9:10–CV–1240 (GTS/TWD), 9:12–CV–0957 (GTS/TWD).
|
Signed Aug. 20, 2014.

**Attorneys and Law Firms**

Frederic C. Carpenter, Jr., Cortland, NY, pro se.

Hon. Eric T. Schneiderman, Paul B. Lyons, Esq., Assistant Attorney General, Lisa Fleischmann, Esq., of Counsel, New York, NY, for the State of New York Counsel for Respondents.

*DECISION and ORDER*

GLENN T. SUDDABY, District Judge.

**\*1**  Frederic C. Carpenter ("Petitioner") filed Petitions for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 in both of the above-captioned actions. By Report–Recommendation dated March 28, 2014, United States Magistrate Judge Thérèse Wiley Dancks recommended that both actions be dismissed pursuant to 28 U.S.C. § 2253(c)(2), and that a certificate of appealability not be issued with regard to any of Petitioner's claims. (Dkt. No. 52.) On April 23, 2014, Petitioner filed Objections to the Report–Recommendation. (Dkt. No. 55.) For the reasons set forth below, Magistrate Judge Dancks' Report–Recommendation is accepted and adopted in its entirety; both actions are dismissed; and a certificate of appealability not be issued with regard to any of Petitioner's claims.

**I. RELEVANT BACKGROUND**
For the sake of brevity, the Court will not repeat the factual background of Petitioner's conviction of July 31, 2000, for rape in the second degree (Indictment 99–112), and his conviction of and March 30, 2000, for sexual abuse in the first degree (Indictment 98–82). Rather, the Court will simply refer the parties to the relevant portions of Magistrate Judge Dancks' Report–Recommendation, which accurately recite that factual background. (Dkt. No. 52, at Part II.)

**A. Petitioner's Claims**

**1. Petitioner's Claims in Lead Case No. 9:10–CV–1240**
Petitioner filed his original Petition in the lead case on October 18, 2010. (Dkt. No. 1.) He filed an Amended Petition in that case on August 20, 2012, asserting the following six claims: (1) a claim that his motion to withdraw his guilty plea under Indictment 99–112 and his motion to vacate his judgment of conviction under Indictment 98–82 were improperly denied in violation of the

Fifth, Sixth, and Fourteenth Amendments; (2) a claim that the Government failed to disclose exculpatory evidence in violation of the Fifth, Sixth, and Fourteenth Amendments; (3) a claim that the trial judge violated Fed.R.Crim.P. 11(c)(1) by threatening Petitioner to accept the prior plea agreement, and defense counsel refused to provide legal advice causing Petitioner to enter an involuntary and unknowing guilty plea, in violation of the Fifth, Sixth, and Fourteenth Amendments; (4) a claim that Judge Smith lacked jurisdiction to compel Petitioner to withdraw his guilty plea under Indictment 99–112 as part of his plea in pending Indictment 98–82; (5) a claim that the Government's prosecutor improperly promised Petitioner that his postrelease supervision under Indictment 99–112 would run concurrently with his probation violation; and (6) a claim that Petitioner received ineffective assistance from Attorneys Butler and Adinolfi in violation of the Fifth, Sixth, and Fourteenth Amendments. (Dkt. No. 35, at "Ground One" Through "Ground Six.")

### 2. Petitioner's Claims in Member Case No. 9:12–CV–0957

Petitioner filed his Petition in the member case on June 13, 2012, asserting the following four claims: (1) a claim that his guilty plea was not voluntary, knowing, and intelligent because he was coerced to plead guilty by Attorney Butler; (2) a claim that Petitioner was denied effective assistance of counsel by Attorney Butler; (3) a claim that Judge Ames improperly denied Petitioner a hearing on his Section 440.10 motion; and (4) the Appellate Division overruled the Judge's denial of the Section 440.10 motion. (Dkt. No. 1, at "Ground One" Through "Ground Four.")

### B. Magistrate Judge Dancks' Report–Recommendation

#### 1. Recommendations as to Lead Case (No. 9:10–CV–1240)

**\*2** On March 28, 2014, Magistrate Judge Dancks issued her Report–Recommendation. (Dkt. No. 52.) Generally, in her Report–Recommendation, Magistrate Judge Dancks made the following seven recommendations: (1) that the Court deny Petitioner's claim that his guilty plea to rape in the second degree (Indictment 99–112) was not voluntarily, knowingly and intelligently made, because there is insufficient evidence in the state court record to overcome the strong presumption of verity of statements made by him in his plea allocution; (2) that the Court deny Petitioner's claim that Judge Smith violated Fed.R.Crim.P. 11(c)(1), because the statute does not apply to state court judges; (3) that the Court deny Petitioner's ineffectiveassistance-of-counsel claim, because he has failed to put forth evidence that Attorney Adinolfi's representation fell below reasonable standards or that he was prejudiced in any way; (4) that the Court deny Petitioner's claim that Judge Smith lacked jurisdiction to withdraw his motion, because Petitioner failed to include this claim in his direct appeal; (5) that the Court deny Petitioner's claim that the prosecutor improperly promised a concurrent sentence and probationary term in exchange for his guilty plea, because the state court transcript reveals that a concurrent probationary term was never discussed during Petitioner's plea hearing; (6) that the Court deny Petitioner's claim that prosecutors failed to turn over exculpatory evidence, because the claim is unexhausted and procedurally barred; and (7) that the Court deny Petitioner's claim that Judge Smith violated his due process rights by denying his motion to withdraw his guilty plea or failing to hold an evidentiary hearing, because the Court has determined that Petitioner's plea was voluntary and knowing. (*Id.* at Part III.)

#### 2. Recommendations as to Member Case (No. 9:12–CV–0957)

Also in her Report–Recommendation of March 28, 2014 (Dkt. No. 52), Magistrate Judge Dancks made the following three recommendations with respect to Petitioner's claims in the member case: (1) that Petitioner failed to submit evidence to support the allegation that his guilty plea was coerced; (2) that, during his plea allocution before Judge Ames, Petitioner acknowledged he was ready to enter guilty plea, indicated he was satisfied with representation by counsel, and denied that he had been subjected to any acts of coercion or threats; and (3) that the trial court's denial of Petitioner's Section 440.10 hearing request does not constitute a violation of federal law, because procedural errors in post-conviction proceedings do not implicate federal law and thus, are not applicable to Section 2254 review. (*Id.* at Part IV.)

### C. Petitioner's Objections to the Report–Recommendation

On April 23, 2014, Petitioner filed his Objections to the Report–Recommendation. (Dkt. No. 55.) Generally, in his 47–pages of Objections, Petitioner asserts a variety of factual and legal arguments, the "crux" of which is that Magistrate Judge Dancks erred by failing to cite, and "adhere to [the] mandates" of, *Massaro v. United States,* 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003), which (he argues) requires that, before deciding his ineffective-assistance-of-counsel claim, the Court hold a hearing, to establish the off-the-record remarks made between Petitioner and Judge Smith and/or Attorney Adinolfi, before sentencing. (*Id.* at 6 [attaching page "2" of Petitioner's Supporting Affid.].)

## II. APPLICABLE LEGAL STANDARDS

### A. Standard Governing Review of Report–Recommendation

**\*3** When a *specific* objection is made to a portion of a magistrate judge's reportrecommendation, the Court subjects that portion of the report-recommendation to a *de novo* review. Fed.R.Civ.P. 72(b)(2); 28 U.S.C. § 636(b)(1)(C). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c). [1] When performing such a *de novo* review, "[t]he judge may ... receive further evidence...." 28 U.S.C. § 636(b)(1). However, a district court will ordinarily refuse to consider evidentiary material that could have been, but was not, presented to the magistrate judge in the first instance. [2] Similarly, a district court will ordinarily refuse to consider argument that could have been, but was not, presented to the magistrate judge in the first instance. *See Zhao v. State Univ. of N.Y.,* 04–CV–0210, 2011 WL 3610717, at \*1 (E.D.N.Y. Aug.15, 2011) ("[I]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks and citation omitted); *Hubbard v. Kelley,* 752 F.Supp.2d 311, 312–13 (W.D.N.Y.2009) ("In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.") (internal quotation marks omitted).

When only a *general* objection is made to a portion of a magistrate judge's report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed.R.Civ.P. 72(b)(2),(3); Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition; *see also Brown v. Peters,* 95–CV–1641, 1997 WL 599355, at \*2–3 (N.D.N.Y. Sept.22, 1997) (Pooler, J.) [collecting cases], *aff'd without opinion,* 175 F.3d 1007 (2d Cir.1999). Similarly, when an objection merely reiterates the *same arguments* made by the objecting party in its original papers submitted to the magistrate judge, the Court subjects that portion of the report-recommendation challenged by those arguments to only a *clear error* review. [3] Finally, when *no* objection is made to a portion of a report-recommendation, the Court subjects that portion of the report-recommendation to only a *clear error* review. Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition. When performing such a "clear error" review, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Id.* [4]

After conducting the appropriate review, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b) (1)(C).

### B. Standard Governing Review of Petitioner's *Habeas* Petition

**\*4** Magistrate Judge Dancks has recited the correct legal standard governing review of Petitioner's *habeas* petition pursuant to 28 U.S.C. § 2254(d). (Dkt. No. 52, at Parts III.A. through III.C.) As a result, this standard is incorporated by reference in this Decision and Order, which is intended primarily for review of the parties.

## III. ANALYSIS

After carefully reviewing all of the papers in this action, the Court can find no error in Magistrate Judge Dancks' Report–Recommendation, clear or otherwise. Magistrate Judge Dancks employed the proper legal standards, accurately recited the

Case 9:21-cv-00174-AMN-ML   Document 47   Filed 01/23/24   Page 85 of 194

facts, and correctly applied the law to those facts. (Dkt. No. 52, at Parts II through IV.) As a result, the Court accepts and adopts Magistrate Judge Dancks' Report–Recommendation in its entirety for the reasons stated therein. (*Id.*)

The Court will merely add a few brief observations regarding the primary argument in Petitioner's Objections. *See, supra,* Part I .C. of this Decision and Order. As an initial matter, the argument is sufficiently repetitive of arguments submitted to Magistrate Judge Dancks (*see, e.g.,* Dkt. No. 50, at 57 [attaching page "52" of Petitioner's Traverse] ) to subject the relevant portion of the Report–Recommendation to only a clear-error review (which it survives). *See, supra,* note 3 of this Decision and Order. In any event, the Court does not read Massaro as requiring a hearing in this circumstance. The Court notes that Petitioner's claims of off-therecord interactions with Attorney Adinolfi and/or Judge Smith (in addition to being wholly inconsistent with the record) are so unreasonably conclusory and/or incredible as to be facially invalid.

**ACCORDINGLY,** it is

**ORDERED** that Magistrate Judge Dancks' Report–Recommendation (Dkt. No. 52) is ***ACCEPTED*** and ***ADOPTED*** in its entirety; and it is further

**ORDERED** that both of the above-captioned actions are ***DISMISSED;*** and it is further

**ORDERED** that a certificate of appealability shall not issue with respect to any of the claims set forth in the Petition, because Petitioner has not made a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2).

*ORDER and REPORT–RECOMMENDATION*

THÉRÈSE WILEY DANCKS, United States Magistrate Judge.

## I. INTRODUCTION

Petitioner Frederic C. Carpenter, Jr., a New York State prison inmate appearing *pro se,* has filed two timely petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [1] The proceedings were consolidated in July 24, 2012, Text Orders in *Carpenter v. Unger,* No. 9:10–CV–1240 and No. 9:12–CV–957. [2]

In his Amended Petition in No. 9:10–CV–1240, Petitioner challenges the judgment of conviction entered in Broome County Court under Indictment No. 98–82, based upon his July 31, 2000, guilty plea to Rape in the Second Degree under N.Y. Penal Law ("Penal Law") § 130.30, as well as the judgment of conviction entered in Cortland County Court under Indictment No. 99–112, based upon his March 30, 2000, guilty plea to Sexual Abuse in the First Degree under Penal Law § 130.65. [3] (Dkt. Nos. 35 and 46–1 at 28.) [4] The Petition in No. 9:12–CV–957 is limited to the judgment of conviction under Indictment No. 99–112. (Dkt. No. 46 at 224; No. 9:12–CV–957, Dkt. No. 1.) For the reasons that follow, the Court recommends that Petitioner's Amended Petition in No. 9:10–CV–1240 (Dkt. No. 35) and his Petition in No. 9:12–CV–957 (No. 9:12–CV957, Dkt. No. 1) be denied.

## II. BACKGROUND

### A. Indictment No. 98–82

**\*5** In 1998, Petitioner was indicted for Sexual Abuse in the Second Degree, Penal Law § 130.60(2) (subjecting a person less than fourteen years old to sexual conduct); Rape in the Second Degree, Penal Law § 130.30 (a person eighteen or more engaging in sexual intercourse with a person to whom he is not married who is less than fourteen years old); and Endangering the Welfare of a Child, Penal Law § 260.10(1) (knowingly acting in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old, by subjecting the child to sexual intercourse). (Dkt. No. 46–3 at 253–55.)

2014 WL 4105398

Plaintiff entered a guilty plea to Rape in the Second Degree, Penal Law § 130.30, in satisfaction of the charges on July 31, 2000, before the Hon. Martin E. Smith, a Broome County Court Judge assigned to the case after Cayuga County Court Judge Emerson R. Avery, Jr. granted Petitioner's third motion for recusal on bias grounds. (Dkt. Nos. 46 at 298–299, 325; 46–1 at 28.) Judge Smith agreed to sentence Petitioner, adjudicated a second violent felony offender, to two to four years to run concurrently with a four to twelve year sentence Petitioner was already serving in connection with a probation violation. [5] *Id.* at 17–18; *see also* Dkt. No. 46 at 211, 214. Petitioner also agreed to waive his appeal rights. (Dkt. No. 46–1 at 17–18.)

### B. Indictment No. 99–112

On August 12, 1999, while the charges under Indictment No 98–82 were pending, Petitioner was indicted on charges of Unlawful Imprisonment Second, Penal Law § 135.05 (restraint of another person); Attempted Sodomy in the First Degree, Penal Law §§ 110.00 and 130.50 (attempting to engage in oral or anal sexual conduct with another person by forcible compulsion); Sodomy in the First Degree, Penal Law § 130.50(1) (engaging in oral or anal sexual conduct with another person by forcible compulsion); and Sexual Abuse in the First Degree, Penal Law § 130.65(1) (subjecting another person to sexual contact by forcible conduct), in connection with an incident involving his estranged wife. (Dkt. No. 46 at 7, 152–55.) At his March 30, 2000, plea allocution, Petitioner admitted that on March 26, 1999, he tied his wife's wrists together behind her back and had sexual intercourse with her against her will. *Id.* at 229.

Cortland County Court Judge William F. Ames agreed to sentence Petitioner to a determinate sentence of three years to run concurrently with the four to twelve year sentence Petitioner was already serving and any sentence imposed under Indictment No. 98–82, and five years post-release supervision; waiver of the right to appeal except as to certain issues; performance of an HIV test; waiver of a sex offender risk assessment hearing; and an order of protection in favor of the victim for six years. (Dkt. Nos. 46 at 223; 46–1 at 136–140, 149–150.)

### C. Petitioner's Dissatisfaction with Defense Counsel and Motion to Withdraw His Guilty Plea Under Indictment No. 99–112

**\*6** When Petitioner appeared for sentencing on his guilty plea under Indictment No. 99–112 on May 31, 2000, Matthew Butler, from the Butler Law Firm, appearing as Petitioner's counsel, informed Judge Ames that Petitioner wanted an opportunity to address the Court. (Dkt. No. 46 at 238.) Petitioner told Judge Ames that he had not been informed before pleading guilty that he would have to swear and lie under oath to take this plea. *Id.* at 238–39. When Judge Ames cautioned Petitioner that he should express his concerns through his attorney because anything he said could be used against him at trial were the plea vacated, Petitioner informed the Court that he had not heard from his attorney since he entered the guilty plea. *Id.* at 239.

Judge Ames adjourned the sentencing because Petitioner requested an opportunity to talk to his attorney, David Butler ("Butler"), also of the Butler Law Firm. (Dkt. No. 46 at 242.) On June 1, 2000, Public Defender David J. Adinolfi, II ("Adinolfi"), Petitioner's defense counsel on Indictment No. 98–82, wrote to Assistant District Attorney Wendy Franklin ("ADA Franklin") informing her that he had spoken with Petitioner and the Butler Law Firm, and was advised by Petitioner that if his guilty plea on Indictment No. 99–112 were vacated, Petitioner would accept: (1) an *Alford* plea relative to Indictment No. 99–112, conditioned upon the previously agreed three year determinate sentence to run concurrently with the probation violation sentence; and (2) a plea to Attempted Rape in the Second Degree relative to Indictment No. 98–82, conditioned upon a sentence of one and a half to three years to run concurrently with the terms imposed for the probation violation and under Indictment No. 99–112. *Id.* at 240, 242.

When Petitioner reappeared for sentencing before Judge Ames on June 2, 2000, accompanied by his attorney, Butler informed the court that Petitioner had been in contact with a number of attorneys and had advised Butler that he was not satisfied with the services he had rendered at the plea. *Id.* at 244. According to Butler, Petitioner had indicated to him that he wanted to terminate Butler's services and potentially make a motion to withdraw his guilty plea. *Id.* Petitioner told the Court he wanted time to obtain another attorney, most likely Adinolfi, and to discuss moving to withdraw the plea with him. *Id.* at 244–47. Judge Ames adjourned sentencing until July 5, 2000. *Id.* at 247–48.

ADA Franklin responded to Adinolfi's June 1 st letter on the following day after sentencing had been adjourned. *Id.* at 250–51. Franklin informed Adinolfi that the People would accept only the sentence agreed to at the time of the guilty plea on Indictment No. 99–112. With regard to Indictment No. 98–82, the District Attorney would accept a plea to Rape in the Second Degree, provided Petitioner agreed to a full allocution of the crime; three and a half to seven years to run concurrently with the probation violation sentence and any sentence on Indictment No. 98–82; waiver of appeal rights; HIV test; order of protection for the victim for ten years; and registration as a sex offender with a waiver of the right to a risk level hearing. (Dkt. No. 46 at 251.)

**\*7** Thereafter, on June 14, 2000, Adinolfi filed a motion to withdraw Petitioner's guilty plea under Indictment No. 99–112. *Id.* at 252. Adinolfi filed a supplemental motion to withdraw on June 29, 2010.[6] *Id.* at 258. According to Petitioner's moving papers, his family had retained Butler to represent him on Indictment No. 99–112 in 1999. *Id.* at 261. In February of 2000, when Petitioner's family could not meet Butler's demands for additional money, Butler cut off communications with Petitioner, leading him to contact the Public Defender's Office in March of 2000, to find out if Butler was still representing him.

Petitioner claims that on the date of the plea, Butler met with him in a holding room at the courthouse and told him he was going to plead him out because Petitioner could not pay him an additional $4,500. *Id.* In two heated conversations, Butler instructed Plaintiff to plead guilty to sexual abuse pursuant to a plea bargain Butler had worked out. *Id.* Butler told Petitioner that the terms of the plea bargain were a three year determinate sentence to run concurrently with his sentence for the probation violation, a six year order of protection for his wife, and waiver of the right to appeal. (Dkt. No. 46 at 262.) According to Petitioner, he was a nervous wreck and was very frightened when he appeared before the court because he felt betrayed by his attorney, who had been paid $8,000 to take the case to trial. *Id.* Petitioner claims that when he attempted to speak with Butler during the plea allocution, Butler repeatedly told him to shut up and answer yes to the Judge's questions. *Id.* Petitioner contends he entered the plea under duress and as the result of coercion, without effective assistance of counsel, even though he wanted to take the case to trial because he was innocent of the charges. *Id.* Petitioner believed that his estranged wife, the sole witness for the prosecution, had no credibility, and he himself had witnesses who would testify about being told by her that she was setting Petitioner up for a fall out of concern he would expose her drug use and drug dealing and obtain custody of their three infant children. *Id.*

In a July 5, 2000, appearance before Judge Ames, Adinolfi argued that Petitioner was entitled to a hearing on his motion under CPL § 220.60(3), while the People took the position that because the motion was made pre-sentencing, court review was confined to the plea record. *Id.* at 266–270. Judge Ames adjourned the motion and asked counsel to submit law on the hearing issue for his consideration. *Id.* at 271–72. The People submitted an affirmation and letter-memorandum of law in opposition to Petitioner's motion to withdraw his guilty plea on July 6, 2000. *Id.* at 275–281. Petitioner's counsel submitted case law to the court on July 11, 2000. *Id.* at 282.

On the adjourned date, Judge Ames referenced a letter he had sent to counsel informing them that he felt he could decide the matter on the papers and was inclined to grant the defense request to withdraw the guilty plea. *Id.* at 287. The People had responded to Judge Ames' letter with a July 25, 2000, letter advising the Court of a change in position with regard to a hearing on Petitioner's motion and requesting that a hearing be held. (Dkt. No. 46 at 282–85.) When Petitioner's counsel asked Judge Ames to issue an order vacating the plea in accordance with his letter during the appearance, Judge Ames indicated that his letter was not an order as much as what he was thinking. ADA Franklin reiterated the People's request for a hearing and Judge Ames ultimately agreed that a hearing would be held. *Id.* at 287–88.

### D. Petitioner's Withdrawal of His Motion to Withdraw His Guilty Plea Under Indictment No. 99–112 and His Guilty Plea Under Indictment No. 98–82

**\*8** On July 31, 2000, the parties appeared before Judge Smith for oral argument on the People's motion for re-argument and reconsideration of an adverse discovery order, and Petitioner's motions to dismiss Indictment No. 98–82 and for disclosure of records. (Dkt. No. 46 at 325–27.) During the course of oral argument, Judge Smith learned about Indictment No. 99–112 and Petitioner's pending motion to withdraw his guilty plea. (Dkt. No. 46–1 at 15–16.) The Judge thereupon told counsel he

wanted to see them in chambers. *Id.* Following the in-chambers conference, Judge Smith called Petitioner up to the bench and informed him that during his discussion with counsel, a disposition of the case had been proposed to the Court. *Id.* at 17. The Judge told Petitioner that he had informed Petitioner's counsel that for purposes of plea negotiations and disposition, he would consent to the proposal. *Id.*

Judge Smith described the proposed disposition to Petitioner as follows:

> Mr. Carpenter, there's several things involved here. First of all, if you were to enter a plea of guilty under this indictment, 98–82, if you were to enter a plea of guilty to the second count of that indictment which charges you with rape in the second degree, you would receive a sentence as a second felony offender. I am advised you are a second felony offender and you've already been adjudicated the same. I would impose a sentence of two to four years. That sentence of two to four years would run concurrent to a sentence you're now serving on a violation of probation. It would also involve thirdly, you withdrawing a motion that has apparently been made on your behalf in front of Judge Ames where you entered a plea of guilty to sexual abuse in the first degree in satisfaction of an indictment that charges you with sodomy in the first degree and for which you're to receive a sentence of three years determinate. And that all three sentences would run concurrently; that is, they would run at the same time. And it would also, fourthly, involve you withdrawing all motions filed in this particular case. Agreed. Is that fairly stated, Mr. Adinolfi?

(Dkt. No. 46–1 at 17–18.) Judge Smith indicated that under the plea agreement, Petitioner would also be required to give up his right to appeal under Indictment Nos. 98–82 and No. 99–112. *Id.* The Court asked Adinolfi if Petitioner was willing to do that and Adinolfi responded in the affirmative. *Id.* at 19. When Judge Smith asked Petitioner if that was correct, Petitioner also responded in the affirmative. *Id.*

Petitioner accepted the plea agreement as explained to him in court. *Id.* at 17–27. Because of the prior nature of the proceedings involving Petitioner, Judge Smith insisted that the plea be under oath. *Id.* at 19–20. In his plea allocution on Indictment No. 98–82, Petitioner admitted to having engaged in sexual intercourse with an under fourteen year old female visitor at his home in April of 1998. (Dkt. No. 46–1 at 24–25, 28.) He conceded that the victim's grand jury testimony that Petitioner sat on the couch with her, pulled down his pants and engaged in sexual intercourse with her involving some degree of penetration was correct. *Id.* at 27–28.

### E. Petitioner's Motion to Withdraw his Guilty Plea on Indictment No. 98–82 and Sentencing by Judge Smith

 **\*9**  On August 14, 2000, Petitioner sent a letter to the State of New York Commission on Judicial Conduct ("CJC") complaining about Judge Smith. [7] (Dkt. No. 46–1 at 33–35.) Petitioner claimed that Adinolfi had told him that Judge Smith made an off the record statement that if Petitioner did not accept the plea agreement on Indictment No. 98–82 the Judge would:

> use his "power" to have the Administrative Judge remove Judge Ames from the other pending case, and after removal, he would consolidate both cases for trial. Justice Smith said that if I was convicted of both Indictments, he would give me severe sentences to run consecutively, and to run consecutive to the current 4–to–12 year sentence. He also made it clear to my attorney that he would make sure that I didn't have appellate issues if convicted.

*Id.* at 34. Petitioner wrote that he was coerced by Judge Smith's threats into pleading guilty to a felony even though he was innocent of the charge. *Id.*

Petitioner sent a copy of his letter to the CJC to Adinolfi and asked him to use the facts set forth in the letter to prepare a motion to withdraw his plea and recuse Judge Smith. *Id.* at 36. In an August 16, 2000, letter to Petitioner, Adinolfi responded: "It does

not appear to me that there are any non-frivolous issues on which to file motions for recusal or withdrawal of your Guilty Plea. Attorneys are ethically obligated not to file frivolous motions, so we cannot file the motions you have requested unless there are some non-frivolous issues." *Id.* at 37.

On August 21, 2000, Petitioner wrote to Judge Smith to inform him that Adinolfi had told him he would not move to withdraw the guilty plea and recuse the Judge on Petitioner's behalf. *Id.* at 49. Petitioner requested that Judge Smith appoint a Syracuse, New York attorney to represent him. *Id.* In an August 22, 2000, affirmation in reply to Petitioner's written request to relieve the Cortland County Public Defender's as his assigned counsel, Adinolfi stated that Petitioner and the Public Defender's Office had reached an impasse with regard to strategy moving forward in the criminal cases in County Court. (Dkt. No. 46–1 at 55.) The specific nature of the impasse was described as the firm belief held by the Public Defender's Office that Petitioner's request that motions be filed for vacatur and recusal was not the correct strategy at that time. *Id.* Adinolfi also noted that Petitioner's allegation that Adinolfi could be a witness regarding his *pro se* motion for vacatur and recusal might have "some merit." *Id.* Adinolfi concluded that there was good cause for the Public Defender's Office to be relieved as counsel for Petitioner. *Id.* at 56.

On August 30, 2000, Plaintiff made a *pro se* motion for an order:

> (1) Recusing Hon. Martin E. Smith on the ground that he is hopelessly biased and prejudiced against Defendant—the Court coerced, directly and indirectly, Defendant to plead guilty on July 31, 2000, to the only count contained in the Indictment;

> **\*10** (2) Vacating Defendant's plea of guilty entered on or about July 31, 2000, on the ground that said plea was induced by threats of Hon. Martin E. Smith;

> (3) Assigning new counsel to the Defendant on the ground that the Cortland County Public Defender recently filed and served an "Affirmation" seeking to be relieved.

*Id.* at 69. In his August 30, 2000, affidavit in support of his motion, Petitioner referenced an August 18, 2000, affidavit he had sent to Judge Smith reiterating the circumstances of alleged coercion and averring:

> 9. Lastly, I have resisted a plea bargain since 1998, and but for the threats conveyed by my attorney and but for the comments that this Court made in my presence, I wouldn't have been induced to plead guilty to a crime that I am absolutely innocent of. Commendably, my attorney worked extremely hard on the defense of this case and I do not think that he wanted me to plead guilty, however, he was duty-bound to convey to me what the Court had said. He left the decision up to me, but I was *scared to death* of serving *life in prison* for a crimes that I did not commit .... (emphasis in original)

(Dkt. No. 46–1 at 62–65.) Petitioner also included Adinolfi's August 22, 2000, reply affirmation in support of his motion. *Id.* at 75–76. The People opposed the motion in its entirety. *Id.* at 90–95.

Petitioner's sentencing was held before Judge Smith on September 11, 2000. (Dkt. No. 46–1 at 153–161.) Adinolfi appeared as Petitioner's counsel. *Id.* at 153. The habeas record does not reflect the issuance of an order on Petitioner's motion to withdraw his guilty plea. However, it is apparent from the sentencing transcript that the motion was denied in full. *Id.* at 153–161. When asked by Judge Smith if he wanted to say anything before sentence was imposed, Petitioner stated that the hospital records provided by the People revealed no indication of rape, and he had only taken the plea because of the fear of consolidation of the two indictments before Judge Smith. *Id.* at 158. Petitioner was sentenced as a second felony offender to two to four years to run concurrently with the sentence for probation violation.[8] *Id.* at 158–62. After imposing sentence, Judge Smith stated:

2014 WL 4105398

I note, Mr. Carpenter, what you've just said to the Court, and I also note, as I've already alluded to this morning, that I find it beyond coincidence that you would plead guilty to sex abuse in the first degree and seek to withdraw your plea, then file —enter a plea of guilty to rape in the second degree and seeking withdrawal of your plea. And the basis of your arguments with regard to both is you were forced into doing so by your counsel. And except when I put you under oath and you pled guilty, you told me, under oath, that did not occur, so that speaks greatly in this Court's mind to your credibility, and in short, you have none with this Court.

It strikes me that your tactics, personal, legal tactics throughout the course of these proceedings has been nothing more —I say these proceedings, by reference, I mean including the proceedings, indictment in front of Judge Ames—nothing more than an effort on your part to engage in dilatory tactics, that is keep putting it off, putting it off, and maybe it will go away. That's the only way I can figure this ended up being the oldest indictment in Cortland County. All that being said, sentence is imposed.

**\*11** (Dkt. No. 46–1 at 158–59.)

Plaintiff filed a timely notice of appeal from the judgment of conviction based upon his guilty plea on Indictment No. 98–82. *Id* . at 164.

### F. Petitioner's Sentencing on his Guilty Plea under Indictment No. 99–112

By the time Petitioner was sentenced by Judge Smith under Indictment No. 98–82, he had already been sentenced by Judge Ames under Indictment No. 99–112. (Dkt. No. 46–1 at 118–148.) Judge Ames noted at the outset of the September 6, 2000, sentencing that he had received copies of August 17 and 21, 2000, letters Petitioner had sent Judge Smith. (Dkt. No. 46–1 at 38–39, 49.) In the August 17th letter, Plaintiff had informed Judge Smith that he intended to move to withdraw his guilty plea under Indictment No. 98–82 and had included a draft affidavit. *Id.* at 40–43. The August 21 st letter was the one in which Petitioner sought to have Adinolfi replaced with a Syracuse attorney on Indictment No. 98–82. *Id.* at 49.

At the sentencing, both Petitioner and Adinolfi argued that Adinolfi should be replaced as Petitioner's counsel in both criminal proceedings because attorney and client had an irreconcilable conflict regarding strategy going forward, and Adinolfi could be a witness in a hearing on Petitioner's motion to withdraw his plea under Indictment No. 98–82. *Id.* at 119–21. Carpenter also argued that Adinolfi had been non-responsive to his telephone calls and letters subsequent to Petitioner's guilty plea on Indictment No. 98–82. (Dkt. No. 46–1 at 127–28.) The People argued against allowing Petitioner to replace Adinolfi, and Judge Ames denied the request, failing to see any conflict that would serve as an impediment to the sentencing under Indictment No. 99–112. *Id.* at 129–31.

Judge Ames also concluded that unless the plea in Indictment No. 98–82 was withdrawn by Judge Smith or overturned on appeal, he was bound by Petitioner's agreement to withdraw his motion to withdraw his guilty plea under Indictment No. 99–112. *Id.* at 124. As a result, whether or not the plea on Indictment No. 99–112 could be withdrawn hinged on what happened with Petitioner's motion to withdraw his guilty plea before Judge Smith—the motion that was subsequently denied by Judge Smith on September 11, 2000.

Finding no impediment to going forward with sentencing, Judge Ames sentenced Petitioner under Indictment No. 99–112 to a determinate term of three years and post-release supervision for five years, in accordance with the plea agreement under which Petitioner had pled guilty to Sexual Abuse in the First Degree. *Id.* at 132, 136. The three year sentence was made concurrent with the sentence being served for the probation violation and any sentence rendered on Indictment No. 98–82. *Id.* at 137. The sentence also included an order of protection in favor of petitioner's wife; an HIV test; certification as a sex offender; and a waiver of appeal except as to the limited issues for which there is always a right to appeal. *Id.* at 138–39.

**\*12** Plaintiff filed a timely notice of appeal from the judgment of conviction based upon his guilty plea in Indictment No. 99–112. *Id.* at 165.

### G. CPL § 440.10 Motions to Vacate Both Convictions

In December of 2009, Petitioner filed a *pro se* motion pursuant to CPL § 440.10 to vacate the judgment of conviction under Indictment No. 99–112. (Dkt. No. 46–2 at 10–134.) Petitioner raised numerous grounds including ineffective assistance of counsel and a claim that the People had engaged in fraudulent and illegal plea negotiations that tricked him into waiving his right to trial against his will. [9] *Id.* at 11–12. In February of 2010, Petitioner filed a *pro se* motion under CPL § 440.10 to vacate the judgment of conviction with regard to Indictment No. 98–82. *Id.* at 136–230; Dkt. No. 46–3 at 2. Among the numerous grounds raised by Petitioner was a claim that his plea had not been voluntary, knowing and intelligent. *Id.* at 137. In his notice of motion, Petitioner indicated that he believed his new attorney, Michael Cardinale, Esq. ("Cardinale"), would be joining him on the motion. (Dkt. No. 46–2 at 136.)

It appears from the record that Petitioner's *pro se* § 440.10 motions were superseded by an April 6, 2010, counseled § 440.10 motion filed by Cardinale seeking to have both judgments of conviction vacated. (Dkt. No. 46–3 at 3–132.) The grounds raised for vacatur of Petitioner's guilty plea on Indictment No. 99–112 included: (1) the plea allocution was insufficient in that the Court improperly delegated its authority to conduct the plea allocution to the prosecutor; (2) the plea allocution was insufficient in that it failed to establish each element of the offense to which Petitioner pleaded guilty; (3) the guilty plea was not knowing and voluntary inasmuch as Petitioner was forced by his attorney to make admissions and plead guilty because his attorney had informed him that he would not be able to provide him with a zealous defense since his legal bill had not been completely paid; and (4) the Court represented that the five year period of postrelease supervision would run concurrently with the four to twelve year sentence for probation violation, when the law required that the period commence upon his release from imprisonment. (Dkt. No. 46–3 at 7–15.)

The grounds asserted for vacatur of Petitioner's guilty plea on Indictment No. 98–82 included that: (1) Judge Smith lacked jurisdiction to adjudicate matters relating to Indictment No. 99–112, *i.e.,* requiring Petitioner to withdraw his motion to withdraw his guilty plea in that case, because he was temporarily assigned from Broome County only to handle Indictment No. 98–82; (2) Petitioner's guilty plea was not knowing and voluntary because he did not know at the time he pleaded guilty on Indictment No. 99–112 that neither the Court nor the New York State Department of Corrections could enforce the five year post-release supervision period to run concurrently with the probation violation sentence; and (3) Petitioner's guilty plea was not knowing and voluntary because he was coerced to withdraw his motion to withdraw his guilty plea under Indictment No. 99–112 by the duress of the circumstances. *Id.* at 16–21.

**\*13** The counseled § 440.10 motion was denied by Judge Ames on May 10, 2010. *Id.* at 146–50. Judge Ames rejected Petitioner's two arguments that the guilty plea under Indictment 99–112 was insufficient on the grounds that a § 440.10 motion was not the proper method for challenging the sufficiency of a plea made on the record, and the arguments were in any event without legal merit. (Dkt No. 46–3 at 147.) Judge Ames also rejected Petitioner's claim that his guilty plea on Indictment 99–112 was not voluntary and resulted from coercion by Butler. The claim was rejected based upon Petitioner's failure to provide any supporting evidence, as well as Petitioner's affirmative response when asked during his plea allocution whether he was satisfied with the services provided by Butler. *Id.* at 148.

Petitioner's argument that he was not given the sentences promised him in his plea agreements under Indictment Nos. 98–82 and 99–112 because of the timing of post-release supervision was also rejected. *Id.* at 148–49. Judge Ames found the argument to be without merit because the plea transcript revealed that the Court had agreed only that the three year determinate sentence would be concurrent and also because the argument was one that should be asserted on a direct appeal. *Id.* at 149; *see also* Dkt. No. 46 at 226.

The County Court also rejected Petitioner's claims relating to his guilty plea under Indictment No. 98–82. Judge Ames rejected Petitioner's claim that Judge Smith was without jurisdiction to require him to withdraw his motion to withdraw his guilty plea under Indictment No. 99–112 on the grounds that a § 440.10 motion was not the proper method of challenging the sufficiency

of a plea made on the record. Judge Ames rejected the claim on the further grounds that requiring Petitioner's withdrawal of the motion in Indictment No. 99–112 did not constitute an exercise of jurisdiction over Indictment No. 99–112 by Judge Smith. *Id.* Judge Ames also rejected Petitioner's post-release supervision claim asserted with respect to Indictment No. 98–82. (Dkt. No. 46–3 at 149–50.)

The Appellate Division denied Petitioner's application to appeal from the denial of his § 440.10 motion on July 28, 2010. (Dkt. No. 46–3 at 188.)

### H. Petitioner's Direct Appeal from Both Judgments of Conviction

*1. Delay in Granting Petitioner's Application to Proceed as a Poor Person and Appointing Appellate Counsel so that His Direct Appeals Could Be Perfected*

Plaintiff filed timely notices of appeal from the judgments of conviction under Indictments Nos. 98–82 and 99–112. (Dkt. No. 46–1 at 164–65.) By letter of October 24, 2002, the Appellate Division Clerk's Office sent Petitioner an application to proceed as a poor person on his appeals. (Dkt. No. 46–2 at 73.) Petitioner completed and executed the application on October 31, 2002, and submitted it to the Clerk. *Id.* at 20, 79–80.

Petitioner wrote to the Clerk's Office on November 23, 2004, requesting the dates of motions and decisions involving him in that Court. *Id.* at 74. The Clerk's Office responded with information on filings and decisions. *Id.* None of the information appears to have related to Petitioner's appeals from the judgments of conviction. *Id.* Petitioner continued to communicate with the Clerk's Office regarding his appeals without success. On May 27, 2009, Petitioner sent a letter to the Clerk's Office indicating that he had filed two notices of appeal and the October 31, 2002, application to proceed as a poor person. *Id.* at 72, 76. Petitioner noted that a copy of the application had been provided to him with a May 10, 2006, letter from the Clerk's Office. *Id.* at 72, 75. He wrote "I have relentlessly over the years have written this court for an decision on this application and have been evaded from the truth." (Dkt. No. 46–2 at 72.)

**\*14** In an August 4, 2010, letter responding to a June 12, 2010, letter from Petitioner, the Assistant Deputy Clerk in the Clerk's Office informed Petitioner that they were in the process of reviewing Clerk's Office files in an attempt to clarify the circumstances of his poor person application dated October 31, 2002. (Dkt. No. 1–4 at 8.) The letter included a request for all of Petitioner's correspondence to the Clerk's Office over the years regarding his poor person application. *Id.* Finally, on September 28, 2010, the Clerk's Office sent Petitioner a letter, informing him that his application to proceed as a poor person was being submitted for consideration by the Court on October, 4, 2010. (Dkt. No. 1 at 75.) On November 4, 2010, more than ten years after Petitioner's convictions, the Appellate Division issued Orders granting Petitioner leave to proceed as a poor person on both of his direct appeals and appointing appellate counsel to represent Petitioner on the appeals. [10] (Dkt. No. 46–3 at 190–91.)

*2. Petitioner's Direct Appeal*

Petitioner's combined direct appeal to the Appellate Division appears to have been perfected in or about August of 2011. (*See* Dkt. No. 46–3 at 192–252.) The issues raised on appeal with regard to both cases were: (1) whether Petitioner's guilty pleas were entered into in a voluntary, knowing, and intelligent manner; (2) whether the trial courts erred by failing to grant Petitioner's motions to withdraw his guilty pleas, or at the very least holding hearings on the issue; and (3) whether Petitioner's former attorneys rendered ineffective assistance of counsel warranting vacatur of the guilty pleas. (Dkt. No. 46–3 at 193.)

The Appellate Division affirmed both judgments of conviction on March 8, 2012. *See People v. Carpenter*, 93 A.D.3d 950, 939 N.Y.S.2d 658 (3d Dept.2012). On Petitioner's arguments regarding his guilty plea on Indictment No. 98–82, the Appellate Division found that the record clearly reflected "a voluntary, knowing and intelligent plea without any indication of coercion," and concluded that the plea had been properly entered and that the County Court had not abused its discretion in denying Petitioner's motion to withdraw his guilty plea. *Id.* at 660. The Court also rejected Petitioner's claim that he was denied ineffective assistance of counsel, finding that "[t]he fact that counsel did not join in defendant's motion to withdraw the plea does not

constitute ineffective representation." *Id.* Petitioner's remaining claims regarding ineffective assistance of counsel with respect to Indictment No. 98–82 were found to implicate matters outside the record that were more properly addressed in the context of a CPL Article 440 motion. *Id* .

Petitioner's claim that his plea under Indictment No. 99–112 was not voluntary was found to be unpreserved for appeal because Petitioner had withdrawn his motion to withdraw his guilty plea as a part of his plea agreement on Indictment No. 98–82 and had not moved to vacate the judgment of conviction. *Id.* The Appellate Court concluded that Petitioner's claim that he was denied effective assistance of counsel implicated the voluntariness of his plea, and because Petitioner failed to move to withdraw the plea or vacate the judgment of conviction, the claim was also unpreserved for review. *Id.* Petitioner's claim that Butler failed to adequately communicate with him and pressured him into pleading guilty was found not to be a proper subject for direct appeal because it involved matters outside the record. *Id.* at 661.

 **\*15** The issues identified for review in Petitioner's application for leave to appeal to the Court of Appeals included: (1) whether his guilty pleas were entered into in a voluntary, knowing, and intelligent manner; (2) whether the trial courts erred in failing to grant his motions to withdraw his guilty pleas; and (3) whether his attorneys rendered ineffective assistance of counsel. (Dkt. No. 46–4 at 301–02.) The Court of Appeals denied leave to appeal on May 18, 2012. *See Carpenter,* 19 N.Y.3d 863, 947 N.Y.S.2d 411, 970 N.E.2d 434 (2012).

### I. Amended Habeas Petition Relative to Indictment Nos. 98–82 and 99–112

Petitioner filed an Amended Petition in No. 9:10–CV–1240 after the Appellate Division affirmed the judgments of conviction under Indictment Nos. 98–82 and 99–112, and the Court of Appeals denied leave to appeal.[11] (Dkt. No. 35.) The grounds for relief raised by Petitioner in his Amended Petition are: (1) Petitioner's motion to withdraw his guilty plea before Judge Smith and his § 440.10 motion to vacate his judgments of conviction before Judge Ames were improperly denied in violation of his rights under the Fifth, Sixth and Fourteenth Amendments to the Constitution; (2) the People failed to disclose exculpatory evidence in violation of Petitioner's rights under the Fifth, Sixth, and Fourteenth Amendments; (3) the trial judge violated Federal Rule of Criminal Procedure 11(e)(1) during an in chambers conference with counsel by engaging in threats of retaliation if Petitioner did not accept the plea agreement being offered, and Petitioner's attorney subsequently refused to provide legal services to him allowing the court to impose its will on Petitioner by coercing him to enter a guilty plea that was not voluntary, knowing, or intelligent, in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments; (4) Judge Smith lacked jurisdiction to require Petitioner to withdraw his motion to withdraw his guilty plea under Indictment No. 99–112 as a part of his plea agreement on Indictment No. 98–82; (5) the prosecutor improperly offered inducements on which she could not follow through by promising Petitioner that the five year post-release supervision imposed as a part of his plea agreement under Indictment No. 99–112 would run concurrently with the four to twelve year sentence for probation violation; and (6) Petitioner was deprived of effective assistance of counsel by both Butler and Adinolfi in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments. (Dkt. No. 35 at 4–7.)

### J. Habeas Petition Relative to Indictment No. 99–112

The grounds for habeas corpus relief set forth in Petitioner's Petition in No. 9:12–CV–957 are: (1) Petitioner's guilty plea was not knowing, intelligent or wilfully made in that his attorney forced him to plead guilty by refusing to provide trial services and indicating that he would intentionally lose if he was forced to take the case to trial in violation of Petitioner's Fifth, Sixth, and Fourteenth Amendment rights; (2) Petitioner was denied effective assistance of counsel in connection with his guilty plea in violation of the Fifth, Sixth, and Fourteenth Amendments because his counsel refused to provide representation at trial as agreed and instead acted as an advocate for the prosecution by using threats, malicious promises, coercion, and duress to force Petitioner to plead guilty; (3) Petitioner was improperly denied a hearing relating to non-record events on the § 440.10 motion made prior to the time the Appellate Division ruled that certain matters raised on Petitioner's direct appeals should be heard on a § 440.10 motion, and as a result has been left without an opportunity to seek relief; and (4) the trial court erred in denying Petitioner a hearing on his § 440.10 motion despite acknowledging that there were witnesses to non-record events leading up

to his involuntary plea, and the Appellate Division erred in failing to recognize that Petitioner had filed a § 440.10 motion. (No. 9:12–CV–957, Dkt. No. 1.)

## III. STANDARD OF REVIEW

### A. Exhaustion Requirement under the Antiterrorism and Effective Death Penalty Act of 1996

**\*16** The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs applications of incarcerated state court defendants seeking federal habeas corpus relief. *See* 28 U.S.C. § 2254. Before a federal court may consider an application for habeas corpus relief pursuant to 28 U.S.C. § 2254, the petitioner must generally have exhausted all the remedies available in the courts of the state in which he or she was convicted.[12] 28 U.S.C. § 2254(b)(1)(A); *see also Cullen v. Pinholster,* 563 U.S. ——, ——, 131 S.Ct. 1388, 1399 (2011) ("Section 2254(b) requires that prisoners must ordinarily exhaust state remedies before filing for federal habeas relief."); *Jones v. Murphy,* 694 F.3d 225, 246–47 (2d Cir.2012), *cert. denied,* —— U.S. ——, 133 S.Ct. 1247, 185 L.Ed.2d 192 (2013) ("Under AEDPA, a prisoner in custody pursuant to a state court judgment must generally exhaust state court remedies before seeking federal habeas corpus review.").

"Exhaustion of state remedies requires that a petitioner fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoner's federal rights."[13] *Cornell v. Kirkpatrick,* 665 F.3d 369, 375 (2d Cir.2011) (citation omitted); *Daye v. Attorney General of State of N.Y.,* 696 F.2d 186, 191 (2d Cir.1982) (*en banc* ) (proper exhaustion requires that both the factual and legal premises of claim be "fairly presented" to the state court). "Passage through the state courts, in and of itself, 'is not sufficient.' *Picard [v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) ]. To provide the State with the necessary 'opportunity,' the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), alerting that court to the federal nature of the claim and 'giv[ing] the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.' *O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999)."[14] *Wilens v. Superintendent of Clinton Correc. Fac.,* No. 11–CV–1938 (JFB), 2014 WL 28995, at \*5, 2014 U.S. Dist. LEXIS 182111, at \* 13 (E.D.N.Y. Jan.2, 2014).[15] Petitioner has the burden of proving exhaustion. *Colon v. Johnson,* 19 F.Supp.2d 112, 119–20 (S.D.N.Y.1998) (citations omitted).

A claim that was not fairly presented to the state courts and does not satisfy the requirements of 28 U.S.C. § 2254(b)(1) may still be "deemed" exhausted by the federal court in a habeas proceeding "if it is clear that the state court would hold the claim procedurally barred." *Grey v. Hoke,* 933 F.2d 117, 120 (2d Cir.1991); *see also Clark v. Perez,* 510 F.3d 382, 390 (2d Cir.2008) ("when a petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, the federal habeas court should consider the claim to be procedurally defaulted.") (citation and internal quotation marks omitted).

**\*17** If a claim is procedurally defaulted, a federal habeas court may not review the claim on the merits unless the petitioner can demonstrate both cause for the default and prejudice resulting therefrom, or if he or she can demonstrate that the failure to consider the claim will result in a miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). A petitioner may demonstrate cause with "a showing that the factual or legal basis for a petitioner's claim was not reasonably available to counsel, ... or that some interference by state officials made compliance impracticable, ... [or that] the procedural default is the result of ineffective assistance of counsel." *Bossett v. Walker,* 41 F.3d 825, 829 (2d Cir.1994) (quoting *Murray v. Carrier,* 477 U.S. 478, 488 (1986)). Only if a petitioner can establish cause will a court proceed to consider prejudice, which requires a showing of "actual prejudice resulting from the errors of which [petitioner] complains." *United States v. Frady,* 456 U.S. 152, 168, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) (internal quotation marks omitted). A fundamental miscarriage of justice involves showing that the petitioner is actually innocent of the crime. *Sweet v. Bennett,* 353 F.3d 135, 141 (2d Cir.2003).

### B. Mixed Petition

Case 9:21-cv-00174-AMN-ML    Document 47    Filed 01/23/24    Page 95 of 194
Carpenter v. Unger, Not Reported in F.Supp.3d (2014)
2014 WL 4105398

A habeas petition containing both exhausted and unexhausted claims is a "mixed petition." *Rhines v. Weber,* 544 U.S. 269, 271, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005). When presented with a mixed petition, a federal court may stay the petition and hold it in abeyance to give the petitioner an opportunity to exhaust all of his claims in state court. *Id.* at 276–77. However, the court should only do so where it "determines there was good cause for the petitioner's failure to exhaust." *Id.* Otherwise, a federal court must dismiss a mixed petition in its entirety on exhaustion grounds, *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), or allow petitioner to withdraw the unexhausted claims. Rhines, 544 U.S. at 278. In addition, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." [16] 28 U.S.C. § 2254(b) (2); *see also Pratt v. Greiner,* 306 F.3d 1190, 1197 (2d Cir.2002).

Petitioner's habeas petitions are both mixed petitions containing exhausted and unexhausted claims. As discussed in detail below, because the Court finds Petitioner's unexhausted claims to be without merit, no recommendation will be made to either stay one or both of the petitions while Petitioner exhausts, or to dismiss the petitions in their entirety.

### C. Federal Habeas Corpus Review
Under the AEDPA, an application for a writ of habeas corpus:

> shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

**\*18** 28 U.S.C. § 2254(d). Recognizing the principle that "[s]tate courts are adequate forums for the vindication of federal rights...., AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow,* 571 U.S. ——, —— 134 S.Ct. 10, 15–16 (2013).

"For the purposes of AEDPA deference, a state court 'adjudicate[s]' a state prisoner's federal claim on the merits when it (1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." *Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir.2001). Where AEDPA's deferential standard of review applies, "[a] state court's determination of a factual issue is presumed to be correct, and may only be rebutted by clear and convincing evidence." *Bierenbaum v. Graham,* 607 F.3d 36, 48 (2d Cir.2010), *cert. denied,* —— U.S. ——, 131 S.Ct. 1693, 179 L.Ed.2d 645 (2011) (citing 28 U .S.C. § 2254(e)(1)). "[A] state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen,* 558 U.S. 290, 293, 130 S.Ct. 841, 175 L.Ed.2d 738 (2010). Claims not adjudicated on the merits in state court are not subject to the AEDPA deferential standard of review and are reviewed *de novo. See Cone v. Bell,* 556 U.S. 449, 472, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009).

In determining whether a state court has adjudicated a claim "on the merits," a federal habeas corpus court must classify the state court decision as either (1) fairly appearing to rest primarily on federal law or to be interwoven with federal law; or (2) fairly appearing to rest primarily on state procedural law. *Jimenez v. Walker,* 458 F.3d 130, 145 (2d Cir.2006). Decisions in the first category are deemed to have been made "on the merits" of the federal claim. *Id.*

A decision "on the merits" is contrary to clearly established federal law when it is either contrary to Supreme Court precedent on a question of law or opposite to a relevant Supreme Court case with materially indistinguishable facts. [17] *Williams v. Taylor,* 529 U.S. 362,405–06 (2000). A state court unreasonably applies federal law when it correctly identifies the governing legal rule in a particular case but applies the rule to the facts in an "objectively unreasonable" manner. *Lockyer v. Andrade,* 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003). "It is settled that a federal habeas corpus may overturn a state court's application of

federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.' " [18] *Nevada v. Jackson,* U.S., —— U.S. ——, ——, 133 S.Ct. 1990, 1992, 186 L.Ed.2d 62 (2013) (quoting *Harrington v. Richter,* 562 U.S. ——, ——,131 S.Ct. 770, 786 (2011)). Where a claim has been adjudicated on the merits by a state court, federal habeas review is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen,* 131 S.Ct. at 1398.

**\*19** Federal habeas corpus review is limited to determining whether petitioner is in custody in violation of the Constitution, laws, or treaties of the United States. [19] *See* 28 U.S.C. §§ 2241(c), 2254(a); *see also Wainwright v. Goode,* 464 U.S. 78, 83, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983) ( "[F]ederal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension."). Federal habeas relief does not "lie for errors of state law." *Swarthout v. Cooke,* —— U.S. ——, 131 S.Ct. 859, 861, 178 L.Ed.2d 732 (2011). "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Richter,* 131 S.Ct. at 786; *see also Jean v. Greene,* 523 F. App'x 744, 747 (2d Cir.2013) ("Under AEDPA, the deference we ascribe to the determination of the state court is 'high[ ],' and we must give the state court's decision 'the benefit of the doubt.' ") (quoting *Cullen,* 131 S.Ct. at 1398).

## III. ANALYSIS OF CLAIMS ASSERTED BY PETITIONER IN NO. 9:10–CV–1240 [20]

### A. Claim that Petitioner's Guilty Plea to Rape in the Second Degree Under Indictment No. 98–82 was not Voluntarily, Knowingly, and Intelligently Made

Petitioner claims that he was coerced into pleading guilty as a result of threats made by Judge Smith during an in-chambers plea discussion with counsel regarding Indictment Nos. 98–82 and 99–112. (Dkt. No. 35 at 4–5.) According to Petitioner, Adinolfi informed him of Judge Smith's threats, and the threats induced him to plead guilty. (Dkt. No. 46–4 at 54.)

Petitioner asserted the claim that his guilty plea under Indictment No. 98–82 was not voluntarily, knowingly, and intelligently made in his direct appeal. *Id.* at 234–37. Respondent has conceded that the claim was exhausted in state court . [21] (Dkt. No. 44 at 30.)

"A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient knowledge of the relevant circumstances and likely consequences.' " *Bradshaw v. Stumpf,* 545 U.S. 175, 183, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005) (citing *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). [22] "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). A guilty plea must be voluntary, knowing, and intelligent "because a guilty plea constitutes a waiver of three constitutional rights: the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination." *Parke v. Raley,* 506 U.S. 20, 29, 113 S.Ct. 517, 121 L.Ed.2d 391 (1973). "A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void." [23] *Machibroda v. United States,* 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962).

#### 1. *Petitioner's Guilty Plea*

A court may determine whether a defendant knowingly and voluntarily entered into a plea bargain by, among other things, his allocution statements. *United States v. Torres,* 129 F.3d 710, 715 (2d Cir.1997). Sworn statements made by a defendant in entering a guilty plea carry "a strong presumption of verity." *Blackledge v. Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). "[T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge in accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings" to withdraw the plea or vacate the judgment of conviction based on the plea. *Id.* at 73–74.

Carpenter v. Unger, Not Reported in F.Supp.3d (2014)
Case 9:21-cv-00174-AMN-ML    Document 47    Filed 01/23/24    Page 97 of 194
2014 WL 4105398

**\*20**  On Petitioner's direct appeal, the Appellate Division rejected his contention that his guilty plea was not intelligent, knowing, and voluntary because it was procured by duress from Judge Smith, finding that "[w]ith regard to the 1998 indictment, the record clearly reflects a voluntary, knowing and intelligent plea without any coercion. In fact, defendant stated during the colloquy that he had not been threatened or coerced into entering his plea. Accordingly, we find that the plea was properly entered...." *Carpenter,* 939 N.Y.S.2d at 660. The record of Petitioner's plea allocution supports the conclusion reached by the Appellate Division.

Judge Smith fully explained the terms of the plea agreement to Petitioner. (Dkt. No. 46–1 at 17–20.) After Petitioner was sworn in, the Judge informed him that by pleading guilty he would be giving up his rights to a trial by jury, to call witnesses to testify on his behalf, and to present a defense, and asked Petitioner whether he understood the rights he would be giving up. *Id.* at 21–22. Petitioner responded in the affirmative. *Id.* at 22. Petitioner acknowledged that no one had promised him anything other than the sentences proposed under Indictment Nos. 98–82 and 99–112. *Id.* at 22–23. The record from Petitioner's July 31, 2000, plea allocution reveals that Judge Smith questioned him further and Petitioner responded as follows:

> Court: Has anybody threatened you, forced you, coerced you in any way in order to get you to plead guilty?
>
> Defendant: No, your Honor.
>
> Court: Are you telling me you're pleading guilty after having conferred with your attorney?
>
> Defendant: Yeah.
>
> Court: And this plea that you're entering freely and voluntarily, this is what you want to do?
>
> Defendant: Yes, your Honor.
>
> Court: And are you satisfied with the services of your attorney in this case?
>
> Defendant: Yes, your Honor.
>
> Court: Do you understand that ... your plea of guilty will have the same legal effect, this will mean exactly the same thing as if you did go to trial on August 14th and as a result at the end of that trial, a jury found you guilty of this charge, do you understand?
>
> * * *
>
> Defendant: Yes.
>
> > Court: Do you also realize, sir, by pleading guilty you're going to be admitting to me on April 26th, 1998, in Cortland County you engaged in sexual intercourse with a female who was less than 14 years old, specifically-
>
> * * *
>
> Court: ... Those are the legal admissions you make if you plead guilty, you understand that?
>
> > Defendant: Yes, your Honor.

*Id.* at 23–25. After Petitioner responded in the affirmative to Judge Smith's question whether Petitioner admitted having sexual intercourse with the victim, the Court accepted his plea of guilty to rape in the second degree.[24] *Id.* at 28.

2. *Circumstances Surrounding Petitioner's Guilty Plea*

2014 WL 4105398

While the voluntariness of a guilty plea "can be determined only by considering all of the relevant circumstances surrounding it," *Brady,* 379 U.S. at 750, "[a] defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea." *United States v. Hirsch,* 239 F.3d 221, 225 (2d Cir.2001) (citation and internal quotation marks omitted).

**\*21**  In support of his *pro se* motion to vacate his guilty plea under Indictment No. 98–82 on the grounds it was made under duress, Petitioner claimed that he had always resisted pleading guilty because he was innocent and had only done so because of Judge Smith's threats. (Dkt. No. 46–4 at 55.) However, in a letter to ADA Franklin, dated June 1, 2000, nearly two months before Petitioner's guilty plea, Adinolfi stated that Petitioner had indicated to him that he would plead guilty to rape in the second degree on Indictment No. 98–82, conditioned upon a sentence of one and a half to three years, to run concurrently with his sentences on the probation violation and Indictment No. 99–112. (Dkt. No. 46 at 240.)

At his September 11, 2000, sentencing, Petitioner claimed his innocence was established by the victim's hospital records which did not establish penetration and showed no semen, no hair, no sexually transmitted disease, no trauma, and no indication of rape. [25] (Dkt. No. 46–1 at 158.) However, the records did reflect the presence of sperm consistent with Petitioner's DNA on the victim's underwear. (Dkt. No. 46 at 32–33, 43–44.) In addition, the Appellate Division, in reinstating the second degree rape charge dismissed by Judge Avery, concluded that there was legally sufficient evidence before the grand jury to support the element of penetration required for a rape indictment. *People v. Carpenter,* 268 A.D.2d 798, 702 N.Y.S.2d 228, 229 (3d Dep't 2000).

Petitioner also contends that an affirmation submitted by Adinolfi following Petitioner's guilty plea under Indictment No. 98–82 supports his claim that he was coerced to plead guilty by Judge Smith's threats. [26] (Dkt. No. 50 at 10.) In the affirmation submitted by Adinolfi, in which he requested that the Public Defender's Office be relieved as counsel for Petitioner in both cases, Adinolfi identified as one reason for the request that "[t]he defendant also alleges, possibly with some merit, that your affiant could be a witness regarding some of the claims in his *pro se* motions for vacatur and recusal of Hon. Martin Smith." (Dkt. No. 46–4 at 59.) Petitioner has interpreted Adinolfi's statement as support for his claim that Judge Smith made threats during the in-chambers conference with counsel. (Dkt. No. 50 at 10.) However, it appears that in his affirmation Adinolfi went no further than to agree that there was some merit in Petitioner's argument that he might be a witness, not that he would testify that Judge Smith had issued threats. That limited interpretation finds support in Adinolfi's refusal to file a motion to withdraw Petitioner's guilty plea on Indictment No. 98–82 and to recuse Judge Smith because there were no "non-frivolous issues on which to file motions for recusal or withdrawal of [Petitioner's] Guilty Plea," and "[a]ttorneys are ethically obligated not to file frivolous motions." [27] (Dkt. No. 46–1 at 36–37.)

### 3. *Court's Recommendation*

Evidence supporting Petitioner's self-serving statements contradicting his plea allocution adequate to overcome the strong presumption of verity of statements made by him in his plea allocution, *see Blackledge,* 431 U.S. at 74, is clearly missing from the state court record. There is nothing in the state court record or relevant law that would render the state court's determination on Petitioner's guilty plea so erroneous that "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Richter,* 131 S.Ct. at 786. Therefore, the Court recommends that Petitioner's claim that his guilty plea under Indictment No. 98–82 was not voluntary, knowing, and intelligent be denied. [28]

### B. Claim that Judge Smith Violated Federal Rule of Criminal Procedure 11(c)(1) Prohibiting the Court From Participating in Plea Discussions

**\*22**  Petitioner claims that Judge Smith violated Federal Rule of Criminal Procedure 11(c)(1) by actively participating in the plea discussions, and that his coercive tactics forced Adinolfi to quit representing Petitioner and forced him to plead guilty to a charge of which he was innocent under Indictment No. 98–22 and to agree to the withdrawal of his motion to withdraw his pending guilty plea under Indictment No. 99–112. (Dkt. Nos. 35 at 5; 35–1 at 10–14.)

Rule 11(c) (1), governing guilty pleas, prohibits judicial involvement in plea discussions. *United States v. Davila,* 569 U.S. ——, ——, 133 S.Ct. 2139, 2146, 186 L.Ed.2d 139 (2013). "[T]he prohibition was included out of concern that a defendant might be induced to plead guilty rather than risk displeasing the judge who would preside at trial." *Id.* Rule 11(c)(1) was adopted as a prophylactic measure. *Id.* at 2149. The Rule was not "impelled by the Due Process Clause or any other constitutional requirement." *Id.* There is no clearly established federal law providing otherwise.

Furthermore, Rule 11(c)(1) does not apply to state court judges. *McMahon v. Hodges,* 382 F.3d 284, 289 n. 5 (2d Cir.2004). State court judges in New York are permitted to participate in plea negotiations with defendants. *Id.* (citing *People v. Fontaine,* 28 N.Y.2d 592, 319 N.Y.S.2d 847, 268 N.E.2d 644 (1971)); *see also Bivens v. Poole,* 302 F. App'x. 598, 599 (9th Cir.2008) ( "[T]here is no clearly established federal law, as determined by the Supreme Court of the United States, prohibiting a state court's participation in plea negotiations"). Inasmuch as federal habeas review is limited to whether petitioner is in custody in violation of the Constitution, laws, or treaties of the United States, which does not include Rule 11(c)(1), the Court recommends that Petitioner's claim for violation of the Rule be denied.

### C. Ineffective Assistance of Counsel Claim on Indictment No. 98–82

Petitioner has asserted an ineffective assistance counsel claim with respect to Adinolfi's legal representation on Indictment No. 98–82. (Dkt. No. 35.) Petitioner claims that Adinolfi quit representing him and refused to provide him with legal services at the time he pleaded guilty under the indictment before Judge Smith, thereby allowing the Judge to force his will on Petitioner by forcing him to plead guilty. *Id.* at 5, 7; Dkt. Nos. 35–1 at 2–3, 12; 50 at 41–42, 44.

On his direct appeal, Petitioner claimed that Adinolfi had provided ineffective assistance of counsel by: "(1) advising him to accept the plea deal based upon Judge Smith's threats and his political power; (2) acting at cross-purposes with Mr. Carpenter when Mr. Carpenter moved to withdraw his guilty plea; and (3) failing to adequately communicate with him after Mr. Carpenter's guilty plea was entered." *Id.* at 247–249. The Appellate Division rejected Petitioner's contention that Adinolfi's refusal to join in Petitioner's motion to withdraw his guilty plea constituted ineffective representation. *Carpenter,* 939 N.Y.S.2d at 660.

**\*23**  The Court found that the remainder of Petitioner's ineffective assistance claims with regard to Adinolfi implicated matters outside the record more properly addressed in a CPL Article 440 motion. *Id.* Petitioner did not assert an ineffective assistance of counsel claim in the counseled CPL § 440.10 motion made and denied before his direct appeal and has made no further CPL § 440.10 motions. (Dkt. No. 46–3 at 3–21, 52–53.)

Respondent has argued that Petitioner's ineffective assistance of counsel claim against Adinolfi is unexhausted except as to his claim that Adinolfi refused his request to move for withdrawal of Petitioner's guilty plea, which is exhausted.[29] (Dkt. No. 44 at 30.) Respondent asserts that Petitioner's claims that Adinolfi advised him to accept the plea deal based upon Judge Smith's threats and his political power and failed to adequately communicate with him after his guilty plea was entered, are unexhausted because Petitioner has not filed a CPL § 440.10 motion subsequent to his direct appeal. *Id.* at 34.

The Sixth Amendment mandates that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const., amend VI. "[T]he right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). The Sixth Amendment right to counsel extends to the plea-bargaining process and sentencing. *Lafler v. Cooper,* 566 U.S. ——, ——,132 S.Ct. 1376, 1384 (2012). To prevail on an ineffective assistance of counsel claim in connection with a guilty plea, a habeas petitioner must satisfy the two-prong test set forth in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), which requires a showing that his or her counsel's performance was deficient, and that the deficient performance caused actual prejudice to the petitioner.[30] *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

Case 9:21-cv-00174-AMN-ML    Document 47    Filed 01/23/24    Page 100 of 194
Carpenter v. Unger, Not Reported in F.Supp.3d (2014)
2014 WL 4105398

Recently, in *Titlow,* ––– U.S. ––––, 134 S.Ct. 10, 13, 187 L.Ed.2d 348 (2013), the Supreme Court, reiterated the requirement that federal courts use a " 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." (quoting *Cullen,* 131 S.Ct. at 1403. In *Richter,* ––– U.S. ––––, ––––, 131 S.Ct. 770, 786, 178 L.Ed.2d 624, addressing the *Strickland* standard and its relationship to the AEDPA, the Supreme Court explained:

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [*Strickland* ], 466 U.S. at 688[ ]. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.,* at 689[ ]. The challenger's burden is to show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.,* at 687[ ].

> **\*24** With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." *Id.* at 693[ ]. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.,* at 687[ ].

> "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky,* 559 U.S. [356, 371], 130 S.Ct. 1473, 1485[ ] (2010).... Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge..... The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom." *Strickland,* 466 U.S., at 690.

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult [because] the standards created by *Strickland* and § 2254(d) are both "highly deferential" ... and when the two apply in tandem, review is "doubly" so.... Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. (some internal citations omitted).

### 1. *Refusal to File a Motion to Withdraw Petitioner's Guilty Plea* [31]

Adinolfi refused Petitioner's request to file a motion to withdraw his guilty plea and for Judge Smith's recusal on Indictment No. 98–82 because in his opinion, the motion would be frivolous. (Dkt. No. 46–1 at 36–37.) Effective assistance of counsel does not require the filing of every possible motion, rather only those that have a solid foundation. *United States v. Nersesian,* 824 F.2d 1294, 1322 (2d Cir.1987). "Counsel is certainly not required to engage in the filing of futile or frivolous motions." *Id.; see also Aparicio v. Artuz,* 269 F.3d 78, 99 (2d Cir.2001) ("The failure to include a meritless argument does not fall outside the 'wide range of professionally competent assistance' to which Petitioner was entitled.") (quoting *Strickland,* 466 U.S. at 690) (additional citation omitted); *United States v. Caputo,* 808 F.2d 963, 967 (2d Cir.1987) (holding that "trial counsel.. exercised sound professional discretion by declining to make a plainly frivolous suppression motion"); *Bristol v. Superintendent,* No. 9:04–CV–1230 (FJS), 2008 WL 2097160, at \*14, 2008 U.S. Dist. LEXIS 40388, at \*43 (N.D.N.Y. May 19, 2008) (counsel's performance cannot be deemed deficient for failing to bring a frivolous motion).

**\*25** Unlike this Court, Adinolfi was involved in all of the relevant proceedings regarding Petitioner's guilty plea, had knowledge of non-record based matters, interacted with Petitioner and opposing counsel in connection to the guilty plea, and was present at the in-chambers conference in which Judge Smith allegedly made the threats that Petitioner contends forced him to plead guilty. Adinolfi was, therefore, in a better position than this Court to determine that the motion Petitioner wanted him to make to withdraw the guilty plea was frivolous. *See Richter,* 131 S.Ct. at 788 (explaining why counsel's knowledge of the relevant proceedings warrants a deferential standard of review of claims of ineffective assistance of counsel).

Furthermore, the state court record is devoid of evidence supporting Petitioner's conclusory assertion that Judge Smith issued threats that coerced him to plead guilty, or any other factually or legally supported rationale for allowing Petitioner to withdraw his guilty plea. In sum, the state court record supports a finding that "[Adinolfi] properly declined to join in [Petitioner's] *pro se* motion to withdraw his plea since the motion lacked merit, and appointment new counsel was not required." *See Hines v. Miller,* 318 F.3d 157, 161, 163 (2d Cir.2003) ("[T]he [Supreme] Court has never specifically addressed a claim ... that [a] petitioner was denied his right to counsel because he was effectively unrepresented on his motion to withdraw his plea ... or as a claim that petitioner was denied the effective assistance of counsel because an actual conflict of interest [during a motion for plea withdrawal] adversely affected counsel's performance.") Therefore, applying the "doubly deferential standard of review that gives both the state court and the defense attorney the benefit of the doubt," *Cullen,* 131 S.Ct. 1403, the Court recommends that Petitioner's claim that Adinolfi's refusal to join him in moving to withdraw his guilty plea violated his Sixth Amendment right to counsel be denied.

### 2. *Ineffective Assistance of Counsel Claims that are Not Record Based*

"To properly exhaust an ineffective assistance of trial counsel claim that relies on evidence outside the pretrial and trial record ... the petitioner must raise it as part of a motion to vacate judgment under CPL § 440.10 and then seek leave to appeal to the Appellate Division." [32] *Griffin v. Suffolk County,* No. 13–CV–4375 (JFB), 2013 WL 6579839, at *3, 2013 U.S. Dist. LEXIS 176421, at *7 (E.D.N.Y. Dec.16, 2013). Petitioner's counseled § 440.10 motion did not include a claim of ineffective assistance of counsel against Adinolfi regarding his representation of Petitioner on his guilty plea under Indictment No. 98–82, or Adinolfi's alleged failure to communicate with Petitioner after the plea was entered. (Dkt. No. 46–3 at 7–21.)

Inasmuch as those ineffective assistance claims were not raised in the § 440.10 motion and were not decided on the merits on Petitioner's direct appeal because they were not recordbased, *Carpenter,* 939 N.Y.S.2d at 660, Respondent is correct that the claims have not been exhausted. (Dkt. No. 44 at 34.) The Court also agrees with Respondent that those claims are not procedurally barred in state court. CPL § 440. 10, the proper vehicle for challenging ineffective assistance of counsel claims that rely on evidence outside the record, has no statute of limitations. *See Griffin,* 2013 WL 6579839, at *3. Section 440.10(3) (c) does allows a state court to deny a motion to vacate a judgment where "[u]pon a previous motion made pursuant to this section, the defendant was in a position adequately to raise the ground or issue underlying the present motion but did not do so." However, since denial is discretionary, the provision does not impose an absolute bar on successive motions. *See Bravo v. Unger,* No. 10 CV 5659(VB), 2014 WL 201472, at *3, 2014 U.S. Dist. LEXIS 6349, at *9 (S.D.N.Y. Jan.16, 2014). Therefore, however unlikely, it is not impossible that a state court would consider a § 440.10 motion regarding Petitioner's non-record based claims of ineffective assistance against Adinolfi.

**\*26** Even though Petitioner's claim may not be procedurally barred, because Petitioner cannot satisfy either prong of the *Strickland* standard, the claim is plainly without merit. Therefore, the Court has concluded that granting a stay of Petitioner's habeas proceeding so that he can attempt to exhaust the claim in a state court § 440.10 motion would be inappropriate. *See Rhines,* 544 U.S. at 277 (staying a mixed petition when unexhausted claims are "plainly meritless" is an abuse of discretion); *Gantt v. Martuscello,* No. 9:12–CV–657, 2014 WL 112359, at *7, 2014 U.S. Dist. LEXIS 183258, at *18 (N.D.N.Y. Jan.10, 2014) (an unexhausted claim that is not procedurally barred because it could be presented in a state court § 440.10 motion should be dismissed if it is without merit rather than allowing a petitioner to pursue it).

In his plea allocution, Petitioner answered in the affirmative when asked if he was satisfied with the services of his counsel, stated under oath that he was pleading guilty freely and voluntarily and that no one had forced or coerced him into it, and admitted his guilt. (Dkt. No. 46–1 at 28.) *See Blackledge,* 431 U.S. at 74.

On his direct appeal, Petitioner argued that Adinolfi had rendered ineffective counsel by advising him to accept the plea agreement under Indictment No. 98–82 because of Judge Smith's threats. (Dkt. No. 46–3 at 247–48.) However, Petitioner's brief contains no citation to the record supporting the claim that Adinolfi advised him to plead guilty. *Id.* at 1–61. In his Amended Petition and supporting Memorandum of Law in proceeding No. 9:10–CV–1240, Petitioner claims that Adinolfi quit on him

2014 WL 4105398

after relaying Judge Smith's threats, despite Petitioner begging him to defend him at trial, leaving Petitioner to fend for himself with regard to the guilty plea. (Dkt. Nos. 35 at 5; 35–1 at 12.) In his Traverse, Petitioner contends that Adinolfi forced him to plead guilty. (Dkt. No. 50 at 44.) Neither claim finds support in the state court record.

In fact, Petitioner's non-record based claims that Adinolfi either advised or forced him to plead guilty are contradicted by Petitioner's August 18, 2000, affidavit in support of his *pro se* motion to withdraw his guilty plea under Indictment No. 98–82. In the affidavit, Petitioner wrote that "[c]ommendably, my attorney worked extremely hard on the defense of this case and I do not think he wanted me to plead guilty, however, he was duty-bound to convey to me what the Court had said. He left the decision up to me but I was *scared to death* of serving *life in prison* for crimes that I did not commit." (emphasis in original). (Dkt. No. 46–1 at 65.) *See Harris v. Hulihan,* No. 11 Civ. 3019(RA) (NIHD), 2012 WL 5265624, at *14, 2012 U.S. Dist. LEXIS 152361, at *38 (S.D.N.Y. Aug. 8, 2012) ("any advice about the likelihood of prevailing at trial is an important part of the decision-making process related to a plea offer.").

 **\*27**  Petitioner's non-record based claim that Adinolfi quit on him at the time of the plea on July 31, 2000, is also contradicted by the state court record. Petitioner's August 14, 2000, letter to Adinolfi asking him to prepare a motion to vacate the guilty plea reveals that Petitioner still considered Adinolfi to be his counsel after the guilty plea. *Id.* at 36. In addition, Petitioner's August 17, 2000, letter to Judge Smith identifies Adinolfi as his counsel on Indictment No. 98–82. *Id.* at 38. Although Adinolfi declined to make the motion, the letters clearly contradict Petitioner's claim that Adinolfi quit representing him on the day of the plea. *Id.* at 37.

Even if Adinolfi did advise Petitioner to plead guilty, Petitioner has failed to establish that Adinolfi's representation in connection with his guilty plea fell below an objective standard of reasonableness, *see Strickland,* 466 U.S. at 687–88, because under the circumstances, the plea bargain was quite favorable to Petitioner. Petitioner had been indicted on multiple counts under Indictment No. 98–82, and his plea bargain allowed him to plead to only one charge, almost certainly reducing the prison sentence that would have been imposed had he gone to trial and been convicted on all counts. (Dkt. No. 46–3 at 253–55.) In addition, the plea bargain allowed Petitioner to serve his sentence concurrently with the four to twelve year sentence he was already serving on the probation violation and his sentence under Indictment No. 99–112. *See Belle v. Superintendent,* No. 9:11–CV–0657 (NAM), 2013 WL 992663, at * 13, 2013 U.S. Dist. LEXIS 34481, at *36–37 (N.D.N.Y. Mar.13, 2013) (the highly favorable outcome as a result of the plea agreement was found to belie petitioner's ineffective assistance claims.)

Finally, even assuming, *arguendo,* that Adinolfi's performance fell below an objective standard of reasonableness, habeas relief would not be warranted because of Petitioner's failure to show prejudice. "In the context of a guilty plea, the defendant must show a reasonable possibility that but for counsel's errors the outcome would have been different—*i.e.,* the accused would not have pled guilty and would likely have been acquitted at trial, or would have received a significantly more favorable sentence." *Belle,* 2013 WL 992663, at * 13 (citing *Hill v. Lockhart,* 474 U.S. 52, 59–60, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). Plea negotiations had been ongoing between Adinolfi and the prosecution prior to the time Petitioner pleaded guilty, and Petitioner's guilty plea was not significantly different than the plea proposal to which Carpenter had agreed according to Adinolfi's June 1, 2000, letter to ADA Franklin. (Dkt. No. 46 at 240, 242.) Furthermore, while conviction may not have been certain, the finding of Petitioner's sperm on the victim's underwear does not allow for a finding that he would likely have been acquitted, or would have received a more favorable sentence. Moreover, there is no indication in the state court record that even if Adinolfi did fail to communicate adequately with Petitioner following his guilty plea, that failure prejudiced Petitioner in any way.

 **\*28**  In light of the foregoing, the Court recommends that Petitioner's unexhausted ineffective assistance of counsel claims relating to Adinolfi's representation on Indictment No. 98–82 be dismissed as entirely without merit.

### D. Claim that Judge Smith Lacked Jurisdiction to Require Petitioner to Withdraw His Motion to Withdraw his Guilty Plea Under Indictment No. 99–112

In his counseled § 440.10 motion, denied by Judge Ames, Petitioner argued that because the order of assignment from the Sixth Judicial District assigned Judge Smith to act as the County Court Judge solely for the purpose of handling Indictment No. 98–

Case 9:21-cv-00174-AMN-ML    Document 47    Filed 01/23/24    Page 103 of 194
Carpenter v. Unger, Not Reported in F.Supp.3d (2014)
2014 WL 4105398

82, Judge Smith went beyond his geographic jurisdiction in requiring Petitioner to withdraw his pending motion to withdraw his guilty plea under Indictment No. 99–112 as a part of his plea agreement under Indictment No. 98–82. (Dkt. No. 46–3 at 15–18.) Petitioner claims that, as a result, his guilty plea is null and void. *Id.*

Petitioner asserted the claim only in terms of state law, and Judge Ames, in rejecting the claim on the merits, gave no indication the federal constitution was implicated. (Dkt. No. 46–3 at 149.) Judge Ames found in the alternative that the claim was record based and should be raised on direct appeal. Petitioner did not include the claim on his subsequent direct appeal. *Id.* at 192–252.

Proper exhaustion requires that a prisoner alert the state court to the federal nature of a claim, so that the state courts will have a full opportunity to resolve any constitutional issues. *O'Sullivan,* 526 U.S. at 845. Since Petitioner presented the jurisdiction argument solely in state law terms, he failed to exhaust the claim for purposes of federal habeas review. Furthermore, the claim would be found procedurally barred by the state court because it is record-based, and Petitioner has offered no justification for his failure to raise it on the direct appeal. *See Perez,* 510 F.3d at 390 (when state court would find a petitioner's unexhausted claim to be procedurally barred, the federal habeas court should consider it to be procedurally defaulted .) Petitioner has not demonstrated cause for the default, since there is no apparent reason in the state court record why the claim could not have been raised on his direct appeal. *Coleman,* 501 U .S. at 750. In addition, Petitioner has failed to establish actual innocence. *See Sweet,* 353 F.3d at 141.

Petitioner's jurisdiction claim is also without merit. "A violation of [a state's] laws allocating ... jurisdiction among its various counties does not create a federal constitutional issue. As we stated in *United States v. Mancusi,* 415 F.2d 205, 209 (2d Cir.1969), 'no federal court to our knowledge has ever granted a writ where a state court's asserted lack of jurisdiction resulted solely from provisions of state law.' "[33] *United States ex rel. Roche v. Scully,* 739 F.2d 739, 741–42 (2d Cir.1984). Therefore, Judge Ames determination of Petitioner's jurisdictional claim on the merits was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law, and the Court recommends that Petitioner's jurisdiction claim be denied.

### E. Claim that the Prosecutor Used Improper Inducements to Convince Petitioner to Plead Guilty on Indictment No. 99–112

**\*29** Petitioner claims that the prosecutor used improper promises as inducements to convince him to accept a plea agreement under Indictment No. 99–112 in violation of his due process rights under the Federal Constitution. (Dkt. Nos. 35 at 6; 35–1 at 18–22.) The plea agreement provided for a three year determinate sentence and five years of post-release supervision. (Dkt. Nos. 46 at 226; 46–1 at 264.) Petitioner contends he was told that both the three year determinate sentence and the five year post-release supervision would run concurrently with the four to twelve year sentence he was serving for the probation violation and whatever sentence was imposed under Indictment No. 98–82, with the post-release supervision period beginning after three years even if he were still incarcerated. (Dkt. Nos. 35 at 6; 46–1 at 320.) Petitioner later learned that under New York law, the post-release supervision claim would not commence until he was released from incarceration.[34] (Dkt. No. 46–1 at 319–321.) Petitioner's claim spills over to Indictment No. 98–82 by virtue of his assertion that when Judge Smith discussed the requirement that Petitioner withdraw his motion to withdraw his guilty plea under Indictment No. 99–112, he promised Petitioner that his sentence under that indictment would be three years determinate without a five year period of post-release supervision. *Id.* at 20–21.

Petitioner did not raise the post-release supervision claim on his direct appeal. (Dkt. No. 46–3 at 192–252.) Petitioner did, however, raise the claim with regard to both indictments in his counseled § 440.10 motion. Respondent has argued that Petitioner failed to exhaust his postrelease supervision claim because the claim was asserted solely in state law terms. (Dkt. No. 44 at 32.) While it is true that Petitioner's counsel cited only state court decisions, *People v. De Cresente,* 64 A.D.2d 746, 406 N.Y.S.2d 933 (3d Dep't 1978), one of those decisions, clearly employed a constitutional analysis, relying on the Supreme Court decision in *Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), in which the Court held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be a part of the inducement or consideration, such promise must be fulfilled." Moreover, in his supporting affirmation, Petitioner's counsel,

echoing *Santobello,* argued that "[w]here the Court is a party to the plea bargain agreement and the sentence promised is one in which the Court is 'powerless' to impose, the Defendant should be given the benefit of the promise or permitted to withdraw his plea." (Dkt. No. 46–3 at 14.)

Judge Ames concluded that Petitioner's argument with regard to his guilty plea and sentence on Indictment No. 99–112 had no merit because:

> The transcript of the plea clearly shows that the Court said, "I am agreeing that I would go along with a determinate sentence of three years in a New York State correctional facility, with five years post-release supervision ... and that the *determinate sentence* would run concurrent with, meaning together, with the sentence you are currently serving on a probation violation" (Emphasis added). The Court promised that the three year *determinate sentence* would run concurrent, not that the five years post-release supervision would run concurrent. The defendant received his bargained for sentence and was not promised anything different. [35]

**\*30** *Id.* at 148–49; *see also* Dkt. No. 46 at 226.

The Judge also found to be without merit Petitioner's claim that his guilty plea under Indictment No. 98–82 should be vacated because Judge Smith promised a sentence of only three years determinate under Indictment No. 99–112. (Dkt. No. 46–3 at 148–49.) The claim was rejected on the merits based upon the fact that Judge Ames, who accepted Petitioner's guilty plea and imposed sentence under Indictment No. 98–82, had told Petitioner on the record in sentencing him under Indictment No. 99–112 that the sentence included a five year period of post-release supervision. *Id.* at 149.

There is no clearly established Supreme Court precedent that requires a state court judge to advise a defendant of mandatory post-release supervision before accepting a guilty plea. *See Facen v. Cully,* 787 F.Supp.2d 278, 284–85 (W.D.N.Y.2011); *Potter v. Green,* 04–CV–1343 (JS), 2009 WL 2242342, at \*6, 2009 U .S. Dist. LEXIS 64230, at \*19 (E.D.N.Y. July 24, 2009) ("[A]s indicated by several other district courts in this Circuit, there is no clearly established Supreme Court precedent that requires a state court judge to advise a defendant of mandatory PRS [post-release supervision] before accepting a guilty plea."); *see also Lockhart v. Chandler,* 446 F.3d 721, 724 (7th Cir.2006) ("There is no Supreme Court precedent for the proposition that a defendant must be advised of a term of MSR [mandatory supervised release] at the time he attempts to enter a plea of guilty. Quite the contrary, the Court has expressly declined to decide such an issue in the very similar context of parole. Therefore, [petitioner] faces an impossible hurdle in showing the state contradicted, or unreasonably applied, clearly established federal law as determined by the Supreme Court because the Court has expressly declined to decide the issue.") (citing *Lane v. Williams,* 455 U.S. 624, 630 n. 9, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982) ("We do not decide whether, to establish such a constitutional violation, respondents must claim that they in fact did not know of the parole requirement at the time they pleaded guilty or that they would not have pleaded guilty had they known of this consequence.")).

Furthermore, the state court record, as Judge Ames indicated in his rejection of Petitioner's post-release supervision claim on the merits, does reveal that the Court clearly indicated to Petitioner that it was the three year determinate sentence under Indictment No. 99–112 that would run concurrently with the other sentences, not the five year post-release supervision sentence. (Dkt. No. 46 at 226.) Therefore, the state court record does not support Petitioner's claim that he was promised by Judge Ames that the post-release supervision period would commence running after three years even if he was still incarcerated, or that he was promised by Judge Smith that the post-release supervision period would not be a part of his sentence under Indictment No. 99–112.

**\*31** Given the absence of Supreme Court precedent supporting Petitioner's due process argument, and the state court record showing that Petitioner was not promised that the five year post-release supervision period imposed under Indictment No. 99–112 would run concurrently with his probation violation prison term, the Court recommends that Petitioner's post-release supervision claim be denied.

### F. Claim of Prosecutorial Misconduct on Indictment No. 98–82

Case 9:21-cv-00174-AMN-ML    Document 47    Filed 01/23/24    Page 105 of 194
Carpenter v. Unger, Not Reported in F.Supp.3d (2014)
2014 WL 4105398

Petitioner claims that the prosecutors delayed in turning over exculpatory evidence—hospital records that in Petitioner's eyes disproved penetration—which would have mandated an affirmance by the Appellate Division of Judge Avery's order dismissing the second degree rape claim against Petitioner in Indictment No. 98–82. [36] (Dkt. No. 35 at 4, 7–9.) Petitioner argues that the prosecutorial misconduct resulted in the violation of his due process rights under the Federal Constitution. *Id.* Petitioner did not include the claim in either his counseled § 440.10 motion or on his direct appeal. (Dkt. Nos. 46–3 at 3–21, 52–53; 46–3 at 192– 252.) Therefore the claim is unexhausted. However, the claim may be deemed exhausted and procedurally defaulted because it is clear that the state court would hold the claim procedurally barred. *See Perez,* 510 F.3d at 390.

Even if Petitioner had exhausted his prosecutorial misconduct claim on the merits, federal habeas review would be precluded under *Tollett v. Henderson,* 411 U.S. 258, 266, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). In *Tollett* the Supreme Court "reaffirm[ed] the principle recognized in the *Brady* trilogy: a guilty plea represents a break in the chain of events which has preceded it in the criminal process. [37] When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offence with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann [v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).]" [38] *See also Coward v. Bradt,* No. 9:11–CV–1362 (LEK/CFH), 2013 WL 6195751, at *15, 2013 U.S. Dist. LEXIS 168931, *32 (N.D.N.Y. Nov.27, 2013) (claim of prosecutorial misconduct prior to guilty plea barred under *Tollett); McCormick v. Hunt,* 461 F.Supp.2d 104, 111 (W.D.N.Y. Nov.20, 2006) ("[I]t is well-settled that '[a] defendant who pleads unconditionally guilty while represented by counsel may not assert independent claims relating to events that occurred prior to the entry of the guilty plea' ") (quoting *United States v. Coffin,* 76 F.3d 494, 497 (2d Cir.1996)).

Given the foregoing, the Court recommends that Petitioner's prosecutorial misconduct claim be denied

### G. Claim Regarding Petitioner's *Pro Se* Motion to Withdraw his Guilty Plea Under Indictment No. 98–82

**\*32** Petitioner's Amended Petition can be liberally construed to assert a claim that Judge Smith violated his right to due process by denying his motion to withdraw his guilty plea under Indictment No. 98–82 or, at the very least, by not holding an evidentiary hearing. (Dkt. Nos. 35 at 4; 35–1 at 3.) Petitioner asserted the claim on his direct appeal, arguing that the motion should have been granted, or at least a hearing should be held because of: "(1) his prompt request to withdraw the plea; (2) the threats made by Judge Smith that induced Mr. Carpenter's guilty plea; (3) his continuous statements of innocence; and (4) Mr. Adinolfi acted at cross-purposes with him with regard to this motion." (Dkt. No. 46–3 at 241.) The Appellate Division found that "the plea was properly entered and that County Court did not abuse its discretion in denying the motion to withdraw his plea without a hearing." *Carpenter,* 939 N.Y.S.2d at 660.

On his direct appeal, Petitioner failed to fairly present the federal constitutional nature of his claim, relying instead on state law. [39] Therefore, Petitioner's claim is unexhausted and procedurally defaulted, and Petitioner has failed to show cause for the default or actual innocence. *See Coleman,* 501 U.S. at 750.

The claim is without merit in any event. The Court has rejected Petitioner's claim that his plea under Indictment No. 98–82 was not voluntary, knowing, and intelligent, *see* Part III. A, *supra,* and relies upon the same reasoning in rejecting his claim with regard to his *pro se* motion to withdraw his guilty plea. [40] Furthermore, both federal and state precedent have established that a criminal defendant is not entitled as a matter of right to an evidentiary hearing on a motion to withdraw a guilty plea. *See Hines v. Miller,* 318 F.3d 157, 162 (2d Cir.2003) (collecting cases); *see also Reed v. Brown,* No. 10 Civ. 3072(PGG)(AJP), 2011 WL 498363, at *8–9, 2011 U.S. Dist. LEXIS 14147, at *31–36 (S.D .N.Y. Feb. 14, 2011) (collecting cases). The Court concluded in *Hines* that in light of the precedents, the failure to hold an evidentiary hearing on a motion to withdraw a guilty plea "does not offend a deeply rooted or 'fundamental' principle of justice." *Id.* at 162. *See Medina v. California,* 505 U.S. 437, 442–46, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992) ("[W]e should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States. Among other things, it is normally within the power of the State to regulate procedures under

which its laws are carried out, including the burden of producing evidence and the burden of persuasion, and its decision in this regard is not subject to proscription under the Due Process Clause unless it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.") (citations and internal quotation marks omitted).

Under AEDPA's deferential standards and the Supreme Court's decision in *Medina,* the Appellate Division's determination on Petitioner's direct appeal that the County Court did not abuse its discretion in denying Petitioner's request for a hearing on his motion to withdraw his guilty plea was not an unreasonable application of clearly established federal law. Therefore, the Court recommends that Petitioner's claim that denial of a hearing violated his due process rights be denied. [41]

## IV. ANALYSIS OF CLAIMS ASSERTED BY PETITIONER IN NO. 9:12–CV–957

**\*33**  In his Petition in No. 9:12–CV–957, Petitioner claims that his guilty plea was not voluntary, knowing, and intelligent because he was coerced to plead guilty by Butler; that he was denied effective assistance of counsel in connection with the guilty plea for the same reason; that he was improperly denied a hearing on his § 440.10 motion; and that the Appellate Division effectively overruled Judge Ames' denial of a hearing on Petitioner's § 440.10 motion, [42] erred in failing to recognize that Petitioner had filed a § 440.10 motion, and erred in failing to decide his plea-coercion and ineffective counsel claims even though Petitioner had preserved his claims by bringing a § 440.10 motion to vacate his guilty plea. [43] (No. 9:12–CV–957, Dkt. Nos. 1 at 4–5; 1–2 at 6–7, 21–22, 25–26, 30.)

### A. Petitioner's CPL § 440.10 Motion

In his counseled § 440.10 motion to vacate his guilty plea under Indictment No. 00–112, made by Petitioner prior to the perfection of his direct appeal, he asserted a claim that his guilty plea was not knowing and voluntary inasmuch he was coerced by Butler to make admissions and plead guilty. [44] (Dkt. No. 46–3 at 11–12.) Petitioner alleged that in non-record communications prior to the plea, Butler told him that because he owed Butler money and could not complete payments under the retainer agreement, Butler would not represent him zealously, would not prepare adequately, and would not provide a reasonable defense if the case went to trial. (Dkt. No. 46–3 at 52.) Judge Ames declined to hold an evidentiary hearing and denied the motion. *Id.* at 148, 150. The Appellate Division denied leave to appeal. [45] *Id.* at 188. One of the grounds asserted by Petitioner in his habeas Petition in No. 9:12–CV–957 is that his § 440.10 motion was improperly denied because Judge Ames declined to order a hearing on the non-record communications between Butler and Petitioner that coerced Petitioner to plead guilty under Indictment No. 99– 112. [46] (No. 9:12–CV–957, Dkt. No. 1 at 5.) Respondent concedes that Petitioner has exhausted his claim that his guilty plea under Indictment No. 99–112 was not voluntary, knowing, and intelligent. (Dkt. No. 44 at 31.)

In *Word v. Lord,* 648 F.3d 129, 132 (2d Cir.2011), the Second Circuit held that "alleged errors in a postconviction proceeding are not grounds for § 2254 review because federal law does not require states to provide a post-conviction mechanism for seeking relief." [47] *See Lackawanna County Dist. Attorney v. Coss,* 532 U.S. 394, 402, 121 S.Ct. 1567, 149 L.Ed.2d 608 (2001) (holding that the Constitution does not compel states to provide post-conviction proceedings for relief).

In *Lord,* the Court also acknowledged that a majority of its sister courts had accordingly concluded that procedural errors in state post-conviction proceedings do not provide a basis for redress. *Id. See, e.g., Lawrence v. Branker,* 517 F.3d 700, 717 (4th Cir.2008) ("[E]ven where there is some error in state post-conviction proceedings, a petitioner is not entitled to federal habeas relief because the assignment of error in state post-conviction proceedings represent an attack on a proceeding collateral to detention and not the detention itself."); *Bell–Rey v. Roper,* 499 F.3d 752, 756 (8th Cir.2007) ("Because the Constitution does not guarantee the existence of state post-conviction proceedings ... an infirmity in a state post-conviction proceeding does not raise an issue cognizable in a federal habeas application.") (citations and internal quotation marks omitted).

**\*34**  A number of district courts in this Circuit have relied upon *Lord* in ruling that claims that a trial court erred in not granting a hearing on a post-conviction motion do not implicate federal law and are not cognizable for habeas review. *See Simpkins v.*

Case 9:21-cv-00174-AMN-ML    Document 47    Filed 01/23/24    Page 107 of 194
Carpenter v. Unger, Not Reported in F.Supp.3d (2014)
2014 WL 4105398

*New York,* No. 13–CV–3228 (JG), 2013 WL 2948082, at *1, 2013 U.S. Dist. LEXIS 83998, at *2 (E.D.N.Y. June 14, 2013) (claim that petitioner was denied "fair process" on his application for a writ of *coram nobis* is not proper under § 2254, which is not a vehicle for challenging deficiencies in state court post-conviction proceedings); *Peters v. Poole,* No. 03–CV–2919 (ARR), 2013 WL 6048994, at *11, 2013 U.S. Dist. LEXIS 162231, at *29–30 (E.D.N.Y. Nov.13, 2013) (finding petitioner's claim that summarily denying his request for a hearing on his ineffective assistance of counsel claim in a § 440.10 motion violated his due process rights in a state post-conviction proceeding not cognizable on federal habeas review); *Smalls v. Bradt,* No. 11–CV–0915 (MAT), 2012 WL 3722222, at *10, 2012 U.S. Dist. LEXIS 121419, at *31 (W.D.N.Y. Aug.27, 2012) (petitioner's claim that state court erred in denying his request for a hearing on his CPL § 330.30 state postconviction motion does not implicate federal law and is not cognizable for habeas review); *Strong v. Warden, Attica Correctional Facility,* No. 10 CV 3452(MKB), 2012 WL 1886957, at *5, 2012 U.S. Dist. LEXIS 72114, at *15–16 (E.D.N.Y. May 22, 2012) (petitioner's claim of a procedural right to a hearing on a post-conviction motion under CPL § 330.30 does not implicate federal law and is not cognizable for habeas review).

Those decisions all appear to assume that denial of a hearing on § 440.10 is a procedural determination. There is, however, a split among district courts in the Second Circuit as to whether denial of a hearing on a § 440.10 motion is procedural, in which case under *Lord,* Petitioner's claim would not be cognizable for habeas review, or constitutes a determination on the merits for purposes of habeas review. In *Garcia v. Portuondo,* 104 F. App'x 776, 779 (2d Cir.2004), an unreported decision without precedential value, the Second Circuit held that the state court's refusal to hold a hearing on the defendant's § 440.10 motion was a determination on the merits and, therefore, not procedurally barred as an "independent and adequate state procedural ground" preventing habeas review absent a showing of cause and prejudice. *Id.* at 778. The Court's determination was based upon CPL § 440.30(4)(c), which provides that a court presented with a motion to vacate a judgment pursuant to § 440.10, "[u]pon considering the merits of the motion, ... may deny it without conducting a hearing if ... [a]n allegation of fact essential to support the motion is conclusively refuted by unquestionable documentary proof." CPL § 440.30(4)(c) (2005).

District courts are divided as to whether denial of § 440.10 motion under § 440.30(4)(b) also constitutes a determination on the merits. Section 440.30(4)(b), which although not specifically cited in Judge Ames decision denying Petitioner's motion appears applicable, provides that "[u]pon considering the merits of the motion, the court may deny it without conducting a hearing if ... the motion is based upon the existence or occurrence of facts and the moving papers do not contain sworn allegations substantiating or tending to substantiate all the essential facts, as required by subdivision one." CPL § 430.30(4)(b) (2005). *See, e.g., Giraldo v. Bradt,* No. 11–cv–2001 (JFB), 2012 WL 3835112, at *8–9, 2012 U.S. Dist LEXIS 126083, at *25–26 (E.D.N.Y. Sept. 5, 2012) (applying the reasoning in *Garcia* to denial of a § 440.10 motion under § 440.30(4)(b) and finding denial of a hearing to be a determination on the merits); *Williams v. Duncan,* No. 9:03–cv–568 (LEK/RFT), 2007 WL 2177075, at *14, 2007 U .S. Dist. LEXIS 103100, at *40 (N.D.N.Y. July 27, 2007) (holding that because "section 440.30(4) applies, by its own terms, only when a trial court denies a motion to vacate '[u]pon a consideration of the merits,' a denial pursuant to CPL § 440.30(4) is a decision on the merits."); *compare Williams v. McGinnis,* No. 04 Civ 1005(NGG), 2006 WL 1317041, at *10, 2006 U.S. Dist. LEXIS 29400, at *31 (E.D.N.Y. May 15, 2006) (holding that denial under § 440.30(4)(b) would be an independent and adequate state law procedural grounds due to the inadequacy of petitioner's papers).

  **\*35**  In this case, because Petitioner's claim that his guilty plea under Indictment No. 99–112 plea was not voluntary, knowing, and intelligent, and his related ineffective assistance of counsel claim with it, fail on both procedural[48] and substantive grounds, it is not necessary for the Court to take a position on the issue of whether denial of a hearing is procedural or on the merits. *See White v. West,* No. 04–CV–2886 (RRM), 2010 WL 5300526, at *24, 2010 U.S. Dist. LEXIS 128500, at *69 (E.D.N.Y. Dec.6, 2010) (court found it unnecessary to take a position on the issue because petitioner's claim failed on both procedural and substantive grounds).

The evidence submitted by Petitioner in support of the claim that he was coerced by Butler to plead guilty under Indictment No. 99–112 and essentially abandoned by Butler, was limited to his self-serving affidavit and a letter affidavit from his grandmother who had personal knowledge of the financial situation with Butler, but no personal knowledge of Butler's alleged coercion.[49] (Dkt. No. 46–3 at 52–53, 55–56.) Thus, the moving papers failed to include "sworn allegations substantiating or tending to

substantiate all the essential facts,'' CPL § 440.30(4)(b), lending support to Judge Ames' denial of the motion on the merits without a hearing.

Moreover, Petitioner's affidavit, accusing Butler of coercing him to plead guilty, directly contradicts his plea allocution. In his plea allocution before Judge Ames, Petitioner acknowledged that he was ready to enter a guilty plea to Sexual Abuse in the First Degree and answered Judge Ames' questions in the following manner:

> Court: Have you discussed this plea with your attorney?
>
> Defendant: Yes, your honor.
>
> Court: Are you entering this plea with his advice and consent?
>
> Defendant: Yes.
>
> Court: Are you satisfied with the services provided to you by Mr. Butler?
>
> Defendant: Yeah.
>
> * * *
>
> Court: Is there any reason why you do not understand what's happening here today?
>
> > Defendant: No.
> >
> > Court: Do you understand if you enter this plea you are confessing your guilt to this charge?
> >
> > Defendant: Yes, your Honor.
> >
> > Court: This is a class D violent felony offense, do you understand that?
> >
> > Defendant: Yeah, I'm aware of that.
> >
> > Court: ... I am agreeing that I would go along with a determinate sentence of three years in a New York state correctional facility, with five years postrelease supervision ... and that that determinate sentence would run concurrent with, meaning together with the sentence you are currently serving on a probation violation.
> >
> > * * *
>
> Court: Have any other promises been made to you other than what's been put on the record here today?
>
> > Defendant: No.
> >
> > * * *
>
> Court: Do you understand by pleading guilty you are giving up your right to have a jury trial?
>
> > Defendant: Yes.
> >
> > Court: ... Do you understand if I accept your plea of guilty you can't raise any of [your] defenses either to the court or to the jury, do you understand that?

**\*36**  Defendant: Yes.

Court: You can't come back here in three or four weeks and say "I changed my mind, I now want to have a trial and
assert defenses I want the jury or the court to hear," do you understand that?

Defendant: I understand that.

Court: Has anyone threatened you to get you to plead guilty today?

Defendant: No, your Honor.

Court: Are you pleading guilty to this crime of your own free will?

Defendant: Yeah.

(Dkt. No. 46–3 at 47.) During the plea allocution Petitioner admitted to having tied his estranged wife's hands behind her
back against her will and having engaged in sexual intercourse with her. *Id.* at 44–45.

As previously noted, sworn statements made by a defendant in entering a plea carry a "strong presumption of verity," *Blackledge,*
431 U.S. at 74, and "[a] defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient
grounds to withdraw the guilty plea." *Torres,* 129 F.3d at 715. At his plea allocution, Petitioner expressed satisfaction with
Butler's legal representation and clearly answered no when Judge Ames asked him if anyone had threatened him to get him
to plead guilty.

In addition, the guilty plea entered into by Petitioner was favorable to him. Plaintiff was indicted on four felonies under
Indictment No. 99–112 and was allowed to plead guilty to only one. (Dkt. No. 46 at 152–55.) He was also allowed to serve the
three year sentence imposed concurrently with his sentences for probation violation and under Indictment No. 98–82.

Finally, even after Butler was replaced by Adinolfi, and Petitioner's motion to withdraw his guilty plea under Indictment No.
99–112 was awaiting a hearing before Judge Ames, Petitioner agreed to withdraw his motion to withdraw his guilty plea as a
part of his guilty plea under Indictment No. 98–82. (Dkt. No. 46–1 at 17–19.) The Court has already recommended rejection of
Petitioner's claims that his guilty plea under Indictment No. 98–82, including the withdrawal of his motion, was not voluntarily,
knowingly, and intelligently and was not made with the effective assistance of Adinolfi as counsel.

In light of the foregoing, the Court concludes that there is nothing in the state court record or applicable law that would render
Judge Ames' decision on Petitioner's § 440.10 motion so erroneous that "there is no possibility fairminded jurists could disagree
it conflicts with [the Supreme] Court's precedents," *Richter,* 131 S.Ct. at 786, as to either the voluntary nature of Petitioner's
guilty plea or the effectiveness of Butler's representation. Therefore, the Court recommends that Petitioner's claim that his guilty
plea under Indictment No. 99–112 was not voluntary, knowing and intelligent be denied, and to the extent his § 440.10 motion
can be construed to assert an ineffective assistance of counsel claim, that claim be denied as well.

### B. Petitioner's Direct Appeal

**\*37**  Among the claims raised by Petitioner on his direct appeal included that his guilty plea under Indictment No. 99–112 was
not voluntary, knowing, and intelligent because he was coerced to plead guilty by Butler, and that Butler had provided ineffective
assistance of counsel with regard to the plea. *Id.* at 193. The claims were based upon essentially the same factual allegations
as Petitioner's § 440.10 motion. The Appellate Division found the claims were unpreserved for review on the appeal because
Petitioner had withdrawn his motion to withdraw his guilty plea and had not moved to vacate the judgment of conviction.
*Carpenter,* 939 N.Y.S.2d at 660. The Court also concluded that the factual basis of Petitioner's claim that Butler failed to
adequately communicate with him and coerced him into pleading guilty involved matters outside of the record and was not
properly the subject of a direct appeal.[50] *Id.* at 660–61.

Case 9:21-cv-00174-AMN-ML Document 47 Filed 01/23/24 Page 110 of 194
Carpenter v. Unger, Not Reported in F.Supp.3d (2014)
2014 WL 4105398

*1. Determination that Petitioner's Plea Coercion and Ineffective Assistance of Counsel Claims Were Not Preserved for Appellate Review*

It is well-settled that a petitioner's federal claim may be procedurally barred from federal habeas review if the state court resolved the issue on an "adequate and independent" state procedural ground. [51] *Coleman,* 501 U.S. at 729–33; *see also Cone,* 556 U.S. at 465. ("It is well established that federal courts will not review questions of federal law presented in a habeas petition application when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment."); *Harris v. Read,* 489 U.S. 255, 260, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (when the state court has explicitly relied upon a procedural default to dispose of a claim, there is an "adequate and independent state ground" for the judgment and federal habeas review is prohibited").

A state procedural rule is considered adequate if it is "firmly established and regularly followed by the state in question." *Garcia v. Lewis,* 188 F.3d 71, 77 (2d Cir.1999). To be independent, "the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case" by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar." *Harris v. Reed,* 489 U.S. 255, 261–62, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (internal quotation marks omitted).

The doctrine barring procedurally defaulted claims from being heard is not without exceptions and does not apply if the petitioner can show either: (1) "cause for the default and actual prejudice" attributed thereto; or (2) "that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750. " 'Cause' requires a showing that 'some objective factor external to the defense impeded counsel's efforts to raise the claim in state court' or that the basis for a claim was not reasonably available to counsel." *Brown v. Bradt,* No. 11–CV–972 (GLS/CFH), 2013 WL 1636070, at *11, 2013 U.S. Dist. LEXIS 55058, at *33–34 (N.D.N.Y. Mar.25, 2013) (quoting *Levine v. Comm'r of Corr. Servs.,* 44 F.3d 121, 127 (2d Cir.1995)). Unless a petitioner establishes cause, the question of prejudice is not reached. *Cotto v. Herbert,* 331 F.3d 217, 242–43 (2d Cir.2003). To show prejudice, a petitioner must demonstrate that the error by the state court worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski,* 316 F.3d 147, 152 (2d Cir.2003) (internal quotation marks omitted). A fundamental miscarriage of justice involves showing that the petitioner is actually innocent of the crime. *Sweet v. Bennett,* 353 F.3d 135, 141 (2d Cir.2003).

**\*38** "In determining whether New York's preservation rule constitutes an adequate state ground, [courts] look to the state's statutes and case law interpreting the rule." [52] *Richardson v. Greene,* 497 F.3d 212, 218 (2d Cir.2007). New York courts have long relied on the preservation requirement to deny challenges to guilty pleas and claims of ineffective assistance of counsel. *See, e.g., People v. Pascale,* 425 N.Y.D.2d 547, 547 (1980) ("The argument that the defendant should be relieved of his guilty plea was not raised by motion in the court of first instance prior to conviction and therefore has not been preserved for our review."); *see also People v. Jones,* 114 A.D.3d 1080, 981 N.Y.S.2d 465 (3d Dep't 2014) (claim that guilty plea was coerced by court's alleged threat to defendant to illegally sentence him was unpreserved because he withdrew his motion to withdraw his plea and the record did not reveal that he moved to vacate the judgment); *People v. Hernandez,* 110 A.D.3d 919, 972 N.Y.S.2d 697, 698–99 (2d Dep't 2013) ("The defendant's contention that her plea of guilty was not knowing, voluntarily, and intelligently entered into is unpreserved for appellate review, since she did not move to withdraw her plea on the ground prior to the imposition of sentence."); *People v. Bressard,* 112 A.D.3d 988, 976 N.Y.S.2d 302, 304 (3d Dep't 2013) (defendant's challenge to voluntariness of his guilty plea is unpreserved "because the record fails to indicate that he moved to withdraw his plea or vacate the judgment of conviction"); *People v. Carthage,* 85 A.D.3d 1198, 925 N.Y.S.2d 894, 895 (2d Dep't 2011) ("defendant's contention that his plea was not knowing, voluntary and intelligent is unpreserved for appellate review since he did not move to withdraw his plea on that ground prior to sentencing"); *People v. Finn,* 63 A.D.3d 755, 879 N.Y.S.2d 720, 720 (2d Dep't 2009) ("defendant's contention that his plea of guilty was not knowing, voluntary, and intelligent is unpreserved for appellate review since he did not move to withdraw his plea of guilty prior to sentencing"); *People v. Douglas,* 38 A.D.3d 1063, 831 N.Y.S.2d 585, 586 (3d Dep't 2007) ("Defendant's challenges to the validity of his plea and to the effectiveness of defense counsel's representation as it impacts the voluntariness of his guilty plea are unpreserved for our review given his failure to move to withdraw his plea or vacate the judgment of conviction.").

Habeas courts in this Circuit have recognized that failure to move to withdraw a guilty plea or move to vacate a judgment of conviction constitutes an independent and adequate state procedural rule barring federal habeas review. [53] *See, e.g., Rojas v. Heath,* No. 11 Civ. 4322(CS)(PED), 2012 WL 5878679, at *7, 2012 U.S. Dist. LEXIS 166853, at *21 (S.D.N.Y. Oct. 18, 2012) (well-settled that preservation of challenges to the validity of a guilty plea for appeal in New York requires a motion to withdraw the plea or motion to vacate the judgment of conviction); *Garcia v. Boucaud,* No. 09 Civ. 5758(RJH)(GWG), 2010 WL 1875636, at *6, 2010 U.S. Dist. LEXIS 142951, at *18 (S.D.N.Y. May 11, 2010) (failure to withdraw a guilty plea before sentencing constitutes an independent and adequate ground for the state court decision); *Moore v. Lape,* No. 08–CV–0474 (MAT), 2010 WL 3522227, at *3, 2010 U.S. Dist. LEXIS 93372, at *7 (W.D.N.Y. Sept.8, 2010) ("[h]abeas courts in this Circuit held have held that the failure to move to withdraw a guilty plea before sentencing constitutes an adequate and independent state ground barring habeas review.").

**\*39** This Court too concludes that the Appellate Division determination that Petitioner failed to preserve his challenge to his guilty plea under Indictment No. 99–112 and his related ineffective assistance of counsel claim constitutes a procedural bar to habeas review of the claims by this Court absent a showing by Petitioner of cause for the default and prejudice or his actual innocence. The Court also finds that the Appellate Division did not apply the preservation rule in an exorbitant manner in this case. [54]

Petitioner blames his failure to move to withdraw his guilty plea on his having been coerced by Judge Smith and Adinolfi into agreeing to withdraw his pending motion as a part of his plea agreement under Indictment No. 98–82, and on Adinolfi's ineffective assistance of counsel. However, the Court has rejected Petitioner's coercion claim under Indictment No. 98–82, as well as his claim that Adinolfi failed to provide effective assistance of counsel in connection with the plea, *see* Part III. A and C, *supra,* and likewise rejects the circumstances of Petitioner's guilty plea under that indictment as good cause for the default in moving to withdraw his guilty plea under Indictment No. 99–112. Furthermore, the Court finds that Petitioner has not provided evidence of his actual innocence. To the contrary, he admitted guilt in his plea allocution. (Dkt. No. 46–1 at 23–25.)

2. *Merits*

Were the Court permitted to address the merits of Petitioner's direct appeal claims of plea coercion and ineffective assistance of counsel, they would fail on the merits for the reasons set forth in Part IV. A, *supra.*

Therefore, the Court recommends that Petitioner's direct appeal claims be denied.

**ACCORDINGLY,** it is hereby

**RECOMMENDED** that Petitioner's Amended Petition for a Writ of Habeas Corpus in No. 9:10–CV–1240 (Dkt. No. 35) be **DENIED,** and it is further

**RECOMMENDED** that Petitioner's for a Writ of Habeas Corpus in No. 9:12–CV–957 (No. 9:12–CV–957, Dkt. No. 1) be **DENIED,** and it is further

**RECOMMENDED** that no certificate of appealability should be issued with respect to any of Petitioner's claims in Nos. 9:10–CV–1240 and 9:12–CV–957 as he has not made "a substantial showing of the denial of a constitutional right" pursuant to 28 U.S .C. § 2253(c)(2). *See* 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 112 (2d Cir.2000); and it is hereby

**ORDERED** that the Clerk's Office provide Petitioner with copies of all unpublished decisions cited herein.

Case 9:21-cv-00174-AMN-ML    Document 47    Filed 01/23/24    Page 112 of 194
Carpenter v. Unger, Not Reported in F.Supp.3d (2014)
2014 WL 4105398

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW. Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

**\*40** Filed March 28, 2014.

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 4105398

## Footnotes

1      *See also Mario v. P & C Food Markets, Inc.,* 313 F.3d 758, 766 (2d Cir.2002) ("Although Mario filed objections to the magistrate's report and recommendation, the statement with respect to his Title VII claim was not specific enough to preserve this claim for review. The only reference made to the Title VII claim was one sentence on the last page of his objections, where he stated that it was error to deny his motion on the Title VII claim '[f]or the reasons set forth in Plaintiff's Memorandum of Law in Support of Motion for Partial Summary Judgment.' This bare statement, devoid of any reference to specific findings or recommendations to which he objected and why, and unsupported by legal authority, was not sufficient to preserve the Title VII claim.").

2      *See Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137–38 (2d Cir.1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40, n. 3 (2d Cir.1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *cf. U.S. v. Raddatz,* 447 U.S. 667, 676, n. 3, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) ("We conclude that to construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts."); Fed.R.Civ.P. 72(b), Advisory Committee Notes: 1983 Addition ("The term 'de novo' does not indicate that a secondary evidentiary hearing is required.").

3      *See Mario,* 313 F.3d at 766 ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under either Fed.R.Civ.P. 72(b) or Local Civil Rule 72.3(a)(3)."); *Camardo v. Gen. Motors Hourly–Rate Emp. Pension Plan,* 806 F.Supp. 380, 382 (W.D.N.Y.1992) (explaining that court need not consider objections that merely constitute a "rehashing" of the same arguments and positions taken in original papers submitted to the magistrate judge); *accord, Praileau v. Cnty. of Schenectady,* 09–CV–0924, 2010 WL 3761902, at \*1, n. 1 (N.D.N.Y. Sept.20, 2010) (McAvoy, J.); *Hickman ex rel. M.A.H. v. Astrue,* 07–CV–1077, 2010 WL 2985968, at \*3 & n. 3 (N.D.N.Y. July 27, 2010) (Mordue, C.J.); *Almonte v. N.Y.S. Div. of Parole,* 04–CV–0484, 2006 WL 149049, at \*4 (N.D.N.Y. Jan.18, 2006) (Sharpe, J.).

4      *See also Batista v. Walker,* 94–CV–2826, 1995 WL 453299, at \*1 (S.D.N.Y. July 31, 1995) (Sotomayor, J.) ("I am permitted to adopt those sections of [a magistrate judge's] report to which no specific objection is made, so long as those sections are not facially erroneous.") (internal quotation marks and citations omitted).

1      Respondent has conceded that both proceedings are timely. (Dkt. No. 44 at 29–30.)

2    Petitioner's first filed habeas corpus proceeding, *Carpenter v. Unger,* No. 9:10–CV1240, has been designated as the lead case, and the parties have been directed to file all papers in proceedings No. 9:10–CV–1240 and No. 9:12–CV–957 under No. 9:10–CV–1240. *See* Text Order of August 20, 2012, in *Carpenter v. Unger,* No. 9:10–CV–1240.

3    The Amended Petition is identified as having been filed solely to seek habeas relief with regard to Indictment No. 98–82. (Dkt. No. 35 at 1). The claims in the Amended Petition that relate to Indictment No. 99–112 arise out of Petitioner's agreement to withdraw his motion to withdraw the guilty plea entered on Indictment No. 99–112 as a part of his guilty plea under Indictment No. 98–82. *Id.* at 5–7.

4    Unless otherwise indicated, docket references made herein refer to No. 9:10–CV–1240.

5    Petitioner was originally sentenced to a term of probation on a charge of Criminal Possession of a Controlled Substance in the Fourth Degree, Penal Law § 220.09. (Dkt. No. 46 at 214, 204.) The substance involved was crack cocaine. *Id.* at 214. At a probation violation hearing in Cortland County Court on June 15, 1999, Petitioner was found to have violated the terms of his probation by continuing to use crack cocaine and given an indeterminate sentence of four to twelve years, with a minimum of four years to be served. *Id.* at 172–73, 206–07, 211.

6    Petitioner initially moved to withdraw his guilty plea under CPL § 440.10. (Dkt. No. 46 at 252.) Petitioner's counsel filed the supplemental motion after determining that because no sentence had yet been imposed or judgment of conviction had yet been entered, the motion was properly made under CPL § 220.60(3), which provides in relevant part that "[a]t any time before the imposition of sentence, the court in its discretion may permit a defendant who has entered a plea of guilty to the entire indictment or to part of the indictment, ... to withdraw such plea, and in such event the entire indictment, as it existed at the time of such plea, is restored."

7    Plaintiff sent more than one letter to the CJC complaining about Judge Smith and claiming he had been coerced into pleading guilty. (Dkt. No. 46–1 at 57–58, 114–16.)

8    Petitioner also waived his right to appeal as a part of his guilty plea. (Dkt. No. 46–1 at 161.)

9    Petitioner claimed that the plea was fraudulent and illegal because Judge Ames told him that he would agree to a determinate sentence of three years and five years of post-release supervision which would run concurrently with the four to twelve year sentence for probation violation. (Dkt. Nos. 46–2 at 14.) In August of 2008, after learning that pursuant to Penal Law §§ 70.30(1) and 70.45.5(a), post-release supervision had to be calculated to commence upon his release from prison and would not, as he had thought, commence running as soon as he had served the three year determinate sentence, even though he was still incarcerated, Petitioner sought relief from the timing of the post-release supervision first from Judge Ames (Dkt. No. 46–1 at 203) and later in a proceeding under New York Civil Practice Rule and Laws Article 78, both without success. *Id.* at 235–329.

10    One of the issues raised by Petitioner in his original Petition in No. 9:10–CV–1240, filed on October 18, 2010, was that he had been deprived of a timely direct appeal from the judgment of conviction on Indictment No. 98–82. (Dkt. No. 1 at 4.) The Second Circuit has recognized that a failure to exhaust may be excused where there has been "a substantial delay in the state criminal appeal process." *Cody v. Henderson,* 936 F.2d 715, 718 (2d Cir.1991); *see* 28 U.S.C. § 2254(b)(1)(B)(ii) (excusing failure to exhaust where circumstances render state corrective process ineffective to protect rights of petitioner). The Court finds the ten year delay of Petitioner's direct appeal attributable to clerical errors in the Appellate Division Clerk's Office very disturbing. However, despite the delay, Petitioner did have the opportunity to seek review of non-record based claims under § 440.10 motion and ultimately to seek direct review of the record based claims on both indictments, including those claims Judge Ames had determined were record based and not the proper subject of Petitioner's § 440.10 motion.

11    The Court is mindful that, as with all *pro se* pleadings, a habeas corpus petition that is filed *pro se* must be construed liberally. *See Williams v. Kullman,* 722 F.2d 1048, 1050 (2d Cir.1983).

12 Exhaustion may be excused where it appears that "there is an absence of available state corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." *See* 28 U.S.C. § 2254(b)(1)(B)(i)-(ii).

13 The ways in which a state defendant may fairly present to the state courts the constitutional nature of his or her claims include: "(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *Daye v. Attorney. General of State of N.Y.,* 696 F.2d 186, 194 (2d Cir.1982).

14 Petitioner must seek discretionary review where it is available at the highest state court and raise the same federal constitutional claims. *O'Sullivan,* 526 U.S. at 847–48.

15 Copies of unreported cases cited herein will be provided to Petitioner. *See Lebron v. Sanders,* 557 F.3d 76 (2d Cir.2009).

16 In *Rhines v. Weber,* 544 U.S. 269, 277, 125 S.Ct. 1528, 161 L.Ed.2d 440 (2005), the Supreme Court determined it would be an abuse of discretion to stay a mixed petition when the unexhausted claims are "plainly meritless."

17 "Section 2254(d)(1)'s 'clearly established' phrase 'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decisions.' " *Lockyer v. Andrade,* 538 U.S. 63, 71, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). "[F]ederal law, as defined by the Supreme Court, may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." *Kennaugh v. Miller,* 289 F.3d 36, 42 (2d Cir.2002). "[C]ircuit precedent does not constitute clearly established Federal law, as determined by the Supreme Court ... and cannot form the basis for habeas relief under AEDPA." *Parker v. Matthews,* ––– U.S. ––––, 132 S.Ct. 2148, 2155, 183 L.Ed.2d 32 (2012) (citation and internal quotation marks omitted).

18 *See also Cullen,* 131 S.Ct. at 1399 (The § 2254(d) standard of review is a " 'difficult to meet,' *Harrington v. Richter,* 562 U.S. ––––, ––––, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011), and 'highly deferential standard' [which] demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti,* 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (*per curiam* ).").

19 Petitioner has the burden of proving by a preponderance of the evidence that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); *see also Smalls v. Batista,* 191 F.3d 272, 278 (2d Cir.1999).

20 Petitioner has claimed in both of his habeas proceedings that his guilty plea under Indictment No. 99–112 was not voluntary, knowing, and intelligent, and that he was entitled to a hearing on the claim asserted in his counseled CPL § 440.10. The Court will address those claims in its analysis of the Petition filed under No. 9:12–CV–957.

21 On his direct appeal, Petitioner did not identify a specific constitutional right as the basis for his claim that his guilty plea was not voluntarily, knowingly, and intelligently made, nor did he cite federal case law employing constitutional analysis. Respondent's concession of exhaustion is based on Petitioner having asserted the plea-coercion claim in "terms that brought to mind federal constitutional rights." (Dkt. No. 44 at 30.) *See Daye,* 696 F.2d at 194 (identifying "assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution" as a way to fairly apprise the state court of the constitutional nature of a claim). Because Respondent has unequivocally conceded exhaustion, the Court need not determine whether petitioner adequately alerted the state courts to the federal nature of his plea-coercion claim for purposes of habeas review. *See Cornell v. Kilpatrick,* 665 F.3d 369, 376–77 (2d Cir.2011) (where respondent unequivocally conceded, albeit erroneously, that a habeas petitioner exhausted a claim in the state courts, exhaustion is deemed waived and the claim may be considered on the merits).

22    The requirement that a guilty plea be a voluntary and intelligent choice derives from the Fifth Amendment privilege against compulsory self-incrimination. *See Boykin v. Alabama,* 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

23    A guilty plea is not coerced because a defendant is confronted with the threat of conviction and a severe punishment. *See Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978) ("While confronting a defendant with the risk of more severe punishment clearly may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable—and permissible—attribute of any legitimate system which tolerates and encourages the negotiation of pleas.") (citation and internal quotation marks omitted).

24    Petitioner requested an opportunity to speak with his counsel privately before admitting that he had sexual intercourse with the victim. (Dkt. No. 46–1 at 26.) Judge Smith granted the request. *Id.*

25    Petitioner claims he never would have pleaded guilty if he had seen the medical reports on the victim. (Dkt. No. 50 at 21.) However, the hospital records were turned over to defense counsel in February of 2000, and Petitioner did not plead guilty until July 31, 2000. (Dkt. Nos. 46 at 72; 46–1 at 20–28.)

26    *See Brady v. United States,* 397 U.S. 742, 751–52, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) (a guilty plea is constitutionally valid where it is "motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged."); *see also Gaines v. Murray,* No. 03–CV–016A, 2008 WL 4890249, at *5, 2008 U.S. Dist. LEXIS 94809, at 15 (W.D.N.Y. Nov.12, 2008) ("Every defendant involved in plea negotiations suffers the threat of conviction (often of greater charges or with a greater penalty) and must face such 'difficult choices.' ") (citing *Bordenkircher,* 434 at 364).

27    A statement made by Adinolfi at Petitioner's sentencing before Judge Ames under Indictment No. 99–112 on September 6, 2000, might arguably be construed as contradicting, in part, his letter of August 16, 2000, to Petitioner. (Dkt. No. 46–1 at 121.) In explaining why he believed there was a conflict of interest preventing him from continuing to represent Petitioner, Adinolfi stated that:

> [O]ne of the motions that Mr. Carpenter would like to make and which may have some merit, I would be a witness to it, a vacator motion before Judge Smith. Judge Smith in conference pretty much aligned that case, I believe its 98–82, with this case, 99–112, in that he was saying that if a plea was not entered in that court—in his court, and if vacator were granted in this court, he might take both cases and consolidate them for trial. And since as I guess I would likely be a witness to a vacator motion that Mr. Carpenter's succeeding assigned counsel would make, I can't be his attorney any more.

> *Id.* at 121–22. Adinolfi did not, however, describe Judge Smith's indication that he might consolidate the two cases for trial as a threat to Petitioner, nor did he suggest that Judge Smith had made any threats that could be found to have coerced Petitioner to plead guilty against his will. *Id.*

28    *See United States v. Davis,* 48 F. App'x 809, 811 (2d Cir.2002) ("During his plea allocution, [defendant] admitted his guilt under oath and in his own words, and stated that his plea was free and voluntary, that no threats or untoward promises had been made to induce his plea, and that he was satisfied with advice of counsel.... Although since his guilty plea [defendant] has consistently protested his innocence of the charges [and claims his counsel coerced him to plead guilty], a claim of innocence [and coercion by counsel] is not a basis for withdrawing a guilty plea unless supported by evidence.").

29    In the brief filed on Petitioner's behalf on his direct appeal, the sole reference to a federal constitutional right to the effective assistance of counsel was the statement "[t]he right to effective assistance of counsel is guaranteed by both the federal and state constitution" followed by a citation to *People v. Baldi,* 54 N.Y.2d 137, 444 N.Y.S.2d 893, 897, 429 N.E.2d 400 (1981), in which the New York Court of Appeals acknowledged a right to the effective assistance of counsel under the Sixth Amendment. (Dkt. No. 46–3 at 244.) Petitioner's argument of the issue was couched in state law terms and relied solely upon New York cases analyzing the claim under New York law and the New York

Constitution, with no mention of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and no application of the analysis to be applied to Sixth Amendment ineffective assistance of counsel claims set forth therein. Thus, there is some doubt in the Court's mind whether Petitioner fairly presented a federally based ineffective assistance of counsel claim regarding Adinolfi to the state court on his direct appeal. *See Cornell,* 665 F.3d at 376 ("mere mention of ineffective assistance of counsel ... without more was insufficient to alert the New York courts to the possible federal basis of the claim.") (citation and internal quotation marks omitted); *Gantt v. Martuscello,* No. 9:12–CV–657 (MAD/ CFH), 2014 WL 112359, at *9, 2014 U.S. Dist. LEXIS 183258, at *18 (N.D.N.Y. Jan.10, 2014) (finding a failure to exhaust ineffective assistance of counsel claim where petitioner had relied upon state cases that did not employ a federal constitutional analysis and did not cite federal cases employing the relevant constitutional analysis). Nonetheless, because Respondent has conceded exhaustion as to Adinolfi's refusal to move to withdraw Petitioner's guilty plea, the exhaustion requirement will be deemed waived as to that claim. *See Cornell,* 665 F.3d at 376–77 (exhaustion is waived when respondent unequivocally concedes exhaustion).

30    "Counsel should be strongly presumed to have rendered adequate assistance and made all decisions in the exercise of reasonable professional judgment." *Strickland,* 666 U.S at 690.

31    In his Traverse, Petitioner denies he is challenging Adinolfi's refusal to move to withdraw his guilty plea under Indictment No. 98–82 in habeas proceeding No. 9:10–CV–1240. (Dkt. No. 50 at 48.) Because of Petitioner's *pro se* status and because the claim was raised on Petitioner's direct appeal, the Court nonetheless considers it.

32    Claims are record-based "when a reviewing court could conclude that defendant's counsel was ineffective simply by reviewing the trial record without the benefit of additional background facts that would need to be developed through a post-conviction motion pursuant to CPL § 440.10." *Chatmon v. Mance,* No. 07–CV–9655 (KMK)(GAY), 2011 WL 5023243, at *9 n. 5, 2011 U.S. Dist. LEXIS 121453, at *26 n. 5 (Oct. 20, 2011) (citation and internal quotation marks omitted).

33    New York State Constitution Art. 6, § 11(a) provides in relevant part that "[t]he county court shall have jurisdiction ... over all crimes and other violations of law," thus giving Judge Smith subject matter jurisdiction over the criminal indictments at issue. Art. 6, § 26(c) provides that "a judge of the county court may perform, the duties of his office or hold court in any county and may be temporarily assigned ... to the county court ... in any county outside the city of New York...." Judge Smith was temporarily assigned to Cortland County to handle Indictment No. 98–82. Judge Ames noted in deciding Petitioner's § 440.10 motion that it was not unusual to settle multiple indictments in a comprehensive plea agreement even when the indictments involved different courts and different judges, and the fact that Petitioner withdrew his pending motion under Indictment No. 99–112 as a part of his plea under Indictment No. 98–82 did not mean that Judge Smith assumed jurisdiction over Indictment No. 99–112. (Dkt. No. 46–3 at 149.)

34    In his Memorandum Decision and Order in Petitioner's New York Civil Practice and Rules Article 78 proceeding challenging DOCCS' calculation of his sentence providing for the post-release supervision period to commence after Petitioner's release from prison, Acting Supreme Court Justice Mark H. Fandrich denied the petition on the grounds that under Penal Law § 70.30(1)(a), concurrent sentences are not served separately but made into one single indeterminate sentence, and pursuant to Penal Law § 70.45(5)(a), post-release supervision begins upon a person's release from imprisonment. (Dkt. No. 46–1 at 319–21.) The Appellate Division affirmed in *Carpenter v. Corcoran,* 75 A.D.3d 1110, 903 N.Y.S.2d 291 (4th Dep't), *lv. denied,* 79 A.D.3d 698, 912 N.Y.S.2d 291 (2010).

35    Judge Ames also found that with regard to the claim under Indictment No. 98–82, a § 440.10 motion was not the proper method of challenging the sufficiency of a plea made on the record. (Dkt. No. 46–3 at 149–50.) The Judge relied on CPL § 440.10(2)(c) which requires the court to deny a motion where sufficient facts appear on the record to have permitted an adequate review of the issue on appeal and the defendant unjustifiably failed to take or perfect an appeal. While the Second Circuit has held that a state court's reliance on CPL § 440.10(2)(c) constitutes an adequate and independent state ground precluding federal habeas review, *Reyes v. Keane,* 118 F.3d 136, 139 (2d Cir.1997), because Petitioner's direct

appeal was delayed for ten years through no apparent fault of his own, the Court finds that he has established cause for the procedural default, *see Coleman,* 501 U.S. at 750, and will consider Judge Ames' denial on the merits.

36    The claim that the prosecution engaged in misconduct by delaying the production of the victim's hospital records that showed no evidence of penetration is record based, and Petitioner did not include the claim in his direct appeal. Petitioner moved for a *subpoena duces tecum* to obtain the Cortland Memorial Hospital records relative to the criminal charges. *Id.* at 69–71. ADA Franklin responded with a February 23, 2000, letter to Adinolfi informing him that she did not realize until she reviewed the motion for a *subpoena duces tecum* that he had not received the hospital records. *Id.* at 72. According to the letter, copies of the records were enclosed. *Id.* In an April 21, 2000, Decision and Order, Judge Avery issued the requested *subpoena duces tecum* to the hospital. *Id.* at 122–25. The records were also produced by Cortland Memorial Hospital on May 12, 2000. *Id.* at 126–33.

37    The *Brady* trilogy includes *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); and *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970).

38    The evidence in the state court record supports the conclusion that failure to disclose the hospital records in a timely manner was an oversight rather than prosecutorial misconduct in any event. (Dkt. No. 46–72.)

39    Petitioner failed to cite federal or state cases employing constitutional analysis, failed to assert the claim in terms that called to mind a protected constitutional right, failed to allege a factual pattern well within the mainstream of constitutional litigation. *See Daye,* 696 F.2d at 194.

40    *See also United States v. Torres,* 129 F.3d 710, 715 (2d Cir.1997) ("A defendant's bald statements that simply contradict what he said at plea allocations are not sufficient grounds to withdraw the guilty plea."); *United States v. Bonilla,* 17 F. App'x 11, 13 (2d Cir.2000) ( "This Circuit has consistently affirmed denials of motions to withdraw guilty pleas when the defendant's allegations are directly contradicted by his clear statements at allocution that contained sufficient factual detail about the offense.") (citation and internal quotation marks omitted).

41    In his Amended Petition in No. 9:10–CV–1240, Petitioner also claimed that his constitutional rights were violated because Judge Ames failed to hold a hearing on his postconviction counseled § 440.10 motion that would have allowed Petitioner to question Adinolfi about the off-record events that led to his involuntary guilty plea under Indictment No. 98–82. (Dkt. No. 35–1 at 4.) However, the Petitioner's claim that his guilty plea under that indictment was not voluntary or knowing involved the five years of post-release supervision, which was record based. (Dkt. No. 46–3 at 18–20.) Since that claim was record based, there would have been no need for Adinolfi's testimony on a § 440.10 motion. *See also* Part IV. A, *infra,* supporting denial of the claim.

42    Although the Appellate Division found that Petitioner's coercion and ineffective assistance of counsel claims which implicated matters outside the record were more properly addressed in a § 440.10 motion, there is no language in the Court's decision either explicitly or impliedly overruling Judge Ames' denial of a request for a hearing. *See Carpenter* 93 A.D.3d 950, 939 N.Y.S.2d 658. In fact, Judge Ames' denial of Petitioner's § 440.10 motion was not before the Appellate Division for review on the direct appeal. *See People v. Finn,* 63 A.D.3d 755, 879 N.Y.S.2d 720 (2d Dep't 2009).

43    Even if Petitioner were correct in his claim that the Appellate Division erred in finding that he had not moved to vacate the judgment of conviction, and thus erroneously applied New York law with respect to the preservation rule, habeas relief does not lie for mere errors of state law that do not otherwise constitute a violation of federal law. *See Swarthout,* 131 S.Ct. at 861. Such errors must rise to the level of the federal constitution or federal law for habeas relief to lie. Petitioner's claim is without merit in any event. The non-record challenges to his guilty plea and legal representation in his § 440.10 motion were not before the Appellate Division on the direct appeal, and the record on that appeal would not have placed the Appellate Division on notice of the § 440.10 motion, on which the Appellate Division had previously denied leave to appeal. *See Finn,* 879 N.Y.S.2d at 720 (finding defendant's challenge to her guilty plea was unpreserved

because she had failed to move to withdraw the plea prior to sentencing even though she had made a § 440.10 motion to vacate the judgment of conviction because that motion was not properly before the Appellate Division on the direct appeal). Furthermore, since the Petitioner was statutorily foreclosed from obtaining review of record based claims on his § 440.10 motion, see CPL § 440.10(2), that motion would not have given the state courts "one full opportunity" to resolve the Petitioner's record based claims of plea coercion and ineffective assistance of counsel as required for exhaustion. *See O'Sullivan,* 526 U.S. at 845. In addition, because Petitioner failed to include the claimed errors by the Appellate Division in his application for leave to appeal to the Court of Appeals, those claims are unexhausted, and Petitioner has failed to show good cause for failure to exhaust or actual innocence. *See DeLee v. Graham,* No. 9:11–CV– 653 (MAD/CFH), 2013 WL 3049109, at *7, 2013 U.S. Dist. LEXIS 84519 ( N.D.N.Y. June 17, 2013) (claims petitioner failed to include in his application for leave to appeal to the Court of Appeals are unexhausted).

44    The § 440.10 motion can also be liberally construed to assert an ineffective assistance of counsel claim intertwined with Petitioner's coercion claim. However, the ineffective counsel claim was not fairly presented as a federal claim and, as argued by Respondent, is unexhausted. (Dkt. No. 44 at 34–35. *See Gantt,* 2014 WL 112359, at *9 (failure to exhaust ineffective assistance of counsel claim where petitioner did not employ a federal constitutional analysis or cite federal cases employing relevant constitutional analysis). The claim is, in any event, without merit given Petitioner's plea allocution indicating he was satisfied with Butler and the lack of evidence in the state court record showing that Butler's representation fell outside of "the wide range of professionally competent assistance" to which Petitioner was entitled. *Strickland,* 466 U.S. at 690. Furthermore, the highly favorable outcome as a result of the plea agreement— allowing a guilty plea to only one of four charges and a concurrent sentence—belies Petitioner's claim of ineffective counsel. *See Belle,* 2013 WL 992663, at * 13.

45    "Although New York's Criminal Procedure Law does not provide for an appeal as a matter of right from a decision denying a motion pursuant to Section 440.10, an aggrieved defendant can apply for leave to appeal from such a decision to the Appellate Division." *Diaz v. Conway,* No. 04 Civ. 5062(RMB)(HBP), 2008 WL 2461742, at * 16, 2008 U.S. Dist. LEXIS 46808 (S.D.N.Y. June 17, 2008). As a matter of federal constitutional law, there is no right to appeal from collateral criminal proceedings such as a § 440.10 motion. *See, e.g., Murray v. Giarratano,* 492 U.S. 1, 10, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989).

46    Butler has also asserted a claim that he was unconstitutionally denied a hearing on the § 220.60(3) motion in Indictment No. 99–112 that he withdrew as a part of his guilty plea under Indictment No. 98–82. (Dkt. No. 1 at 5.) Since the Court has recommended that Petitioner's coercion and ineffective assistance claims with regard to Indictment No. 98–82 be denied, it finds that the withdrawal of his motion to withdraw his guilty plea moots his claim regarding his § 220.60(3) motion. *See also Hines,* 318 F.3d at 162 (both federal and state precedent have established that a criminal defendant is not entitled as a matter of right to an evidentiary hearing on a motion to withdraw a guilty plea).

47    Before, *Lord,* a number of district courts in the Second Circuit had concluded that "habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings." *Jones v. Duncan,* 162 F.Supp.2d 204, 217–18 (S.D.N.Y.2001) (denying habeas relief on a claim that the trial court failed to hold an evidentiary hearing); *see also, e.g., Ferrer v. Superintendent,* 628 F.Supp.2d 294, 309 (N.D.N.Y.2008) ("Federal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings.")

48    If Petitioner's hearing claim is deemed procedural, it fails under *Lord,* 648 F.3d at 132.

49    Petitioner has submitted a report by a Robert Frost, allegedly retained by the Public Defender's Office, regarding an interview with a corrections officer at Cayuga Correctional Facility in which the officer claimed to have overheard an argument between Petitioner and Butler when he was transporting Petitioner to court. (Dkt. No. 1–4 at 17.) The report does not appear to have been a part of the state court record and may, therefore, not be considered by the Court. *See Cullen,* 131 S.Ct. at 1398–1401. The report is not particularly probative in any event.

50    Respondent has conceded that Petitioner exhausted his claim that his guilty plea was not knowingly, voluntarily, and intelligently made because it was coerced by Butler. (Dkt. No. 44 at 31.) Respondent asserts, however, that because the Appellate Division found that Petitioner's ineffective assistance of counsel claim involved matters outside of the record and was, therefore, not properly the subject of a direct appeal, the claim is unexhausted. *Id.* at 34–35. Petitioner's ineffective assistance argument is also likely not exhausted because on the direct appeal the argument was couched in state law terms and relied solely upon New York cases analyzing the claim under New York law and the New York Constitution, with no mention of the *Strickland* standards. *See generally* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674; *Gantt,* 2014 WL 112359, r at *9. Inasmuch as the claims are procedurally barred from federal habeas review in any event, the Court finds it unnecessary to engage in a detailed analysis of the exhaustion issue.

51    In *Trevino v. Thaler,* ––– U.S. ––––, 133 S.Ct. 1911, 1917, 185 L.Ed.2d 1044 (2013), the Supreme Court noted its recognition in *Martinez v. Ryan,* ––– U.S. ––––, 132 S.Ct. 1309, 1315–16, 182 L.Ed.2d 272 (2012) of both the "historic importance of federal habeas corpus proceedings as a method for preventing individuals from being held in custody in violation of federal law," and the "importance of federal habeas corpus principles designed to prevent federal courts from interfering with a State's application of its own firmly established, consistently followed, constitutionally proper procedural rules."

52    New York's preservation rule at CPL § 470.05(2) "require[s], at the very least, that any matter which a party wishes the appellate court to decide have been brought to the attention of the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error ." *Richardson,* 497 F.3d at 218 (citation and internal quotation marks omitted)

53    As with state court decisions, some federal preservation decisions specify that under New York law challenges to guilty pleas must be made by a pre-sentence motion to withdraw the plea, while others require that guilty pleas be challenged in a motion to withdraw under CPL § 220.60(3) or a motion to vacate the judgment of conviction under CPL § 440.10.

54    In *Lee v. Kemna,* 534 U.S. 362, 376, 381, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002), the Supreme Court concluded that in a limited category of "exceptional cases," when the state appellate court has applied a firmly established and regularly followed procedural ground in an "exorbitant" manner, so that the application of the ground was inadequate, federal courts are not barred from reviewing such a claim on the merits. The Second Circuit, in *Cotto v. Herbert,* 331 F.3d 217, 240 (2d Cir.2003), identified the following three factors for consideration in making the determination: "(1) whether the alleged procedural rule was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had 'substantially complied with the rule give the 'realities of trial.' and, therefore, whether demanding perfect compliance with the rule would serve a legitimate state interest." The Court has considered these factors in concluding that the procedural bar was not exorbitant in this case.

---

**End of Document** © 2024 Thomson Reuters. No claim to original U.S. Government Works.

 © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 7383170

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

Damien TRIPP, Petitioner,

v.

SUPERINTENDENT, Respondent.

9:21-cv-0406

|

Signed November 8, 2023

**Attorneys and Law Firms**

Damien Tripp, Auburn, NY, Pro Se.

Priscilla I. Steward, New York State Attorney General - New York Office, New York, NY, for Respondent.

## DECISION & ORDER

THOMAS J. McAVOY, Senior United States District Judge

## I. INTRODUCTION

 **\*1** Petitioner Damien Tripp ("Petitioner" or "Tripp"), proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See* ECF No. 1 ("Petition" or "Pet."), at pp. 5-11.[1] The unnamed Respondent Superintendent ("Respondent"), represented by the Office of the Attorney General of the State of New York, responded by filing an Answer and Memorandum of Law in opposition to the Petition. *See* ECF Nos. 10, 10-1. Although afforded an opportunity to file a Reply, *see* EFC No. 6, at 3-4, Petitioner failed to do so.

The Hon. Daniel J. Stewart, United States Magistrate Judge, reviewed the matter and recommends that the Court dismiss the Petition and decline to issue a certificate of appealability. *See* Report-Recommendation and Order ("Report"), ECF No. 13. Petitioner filed extensive objections. *See* Petitioner's Objections ("Obj."), ECF No. 19.[2] Respondent filed a letter requesting that, for the reasons stated in the Memorandum of Law in opposition to the Petition and for the reasons stated by Judge Stewart in his Report, the Court deny the Petition in its entirety and decline to issue a certificate of appealability. ECF No. 20. For the following reasons, the Petition is denied and dismissed, and the Court declines to issue a certificate of appealability.

## II. BACKGROUND

The Court presumes familiarity with the background of this case as set forth in Judge Stewart's Report. *See generally*, Report. Suffice it to say that on July 2, 2015, Petitioner was indicted by an Onondaga County, New York, grand jury on fifteen counts, including second-degree murder, four counts of second-degree criminal possession of a weapon, and second-degree assault. Following a jury trial, Petitioner was found guilty of only two second-degree criminal possession of a weapon charges and the second-degree assault charge, and acquitted on the other charges. At trial, the evidence showed that "[Petitioner] shot the victim in the leg during an argument at a party in October 2014, and the same victim was shot and killed by a masked gunman approximately one month later, in November 2014. After the victim's murder, several people who had attended the October 2014 party identified [Petitioner] as having been present that night and as having shot the victim. [Petitioner] was charged with both assault and murder, but was convicted only with respect to the charges associated with the October 2014 shooting, and was acquitted on all charges related to the November 2014 murder." *People v. Tripp*, 177 A.D.3d 1409, 1409 (N.Y. App. Div. 4th

Dept. 2019); *see* Report at 3-5. Petitioner was initially sentenced to two fifteen-year terms of imprisonment to run concurrently and one seven-year term to run consecutively, for a total of twenty-two years imprisonment with five years of post-release supervision. *See* Report at 2, 4-5.

**\*2** Petitioner appealed his conviction on multiple grounds. *See Tripp*, 177 A.D.3d 1409. In his main brief, Petitioner alleged that (1) the verdict was against the weight of the evidence, (2) the trial court erred in ordering the second-degree assault sentence to run consecutively with the sentences imposed on the weapons possession convictions, and (3) the aggregate sentence imposed was harsh and excessive. *See* Report p. 5. In his *pro se* supplemental brief, Petitioner further alleged that (4) the trial court abused its discretion in denying the defense's request to call a "material witness," (5) the trial court abused its discretion in the summary denial of the defense's request for a one-day continuance in order to "adequately prepare" its closing argument, and (6) the trial court committed reversible error in taking the "oath of truth" from a panel of prospective jurors out of an "agreed upon sequence." *Id.* The People of the State of New York ("People") filed opposing briefs. *Id.*

The New York Supreme Court, Appellate Division, Fourth Department ("Fourth Department" or "Appellate Division"), modified Petitioner's sentence by ordering all sentences to run concurrently, for an aggregate determinate term of fifteen years, plus five years of post-release supervision. *See Tripp*, 177 A.D.3d at 1410–11. But the Appellate Division rejected Petitioner's remaining contentions contained in both his main and *pro se* briefs, affirming the judgment on the law. *Id.* at 1409-11.

> As to the weight of the evidence claim, the [Appellate Division] found that "the jury properly considered the issues of credibility, including the inconsistencies in the witnesses' testimony," and that "the jury could have reasonably inferred" that Petitioner intended to shoot the victim in the leg based on all the evidence presented. *Id.* As to Petitioner's claim that his sentence was harsh and excessive, the [Appellate Division] found that "[t]he sentence, as modified, is not unduly harsh or severe." *Id.* As to Petitioner's claim that he was denied the right to present a defense, the [Appellate Division] found that the trial court did not abuse its discretion in preventing Petitioner from calling a witness solely to invoke his claim of privilege against self-incrimination in front of the jury. *See id.* at 1411. As to Petitioner's claim that the trial court abused its discretion in denying the defense's request for a day's adjournment to prepare for summations, the [Appellate Division] found that it was within the trial court's discretion whether to grant an adjournment and that Petitioner made no showing of prejudice stemming from the ruling. *Id.* Finally, as to Petitioner's claim that prospective jurors were not given the requisite oath pursuant to N.Y. Crim. Proc. Law § 270.15(1)(a), the [Appellate Division] found that Petitioner failed to preserve this contention for review and that, in any event, the contention was not supported by the record. *Id.*

Report, at 6.

Petitioner filed both counseled and *pro se* applications seeking leave to appeal to the New York State Court of Appeals. *See* Report, at 6. The People opposed the applications. *Id.* On January 7, 2020, the Court of Appeals denied leave to appeal. *See People v. Tripp*, 34 N.Y.3d 1133 (N.Y. 2020). Petitioner did not file a petition for a writ of certiorari. Pet. at 3.[3]

**\*3** In the Petition, Petitioner contends he is entitled to federal habeas relief because (1) the verdict was against the weight of the evidence, Pet. at 5-7 (Ground 1); (2) the trial court erred in ordering that Petitioner's sentences run consecutively, *id.* at 7-8 (Ground 2); (3) the sentence imposed was harsh and excessive, *id.* at 8-10 (Ground 3); (4) the trial court abused its discretion when it prevented Petitioner from presenting his defense, *id.* at 10 (Ground 4); (5) the trial court erred when it denied Petitioner's trial counsel's request for an adjournment to prepare for summations, *id.* at 11 (Ground 5); and (6) the trial court erred by not properly swearing in the jurors, *id.* (Ground 6). Upon review, Judge Stewart recommends that each claim be denied and that the Court decline to issue a certificate of appealability. *See generally*, Report.

Petitioner objects to Judge Stewart's recommendations as to the claims in Grounds 1, 3, 4, 5, and 6, but not to the claim in Ground 2 claim which Judge Stewart found to be moot. *See generally* Obj. As discussed below, Petitioner's objections present arguments and evidence that goes far beyond that which was provided to Judge Stewart, and in some instances appear to present new claims that are not included in the Petition. *See id.*

2023 WL 7383170

## III. LEGAL STANDARDS

### Review of Report-Recommendations

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). " 'The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record.' " *Fossil Grp., Inc. v. Angel Seller LLC*, 627 F. Supp. 3d 180, 186 (E.D.N.Y. 2022) (quoting *Goonewardena v. N. Shore Long Island Jewish Health Sys.*, No. 11-cv-2456, 2013 WL 1211496, at *5 (E.D.N.Y. Mar. 25, 2013)). Clear error exists when, "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (quotation marks and citation omitted).

When objections to a magistrate judge's report and recommendation are lodged, the district court makes a "*de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997); *Witherspoon v. Colvin*, No. 18 CIV. 4816 (DC), 2023 WL 2134873, at *2 (E.D.N.Y. Feb. 21, 2023). To be "specific," the objection must, with particularity, "identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection." N.D.N.Y. L.R. 72.1(c). "[E]ven a *pro se* party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." *DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 340 (S.D.N.Y. 2009)(internal quotation marks and citation omitted).

"The objections of parties appearing *pro se* are 'generally accorded leniency' and should be construed 'to raise the strongest arguments that they suggest.' " [*Reyes v. LaValley*, No. 10-CV-2524, 2013 WL 4852313, at *1 (E.D.N.Y. Sept. 10, 2013)] (quoting *Milano v. Astrue*, No. 05-CV-6527, 2008 WL 4410131, at *3-*4 (S.D.N.Y. Sept. 26, 2008)). But "where objections are merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition," the standard of review is clear error. *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (quoting *Vega v. Artuz*, No. 97-CV-3775, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)) (internal quotation marks omitted).

**\*4** *Witherspoon*, 2023 WL 2134873, at *2.

Moreover, a party cannot invoke *de novo* review by citing new facts or making new arguments that the party could have presented before the magistrate judge yet did not. *See Thompson v. Elev8 Ctr. New York, LLC*, No. 20-CIV-9581 (PGG/JLC), 2023 WL 6311591, at *8 (S.D.N.Y. Sept. 28, 2023); *Fossil Grp.*, 627 F. Supp. 3d at 186–87; *Syed Mohammad Aftab Kartm, MD, Faans v. New York City Health and Hospitals Corp., et al.*, No. 17 Civ. 6888, 2020 WL 2999228, at *3 (S.D.N.Y. June 4, 2020); *Santiago v. City of New York*, No. 15-cv-517, 2016 WL 5395837, at *1 (E.D.N.Y. Sept. 27, 2016), *aff'd*, 697 F. App'x 36 (2d Cir. Sept. 6, 2017). "[F]or the district judge to review new evidence or arguments would reduce the magistrate's work to something akin to a meaningless dress rehearsal," *Michalow v. East Coast Restoration & Consulting Corp.*, No. 09-cv-5475, 2018 WL 1559762, at * 6 (E.D.N.Y. Mar. 31, 2018)(quotations and citation omitted), and would frustrate the congressional objective behind § 636(b) (1) which is intended to alleviate the congestion of litigation in the district courts. *See also Montalvo v. Paul Bar & Rest. Corp.*, No. 1:22-CV-1423 (JLR/SN), 2023 WL 5928361, at *1 (S.D.N.Y. Sept. 13, 2023);[4] *cf. U.S. v. Raddatz*, 447 U.S. 667, 676, n.3 (1980)("[T]o construe § 636(b)(1) to require the district court to conduct a second hearing whenever either party objected to the magistrate's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in the district courts.").

**\*5** Likewise, in habeas cases, courts will not consider any claims raised by a petitioner in his objections which were not raised in the petition. *See Bowie v. Lee*, 2021 WL 6127048, at *12 (S.D.N.Y., 2021); *Davis v. Herbert*, No. 00-CV-6691, 2008 WL 495316, at *1 (S.D.N.Y. Feb. 25, 2008); *McPherson v. Johnson*, No. 95-CV-9449, 1996 WL 706899, at *2 (S.D.N.Y. Dec. 9,

1996); *see also Gonzalez v. Garvin*, No. 99-CV-11 062, 2002 WL 655164, at *1 (S.D.N.Y. Apr. 22, 2002) (rejecting objection containing ineffective assistance of appellate counsel argument regarding a federal speedy trial claim "because it was not raised in [petitioner's] original petition, but only in his objections to the Magistrate's Report")(citing *Nelson v. Smith*, 618 F. Supp. 1186, 1191 n. 5 (S.D.N.Y. 1985) (stating that where a claim for habeas corpus is first made in the objections to a Magistrate's Report and Recommendation, the court cannot consider the claim)); *id.* at * 2 ("Petitioner's second objection must also be dismissed because it offers a new legal argument that was not presented in his original petition, nor in the accompanying Memorandum of Law.")(citing *Abu–Nassar v. Elders Futures, Inc.,* No. 88 Civ. 7906, 1994 WL 445638, at *4 n. 2 (S.D.N.Y. Aug. 17, 1994) (stating that new arguments raised in objections to a Magistrate's Report and Recommendation are untimely)). "To consider new legal arguments at this point would undermine 'the authority of the Magistrate Judge by allowing litigants the option of waiting until a Report is issued to advance additional arguments.' " *Gonzalez*, 2002 WL 655164, at *2 (quoting *Abu–Nassar,* 1994 WL 445638, at *4 n. 2, and citing *Robinson v. Keane,* No. 92 Civ. 6090, 1999 WL 459811 at *4 (S.D.N.Y. June 29, 1999)).

Moreover, raising new claims in the objections is contrary to the rules applicable to section 2254 habeas proceedings, *see* Rules Governing Section 2254 Cases in the United States District Courts, Rule 2(c)(1) & (c)(2)("The petition must (1) specify all grounds for relief available to the petitioner; [and] (2) state the facts supporting each ground."), and doing so without obtaining leave to amend the Petition deprives the State of appropriate notice. *Cf. Gomez v. Miller*, No. 9:19-CV-1571 (TJM), 2021 WL 5446979, at *14 (N.D.N.Y. Nov. 22, 2021)("[C]ourts have observed that a traverse, or reply, is not a proper vehicle for raising additional grounds for habeas relief, and claims raised for the first time in such a pleading have been considered as not properly before the court .... To raise additional grounds [in a traverse], a petitioner must file an amended petition to provide adequate notice to the state of additional claims.")(internal quotation marks and citations omitted); *see also Lalonde v. Thomas*, No. 9:20-CV-1561 (GTS), 2022 WL 1303918, at *14, n. 4 (N.D.N.Y. May 2, 2022);[5] *Lee v. Greene*, No. 9:05-CV-1337 GTS/DEP, 2010 WL 5779440, at *5 (N.D.N.Y. Dec. 15, 2010),[6] *report and recommendation adopted,* No. 9:05-CV-1337 GTS/DEP, 2011 WL 500673 (N.D.N.Y. Feb. 10, 2011).

## Writs of Habeas Corpus pursuant to 28 U.S.C. § 2254

**\*6** For habeas petitions brought under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234697, at *3 (S.D.N.Y. Aug. 28, 2003). "As a threshold matter, a federal court may not grant a habeas petition where the petitioner is in custody pursuant to a judgment of a state court unless the petitioner 'has exhausted the remedies available in the courts of the State,' 28 U.S.C. § 2254(b)(1)(A), or such process is unavailable or ineffective, *see id.* § 2254(b)(1)(B)." *Witherspoon,* 2023 WL 2134873, at *2.

"Moreover, 'federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment.' " *Id.* (quoting *Cone v. Bell*, 556 U.S. 449, 465 (2009) (citation and internal quotation marks omitted)). "That is, federal courts may not review a state court ruling that 'fairly appear[s] to rest primarily on state procedural law,' so long as the procedural bar is 'adequate to support the judgment.' " *Id.* (quoting *Murden v. Artuz*, 497 F.3d 178, 191-92 (2d Cir. 2007) (citations omitted)). "Federal courts in this Circuit have repeatedly held that the gatekeeping provisions of New York law governing a petitioner's failure to raise a claim on direct appeal 'represent[ ] the application of a firmly established and regularly followed New York rule.' " *Id.* (quoting *Williams v. Goord*, 277 F. Supp. 2d 309, 318-19 (S.D.N.Y. 2003) (citations omitted)).

Where a petitioner's claim was adjudicated on the merits in state court, a federal court may not grant habeas relief on such a claim unless the state court adjudication of that claim either:

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017); *Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006); *Witherspoon*, 2023 WL 2134873, at *2.

The Second Circuit has summarized the application of the standard of review under AEDPA as follows:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams v. Taylor*, 529 U.S. 362 (2000) and *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

The phrase "clearly established Federal law" refers to "the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412. A state court decision is "contrary to" established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts." *Id.* at 413. A state court decision is an "unreasonable application" of established Supreme Court precedent "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001).

**\*7** The standard of review under § 2254(d) is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103; *see also Witherspoon*, 2023 WL 2134873, at *2 ("A federal court may reverse a state court ruling only where it was 'so lacking in justification that there was ... [no] possibility for fairminded disagreement.' ")(quoting *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam), in turn quoting *Harrington*, 562 U.S. at 103, and citing *Wetzel v. Lambert*, 565 U.S. 520, 524 (2012) (per curiam)).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "Simply put, 'federal habeas corpus relief does not lie for errors of state law.' " *DiGuglielmo v. Smith*, 366 F.3d 130, 137 (2d Cir. 2004) (quoting *Estelle v. McGuire*, 502 U.S. at 67).

"Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quotation marks omitted). Consequently, a federal court must deny a habeas petition in some circumstances even if the court would have reached a conclusion different than the one reached by the state court, because "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102; *see also* [*Cullen v. Pinholster*, 563 U.S. 170, 202-03 (2011)] ("Even if the [Federal] Court of Appeals might have reached a different conclusion as an initial matter, it was not an unreasonable application of our precedent for the [state court] to conclude that [the petitioner] did not establish prejudice."); *Hawthorne v. Schneiderman*, 695 F.3d 192, 197 (2d Cir. 2012) ("Although we might not have decided the issue

in the way that the [New York State] Appellate Division did—and indeed we are *troubled by the outcome we are constrained to reach*—we ... must defer to the determination made by the state court ....." (emphasis added) (citation omitted)).

*Bowie*, 2021 WL 6127048, at *8.

## IV. DISCUSSION

### a. Ground 1

In Ground 1, Petitioner asserts that the verdict was against the weight of the evidence. Judge Stewart found that this claim "is 'purely a matter of state law ... not cognizable on habeas review.' " *See* Report at 9 (quoting *Mobley v. Kirkpatrick*, 778 F. Supp. 2d 291, 312 (W.D.N.Y. 2011) and citing *Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 360 (N.D.N.Y. 2013) ("It is well-settled that claims attacking a verdict as against the weight of the evidence are not cognizable in a federal habeas proceeding.")). Petitioner concedes, as he must, that claims challenging verdicts as against the weight of the evidence are not cognizable on federal habeas review. *See* Obj. at 3; *see also McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 Fed. App'x 69, 75 (2d Cir. 2011) ("[T]he argument that the verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus.") (citing cases). Accordingly, Petitioner's Ground 1 claim as stated in the Petition is denied.

Petitioner argues, however, that his weight of the evidence claim also raises an insufficiency of the evidence claim invoking federal constitutional due process considerations. *See* Obj. at 3. Under the heading "The verdict is against the weight of the evidence," Petitioner offers a litany of reasons why his Ground 1 claim should be granted. *See id.*, at 4-33. This includes that the trial court erred by denying Petitioner's motion to sever the charges related to the October 2014 shooting from those related to the November 2014 murder, *id.* at 4-6, 7, 11, 30; that the Appellate Division "failed to examine the record in full," *id.* at 6-7; that the prosecution knowingly presented perjured testimony, manipulated witnesses, and lacked sufficient evidence to sustain the convictions, *id.* at 7-10, 12-33; that the prosecution failed to conduct forensic testing that purportedly would have exonerated Petitioner, *id.* at 27-28, 33; that his trial counsel provided ineffective assistance of counsel "by not utilizing" exculpatory evidence derived from the physical and forensic evidence and from the witnesses' testimonies which were contradictory and inconsistent with their prior statements, *id.* at 33; and that the prosecution committed *Brady* violations, *id.* at 33.

 **\*8** Petitioner is correct on the law that a state law claim that a verdict is against the weight of the evidence may be deemed a federally cognizable claim of legal insufficiency. *See Williams v. Lavalley*, No. 9:12-CV-01141-JKS, 2014 WL 1572890, at *3 (N.D.N.Y. Apr. 17, 2014)("[F]ederal courts in New York have suggested that a petitioner who raises a state law weight of the evidence claim on direct appeal has both raised and exhausted a constitutional sufficiency of the evidence claim for federal habeas purposes.")(citing *Wilson v. Heath,* 938 F.Supp.2d 278, 290–91 (N.D.N.Y. 2013); *Liberta v. Kelly,* 839 F.2d 77, 80 n. 1 (2d Cir. 1988); *Howie v. Phillips,* No. 03 Civ. 9757, 2004 WL 2073276, at *4 (S.D.N.Y. Sept. 17, 2004) (concluding that a *pro se* petitioner is deemed to have raised a challenge to the legal sufficiency of the evidence by asserting that the verdict was against the weight of the evidence)). But even deeming such a claim to have been implied in Ground 1, Petitioner's arguments of legal insufficiency fail to merit habeas relief.

"Regarding legal sufficiency, due process requires that the prosecution establish a defendant's guilt as to all elements of a criminal offense beyond a reasonable doubt." *Geroyianis v. Chappius*, No. 6:14-CV-06363 (MAT), 2015 WL 7308668, at *3 (W.D.N.Y. Nov. 19, 2015)(citing *In re Winship*, 397 U.S. 358, 364 (1970)). "A verdict will be deemed consonant with due process principles if, after viewing the evidence in the light most favorable to the prosecution, '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original)). "Thus, a petitioner 'bears a very heavy burden' when challenging the sufficiency of the evidence supporting his state criminal conviction." *Id.* (quoting *Einaugler v. Supreme Court of the State of New York*, 109 F.3d 836, 840 (2d Cir. 1997)).

2023 WL 7383170

Turning first to Petitioner's contentions that that the prosecution knowingly presented perjured testimony, manipulated witnesses, and lacked sufficient evidence to sustain his convictions, the contentions are based upon Petitioner's review of the trial evidence and the subjective conclusions he draws therefrom. However,

> [Tripp] misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction. It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law. This Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses. Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction of the crime as prescribed by state law.

*Robinson v. Graham*, 671 F. Supp. 2d 338, 359–60 (N.D.N.Y. 2009)(cleaned up); *see also Flowers v. Noeth,* 9:20-CV-997 (BKS/ATB), 2021 WL 4267814, at *7 (N.D.N.Y. July 27, 2021),[7] *report and recommendation adopted,* 2021 WL 4262666 (N.D.N.Y. Sept. 20, 2021).

 **\*9**  Petitioner was convicted of two counts of criminal possession of a weapon in the second degree in violation of N.Y. Penal Law § 265.03 (1)(b) and (3), and one count of assault in the second degree in violation of N.Y. Penal Law § 120.05 (2). *Tripp*, 177 A.D.3d at 1409. Under New York law, "[a] person is guilty of criminal possession of a weapon in the second degree when: (1) with intent to use the same unlawfully against another, such person ... (b) possesses a loaded firearm, ... or (3) such person possesses any loaded firearm." N.Y. Penal Law § 265.03(1)(b) & (3). "A person is guilty of assault in the second degree when: ... 2. With intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument." N.Y. Penal Law § 120.05(2). The Appellate Division reviewed the evidence presented at trial and, based upon that evidence and the reasonable inferences the jury could have drawn, rejected Petitioner's contention that the verdict was against the weight of the evidence. *See Tripp*, 177 A.D.3d at 1409–10.

Based on the record presently before this Court, the testimony and other proof presented at trial provided sufficient evidence to sustain Petitioner's conviction. The Appellate Division accurately summarized the trial evidence. This showed that four witnesses to the October 2014 shooting testified that Petitioner was present on the night that the victim was shot, that he argued with the victim, and that he fired a gun in the victim's direction. *Tripp*, 177 A.D.3d at 1409. The Court agrees with the Appellate Division's conclusion that "the jury could have reasonably inferred that [Petitioner] was aiming his gun at the victim with intent to cause him physical injury based on the evidence that [Petitioner] had been arguing with the victim prior to the shooting, and that witnesses testified that [Petitioner] fired multiple shots from close range in the victim's direction." *Id.*, at 1410. Viewing the evidence in the light most favorable to the prosecution, this Court is satisfied that a rational trier of fact could have convicted Petitioner of two counts of criminal possession of a weapon in the second degree in violation of N.Y. Penal Law § 265.03 (1) (b) and (3), and one count of assault in the second degree in violation of N.Y. Penal Law § 120.05 (2). Accordingly, no *Jackson* violation could be established here.

To the extent Petitioner argues that he is entitled to habeas relief because the prosecution failed to perform forensic testing which purportedly would have exonerated Petitioner, the argument is insufficient to merit habeas relief. As indicated by the Appellate Division, witness testimony was sufficient to support Petitioner's conviction. Thus, regardless of the prosecution's failure to conduct forensic testing, there was sufficient evidence, accepted as credible by the jury, to sustain Petitioner's conviction. Again, no *Jackson* violation could be made out. *See Williams,* 2014 WL 1572890, at *4. Further, such a claim was not presented in the Petition.

To the extent Petitioner argues that it is entitled to habeas relief because the Appellate Division "failed to examine the record in full," the argument is rejected. Petitioner's argument in this regard is based upon Petitioner's surmise that the Appellate Division did not review the record in full because, in Petitioner's view, the facts and evidence did not support his conviction. *See* Obj. at 6. Petitioner's speculation based upon his own subjective review of the evidence fails to meet his very heavy burden of establishing that there was insufficient evidence to convict him. As stated above, the testimony and other proof presented at trial provided sufficient evidence to sustain Petitioner's conviction; the Appellate Division accurately summarized the trial evidence; the Court agrees with the Appellate Division's conclusion that the jury could have reasonably inferred that Petitioner intended to cause physical injury to the victim when Petitioner fired multiple gun shots from close range in the victim's direction; and viewing the evidence in the light most favorable to the prosecution, this Court is satisfied that a rational trier of fact could have convicted Petitioner of two counts of criminal possession of a weapon in the second degree in violation of N.Y. Penal Law § 265.03 (1) (b) and (3), and one count of assault in the second degree in violation of N.Y. Penal Law § 120.05 (2). Accordingly, as also stated above, no *Jackson* violation could be established here. Further, Petitioner's claim that the Appellate Division failed to examine the record in full is rejected as having been presented in the Objections but not in the Petition, and because review of the Appellate Division's decision itself "is beyond the purview of this Court in a federal habeas proceeding." *Robinson*, 671 F. Supp. 2d at 360.

  **\*10**  To the extent Petitioner argues that he is entitled to habeas relief because the trial court failed to grant his motion to sever the October 2014 charges from the charges associated with the November 2014 murder, *see* Obj. at 4-6, 7, 11, the argument fails to establish that he was denied the right to a fair trial. The record reflects that the jury was able to separate the evidence regarding the October 2014 shooting and the November 2014 murder inasmuch as Petitioner was acquitted on all charges related to the latter. Petitioner's contention that he had "important testimony regarding and supporting his innocence" on the shooting but had to refrain from testifying because of the "homicide penalties," Obj. at 11, is a bald conclusory allegation that fails to meet Petitioner's "very heavy burden" of establishing that no rational trier of fact could have found the essential elements of the crimes of conviction beyond a reasonable doubt.

To the extent Petitioner attempts to insert an independent claim through the Objections that his constitutional rights were violated because the trial court failed to grant his motion for severance, the attempt is rejected. " 'Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.' " *Bowie*, 2021 WL 6127048, at \*9 (quoting *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation and quotation marks omitted), and citing 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State ....")). "To satisfy this requirement, 'the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.' " *Id.* (quoting *Baldwin*, 541 U.S. at 29 (quotation marks omitted), and citing 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.")).

Petitioner fails to establish that he presented the issue of severance to the Appellate Division on direct review. Because any claim arising from the denial of Petitioner's motion for severance is record based, Petitioner necessarily had to present the claim to the Fourth Department on direct review. *See, e.g., Bowie,* 2021 WL 6127048, at \*10;[8] *see id.* ("New York permits only one application for direct review.")(citing *Jiminez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) ("[The petitioner] has already taken his one direct appeal [under New York law] ....")). " 'New York procedural rules bar its state courts from hearing either claims that could have been raised on direct appeal but were not, or claims that were initially raised on appeal but were not presented to the Court of Appeals.' " *Id.* (quoting *Sparks v. Burge*, No. 12-CV-8270, 2012 WL 4479250, at \*4 (S.D.N.Y. Sept. 18, 2014)).

  **\*11**  Where "a petitioner no longer has any available state court remedy, ... the claims are therefore deemed exhausted, but procedurally defaulted." *Id.* at \*11 (citing *Carvajal*, 633 F.3d at 104 ("If a habeas applicant fails to exhaust state remedies by failing to adequately present his federal claim to the state courts so that the state courts would deem the claim procedurally

barred, we must deem the claim procedurally defaulted."); *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (noting the reality that deeming an unpresented claim to be exhausted is "cold comfort")). "A dismissal of a habeas petition on such grounds is a 'disposition ... on the merits.' " *Id.* (quoting *Carvajal*, 633 F.3d at 104 (quotation marks omitted)). " 'An applicant seeking habeas relief may escape dismissal on the merits of a procedurally defaulted claim only by demonstrating 'cause for the default and prejudice' or by showing that he is 'actually innocent' of the crime for which he was convicted.' " *Id.* (quoting *Carvajal*, 633 F.3d at 104, in turn quoting *Aparicio*, 269 F.3d at 90, and citing *Dretke v. Haley*, 541 U.S. 386, 388 (2004) (holding that "a federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default," or showing that the petitioner "is actually innocent of the underlying offense")). Petitioner fails to establish either cause for the default or his actual innocence.

"In order to demonstrate cause, a defendant must show some objective factor external to the defense such that the claim was so novel that its legal basis [was] not reasonably available to counsel." *Gupta v. United States*, 913 F.3d 81, 84 (2d Cir. 2019) (internal quotation marks and citations omitted); *see also Jiau v. United States*, No. 11 CR. 161-1 (JSR), 2016 WL 11201437, at *4 (S.D.N.Y. Nov. 16, 2016), *report and recommendation adopted,* No. 11-CR-161-1 (JSR), 2018 WL 2122817 (S.D.N.Y. May 8, 2018)("The 'cause' prong of the cause-and-prejudice test requires a showing that 'some objective factor external to the defense impeded counsel's efforts to comply with the [ ] procedural rule.' ")(quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, *or failed to raise the claim despite recognizing it*, does not constitute cause for a procedural default." *Gupta*, 913 F.3d at 85 (emphasis in original).

The basis for any challenge arising from the trial court's denial of Petitioner's motion for severance was known to Petitioner at the time he appealed. He presents no basis upon which to conclude that some objective factor prevented him or his counsel from raising the issue on appeal. Thus, Petitioner fails to establish cause for his procedural default.

Petitioner also fails to establish his actual innocence such to overcome the procedural bar. *See McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013)("[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass" when faced with a procedural bar.). " '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1991). "A claim of actual innocence must be both 'credible' and 'compelling.' " *Rivas v. Fischer*, 687 F.3d 514, 541 (2d Cir. 2012) (quoting *House v. Bell*, 547 U.S. 521, 538 (2006)). A credible claim "must be supported by 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.' " *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). "For the claim to be 'compelling,' the petitioner must demonstrate that 'more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.' " *Id.* (quoting *House*, 547 U.S. at 538). " '[T]o enable actual-innocence gateway pleas are rare: [a] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of ... new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.' " *Ruiz-Solano v. Russell*, No. 22-CV-02303 (HG), 2023 WL 3092880, at *7 (E.D.N.Y. Apr. 26, 2023)(quoting *McQuiggin*, 569 U.S. at 386). Petitioner's argument that the trial court's error in failing to grant his severance motion deprived him of the right to a fair trial is not based on "new reliable evidence" of his innocence. Rather, it is based upon Petitioner's subjective assessment of the weight and sufficiency of the evidence against him. *See* Obj. at 30, 33. This fails to establish Petitioner's actual innocence.

**\*12** Thus, any federal constitutional claim arising from the trial court's failure to grant Petitioner's severance motion is procedurally barred. Furthermore, there is no claim in the Petition on this ground. Accordingly, to the extent Petitioner seeks habeas relief on this ground, the claim is denied.

To the extent Petitioner argues he was denied a fair trial because his trial counsel provided ineffective assistance "by not utilizing ... exculpatory evidence at trial," *see* Obj. at 33, the argument is rejected. Again, this is a bald conclusory allegation without enough specificity to meet Petitioner's "very heavy burden" of establishing that no rational trier of fact could have found the essential elements of the crimes of conviction beyond a reasonable doubt.

Further, to the extent Petitioner attempts to insert an independent ineffective assistance of counsel claim through the Objections, the attempt is denied. The Petition indicates that Petitioner filed a writ of error coram nobis application to the Fourth Department asserting that "Appellate Counsel was ineffective for not claiming that trial counsel was ineffective for failing to properly and timely filed a notice of appeal." *See* Pet. at ¶ 11; *see* fn. 3, *supra*. However, Petitioner does not assert or provide evidence that he presented to the Appellate Division – or any other state court - that his trial counsel was constitutionally ineffective for failing to utilize exculpatory evidence at trial. Without presentation of an ineffective assistance of counsel argument to a state court on this ground, the matter is not ripe for adjudication on the instant habeas petition. *See Beniquez v. Johnson*, No. 21 CIV. 1467 (PAE), 2023 WL 3948738, at *15 (S.D.N.Y. June 12, 2023)("To exhaust an ineffective assistance of counsel claim, a petition must have 'asserted in state court the specific conduct giving rise to the claim.' ")(quoting *Moreno-Gratini v. Sticht*, No. 19 Civ. 05964 (GHW) (SN), 2022 WL 1425712, at *7 (S.D.N.Y. Apr. 18, 2022), *report and recommendation adopted*, 2022 WL 1423298 (S.D.N.Y. May 5, 2022), and citing *Caballero v. Keane*, 42 F.3d 738, 740 (2d Cir. 1994) ("To reach the merits of an ineffective representation claim, all of the allegations must have been presented to the state courts.")(alterations omitted); *Castillo v. Walsh*, 443 F. Supp. 2d 557, 566 (S.D.N.Y. 2006) (same)); *Flowers*, 2021 WL 4267814, at 11. [9] Thus, any independent ineffective assistance of counsel claim asserted in the Objections is denied. [10]

**\*13** To the extent Petitioner argues he was denied a fair trial because the prosecution committed violations of *Brady v. Maryland*, 373 U.S. 83 (1963), *see* Obj. at 33, the argument is rejected. Petitioner contends that the prosecution committed *Brady* violations by failing to disclose phone records that purportedly showed that Petitioner was, at the time of the October 2014 shooting, at some other location, and by failing to disclose that Khalil Dunaways had asserted that "the police had the wrong guy." *See* Obj. at 33. These contentions fail to provide a basis for habeas relief.

First, the *Brady* violation argument is not included in the Petition, and was not presented to Judge Stewart. Second, "*Brady* is not violated 'unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict.' " *Lalonde*, 2022 WL 1303918, at *10 (quoting *Strickler v. Greene*, 527 U.S. 263, 281 (1999)). "Moreover, '*Brady* cannot be violated if the defendant[ ] had actual knowledge of the relevant information or if the documents are part of public records and defense counsel should know of them and fails to obtain them because of lack of diligence in his own investigation.' " *Id.* (quoting *United States v. Zagari*, 111 F.3d 307, 320 (2d Cir. 1997) (internal quotation marks omitted)).

Petitioner's objections indicate that the evidence underlying the phone records was contained in the People's Affirmation of Readiness for Trial. *See* Obj., at 28 (citing SR at 309). Thus, Petitioner had actual knowledge of the relevant information prior to the start of the trial-meaning no *Brady* violation occurred relative thereto. Even assuming Khalil Dunaways stated that "the police had the wrong guy," this fails to establish that there was a reasonable probability that the suppressed evidence would have produced a different verdict in light of the fact that four witnesses testified that Petitioner shot a gun at the victim on the date in question. Further, this evidence of the phone records and Khalil Dunaways's assertion, even when considered together, fails to meet Petitioner's "very heavy burden" of establishing that no rational trier of fact could have found the essential elements of the crimes of conviction beyond a reasonable doubt.

To the extent Petitioner attempts to insert an independent *Brady* violation claim, the attempt is rejected. Petitioner fails to demonstrate that he raised this claim on his direct appeal or in a post-trial § 440.10 motion. Thus, the claim is unexhausted. Further, the claim is procedurally barred because Petitioner could have raised the claim in state court, and because Petitioner fails to demonstrate either cause for failing to raise the claim or his actual innocence. "Having shown neither cause nor a fundamental miscarriage of justice if this claim is not considered, the procedural bar prevents the Court from considering [Petitioner's] prosecutorial misconduct claim based on alleged *Brady* violations." *Fulton v. Superintendent*, No. 20-CIV-0021 (GBD/SLC), 2022 WL 20704161, at *26 (S.D.N.Y. Oct. 31, 2022), *report and recommendation adopted,* 2023 WL 6318745 (S.D.N.Y. Sept. 28, 2023).

Finally, even considering Petitioner's insufficiency arguments in totality, he fails to establish a viable constitutional insufficiency claim. For these reasons, Petitioner's objections to Judge Stewart's conclusions and recommendation relative to Ground 1 are

overruled. Further, on *de novo* review the Ground 1 claim is denied for the reasons stated by Judge Stewart, *see* Report at 9-10, and for the reasons stated above.

### b. Ground 2

**\*14** Examining Ground 2 (*i.e.*, whether the trial court erred in ordering that Petitioner's sentence for the second-degree assault conviction run consecutively with the sentence for the two second-degree weapons convictions), Judge Stewart found that this claim "in this action is moot, and no further habeas relief is available." Report, at 12 (citations omitted). Petitioner does not object to this conclusion, essentially conceding that the claim is moot. *See* Obj. at 34. Judge Stewart's conclusion in this regard is not clearly erroneous. Accordingly, the Court adopts Judge Stewart's recommendation on the Ground 2 claim.

### c. Ground 3

Examining Ground 3 (*i.e.*, whether the sentence imposed by the trial court was harsh and excessive), Judge Stewart concluded:

"[F]ederal courts will not review federal claims when the state court's decisions are supported by a state-law reason, [otherwise known as] an independent and adequate state ground." *Clark v. Noeth*, 351 F. Supp. 3d 369, 372 (W.D.N.Y. 2019) (internal quotation and citation omitted). A harsh and excessive sentence claim does not present a cognizable federal question where "the sentence imposed is within statutory limits." *Congelosi v. Miller*, 611 F. Supp. 2d 274, 316 (W.D.N.Y. 2009) (citing *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) ("No federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law.")). Even when the sentence is the maximum permitted by statute, where it does not "exceed what [is] permissible under New York's sentencing scheme[,]" a "claim that the trial judge abused his discretion in imposing an allegedly harsh and excessive sentence should be dismissed because it fails to present a federal constitutional issue cognizable on habeas review." *Echevarria-Perez v. Burge*, 779 F. Supp. 2d 326, 337-38 (W.D.N.Y. 2011) (citing *White v. Keane*, 969 F.2d at 1383). Here, while Petitioner was given the maximum sentence for each charge, it was "within the range prescribed by state law," *White v. Keane*, 969 F.2d at 1383, and therefore does not present a cognizable issue for federal habeas relief.

Report at 10-11.

In his objections, Petitioner does not argue that Judge Stewart incorrectly concluded that the claim fails to present a cognizable issue for federal habeas relief. Rather, Petitioner argues that the punishment was excessive under the Eighth Amendment, Obj., at 34-35, and seemingly asserts that the Appellate Division deprived him of due process because, in assessing whether the sentence was excessive, it did not consider whether the sentence was the product of an improper *Outley* enhancement. *See id.* at 36 ("The Appellate Court failed to consider the *Outley* enhancement and the aggregate sentence, when it was clearly a prior 'Guilty Plea Agreement', between the Prosecution and the Petitioner, and Petitioner was not given the opportunity, [sic] to withdraw his plea-deal, and was not aware of the maximum possible sentence, [sic] he was then going to be subject to."); *see Janick v. Superintendent, Franklin Corr. Facility*, 404 F. Supp. 2d 472, 476, n. 2 (W.D.N.Y. 2005),[11] *aff'd sub nom. Janick v. Superintendent of Franklin Corr. Facility*, 253 F. App'x 65 (2d Cir. 2007). Petitioner's arguments are without merit.

**\*15** First, Petitioner's state court appellate counsel presented an *Outley* enhancement argument to the Appellate Division, which that court evidently rejected. *See* State Court Record ("SR") at 561-64; *Tripp*, 177 A.D.3d. at 1411 ("The sentence, as modified, is not unduly harsh or severe."). A habeas proceeding is not the proper avenue to challenge a state court determination based on state law. *See Harrington*, 562 U.S. at 102–03.

Second, the Fourth Department's determination resulted in a sentence within the statutory limits, and Petitioner does not argue otherwise. Thus, as stated by Judge Stewart, Petitioner's harsh and excessive sentence claim does not present a cognizable federal question. *See also Williams v. Lavalley*, No. 9:12-CV-01141 (JKS), 2014 WL 1572890, at \*5 (N.D.N.Y. Apr. 17, 2014)("It is well settled that an excessive sentence claim may not be raised as grounds for habeas corpus relief if the sentence is within the range prescribed by state law.").

Third, Petitioner's *Outley* enhancement argument raises an issue not specifically pled in the Petition and therefore is an improper issue raised in the Objections.

For these reasons, Petitioner's objections addressed to Judge Stewart's conclusions relative to Ground 3 are overruled. Further, upon *de novo* review the Court adopts these conclusions for the reasons stated in the Report, *see* Report at 10-11, and as stated above.

### d. Ground 4

In Ground 4, Petitioner contends that the trial court abused its discretion when it prevented Petitioner from presenting his defense. As Judge Stewart stated, this claim arises from the following facts:

> At trial, the defense called two witnesses but only one, Jamie Feher, testified in the presence of the jury. *See* Tr. at pp. 1062-86. When the defense attempted to call Petitioner's indicted co-defendant Peter Alwyn as its last witness, the court first had him testify outside the presence of the jury. *Id.* at p. 1086. In response to all questions posed by defense counsel, Mr. Alwyn invoked his privilege against self-incrimination. *Id.* at pp.1086-87. The judge determined that all of defense counsel's questions tended to incriminate Mr. Alwyn, it was Mr. Alwyn's determination whether to invoke the privilege, and that defense counsel could not call Mr. Alwyn solely to invoke this privilege in front of the jury. *Id.* at pp. 1090-91.
>
> ...
>
> As to Petitioner's claim that he was denied the right to present a defense, the [Appellate Division] found that the trial court did not abuse its discretion in preventing Petitioner from calling a witness solely to invoke his claim of privilege against self-incrimination in front of the jury. *See* [*Tripp*, 177A.D. at 1411].

Report at pp. 3-4, 6.

Addressing this claim, Judge Stewart concluded:

> On appeal, the Fourth Department perceived "no abuse of discretion" in the trial court's determination that defense counsel was not permitted to call a witness who indicated, outside the presence of the jury, that he planned to invoke his privilege against self-incrimination in response to nearly every question proposed by the defense. *People v. Tripp*, 177 A.D.3d at 1411. This decision constitutes a reasonable application of clearly established Supreme Court precedent, which dictates that "no inference whatever can be legitimately drawn" from a witness's assertion of his constitutional right. *United States v. Johnson*, 38 U.S. at 196-97. Because of the foregoing, Petitioner should be denied habeas relief on this claim.

**\*16** Report, at 13-14.

In his Objections, Petitioner seizes on the sentence in Judge Stewart's conclusion that Mr. Alwyn indicated that he "planned to invoke his privilege against self-incrimination in response to *nearly* every question proposed by the defense." *See* Obj. at 37 (citing Report at 13 (emphasis added)). Petitioner contends that "nearly every question" did not rule out that Mr. Alwyn intended to answer some questions, and argues that he was denied his right to due process by being denied the opportunity to fully present his defense case to the jury. *See* Obj., at 37-40, 41-42. He further contends that he was denied his constitutional rights to confront and cross-examine Mr. Alwyn. *See id.* Petitioner's arguments are without merit.

A review of the relevant portion of the state court trial transcript reveals that, as Judge Stewart initially stated, "[i]n response to *all* questions posed by defense counsel, Mr. Alwyn invoked his privilege against self-incrimination." Report at 4 (citing Tr. at pp.1086-87) (emphasis added). Judge Stewart's use of the adjective "nearly" in his conclusion does not change the underlying facts. Petitioner's objection in this regard is overruled.

To the extent that Petitioner argues that the People gained an unfair tactical advantage because Mr. Alwyn did not testify before the jury, and that Petitioner was prejudiced because the People acted in "bad faith" by not entering a plea agreement with Mr. Alwyn at the time of trial, *see* Obj. at 40-41, these arguments are rejected. Petitioner does not indicate where, if at all, these arguments were presented to the Appellate Division. Petitioner also fails to establish cause for failing to present these arguments to the state court, and he fails to present a viable basis to conclude that he is actually innocent of the crimes of conviction. Petitioner's subjective belief as to the insufficiency of the trial evidence demonstrating his guilt - or the possibility that someone else might have committed the crimes of conviction - does not establish Petitioner's actual innocence. Thus, the claims presented in these arguments are procedurally barred. Furthermore, the claims presented in these arguments are not contained in the Petition, and they were not presented to Judge Stewart.

To the extent that Petition contends that the trial court's decision to prevent Mr. Alwyn from testifying before the jury violated Petitioner's right to confront and cross-exam Alwyn, the contention fails to merit habeas relief.

"The Sixth Amendment's confrontation right, which applies equally to defendants in state prosecutions, 'means more than being allowed to confront the witness physically[,]' [and] includes a right of cross-examination, which provides 'the principle means by which the believability of a witness and the truth of his testimony are tested.' " *Nappi v. Yelich*, 793 F.3d 246, 250 (2d Cir. 2015) (quoting *Davis v. Alaska,* 415 U.S. 308, 315, 316 (1974)); *see also Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987) (explaining Confrontation Clause right is "designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination"). "The Confrontation Clause does not, however, guarantee unfettered cross-examination." *Alvarez v. Ercole*, 763 F.3d 223, 230 (2d Cir. 2014) (citing *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)). "The trial court has broad discretion ... to impose reasonable limits on ... cross examination based on concerns about ... harassment, prejudice, confusion of the issues, ... or interrogation that is repetitive or only marginally relevant." *Id.* (internal citation and quotation marks omitted).

 **\*17**  "Combining the standard for restricting cross-examination with the AEDPA standard, in order to grant a habeas petition we would have to conclude not only that the trial court abused its 'broad discretion' by precluding cross-examination ... but also that the state Appellate Division could not reasonably have determined that the evidence would have been excludable had the trial court properly applied standard rules of evidence[.]" *Alvarez*, 763 F.3d at 230 (citing *Watson v. Greene*, 640 F.3d 501, 510 (2d Cir. 2011)); *see also Watson*, 640 F.3d at 511 ("On habeas corpus, ... we do not sit to review the trial judge's exercise of discretion, but rather to assess whether the state court's denial of [the defendant's] Confrontation Clause claim was reasonable."). "Moreover, for habeas to be warranted, the trial court's denial must not have been harmless." *McGhee v. Uhler*, No. 17-CV-01103, 2019 WL 4228352, at \*8 (S.D.N.Y. Apr. 18, 2019), *report and recommendation adopted*, 2019 WL 3852514 (S.D.N.Y. Aug. 12, 2019).

*Flowers*, 2021 WL 4267814, at \*9.

Petitioner's objection focuses on the right to confront and cross-examine Mr. Alwyn in an attempt to reargue the Ground 4 claim under a new theory. However, new argument is not allowed in objections and does not warrant *de novo* review. Furthermore, on *de novo* review this Court concludes that that the trial court did not abuse its broad discretion by precluding cross-examination of Mr. Alwyn, and that the Appellate Division reasonably determined that the trial court acted appropriately in light of clearly established Supreme Court precedent. *See Alvarez*, 763 F.3d at 230.

The Court adopts Judge Stewart's recommendation as to the Ground 4 claim for the reasons stated in the Report, *see* Report at 12-14, and for the reasons stated above.

### e. Ground 5

Petitioner's Ground 5 claim is that the trial court abused its discretion and denied Petitioner the right to counsel when it denied defense counsel's request for a one-day adjournment in order to prepare for summations. *See* Pet. at p. 11. Judge Stewart reviewed the circumstances surrounding the adjournment request, applicable Supreme Court precedent, and the Fourth Department's

decision on Petitioner's claim. *See* Report at 14-15. Judge Stewart determined that "the Appellate Court's determination that ... the trial court did not unreasonably and arbitrarily insist on expedience in denying Petitioner's request for a one-day adjournment reflects a reasonable application of Supreme Court precedent." Report, at 15.

In his objections, Petitioner expands upon the reasons why he believes the denial of the adjournment request was unfair and amounted to an abuse of discretion. *See* Obj. at 42-47. This includes the argument that the trial court's decisions to preclude Mr. Alwyn from testifying before the jury and denying the adjournment request amounted to "a deliberate, and concerted effort, made in 'Bad Faith', by both the Prosecutor and the Trial Court, meant solely to deprive" Petitioner of his constitutional rights to a fair trial, to confront the witnesses, and to present a defense. *Id.*, at 43.

The Court has reviewed Petitioner's objections as to Judge Stewart's recommendation relative to the Ground 5 claim and finds them insufficient to challenge Judge Stewarts's recommendation. Thus, the objections are overruled. Further, upon *de novo* review, the Court dismisses Petitioner's Ground 5 claim for the reasons stated by Judge Stewart. *See* Report, at 14-15.

#### f. Ground 6

Petitioner's Ground 6 claim is that the trial court erred by not administering the first oath of truthfulness to the jury in accordance with New York Criminal Procedure Law § 270.15(1). Pet. at 11. As to Petitioner's claim in his state court appeal that prospective jurors were not given the requisite oath pursuant to N.Y. Crim. Proc. Law § 270.15(1)(a), the Fourth Department found that Petitioner failed to preserve this contention for review and that, in any event, the contention was not supported by the record. *See People v. Tripp*, 177 A.D.3d at 1411. As to Petitioner's Ground 6 claim, Judge Stewart found:

**\*18** Petitioner's claim is based on N.Y. Crim. Proc. Law § 270.15, which governs the state's procedures regarding the examination of prospective jurors. Whether the jury truthfulness oath was given "is an aspect of voir dire, which is solely a state issue." *McLeod v. Graham*, 2010 WL 5125317 at \*6 (E.D.N.Y. Dec. 9, 2010). Thus, Petitioner's claim again "presents only a state law issue not cognizable on federal habeas review." *Gonzalez v. Graham*, 2020 WL 7397529 at \*13 (N.D.N.Y. Dec. 17, 2020) (citing *Estelle v. McGuire*, 502 U.S. at 67-68) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' "). Therefore, there is no basis for federal habeas relief.

Report at 11.

In his objections, Petitioner does not challenge Judge Stewart's conclusion that the issue raises a matter of state law not cognizable on federal habeas review. *See* Obj. at 47-49, 53. Rather, he attacks the Fourth Department's conclusion that the record did not support the claim, and argues that the failure to administer the oath of truthfulness to the prospective jurors amounted to a violation of his constitutional right to due process. *See id.* The Court has reviewed Petitioner's objections in this regard and finds them insufficient to challenge Judge Stewart's conclusion as to the Ground 6 claim as pled in the Petition. Accordingly, Petitioner's objection in this regard is overruled, and on *de novo* review the Court dismisses Petitioner's Ground 6 claim for the reasons stated by Judge Stewart. *See* Report, at 11.

### V. CERTIFICATE OF APPEALABILITY

Judge Stewart recommends that no Certificate of Appealability be issued because Petitioner has failed to make "a substantial showing of the denial of a constitutional right" as required by 28 U.S.C. § 2253(c)(2). *See* Report at 16 (citing *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation")). The Court agrees.

### VI. CONCLUSION

The Court **ACCEPTS** and **ADOPTS** Judge Stewart's Report-Recommendation and Order, ECF No. 13, for the reasons stated therein and for the reasons stated above. Therefore, it is hereby

**ORDERED** that the Petition, ECF No. 1, is **DENIED** and **DISMISSED**; and it is further

**ORDERED** that that no Certificate of Appealability ("COA") will be issued.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2023 WL 7383170

# Footnotes

1    Citations to the Petition refer to the pagination generated by CM/ECF, the Court's electronic filing system.

2    Petitioner's objections are 54 pages. *See* ECF No. 19. The Local Rules provide that "[o]bjections may not exceed twenty-five (25) pages without the Court's prior approval." NDNY LR 72.1(c). Petitioner requested, and received, an extension of time in which to file objections to Judge Stewart's Report, but he did not request or receive permission to file objections in excess of the twenty-five (25) page limit. *See* ECF Nos. 16, 18. Nevertheless, given Petitioner's *pro se* status, the Court will consider the entirety of Petitioner's objections although any future filings that fail to comply with the Local Rules will be stricken.

3    Petitioner also filed a petition for a writ of error coram nobis. Pet. at 3. Petitioner argued that he was entitled to relief because "[a]ppellate counsel was ineffective for not claiming that trial counsel was ineffective for failing to properly and timely file the notice of appeal." *Id.* Petitioner failed to indicate when this petition was filed, whether it has been decided or appealed, and what dates those decisions, if any, were issued. *Id.* However, all the claims in the present Petition were previously raised by Petitioner on direct appeal and Petitioner did not include any ineffective assistance of counsel claims in his present Petition. *Compare Tripp*, 177 A.D. 3d at 1409-11 & Pet. at 2, *with* Pet. at 5-11. Therefore, it appears that Petitioner has exhausted the claims raised in the Petition. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (explaining that exhaustion requires the state courts to have "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.").

4    The Court in *Montalvo* stated:

    With respect to dispositive motions, a district court may "accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see* Fed. R. Civ. P. 72(b)(3). A district court must "determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "To the extent, however, that the party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report strictly for clear error." *Harris v. TD Ameritrade Inc.*, 338 F. Supp. 3d 170, 174 (S.D.N.Y. 2018). "Objections of this sort are frivolous, general and conclusory and would reduce the magistrate's work to something akin to a 'meaningless dress rehearsal.' ... 'The purpose of the Federal Magistrates Act was to promote efficiency of the judiciary, not undermine it by allowing parties to relitigate every argument which it presented to the Magistrate Judge.' " *N.Y.C. Dist. Council of Carpenters Pension Fund v. Forde*, 341 F. Supp. 3d 334, 336 (S.D.N.Y. 2018) (quoting *Vega v. Artuz*, No. 97-cv-03775 (LTS) (JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)). "In addition, new arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections

at all." *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 716 (S.D.N.Y. 2020) (internal citation and quotation marks omitted); *see United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019) (rejecting argument raised for the first time as objection to report and recommendation).

2023 WL 5928361, at *1.

5   Judge Suddaby stated in *Lalonde*,

Petitioner raised additional grounds for his prosecutorial misconduct claim in his Traverse. Traverse at 22. "[C]ourts have observed that a traverse, or reply, is not a proper vehicle for raising additional grounds for habeas relief, and claims raised for the first time in such a pleading have been considered as not properly before the court." *Lee v. Greene*, No. 9:05-CV-1337 (GTS/DEP), 2010 WL 5779440, at *5 (N.D.N.Y. Dec. 15, 2010) (citing Rules Governing Section 2254 Cases in the United States District Courts, Rule 2(c)(1)), *report and recommendation adopted*, 2011 WL 500673 (N.D.N.Y. Feb. 10, 2011). Prosecutorial misconduct claims based upon the prosecutor's reference to DNA in the summation were not raised in the Petition. Moreover, petitioner did not indicate to the Court, prior to filing his Traverse, that he intended to assert new or additional claims. Therefore, respondent was not afforded an adequate opportunity to address these additional claims and those claims are rejected. *Howard*, 2008 WL 3925466, at *1; *see also Parker v. Smith*, 858 F.Supp.2d 229, 233 (N.D.N.Y. 2012) (refusing to address new arguments raised in the traverse that were not in the petition because a traverse or reply is not the proper pleading in which to raise additional grounds for habeas relief) (citations omitted); *Parker v. Duncan*, No. 9:03-CV-0759 (LEK/RFT), 2007 WL 2071745, at *6 (N.D.N.Y. July 17, 2007), *aff'd*, 255 Fed. App'x 565 (2d Cir. 2007).

2022 WL 1303918, at *14, n. 4.

6   Judge Peebles stated in *Lee*:

Construing [Rule 2(c)(1) of the Rules Governing Section 2254 Cases in the United States District Courts], courts have observed that a traverse, or reply, is not a proper vehicle for raising additional grounds for habeas relief, and claims raised for the first time in such a pleading have been considered as not properly before the court. Petitioner's additional claims related to the weight of the evidence, the propriety of his sentence, and a witness competency issue were not contained in or advanced in his initial petition, nor were they the subject of a successful motion for leave to amend. For these reasons, I recommend that they not be considered in this proceeding.

2010 WL 5779440, at *5–6

7   As Judge Baxter stated:

In assessing a petitioner's request for habeas relief, "the critical inquiry on review of [a claim challenging] the sufficiency of the evidence ... [is] whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). The reviewing court must determine if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original); *see also McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming standard).

In so doing, the reviewing court must be mindful that, when "faced with a record of historical facts that supports conflicting inferences [it] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos v. Smith*, 565 U.S. 1, 7 (2011) (internal quotation marks and citations omitted); *see also Cole v. Miller*, No. 9:19-CV-01093 (JKS), 2021 WL 1267802, at *5 (N.D.N.Y. Apr. 6, 2021) ("[The reviewing court] may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inference, or considered the evidence

at trial."). A habeas petitioner who claims that the evidence was insufficient to sustain a conviction bears a "very heavy burden." *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000).

2021 WL 4267814, at *7.

8    The Court in *Bowie* explained:

[I]n New York a defendant may challenge a conviction based on matters not in the record that could not have been raised on direct appeal, *see* N.Y. Crim. Proc. Law § 440.10(1)(f), but a defendant may not seek collateral review of claims that could have been raised on direct appeal and were not, *see id.* § 440.10(2)(c); *see also O'Kane v. Kirkpatrick*, No. 09-CV-5167, 2011 WL 3809945, at *7 (S.D.N.Y. Feb. 15, 2011) ("Under New York law, all claims that are record-based must be raised in a direct appeal .... It is only when a defendant's claim hinges upon facts outside the trial record, that he may collaterally attack his conviction by bringing a claim under [NY] CPL § 440.10."), *adopted by* 2011 WL 3918158 (S.D.N.Y. Aug. 25, 2011).

2021 WL 6127048, at *10.

9    As Judge Baxter stated in *Flowers*:

Upon review of a habeas petition claiming ineffective assistance of counsel, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, [the district court] were adjudicating a *Strickland* claim on direct review of a criminal conviction[.]" *Paige v. Lee*, 99 F. Supp. 3d 340, 345 (E.D.N.Y. 2015) (quoting *Harrington v. Richter,* 562 U.S. 86 (2011)). Therefore, to the extent a habeas petitioner must show both that counsel's performance was unreasonable and that the state court's decision to the contrary was unreasonable, a "doubly deferential" standard of judicial review applies to ineffective assistance of counsel claims analyzed under 28 U.S.C. § 2254(d)(1). *Santana v. Capra*, 284 F. Supp. 3d 525, 538 (S.D.N.Y. 2018) (citing *Knowles v. Mirzayance,* 556 U.S. 111 (2009)).

2021 WL 4267814, at *11.

10    The Court notes that in 2021, the New York legislature amended Crim. Proc. Law § 440.10 to permit any post-judgment ineffective assistance of counsel claim to be raised in a CPL § 440.10 motion, regardless of whether the claim is based on the record. The Court's determination here is not on the substantive merits so Petitioner is free, if he is able, to present such a claim to the state court. *See* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.").

11    In *People v. Outley,* 80 N.Y.2d 702 (N.Y. 1993),

the New York Court of Appeals acknowledged that to comply with the constitutional guarantee of due process, a sentencing court "must assure itself that the information upon which it bases the sentence is reliable and accurate." 80 N.Y.2d 702, 594 N.Y.S.2d 683, 610 N.E.2d 356 (citing *Mempa v. Rhay,* 389 U.S. 128, 133, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967) and *Townsend v. Burke,* 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948)). The defendants in *Outley* had all breached a "no arrest" condition by being arrested prior to sentencing, but all denied complicity in the underlying crime. The Court of Appeals held that "proof that defendant actually committed the post-plea offense which led to the arrest was not necessary" before the court could impose the enhanced sentenced. However, it then had to decide what lesser showing was required by due process. The *Outley* court concluded that the sentencing court "must conduct an inquiry at which the defendant has an opportunity to show that the arrest is without foundation," with the inquiry to "be of sufficient depth ... so that the court can be satisfied-not of defendant's guilty of the new criminal charge-but of the existence of a legitimate basis for the arrest on that charge."

**Tripp v. Superintendent, Slip Copy (2023)**
2023 WL 7383170

*Janick*, 404 F. Supp. 2d at 476, n. 2.

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 3948738
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Jose BENIQUEZ, Petitioner,

v.

Jay JOHNSON, Respondent.

21 Civ. 1467 (PAE)

|

Signed June 12, 2023

**Attorneys and Law Firms**

Jose Beniquez, Stormville, NY, Pro Se.

Eleanor J. Ostrow, Stephen Joseph Kress, New York County District Attorney Office, New York, NY, for Respondent.

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

**\*1** On February 18, 2021, petitioner Jose Beniquez filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 against his warden, Jay Johnson. Dkt. 2 ("Pet."). Beniquez challenges the January 25, 2017 judgment of conviction entered by the New York State Supreme Court in Manhattan after a trial by jury, which found him guilty of second-degree murder in violation of New York Penal Law ("NYPL") § 125.25(1), second-degree conspiracy in violation of NYPL § 105.15, first-degree assault in violation of NYPL § 120.10(1), and first-degree gang assault in violation of NYPL § 120.07. *Id.* at 1 [1] ; *id.*, Ex. A. Beniquez is currently serving a sentence of 20-years'-to-life imprisonment at Green Haven Correctional Facility in Stormville, New York. *See id.* at 1. His convictions arise from a retaliatory gang attack that led to the murder of Glenn Wright, a 21-year-old bystander whom a gang member confused for the attack's target and stabbed to death, while Wright was cleaning his grandmother's windows.

Beniquez's petition makes six arguments for relief: (1) that his convictions for murder and conspiracy in the second degree were not supported by legally sufficient evidence; (2) that his convictions were against the weight of the evidence; (3) that the prosecutor's opening and summation statements deprived him of his right to a fair trial; (4) that unobjected-to testimony eliciting a sanitized version of an accomplice's out-of-court statement violated his right, under the Sixth Amendment as incorporated by the Fourteenth Amendment, to confront a witness against him; (5) that he was denied his state and federal constitutional right to effective assistance of counsel; and (6) that, at sentencing, the court erred in determining his predicate felony offender status, and imposed a sentence that was harsh and excessive. *Id.* at 5–8. The respondent—to whom the Court refers as "New York State" or "the State"—opposes the Petition in its entirety. Dkt. 14 ("Opp.").

For the reasons that follow, the Court denies the Petition.

**I. Background**

**A. Facts**

On September 12, 2009, members of the Aztec chapter of the Latin Kings ("the Aztecs"), a street gang that operated out of Manhattan's Lower East Side, Dkt. 13-2 at 8, murdered Wright. Dkt. 13-7 ("330.30 Decision") at 2. As Aztecs member Jason

Quijano testified, the Latin Kings were a national organization with many chapters, including three in Manhattan, each of which was administered by three "crowns," numbered in descending order of importance. Dkt. 15-1 at 131–50; Opp. at 12. In September 2009, Beniquez was "first crown"—the highest-ranking member—of the Aztec chapter. Dkt. 15-1 at 150. Beniquez was also a "prince" of the other two Manhattan chapters, a title that gave him authority over those chapters, too. *Id.* In these roles, Beniquez authorized or vetoed "missions" against rivals. *Id.* at 150–52.

**\*2** Earlier on September 12, 2009, members of the gang, including Beniquez, had met in Tompkins Square Park. *Id.*; *see also* 330.30 Decision at 2. Raphael Esquilin, who was a "warlord in the [gang] and was in charge of weapons and warfare," and Miguel Gonzalez, who was "second crown," were also present. Dkt. 15-1 at 151. Esquilin first spoke privately spoke to Gonzalez and Beniquez. *Id.* at 152–53; 330.30 Decision at 2. Esquilin—whose son allegedly had been robbed by members of a rival gang—then spoke to the larger group. Dkt. 15 at 460–63; Dkt. 15-1 at 152–53. Flanked by Beniquez and Gonzalez, Opp. at 9, Esquilin told the group he was "tired of putting in all this work, someone has to step up," 330.30 Decision at 2–3 (quoting trial transcript).

Three other gang members were at the meeting: Joel Herrera, Alan Silva, and Jason Quijano. *See* Opp. at 12–13. Herrera volunteered to "step up." 330.30 Decision at 3. He was given a knife by another person in the group. The group then split in two, with seven members walking down one side of the street and another seven following half a block behind on the opposite side. *Id.* They walked toward the Baruch Houses, where the target of the attack was allegedly located. *Id.* As they walked, the gang members communicated by cell phone; evidence of these calls was presented by the prosecution. *Id.* Several of those calls were between Beniquez and Herrera. *Id.*; *see, e.g.*, Dkt. 13-2 at 31–34 (describing calls).

At the time the Aztecs arrived at the Baruch Houses, Wright, who was visiting his grandmother at the Houses, was standing outside her first-floor apartment washing his windows. Opp. at 9. Mistaking Wright for the intended target, Herrera stabbed Wright twice in the neck, severing his carotid artery. *Id.*; 330.30 Decision at 4.

After the stabbing, the Aztecs fled. Quijano—who was acting as a lookout at the edge of the Baruch Houses—received a call from Beniquez telling him to flee. Opp. at 9. Police stopped and arrested Beniquez, Herrera, Silva, and others as they fled north from the stabbing scene. *Id.*; *see also* Dkt. 15 at 522–53; Dkt. 15-1 at 16. At the time he was stopped, Herrera was covered in what turned out to be Wright's blood. Opp. at 9. While Silva was under arrest and at the precinct, he gave a statement to since-retired New York City Police Department ("NYPD") detective Kevin Madden that Beniquez had directed Silva "to be on point," that is, to act as a "look-out." Dkt. 15 at 541. Madden recorded this statement in a DD5, a form NYPD detectives use "whenever [they] do any interviews or make any notes regarding the case" that are then stored and indexed in a computer case management system. Dkt. 15-1 at 19, 67.

Wright died that night from his wounds. *Id.*

**B. Procedural History**

**1. Trial**

On July 18, 2014, a grand jury returned an indictment charging Beniquez, Gonzalez, and Esquilin with murder in the second degree, manslaughter in the first degree, assault in the first degree, and gang assault in the first degree. Dkt. 13-2 at 10. Beniquez, Gonzalez, Esquilin, Herrera, and Silva were also charged with conspiracy in the second degree. *Id.* On November 9, 2015, Beniquez and Gonzalez proceeded to a jury trial before the Hon. Daniel P. FitzGerald. *Id.*; *see also* Opp. at 8, 10. Beniquez was represented by Patrick Brackley, Esq. *See* Dkt. 15 at 2.

Aspects of the trial testimony of Detective Madden and Quijano, both called by the prosecution, are relevant here.

2023 WL 3948738

Before Detective Madden took the stand, the prosecution notified the Court of its intention to offer—as a statement against penal interest—a statement Silva had made to Madden at the precinct in the hours after the murder to the effect that Silva had been directed to be a look-out by "a senior or older member of the gang." Opp. at 37. This statement, the prosecutor explained, was in sanitized form, so as to leave out the identity of the person (Beniquez) who Silva had told Madden had given him that direction. Dkt. 15 at 541; Dkt. 15-1 at 1. Beniquez's attorney, Brackley, did not object. Dkt. 15-1 at 1–5. Gonzalez's attorney did object, arguing that "[t]here are issues of confrontation," "[*Bruton*] and *Cruz* issues," and that the sanitized statement was more harmful to Gonzalez than the actual statement. *Id.* at 1–4 (italics added).

**\*3** To resolve the dispute, the Court proposed that Madden testify merely that Silva had stated to him, "My job was to be a lookout that day." *Id.* at 4–5. Gonzalez's attorney consented to that approach, provided that Silva's unavailability was established. Beniquez's attorney, Brackley, again did not object. *Id.* at 4–6. During a break in Madden's ensuing testimony, Silva's attorney, outside the presence of the jury, confirmed to the Court that Silva was unavailable. He explained that, although Silva had pled guilty to charges in connection with the Wright murder, he had not yet been sentenced, his case was still pending, and, if called, Silva "definitely [would] not testify" and would invoke his Fifth Amendment right to decline to do so. *Id.* at 48–50.

A sidebar ensued at which the Court and counsel reviewed the testimony the prosecution would be permitted to elicit from Madden. The prosecutor, apparently referencing an earlier discussion not memorialized in the transcript, pointed to language in one of Madden's DD5 reports around which the court had "put [a] pencil mark." *Id.* at 49–50. The Court instructed the prosecutor to "explain to Madden not to vary from [that] script." *Id.* at 50. Neither defense counsel objected. Madden thereafter testified that, when he interviewed Silva after the stabbing, Silva said: "I was met with a guy with long hair and a hoody. I was told to be the lookout when the guy with the hoody walked away." *Id.* at 67.

Quijano testified that he had pled guilty to manslaughter and assault in connection with Wright's killing, and that, although he otherwise would have faced a prison term of 25 years, under a cooperation agreement he had entered into with the prosecution, he would be sentenced to five years' imprisonment provided he testified truthfully. *See, e.g.*, Dkt. 15-1 at 175–78 (discussing agreement); *see also id.* at 118, 211. Quijano had been released from prison several months earlier, having served five years. *Id.* at 118. Quijano testified that he had joined the Aztecs in 1996 at age 23 and had known Beniquez since. *Id.* at 130. Quijano had reached the rank of "pearl" in the Aztec chapter; in that capacity, he provided security for gang meetings. *Id.* at 136. In 2002, after becoming disillusioned with internal politics in the Aztecs chapter, Quijano cut ties with the gang. *See, e.g., id.* at 137, 140–42. However, in summer 2009, Quijano contacted Beniquez's sister about rejoining the Aztecs. *Id.* at 143–45. Beniquez welcomed him back. *Id.* at 147 ("There was no hostility, nothing like that."); *see id.* at 145–47.

Quijano testified to the Aztecs' organizational structure and Beniquez's role as first crown and prince. *Id.* at 148–52. He recounted the September 12, 2009 meeting in Tompkins Square Park. He stated that Beniquez had stood near Esquilin while Esquilin asked another member to "step up." *Id.* at 155. He testified that he had observed Herrera accept the mission and that he had seen a knife "surface[ ]," although he could not tell definitively from where it had come. Dkt. 13-1 at 18; Dkt. 15-1 at 155. Quijano testified that there had not been a formal discussion among the group of the plan from there, except that Beniquez had "suggested" that, to avoid suspicion, the group split in two before heading to the Baruch Houses. Dkt. 15-1 at 156 (Beniquez said "[w]e can't be on the same block"); *see id.* at 155–57. Quijano testified that, as the groups headed toward the Baruch Houses, Beniquez told him, "[L]isten, we don't know what's going to happen," but "[w]e went with enough numbers to prepare ourselves for whatever opposition was there," and that the members had a getaway driver. *Id.* at 159.

On November 24, 2015, the jury returned verdicts of guilty against both defendants. Opp. at 14. Gonzalez was convicted of first-degree manslaughter, first-degree assault, first-degree gang assault, and fourth-degree conspiracy. *Id.* at 14 n.5. Beniquez was convicted of murder in the second degree, conspiracy in the second degree, assault in the first degree, and gang assault in the first degree. *Id.* at 14.

### 2. The 330.30 Motion

**\*4**  On July 29, 2016, Beniquez, through Brackley, moved under New York Criminal Procedure Law ("CPL") § 330.30 to set aside his convictions for murder in the second degree and conspiracy in the second degree, on the grounds that the evidence that he had intended to murder Wright was insufficient. 330.30 Decision at 4; *see also* Opp. at 15. On December 15, 2016, the motion was denied. *See* 330.30 Decision at 10.

On January 25, 2017, Beniquez was sentenced. Dkt. 15-1 at 452–66. Before sentencing, Beniquez was arraigned as a second-felony offender, based on his prior conviction of attempted criminal possession of a weapon in the third degree. *Id.* at 452–55. The Government filed a statement of predicate felony conviction in support. Dkt. 13-16 at 1. Beniquez did not dispute the fact or validity of that conviction. Dkt. 15-1 at 453–54.

### 3. Direct Appeal

In June 2018, Beniquez—now represented by new counsel Marianne Karas, Esq.—appealed. *See* Dkt. 13-1 at 70. In arguments that largely track those made here, he argued that (1) insufficient evidence supported his convictions for second-degree murder and conspiracy; (2) all of his convictions were against the weight of the evidence; (3) Quijano's testimony was improperly admitted, including because it contained inadmissible hearsay and recounted co-conspirator statements without a *prima facie* showing of a conspiracy having been made; (4) Madden's testimony as to Silva's statement violated Beniquez's Sixth Amendment right to confront a witness against him; (5) Beniquez was deprived of his right to effective assistance of counsel due to various lapses by his trial counsel, Brackley, including in failing to object to inadmissible hearsay, co-conspirator statements, and the sanitized version of Silva's statements; and (6) the sentences were harsh and excessive.

On October 1, 2019, the Appellate Division, First Department, unanimously affirmed Beniquez's conviction and sentence. *People v. Beniquez* ("*Beniquez I*"), 176 A.D.3d 406 (1st Dep't 2019). As to Beniquez's claims of evidentiary sufficiency, it held these had not been preserved, save as to Beniquez's challenge to the evidence of his intent to kill. *Id.* In any event, the Appellate Division found there was sufficient evidence to support each count of conviction. *Id.* The Appellate Division likewise rejected Beniquez's argument that his convictions were against the weight of the evidence. *Id.* As to Beniquez's challenge to Quijano's testimony, the Appellate Division found "no basis for disturbing the jury's credibility determinations"; it noted that "extensive evidence," "including police testimony and cell phone records," corroborated this testimony, rendering the overall proof "overwhelming." *Id.* at 407. The Appellate Division also rejected Beniquez's ineffective assistance of counsel challenge for two reasons. First, it had not been preserved and, as "it involve[d] matters not reflected in, or fully explained by, the record," was unreviewable on direct appeal. *Id.* Second, and alternatively, "to the extent the existing record permits review," Beniquez "received effective assistance under state and federal standards." *Id.* Finally, the Appellate Division found "no basis" for reducing Beniquez's sentences. *Id.*

On October 2, 2019, Beniquez, through counsel, requested leave to appeal to the Court of Appeals. Dkt. 13-5. On December 4, 2019, the Court of Appeals denied leave to appeal. *People v. Beniquez* ("*Beniquez II*"), 34 N.Y.3d 1075 (2019).

### 4. Article 440.10 Motion

**\*5**  On February 19, 2021,[2] Beniquez, *pro se*, filed a motion pursuant to CPL § 440.10 to vacate his conviction and sentence. Dkt. 13-8 ("Article 440.10 motion"). Beniquez moved on four grounds: (1) that his conviction for intentional murder and conspiracy in the second degree were based on legally insufficient evidence, perjured testimony, circumstantial evidence, and that the prosecutor's failure to disclose Quijano's plea agreement violated *Brady v. Maryland*, 373 U.S. 83 (1963); (2) that his

conviction was against the weight of the evidence; (3) that the prosecutor deprived Beniquez of a fair trial by inflaming the jury's emotions, implying, without an evidentiary basis, that Beniquez was a gang member, and bolstering Quijano's testimony; and (4) that the sentence was harsh and excessive, and that he was improperly sentenced as a second violent felony offender. *Id.* at 5–7.

In an order dated June 2, 2021, and recorded the following day, the New York State Supreme Court denied the motion. Dkt. 13-10. On July 21, 2021, the court reissued its order citing the Appellate Division's unanimous affirmance of Beniquez's conviction and sentence on his direct appeal. *See* Dkt. 13-11 (citing *Beniquez I*, 176 A.D.3d at 406).

On July 29, 2021, Beniquez moved under CPL 460.15 for leave to appeal the denial of his Article 440.10 motion. *See* Dkt. 13-12 at 11–18. He faulted the state supreme court for having "rubber stamp[ed]" the denial of his motion. *Id.* at 16. In a decision entered October 21, 2021, the Appellate Division denied leave to appeal. Dkt. 13-13. It found "no question of law or fact presented which ought to be reviewed." *Id.* at 1. On November 3, 2021, Beniquez sought leave to appeal the Appellate Division's denial from the New York Court of Appeals. Dkt. 13-14. On December 28, 2021, the Court of Appeals denied leave to appeal, stating that "the order sought to be appealed from is not appealable under CPL § 450.90(1)." Dkt. 13-15 at 1.

## 5. The Instant Petition Under § 2254

On February 18, 2021, while his Article 440.10 motion was pending, Beniquez filed the instant *pro se* petition under 28 U.S.C. § 2254. Dkt. 2. On March 1, 2021, the Court granted Beniquez's application, Dkt. 1, to proceed *in forma pauperis*, Dkt. 3. On March 23, 2021, the Court ordered New York State to answer the Petition. Dkt. 5.

On April 5, 2021, Beniquez moved to hold the Petition in abeyance during the pendency of his Article 440.10 motion in state court. Dkt. 7. On April 30, 2021, New York State consented to the stay and asked that its answer be due 60 days after the conclusion of the state litigation. Dkt. 9. On May 3, 2021, the Court granted Beniquez's motion and the State's request. Dkts. 10, 12.

On February 24, 2022, within 60 days of the Court of Appeals' denial of leave to appeal, Dkt. 13-15, New York State timely opposed the Petition, Dkt. 14, and filed state court materials, Dkt. 13, and the state court transcript, Dkts. 15, 15-1, in support. On April 4, 2022, the State notified the Court that, in October 2021, Beniquez had filed a separate, second Article 440.10 motion under CPL § 440.20 in New York Supreme Court in Manhattan ("second Article 440.10 motion"), Dkt. 17, which it attached as an exhibit, Dkt. 17-1. This second Article 440.10 motion challenged Beniquez's conviction on four grounds distinct from those raised in the instant Petition. *Id.* These were that: (1) Beniquez's sentence was unauthorized by statutory law; (2) the indictment, jury charges, verdict sheet, and sentence at trial violated CPL § 330.40(3)(b); (3) the verdict sheet was defective under CPL § 310.20; and (4) Beniquez was entitled to a hearing under *People v. Zeh*, 22 N.Y.3d 1144 (2014). *Id.* at 6.

**\*6** On February 10, 2023, the Court clarified, in response to a letter from Beniquez seeking to maintain the stay, Dkt. 23, that the stay had been lifted. *See* Dkt. 24. The Court explained that the second Article 440.10 motion was not a basis for continuing to stay the pending Petition. *Id.* On March 24, 2023, Beniquez disputed that his Article 440.10 motion had been resolved, stating that his Article 440.10 motions were "allegedly consolidated" and still pending before the Court of Appeals and requesting a "distinct answer" as to whether the stay remained in place. Dkt. 25. Later that day, the Court reiterated that the stay had been lifted in light of the Court of Appeals' December 28, 2021 denial of leave to appeal; explained that the second Article 440.10 motion, even if pending, did not affect the § 2254 petition, and ordered the State to file a letter confirming the current status of Beniquez's state court proceedings. Dkt. 26. On March 28, 2023, the State did so, confirming that Beniquez's Article 440.10 petition was no longer pending. It further noted that, although Beniquez claimed to have filed the second Article 440.10 motion in October 2021, there was no record of its having been "received by, or calendared in, Supreme Court, New York County, and [it] [was] not currently being reviewed by any New York state court." Dkt. 27. In any event, the State argued, the second Article 440.10 motion, whatever its status, did not justify a continued stay of the pending § 2254 petition. *Id.* That same day, the Court again confirmed that the stay had been lifted. Dkt. 28.

## II. Applicable Legal Standards

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), for a writ of habeas corpus under 28 U.S.C. § 2254 to be granted on a claim that was adjudicated on the merits in state court, that claim must have "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A claim is 'adjudicated on the merits' if the state court ruled on the substance of the claim rather than on a procedural ground." *Jordan v. Lamanna*, 33 F.4th 144, 150 (2d Cir. 2022) (citing *Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001)), *cert. dismissed*, 143 S. Ct. 992 (2023).

"A decision is 'contrary to' clearly established federal law 'if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decided a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.' *Id.* (alterations in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). And "[a] decision is an 'unreasonable application' of clearly established federal law 'if the state court identifies the correct governing legal principle from [the Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case.' " *Id.* (alterations in original) (quoting *Williams*, 529 U.S. at 413). The writ should be granted on grounds of unreasonableness only if "the state court's ruling on the claim was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 151 (alteration omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "In other words, the existence of reasonable arguments on both sides is all the government needs to prevail in an AEDPA case." *Id.* (internal quotation marks and alterations omitted).

### B. Adequate and Independent State Grounds

"A federal habeas court will not review a claim rejected by a state court 'if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment.' " *Beard v. Kindler*, 558 U.S. 53, 55 (2009) (alterations omitted) (quoting *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). "This rule applies whether the state law ground is substantive or procedural." *Coleman*, 501 U.S. at 729. "However, the state law ground is only adequate to support the judgment and foreclose review of a federal claim if it is 'firmly established and regularly followed' in the state." *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007) (quoting *Lee v. Kemna*, 534 U.S. 362, 376 (2002)).

"Since the adequacy of a state procedural bar to the assertion of a federal question is itself a federal question, [the court] must ascertain whether the state rule at issue ... is firmly established and regularly followed, and further whether application of that rule in this case would be exorbitant." *Id.* at 714 (internal citations omitted). "To do so, [the court] looks at the statute and case law construing it." *Id.*

**\*7** The adequate and independent grounds doctrine does not, however, bar relief where "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Smith v. Lee*, No. 11 Civ. 8376 (PAE), 2013 WL 2467988, at \*11 (S.D.N.Y. June 7, 2013) (quoting *Coleman*, 501 U.S. at 750). A court may excuse a procedural default only "if the petitioner demonstrates either cause for the default and actual prejudice from the alleged violation of federal law, or that the failure to consider the claims will 'result in a fundamental miscarriage of justice.' " *Acosta v. Giambruno*, 326 F. Supp. 2d 513, 520 (S.D.N.Y. 2004) (quoting *Coleman*, 501 U.S. at 750). In this context, "cause" means " 'some objective factor external to the defense [that] impeded counsel's efforts' to raise the claim in state court." *Id.* (quoting *McCleskey v. Zant*, 499 U.S. 467, 493 (1991)). "[A]ctual prejudice" requires the petitioner to show "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). "A miscarriage of justice occurs 'in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent[ ].' " *Id.* (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). "To establish actual innocence, petitioner

must demonstrate that 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.' " *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir. 2002) (quoting *Bousley v. United States*, 523 U.S. 614, 623–24 (1998)).

### C. Exhaustion

Section 2254 "generally requires a petitioner for a writ of habeas corpus to show that he has 'exhausted the remedies available in the courts of the State' in order for the writ to be granted." *McCray v. New York*, 573 F. App'x 22, 23 (2d Cir. 2014) (quoting 28 U.S.C. § 2254(b)(1)(A)); *see also Landy v. Costello*, 141 F.3d 1151, 1998 WL 105768, at *1 (2d Cir. Mar. 9, 1988) (unpublished) ("[F]ailure to exhaust [state law remedies] would, of course, bar habeas relief."). "Exhaustion of state remedies requires that a petitioner fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *McCray*, 573 F. App'x at 23 (quoting *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011)). To fulfill the exhaustion requirement, a petitioner must have presented the substance of his federal claims "to the highest court of the pertinent state." *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994) (quoting *Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir. 1990)).

In New York, a petitioner may exhaust his claims by filing a direct appeal to the relevant Appellate Division and seeking leave to appeal to the New York Court of Appeals. *Olsen v. Doldo*, No. 16 Civ. 5366 (RA) (DF), 2020 WL 685707, at *16 (S.D.N.Y. Jan. 2, 2020), *report and recommendation adopted*, 2020 WL 635605 (S.D.N.Y. Feb. 11, 2020). "New York procedural rules bar its state courts from hearing either claims that could have been raised on direct appeal but were not, or claims that were initially presented on appeal but were not presented to the Court of Appeals." *Sparks v. Burge*, No. 06 Civ. 6965 (KMK) (PED), 2012 WL 4479250, at *4 (S.D.N.Y. Sept. 28, 2012); *see* CPL § 440.10(2)(c).

"Where a claim is not appropriate for direct appeal because it cannot be demonstrated on the basis of the pretrial or trial record ... a petitioner may exhaust the claim by raising it to the state trial court in a collateral post-conviction motion, such as a motion pursuant to New York Criminal Procedure Law § 440." *Elleby v. Smith*, No. 20 Civ. 2935 (PAE), 2020 WL 2611921, at *3 (S.D.N.Y. May 22, 2020), *adhered to on denial of reconsideration*, 2020 WL 4058957 (S.D.N.Y. July 20, 2020). "If that motion is denied, [the petitioner] must then seek leave to appeal to the Appellate Division in order to exhaust his state court remedies." *Moreno-Gratini v. Sticht*, No. 19 Civ. 05964 (GHW) (SN), 2022 WL 1425712, at *7 (S.D.N.Y. Apr. 18, 2022), *report and recommendation adopted*, 2022 WL 1423298 (S.D.N.Y. May 5, 2022); *see* CPL § 450.90; *see also Cosey v. Lilley*, 460 F. Supp. 3d 346, 370 (S.D.N.Y. 2020) (noting that no further appellate review is available after Appellate Division denies leave to appeal denial of § 440.10 motion).

 **\*8**  Although a court cannot grant an unexhausted claim, it may, pursuant to § 2254(b)(2), deny the petition on the merits. *Abuzaid v. Mattox*, 726 F.3d 311, 321 (2d Cir. 2013).

### III. Discussion

The Court addresses the six grounds for relief raised in the Petition in turn.

### A. Challenge to Sufficiency of the Evidence

Beniquez's first claim is that there was insufficient evidence to support his convictions for murder and conspiracy in the second degree. Pet. at 5–6. Beniquez raised this claim, under both federal and state constitutional law, in his direct appeal. *See, e.g.*, Dkt. 13-1 at 31; *see also Beniquez I*, 176 A.D.3d at 406. And he renewed that claim in his 440.10 motion. *See* Article 440.10 Motion at 24–31. Accordingly, Beniquez has adequately exhausted this claim so as to permit review under § 2254. *Moreno-Gratini*, 2022 WL 1425712, at *7.

However, Beniquez's insufficiency claim is preserved only to the limited extent that he argues the evidence of his intent to kill was insufficient. At trial, Beniquez did not argue that the evidence was otherwise insufficient. He instead limited his insufficiency claim to that one discrete point. *See, e.g.*, Dkt. 15-1 at 294–95 ("[T]here was no plan to commit murder. There was no plot to

2023 WL 3948738

commit murder.... No one was supposed to die."). The trial court denied that motion. *Id.* at 295. On direct appeal, Beniquez broadened his insufficiency challenge so as to generally challenge the sufficiency of the evidence of second-degree murder and conspiracy. *See* Dkt. 13-1 at 23–30. But the Appellate Division, in affirming Beniquez's conviction, held that, "[e]xcept for Beniquez's argument that the People failed to establish his intent to kill, which we find unavailing, both [his] legal insufficiency claims are unpreserved," and, in the "alternative," those verdicts were "supported by legally sufficient evidence." *Beniquez I*, 176 A.D.3d at 406.

The Appellate Division's decision narrows the Court's authority to review under § 2254 Beniquez's insufficiency claim. That is because federal habeas review is foreclosed "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision." *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990). "This is true even where, as in the instant case, the state court [also] reaches the merits of a claim in an alternative holding." *McPherson v. Keyser*, No. 20-161-PR, 2021 WL 4452078, at *2 (2d Cir. Sept. 29, 2021) (internal quotation marks and alterations omitted), *cert. denied*, 142 S. Ct. 1235 (2022). Decisive here, the New York Court of Appeals has "held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule." *Downs v. Lape*, 657 F.3d 97, 104 (2d Cir. 2011) (collecting cases) (discussing CPL § 470.05(2)). And Beniquez has not shown that a miscarriage of justice occurred so as to avoid this bar. Such would require a demonstration of either cause and prejudice or of actual innocence. *See Bousley*, 523 U.S. at 623 (" '[A]ctual innocence' means factual innocence, not mere legal insufficiency."); *see also Calderon v. Thompson*, 523 U.S. 538, 559 (1998) ("To be credible, a claim of actual innocence must be based on reliable evidence not presented at trial." (internal quotation marks omitted)). Accordingly, Beniquez's bid to challenge broadly the sufficiency of the evidence supporting his murder and conspiracy convictions is procedurally barred. *McPherson*, 2021 WL 4452078, at *2 (insufficiency claim procedurally barred). The Court thus considers only Beniquez's challenges to these convictions based on the evidence of his intent to kill.

**\*9** As to that issue, Beniquez's claim fails on its merits. The Appellate Division, reaching the merits, so held. *See Beniquez I*, 176 A.D.3d at 406 (stating convictions "supported by legally sufficient evidence"). And where a state appellate court's ruling resolved a claim on the merits, this Court's review is conducted under § 2254(d)'s deferential standard. *McPherson*, 2021 WL 4452078, at *3 (where "the appellate court['s] ruling[ ] indicate[s] merits consideration, we may assume without deciding that there was an 'adjudication on the merits' in the state courts, and analyze whether habeas relief is warranted under the deferential § 2254(d) standard" (internal alterations and quotation marks omitted)).

Applying that standard, the Court finds that the Appellate Division reasonably applied clearly established federal law in rejecting Beniquez's challenge to the sufficiency of the evidence of his intent to kill. Under that law, a petitioner challenging the sufficiency of the evidence "bears a heavy burden." *United States v. Rojas*, 617 F.3d 669, 674 (2d Cir. 2010). The court is to "view the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility." *Id.* The court must "evaluate the evidence in its totality and uphold the jury's verdict as long as '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Id.* (internal quotation marks and citations omitted) (emphasis in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). "This inquiry is distinct from asking whether this Court believes that the evidence at trial established guilt beyond a reasonable doubt." *Id.* (quoting *Jackson*, 443 U.S. at 318–19). In assessing the sufficiency of the evidence in the context of a conspiracy conviction, "deference to the jury's findings is especially important because conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court." *Id.* (internal alterations omitted).

The issue thus is whether, based on the evidence at trial, a rational juror could find that Beniquez acted with "intent to cause the death of another person." *See* NYPL § 125.25(1). The answer, as found by the Appellate Division, is yes. At trial, the prosecution adduced Quijano's testimony that Beniquez led the Aztecs chapter of the Latin Kings; that he had authority to approve or abort planned missions; that he was at the Tompkins Square Park meeting at which the retaliatory attack was planned; that he knew Herrera was armed with a knife; that, far from attempting to stop the mission, Beniquez instructed the gang how to proceed to the Baruch Houses strategically, and ensured that the gang members had "enough numbers to prepare ourselves for whatever opposition was there" and that the assailants had a getaway driver, Dkt. 15-1 at 159; that he accompanied his fellow gang members to the Baruch Houses; and that, immediately after Herrera slashed Wright's throat, Beniquez fled the scene,

*see* Dkt. 13-2 at 40–54. This testimony was corroborated, in various respects, by disparate evidence, including similarities in Beniquez, Herrera, Silva, and another gang member's attires, upon their arrest, Dkt. 15 at 494–505; cell phone records and cell site maps reflecting communications among the gang members, including Beniquez, Dkt. 13-2 at 46–47; testimony from a law enforcement witness explicating those cell site records, Dkt 15-1 at 90–102; and testimony from police officers, *see, e.g.*, Dkt. 15 at 494–505, detectives, *see, e.g.*, Dkt. 15-1 at 40–72, Esquilin's son, *id.* at 460–65, and Wright's father, *id.* at 473–93. The jury was entitled to credit Quijano's testimony, and had particularly good reason to do so given this varied corroboration. A juror crediting Quijano's testimony could rationally find that the brutal and premeditated knife attack by Herrera had been planned and coordinated by the Aztecs' leadership, headed by Beniquez, with the intent to kill a perceived gang rival. And the alternative theory that Herrera acted *ultra vires*—on his own—in knifing Wright's throat, in contrast, lacked an evidentiary basis.

**\*10**   The evidence thus gave the jury a rational basis on which to conclude that a conspiracy existed whose object was to kill a gang rival and that Beniquez, Herrera, and others participated in the conspiracy with the required *mens rea. See People v. Molina*, 914 N.Y.S.2d 331, 337–38 (3d Dep't 2010) (intent element of second-degree murder may be inferred from his actions and surrounding circumstances), *leave to appeal denied*, 16 N.Y.3d 861 (2011); *see also Reddy v. Coombe*, 846 F.2d 866, 869 (2d Cir. 1988) (federal habeas court must "credit every inference that could have been drawn in the State's favor, whether the evidence being reviewed is direct or circumstantial" (internal citations omitted)).

Accordingly, the Court denies Beniquez's § 2254 petition to the extent that it is based on the claim that his murder and conspiracy convictions rested on legally insufficient evidence. [3]

### B. Challenge to Madden's Testimony About Silva's Out-of-Court Statement

Beniquez next claims that Detective Madden's testimony about Silva's out-of-court statement was improperly admitted. He does not dispute that the statement was properly received under the hearsay rules as a statement against Silva's penal interest. Pet. at 7. He claims, however, that receipt of that statement violated his right under the Confrontation Clause of the Sixth Amendment. *Id.* The State counters that this claim is procedurally barred and meritless, and, in the alternative, that any error was harmless. Opp. at 35–44.

As reviewed above, the prosecution at trial was permitted to elicit from Madden a sanitized version of Silva's statement that Beniquez had told him to act as a "look-out" during the attack. Dkt. 15 at 541. Madden's testimony was that Silva stated "a guy with long hair and a hoody" gave him the instruction. *See* Opp. at 37–40. Although Gonzalez objected to an initial proposal to admit a version of Silva's statement, *see* Dkt. 15-1 at 1–2, he did not object to the version ultimately presented. *See id.* at 1–6, 66–68. And Beniquez did not object to any version of Madden's testimony as to Silva's statement—the initial version proposed by the Government, the second version proposed by the court, or the version ultimately elicited. *See id.* at 1–6. Quite the contrary, as the State points out, Beniquez's counsel attempted to leverage Madden's sanitized testimony, by suggesting that the person who had given Silva the instruction was another Aztecs member, Manny Falquez, who had been assigned to drive the getaway car from the attack, *id.* at 159–60, and whose photo, with long braids, had been admitted into evidence before Madden testified as to Silva's statement, *id.* at 281. *See* Opp. at 40. Exploiting this fact, Beniquez's counsel stated that "Falquez is the picture of the guy interestingly with long braids here" making "Silva's statement ... important." [4] Dkt. 15-1 at 334.

**\*11**   It was on direct appeal that Beniquez argued, for the first time, that Madden's testimony as to Silva's statement violated his confrontation clause rights. *See* Dkt. 13-1 at 55–60. The Appellate Division rejected that claim for three reasons. It held that Beniquez's "evidentiary arguments are unpreserved," and as "alternative holding[s]," that these failed "on the merits," and that any error in these was harmless. *Beniquez I*, 176 A.D.3d at 407.

Beniquez's challenge to the testimony about Silva's statement is foreclosed from federal habeas review because, like much of his challenge to evidentiary sufficiency, it is procedurally barred by the absence of a contemporaneous objection. *See, e.g., Webb v. LaManna*, No. 19 Civ. 5164 (BMC), 2019 WL 4752375, at \*3–4 (E.D.N.Y. Sept. 30, 2019) (holding confrontation clause claim in § 2254 petition procedurally barred under contemporaneous objection rule), *appeal dismissed*, No. 19-3787 (2d Cir. Feb. 6,

2020); *People v. Kinard*, 187 A.D.3d 936, 936 (2d Dep't 2020) (applying contemporaneous objection rule to deny confrontation clause argument in § 2254 petition, and citing Section 470.05), *leave to appeal denied*, 36 N.Y.3d 973 (2020); *People v. Webb*, 163 A.D.3d 880, 881 (2d Dep't 2018) (same). And, as with his challenge to evidentiary sufficiency, Beniquez has not shown cause and prejudice, or a miscarriage of justice, so as to excuse his default. *See Bousley*, 523 U.S. at 623–24.

In any event, if had there been no default, and had receipt of Madden's testimony violated the confrontation clause, [5] Beniquez's claim would still fail because, as the Appellate Division recognized, any error was harmless. *See Beniquez I*, 176 A.D.3d at 407. Federal courts review state-court harmless error findings under a two-step standard. *See Krivoi v. Chappius*, No. 21-2934-PR, 2022 WL 17481816, at *3 (2d Cir. Dec. 7, 2022). Under the first, "when a state court has found a constitutional violation to be harmless beyond a reasonable doubt (by applying the harmless error standard from *Chapman v. California*, 386 U.S. 18 (1967)), a habeas petitioner must show that an error had a 'substantial and injurious' effect or influence on the jury's verdict." *Id.* (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 622–23 (1993)). Under the second step, federal courts apply § 2254(d)(1). *See Brown v. Davenport*, 142 S. Ct. 1510, 1520 (2022). The petitioner thus "must prevail under the *Brecht* 'substantial and injurious' standard, *and he* must show that the state court's harmless error determination was an unreasonable application of federal law as determined by the Supreme Court[ ]." *Krivoi*, 2022 WL 17481816, at *3 (emphasis in original) (discussing *Brown*).

**\*12**  Beniquez's challenge to the Appellate Division's harmless error finding fails at the first step. [6] Far from prejudicing Beniquez, the sanitized version of Silva's statement, if anything, assisted him. *See* Opp. at 40. As evidenced by Brackley's closing argument, the elimination of Beniquez as the cited speaker gave Beniquez's counsel an opportunity for misdirection. *Id.* In any event, to the extent the sanitized statement that did not mention Beniquez might have been nonetheless construed to support that Beniquez had had some involvement in the planning of the retaliatory attack, there was ample alternative evidence of this point, including witness testimony and corroborative cell site evidence. *See, e.g.*, *Krivoi*, 2022 WL 17481816, at *3–4 (denying § 2254 petition under *Brecht* standard where erroneous admission of out-of-court testimonial statement was harmless; "wrongly admitted evidence was of very limited importance, and the prosecution's case was strong even without it"); *Grant v. Racette*, No. 21-1888-CV, 2022 WL 17574468, at *2 (2d Cir. Dec. 12, 2022) (affirming denial of § 2254 petition where wrongly admitted testimony was not crucial to prosecution's case, cumulative of other testimony, and supported by "significant evidence linking [petitioner] to the crime"); *Moreno-Gratini*, 2022 WL 1425712, at *9 (statement not prejudicial where it was cumulative of other evidence). Beniquez thus has not shown that excluding the statement would have affected the trial's outcome.

The Court thus denies Beniquez's § 2254 petition, to the extent it is based on a challenge to Madden's testimony regarding Silva's out-of-court statement.

### C. Challenges to Prosecutor's Jury Addresses

Beniquez next asserts that he was denied a fair trial by the prosecutor's opening and closing statements. These, he argues, improperly: (1) inflamed the jury's emotions; (2) misstated evidence, including by implying that Beniquez was a gang member, and overstating the probative value of DNA and cell site location information evidence; and (3) vouched for Quijano's credibility. Pet. at 6. The State argues that this claim is both procedurally defaulted and meritless. Opp. at 28–35. The State is correct on both grounds.

As to the former, Beniquez did not object to the prosecutor's jury addresses at trial. Dkt. 15 at 413–27 (opening statements); Dkt. 15-1 at 314–45, 363–82 (closing statements); *see also* Opp. at 33 n.15. [7] Nor did Beniquez pursue such claims in his direct appeal, in which he was represented by new counsel. *See* Dkt. 13-1 at 37–42 (objection to prosecution's conduct only in connection with offer of evidence). Beniquez first raised arguments as to the prosecution's closing statement in his Article 440.10 motion. Article 440.10 Motion at 35–39. There, he argued that the prosecution improperly "sought to stir up sympathy for the victim and his family by having the father of the victim take the stand when he did not witness the crime," and through the following two statements in summation:

2023 WL 3948738

> The people who gave Mr. Herrera a knife expected Mr. Herrera to use it. Mr. Herrera did, use it. There's only one way to use a knife, right? There's only one way to use it. It's to stab somebody. When you stab somebody in the area Mr. Herrera stabbed Glen Wright it's natural to think they are going to die and that's what happened.

and

> There's a lot of charges. And there's a fair amount of evidence. I think the best way to organize is this: You guys go back into the jury room, first figure out intent. What did they intend? What happens when you give someone a knife and tell them I'm tired of putting in all this work, someone has to step up, and you point them in the direction of a defenseless kid washing his grandmother's windows, what happens? The person who uses the knife and the person that they use the knife on dies.

**\*13** *Id.* at 36 (citing Dkt. 15-1 at 380–81). In his Article 440.10 motion, Beniquez did not otherwise take issue with the prosecution's closing argument, or in any way take issue with his opening.

Although the state supreme court was not explicit as to Beniquez's claim of summation misconduct, its denial of the Article 440.10 motion is best read as rejecting this claim based on a form of state law procedural default. Under New York law, a defendant is permitted only one direct appeal. *See* N.Y. Ct. App. R. 500.20 (a)(2); *Dasney v. People of the State of N.Y.*, No. 15 Civ. 5734 (RJS), 2017 WL 253488, at \*5 (S.D.N.Y. Jan. 19, 2017) (citing N.Y. Ct. App. R. § 500.20). The appellant must raise record-based claims, like a challenge to jury addresses, by direct appeal rather than by a collateral motion in state court. And CPL § 440.10(2)(c) requires the state court to deny a post-appeal motion to vacate a judgment when,

> [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal[ ].

As the Second Circuit has explained, "the purpose of this rule is to prevent Section 440.10 from being employed as a substitute for direct appeal when the defendant was in a position to raise an issue on appeal or could readily have raised it on appeal but failed to do so." *Fulton v. Graham*, 802 F.3d 257, 263 (2d Cir. 2015) (internal quotation marks and alterations omitted). This rule is well-established and regularly applied. *See, e.g.*, *id.*; *Sweet v. Bennett*, 353 F.3d 135, 139 (2d Cir. 2003) ("New York law requires a state court to deny a motion to vacate a judgment based on a constitutional violation where the defendant unjustifiably failed to argue the constitutional violation on direct appeal despite a sufficient record."); *Weston v. Capra*, No. 18 Civ. 05770 (PMH) (JCM), 2022 WL 1811161, at \*10 (S.D.N.Y. Apr. 13, 2022), *report and recommendation adopted*, 2022 WL 2914506 (S.D.N.Y. July 25, 2022), *appeal dismissed*, No. 22-1688, 2022 WL 18207319 (2d Cir. Dec. 15, 2022), *cert. denied*, 143 S. Ct. 831 (2023); *O'Kane v. Kirkpatrick*, No. 09 Civ. 05167 (HB) (THK), 2011 WL 3809945, at \*7 (S.D.N.Y. Feb. 15, 2011) ("[A]ll claims that are record-based must be raised in a direct appeal.... It is only when a defendant's claim hinges upon facts outside the trial record, that he may collaterally attack his conviction by bringing a claim under CPL § 440.10." (internal citations omitted)), *report and recommendation adopted*, 2011 WL 3918158 (S.D.N.Y. Aug. 25, 2011).

**\*14**  Against this backdrop, the state supreme court's citation to the *Beniquez I* decision disposing of Beniquez's direct appeal—and which did not challenge the prosecution's jury addresses—is best read as denying the Article 440.10 motion on the grounds that the bases for that motion were required to have been brought in a direct appeal. Such a procedural default would supply an independent and adequate state law ground on which to deny relief. *Beard*, 558 U.S. at 55; *see also* Opp. at 31. And although a federal habeas court generally presumes that a federal claim was adjudicated on the merits "[w]hen a state court rejects a federal claim without expressly addressing [it]," "that presumption can in some limited circumstances be rebutted." *Johnson v. Williams*, 568 U.S. 289, 301 (2013). Chief among these is when the State "show[s] that the federal claim should be regarded as procedurally defaulted." *Id.* at 302. Such is the case here, insofar as Beniquez's failure to raise these claims on direct appeal clearly worked such a default. That analysis equally applies to Beniquez's challenge to the prosecution's closing argument, and to its opening statement, the latter of which he has never before pressed, even in the 440.10 motion. And Beniquez has not argued cause and prejudice for such a default—nor does the record make any apparent. *Cf. Sweet*, 353 F.3d at 141 n.7 ("[Petitioner] could not use ineffective assistance of appellate counsel as 'cause' for his procedural default" where no such ineffective assistance claim brought in state court.). Nor, as noted, has he shown actual innocence. *Dixon*, 293 F.3d at 81. Accordingly, federal habeas review is foreclosed as to the prosecutor's jury addresses.

In any event, were it proper to reach the merits, Beniquez's claim would fail there, too. As a general rule, "prosecutorial misconduct cannot give rise to a constitutional claim unless the prosecutor's acts constitute 'egregious misconduct.' " *Miranda v. Bennett*, 322 F.3d 171, 180 (2d Cir. 2003) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 647–48 (1986)); *see also Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994) (standard for reversal of a conviction based on improper prosecutorial comments is extremely high). "A single potentially inappropriate remark in an extended summation that is subject to '[c]onflicting inferences' does not violate due process if 'it is by no means clear that the jury ... would seize such a comment out of context and attach [a prejudicial] meaning to it,' even if the prosecutor could fairly be criticized for speaking thoughtlessly." *Eyck v. Lee*, No. 19 Civ. 6924 (MKV) (RWL), 2020 WL 8671942, at \*14 (S.D.N.Y. Oct. 9, 2020) (alterations in original) (quoting *Donnelly*, 416 U.S. at 643–44). "Habeas relief is not appropriate when there is merely a 'reasonable possibility' that trial error contributed to the verdict." *Bentley*, 41 F.3d at 824. Instead, Beniquez must demonstrate "actual prejudice." *Id.*

Beniquez has not shown actual prejudice here. Courts assess claims of actual prejudice based on prosecutorial misconduct by "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." *Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998). Beniquez has not pointed to specific assertedly prejudicial remarks in the opening statement. To the extent his Article 440.10 motion identified any excerpts of the prosecutor's closing statement, the two excerpts reproduced above were fair commentary on the evidence. And even assuming *arguendo* that they were improper, they "were short and fleeting, and thus much less likely to have had a substantial effect on the jury's verdict." *Smith v. Graham*, No. 10 Civ. 3450 (JPO) (THK), 2012 WL 2428913, at \*14 (S.D.N.Y. May 7, 2012), *report and recommendation adopted*, 2012 WL 2435732 (S.D.N.Y. June 27, 2012). Moreover, the trial court, although not asked to intercede as to these arguments, repeatedly reminded the jury that "[w]hat any attorney says is not evidence." *See, e.g.*, Dkt. 15 at 431, 433; *see also id.* at 458–59. There is no non-speculative reason to believe that any overreach by the prosecution in the remarks at issue was unduly influential, particularly given the weighty direct and circumstantial evidence of Beniquez's guilt. *See, e.g.*, *Eyck*, 2020 WL 8671942, at \*14; *King v. Greiner*, No. 02 Civ. 5810 (DLC) (AJP), 2008 WL 4410109, at \*32–33 (S.D.N.Y. Sept. 26, 2008) (statement that defendant was a "career criminal" who "lived his entire life breaking the law" unlikely to have swayed jury given other evidence), *report and recommendation adopted*, 2009 WL 2001439 (S.D.N.Y. July 8, 2009), *aff'd*, 453 F. App'x 88 (2d Cir. 2011); *Salcedo v. Artuz*, 107 F. Supp. 2d 405, 416 (S.D.N.Y. 2000) (habeas claim failed where prosecutor did not assert personal opinion as to witness credibility but merely summarized testimony of witnesses and argued that prosecution witnesses were more credible). [8]

**\*15**  The Court thus denies Beniquez's § 2254 petition to the extent it is based on the prosecutor's opening and closing statements.

### D. Ineffective Assistance of Counsel Challenges

Beniquez next claims a denial of effective assistance of counsel. He asserts that his trial counsel erred in that he (1) "did not know the law concerning hearsay and co-conspirator statements" and therefore failed to object to inadmissible evidence; and (2) did not object to Beniquez's being sentenced as a "Second Violent Felony Offender" based on a prior conviction. Pet. at 7. The State counters that, insofar as Beniquez's faults counsel for not objecting to the admission of certain statements, Beniquez did not exhaust that ineffective assistance claim in state court, and that all parts of his ineffective assistance claim are meritless. Opp. at 44–50.

To exhaust an ineffective assistance of counsel claim, a petition must have "asserted in state court the specific conduct giving rise to the claim." *Moreno-Gratini*, 2022 WL 1425712, at *7; *see Caballero v. Keane*, 42 F.3d 738, 740 (2d Cir. 1994) ("To reach the merits of an ineffective representation claim, all of the allegations must have been presented to the state courts." (alterations omitted)); *Castillo v. Walsh*, 443 F. Supp. 2d 557, 566 (S.D.N.Y. 2006) (same). On direct appeal, Beniquez argued that his trial counsel had been ineffective, under federal and state law, for failing to object to hearsay and co-conspirator statements. Dkt. 13-2 at 60–63. The Appellate Division rejected that claim as "unreviewable on direct appeal because it involve[d] matters not reflected in, or fully explained by, the record." *Beniquez I*, 176 A.D.3d at 407. The Court noted that because "[Beniquez] ha[d] not made a CPL 440.10 motion," "the merits of the ineffectiveness claim may not be addressed on appeal." *Id.* When Beniquez later made a 440.10 motion, however, he did not argue that his counsel had been ineffective as to these actions. His claim of ineffectiveness there was based only on trial counsel's failure to challenge his sentence as excessive. Article 440.10 Motion at 40.

Accordingly, to the extent Beniquez's present ineffective assistance claim faults his trial counsel for ignorance of evidentiary rules, for failing to object to the admission of testimony, or for failing to challenge the court's sentencing of him as a predicate felon, it is unexhausted and an improper basis for a federal habeas review. *See, e.g.*, *Rios v. Miller*, No. 17 Civ. 02256 (ALC), 2020 WL 4003607, at *3 (S.D.N.Y. July 15, 2020) (ineffective assistance claim unexhausted where it was raised only on direct appeal, even though Appellate Division had held, in the alternative, that "to the extent the existing record permits review, ... defendant received effective assistance under state and federal standards"); *Polanco v. Ercole*, No. 06 Civ. 1721 (RMB) (DFE), 2007 WL 2192054, at *7 (S.D.N.Y. July 31, 2007) (same; adopting recommendation and report); *see also Fulton*, 802 F.3d at 263 ("[U]nder New York law, when, as here, a defendant's complaint about counsel is predicated on factors such as advice or preparation that do not appear on the face of the record, the defendant *must* raise his or her claim via a CPL 440.10 motion." (internal quotation marks and alteration omitted)); *People v. Peque*, 22 N.Y.3d 168, 202 (2013) (same).

 *16  In any event, even if Beniquez had exhausted all dimensions of his present ineffective assistance claim, it fails on the merits. The nature of Beniquez's critiques is such that the Court can assess these based on the trial record. *Compare Sweet*, 353 F.3d at 140 (ineffective assistance claim based on alleged failures to object to charging counts "was particularly well-established in the trial record"), *with Fulton*, 802 F.3d at 264 (declining to consider ineffective assistance claim relating to rejection of plea offer where "trial record does not clearly reflect the adequacy of counsel's advice"). And Beniquez has not pointed to any reason that a new evidentiary hearing would have been required to develop his claims, whether based on the failure to object to hearsay and co-conspirator statements, *Sweet*, 353 F.3d at 140, or, as discussed in the ensuing section, on his classification at sentencing as a second violent felony offender.

"[T]o prove ineffective assistance, [a petitioner] must show (1) 'that counsel's representation fell below an objective standard of reasonableness'; and (2) 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2008) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)); *Massaro v. United States*, 538 U.S. 500, 501 (2003) ("[A] defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial."). "A defense counsel's performance is unreasonable when it is so deficient that it falls outside the 'wide range of professionally competent assistance.' " *Kovacs v. United States*, 744 F.3d 44, 50 (2d Cir. 2014) (quoting *Strickland*, 466 U.S. at 690). "[T]he record must demonstrate that 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' " *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009) (quoting *Strickland*, 466 U.S. at 687).

Beniquez has not done so here. As the State notes, much of Quijano's testimony was not hearsay at all. Some parts described non-expressive acts; other parts recounted statements of co-conspirators excluded from the definition of hearsay. And to the extent Quijano recounted hearsay statements, such fell within well-established hearsay exceptions. Neither in the instant Petition nor on direct appeal has Beniquez identified specific statements that were improperly admitted. Pet. at 7; Dkt. 13-1 at 60–63. On direct appeal, the statements recounted by Quijano that Beniquez challenged as inadmissible hearsay were held properly received. *See* Dkt. 13-1 at 48–49. Quijano's testimony as to the gang's hierarchy, rules, structure, and leaders, including Beniquez, was not inadmissible hearsay. Quijano's testimony to this effect instead was based on his personal experience and observations. *See* Fed. R. Evid. 801(c); *see also United States v. Castro*, 411 F. App'x 415, 418 (2d Cir. 2011) (former gang members' testimony as to gang's practices and their experience with the organization not hearsay and admissible, including as lay opinion testimony under Federal Rule of Evidence 701). Quijano's testimony as to non-assertive conduct he observed at the Tompkins Square Park meeting—namely, Esquilin's demeanor, the fact that Esquilin, Gonzalez, and Beniquez had a private conversation before Esquilin spoke to the group, and the physical locations of those men—likewise did not implicate the hearsay rules. And Quijano's testimony as to statements Beniquez made to him—such as Beniquez's instructions to travel to the Baruch Houses in separate groups and, after the attack, not to return there—was not hearsay because Beniquez was a party opponent. *See* Fed. R. Evid. 801(d)(2)(A); *see also United States v. Aspinall*, 389 F.3d 332, 341 (2d Cir. 2004). In any event, these statements were predominantly not offered for the truth of the matters asserted, but as verbal acts reflecting Beniquez's authority to give directions, which tended to show his guilt on the murder and conspiracy charges. *Cf. United States v. Stein*, No. S1 0.0888 LAK, 2007 WL 3009650, at *4 (S.D.N.Y. Oct. 15, 2007); *People v. Thompson*, 186 A.D.2d 768, 768 (2d Dep't 1992) (co-defendant's statements not hearsay; such constituted, *inter alia*, verbal acts indicative of conspirators' "acting in concert"); *see also* Fed. R. Evid. 803(3). [9]

**\*17**  As to Beniquez's claim that he was denied effective representation because he was improperly sentenced as a second violent felony offender and his counsel failed to object to that asserted error, it also fails on its merits. For the reasons discussed in the following section, the record reveals that Beniquez was correctly sentenced as a second felony offender. *See infra* Section III.E. Accordingly, any objection by Brackley to this classification would have been groundless.

Under these circumstances, where objections would have been meritless, trial counsel cannot be found ineffective for failing to object. *See, e.g.*, *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) ("[T]he failure to include a meritless argument does not fall outside the wide range of professionally competent assistance" under *Strickland* (internal quotation marks omitted)); *Martin v. Perez*, No. 13 Civ. 2413 (VB) (PED), 2016 WL 5815841, at *14 (S.D.N.Y. Feb. 18, 2016) ("[B]ecause [the witness's] testimony fell within the co-conspirator exception to the hearsay rule, trial counsel had no basis to object on hearsay grounds ...; [t]herefore, Petitioner has failed to establish that trial counsel was ineffective for not raising this meritless claim."), *report and recommendation adopted as modified*, 2016 WL 5720820 (S.D.N.Y. Oct. 3, 2016); *McPherson v. Greiner*, No. 02 Civ. 2726 (DLC) (AJP), 2003 WL 22405449, at *22 (S.D.N.Y. Oct. 22, 2003) ("Counsel cannot be found to be ineffective for failing to assert a meritless objection.").

Accordingly, the Court denies Beniquez's ineffective assistance of counsel claim to the extent it is based on a failure to object to ostensibly inadmissible statements.

**E. Challenges to the Sentence**
Finally, Beniquez seeks § 2254 relief on the ground that he was improperly sentenced as a second violent felony offender and that his resulting sentence was harsh and excessive. Pet. at 8. The State counters that Beniquez failed to exhaust any federal challenge to his sentence and that, in any event, his sentence was lawful. Opp. at 43–48. The State is, again, correct.

On direct appeal, Beniquez cited only state law in arguing that his sentence was unduly harsh. *See* Dkt. 13-1 at 64–69; *see also* Dkt. 13-3. Denying that motion, the Appellate Division found "no basis for reducing [Beniquez's] sentence." *Beniquez I*, 176 A.D.3d at 407. In Beniquez's *pro se* Article 440.10 motion, he argued for the first time that the trial court had incorrectly

designated him a second violent felony offender. But that claim was based solely on state law, as it cited exclusively to state case authority and did not reference the federal Constitution or case law. *See* Article 440.40 Motion at 39–40.

A petitioner who articulates claims exclusively in state law terms does not present a federal claim. *See, e.g.*, *Rodriguez v. Lee*, No. 19 Civ. 8398 (PAE) (SLC), 2023 WL 2473334, at *11 (S.D.N.Y. Mar. 13, 2023) (federal constitutional claim unexhausted where state brief cited only state law); *Jefferies v. Sheahan*, No. 15 Civ. 2890 (PKC) (SN), 2016 WL 3660767, at *8 (S.D.N.Y. Mar. 10, 2016) (same), *report and recommendation adopted*, 2016 WL 3661546 (S.D.N.Y. July 5, 2016); *Pham v. Kirkpatrick*, 209 F. Supp. 3d 497, 511–13 (N.D.N.Y. 2016) (federal claim unexhausted where, *inter alia*, petitioner argued solely in terms of state law); *Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 362–63 (N.D.N.Y. 2013) (same); *Jones v. Annucci*, 124 F. Supp. 3d 103, 116 (N.D.N.Y. 2015) (same); *Glisson v. Mantello*, 287 F. Supp. 2d 414, 419–20 (S.D.N.Y. 2003) (brief reference to state court decision did not give Appellate Division notice that petitioner was raising federal constitutional issue); *Oliver v. Greiner*, No. 01 Civ. 4223 (DC), 2002 WL 1758915, at *3 (S.D.N.Y. July 30, 2002) (federal claim unexhausted where petitioner cited no federal case law and argued solely in terms of New York statutory and case law). *Contra Rosa v. McCray*, 396 F.3d 210, 219 (2d Cir. 2005) (petitioner exhausted state remedies where he relied below on federal constitutional cases, used terms "so particular as to call to mind a specific right protected by the [federal] Constitution," and explicitly claimed a violation of the U.S. Constitution). Beniquez's failure to present a federal claim here thus denied the state courts an opportunity to address and correct the alleged federal constitutional violations. *See Picard v. Connor*, 404 U.S. 270, 275 (1971).

**\*18**  Accordingly, because AEDPA required Beniquez to "fairly present" his federal constitutional challenges to his sentence and he did not do so, his sentencing challenges in his § 2254 petition must be rejected as unexhausted. *See* 28 U.S.C. §§ 2254(b)(1), (c); *see, e.g.*, *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (under AEDPA, state prisoner must exhaust available state remedies, which requires "fairly present[ing]" a claim and its federal nature to each appropriate state court, to "giv[e] the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights" (internal quotation marks omitted)). For similar reasons, these claims are procedurally defaulted, insofar as, under New York law, the time to bring such challenges was on direct appeal—state collateral review being unavailable for claims that relate "solely to the validity of the sentence," *Campbell v. Smith*, No. 16 Civ. 8083 (JMF), 2017 WL 5508533, at *2 (S.D.N.Y. Nov. 16, 2017) (citing CPL § 440.10(2))— and Beniquez failed to do so.

In any event, even if Beniquez's § 2254 challenges to his sentence had been preserved and were proper, these challenges fail on the merits. To the extent Beniquez claims that he was sentenced as a second violent felony offender, Pet. at 8, the record refutes that. It reflects that he was sentenced—correctly—as a second felony offender. The statement of predicate felony conviction that the prosecution supplied the Court in advance of sentencing correctly described Beniquez a predicate felon. It cited the New York statute applicable to nonviolent felons, not the statute applicable to persons eligible to be sentenced as second *violent* felony offenders. *See* Dkt. 13-16 (citing NYPL § 70.06); *see also* Opp. at 54 n.27. Consistent with that, the sentencing transcript reflected that Beniquez was adjudicated as a second felony offender under NYPL § 70.06, based on his prior conviction for attempted criminal possession in the third degree. Dkt. 15-1 at 453–54 (sentencing transcript, reflecting court clerk reading excerpt from predicate conviction statement into record and referring only to "felony"). To the extent that erroneous references in post-sentencing litigation were made to Beniquez's having been a "violent" predicate offender, those descriptive inaccuracies by definition could not have affected his sentence. *See* Opp. at 51 n.24.

Notwithstanding Beniquez's characterization of his sentences as harsh and excessive, these do not support a federal claim of error. Beniquez's sentences were within the ranges prescribed for second felony offenders by New York statutes. And the trial court, exercising its discretion under NYPL § 70.25, imposed concurrent sentences on the four counts of conviction. Dkt. 15-1 at 465. On the two assault counts—for first-degree assault, NYPL § 120.10, and first-degree gang assault, NYPL § 120.07— Beniquez received a determinate sentence of 20 years' imprisonment, followed by five years' supervision. That sentence is within the statutory range for each offense of nine to 25 years for a second felony offender. *Compare* NYPL § 70.02(1)(a) (defining assaults as class B violent felony offenses), and NYPL § 70.06(3)(b) (defining range for second felony offenders), *with* NYPL § 70.04 (sentence range for second violent felony offenders who have committed a class B felony is 10 to 25 years). On the count for second-degree conspiracy, NYPL § 105.15, Beniquez received an indeterminate sentence of four-and-a-half

to nine years, likewise lawful for a second-felony offender. *See* NYPL § 70.06. And on the count of second-degree murder, which is a class A felony offense under NYPL § 125.25, the sentence of 20 years-to-life, too, was lawful. [10] New York does not distinguish between predicate or first-time offenders for this offense. *See* NYPL § 70.00; *see also* NYPL § 70.06 (excluding class A offenses). Finally, Beniquez's sentence was within the statutory range for persons convicted of class A felonies: They face a maximum sentence of life imprisonment, with the minimum period of imprisonment to be determined and specified by the court, as occurred here. Dkt. 15-1 at 465. Because Beniquez's sentences thus all were authorized by statute, he is not entitled to habeas relief, as "no federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *see, e.g.*, *Ennis v. Artus*, No. 09 Civ. 10157 (DAB), 2011 WL 3585954, at *22 (S.D.N.Y. Aug. 12, 2011) (sentence not harsh or excessive where within state statutory limits), *report and recommendation adopted*, 2012 WL 3957046 (S.D.N.Y. Sept. 10, 2012); *Galberth v. New York*, No. 06 Civ. 5728 (NRB), 2007 WL 633953, at *5 (S.D.N.Y. Feb. 28, 2007) (same).

## CONCLUSION

**\*19** For the foregoing reasons, the Court denies Beniquez's February 18, 2021 petition for a writ of habeas corpus. [11]

The Court declines to issue a certificate of appealability. Beniquez has not made a substantial showing of a denial of a federal right. Appellate review is therefore not warranted. *Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005); 28 U.S.C. § 2253.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith. Therefore, *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

SO ORDERED.

## All Citations

Slip Copy, 2023 WL 3948738

## Footnotes

1   All page numbers refer to documents' Bates-stamped page numbers, with the exception of the Petition, which has only internal page numbering.

2   Beniquez's motion is dated January 29, 2021, *see, e.g.*, Dkt. 13-8 at 4, but stamped as received by the Supreme Court on February 19, 2021, *id.* at 3.

3   Insofar as Beniquez makes the related argument that his convictions were against the weight of the evidence, the Court also denies relief. Pet. at 6. Even assuming that Beniquez exhausted this claim, such a claim does not present a viable basis for federal habeas relief. "Unlike a legal sufficiency claim, which is based on federal due process principles, a weight of the evidence argument is a pure state law claim grounded in CPL § 470.15(5)." *Dixson v. Lamanna*, No. 18 Civ. 8285 (KPF) (SN), 2022 WL 19180, at *23 (S.D.N.Y. Jan. 3, 2022) (internal quotation marks omitted); *see, e.g.*, *McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus[ ]."); *Santiago v. Keyser*, No. 19 Civ. 04020 (LJL) (VF), 2022 WL 2917493, at *10 (S.D.N.Y. May 24, 2022) ("It is well established that weight-of-the-evidence claims are purely state-law claims and are therefore not cognizable on

habeas review."), *report and recommendation adopted*, 2022 WL 2916690 (S.D.N.Y. July 25, 2022). And Beniquez's arguments in support of this claim—which largely argue that Quijano's testimony was not credible—are "likewise not reviewable in habeas proceedings since credibility determinations are the province of the jury." *Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006).

4    The record is silent as to the length of Beniquez's hair in September 2009. Notably, the State made the same point in opposition to Beniquez's direct-appeal challenge to the receipt of Madden's testimony, noting that Silva's sanitized statement, particularly as commented upon by Beniquez's counsel, directed suspicion away from Beniquez and toward Falquez. Dkt. 13-2 at 73–74. Beniquez has not responded to that argument, including to suggest that he, too, had long hair in September 2009.

5    Given the other impediments to this claim, the Court does not have occasion to resolve whether there was such a violation. The State acknowledges that Silva's statement was testimonial and that Silva was not available for cross-examination. *See Michigan v. Bryant*, 562 U.S. 344, 359–65 (2011) (statement made during police interrogation nontestimonial if "primary purpose" was to enable police to meet an ongoing emergency, but testimonial if such purpose was to establish facts of past events); *Crawford v. Washington*, 541 U.S. 36, 52 (2004) ("Statements taken by police officers in the course of interrogations are also testimonial[ ]."). Its basis for disputing that there was a confrontation clause violation is that Silva's sanitized statement, as elicited, directed suspicion *away* from Beniquez and onto another Aztecs member, as reviewed above. *See* Opp. at 40; *cf. United States v. Vargas*, 803 F. App'x 529, 532 (2d Cir. 2020) (no confrontation clause violation where, in light of nature of testimony, witness was not "a witness against" defendant).

6    The parties submitted their briefs before the Supreme Court's decision in *Brown*, 142 S. Ct. at 1520. But the *Brecht* component of *Brown*'s two-part test predated *Brown*; thus, the AEDPA standard added by Brown "is of no relevance here." *Krivoi*, 2022 WL 17481816, at *3 n.3 (affirming denial of § 2254 petition where briefing filed before *Brown* decision); *see also* Opp. at 36 n.18 (noting pending *Brown* appeal and arguing that Beniquez failed to satisfy both the *Brecht* and AEDPA standards).

7    Gonzalez's counsel did object to several aspects of the prosecution's closing argument, but on grounds particular to Gonzalez. These included objections to the prosecutor's statements to the effect that (1) an exculpatory inference should not be drawn from the fact that cell cite location evidence did not situate Gonzalez at the Baruch Houses; this evidence merely reflected, the prosecution argued, that "[we] couldn't find his cell phone number," Dkt. 15-1 at 379, and (2) Gonzalez, having lied about why he was at the Baruch Houses, could not be assumed to have told the truth in reporting his cell phone number to law enforcement. *See also id.* at 376 (objecting to testimony about when Gonzalez moved to New Jersey). The court overruled these objections. *Id.* at 376, 379–80.

8    To the extent Beniquez claims that the prosecution's closing argument improperly bolstered Quijano's credibility, that claim also fails on its merits. In his Article 440.10 motion, Beniquez faulted the prosecution for ostensibly characterizing the plea deal as not conditioning leniency on a conviction. In fact, Beniquez states, for Quijano to get maximum leniency, "everyone must be convicted." Article 440.10 Motion at 38. The trial transcript does not reflect any such misstatement— or improper bolstering. It reflects that the prosecution, on redirect examination, asked Quijano whether the cooperation agreement required convictions for him to benefit—Quijano responded that it did not, Dkt. 15-1 at 285—and that the prosecution so inquired only after Beniquez's counsel, on cross examination, had opened the door to this subject, *see id.* at 253 (Q: "[Y]our cooperation isn't any good unless people get found guilty, get convicted, right? A: "Correct.").

9    To the extent the Petition can be construed to fault counsel for failing to object to Silva's sanitized statement, that claim also fails to secure relief. As discussed above, Beniquez has not shown, *inter alia*, that this evidence prejudiced him at trial; on the contrary, the trial record reflects a strategic basis for not objecting, in that Beniquez's counsel sought to gain mileage from this statement by casting it as made by a different person consistent with the description used in the sanitized statement. *Cf. Singleton v. Davis*, 308 F. App'x 560, 562 (2d Cir. 2009) (no ineffective assistance where trial

counsel chose not to object to inadmissible hearsay as part of strategy designed to highlight for the jury an inconsistency between testimony and evidence).

10    Gonzalez, who was sentenced to a 15-year prison term followed by five years' supervision, was convicted of a different crime: manslaughter in the first degree. *See* Dkt 15-1 at 458–59.

11    In response to the Court's order lifting the stay of the instant case, which had been imposed while Beniquez's first Article 440.10 state proceedings were pending, Dkt. 24, Beniquez filed a letter stating, *inter alia:* "In ordinary court practice, this Court had to advise me that the order was revoked and that I had up to a certain date to file the amended petition with the issues that were raised in the CPL § 440.10 along with the grounds that were already filed." Dkt. 25. Although the purpose of this letter is unclear, the Court construes it as a request for leave to amend the Petition. The Court denies that request. Federal Rule of Civil Procedure 15 governs motions to amend habeas petitions under § 2254. *See Littlejohn v. Artuz*, 271 F.3d 360, 363 (2d Cir. 2001). It provides for amendments as a matter of course within 21 days of service or 21 days after service of a responsive pleading, but it does not do so indefinitely—as Beniquez's letter appears to imply —and those periods long ago passed. Fed. R. Civ. P. 15(a)(1)(A). To the extent that district courts retain discretion after the Rule 15 period to permit amendment, courts "retain the discretion to deny that leave in order to thwart tactics that are dilatory, unfairly prejudicial or otherwise abusive, or where amendment would be futile." *McCloud v. Perez*, No. 17 Civ. 827 (AJN) (KNF), 2018 WL 2021677, at \*2 (S.D.N.Y. Apr. 12, 2018) (internal citations and quotation marks omitted). Here, for the reasons reviewed above, Beniquez's claims durably fail on the merits, such that amendment would be futile. *See, e.g.*, *id.* (denying leave to amend where amendment would be futile); *Cruz v. Bureau of Prisons*, No. 10 Civ. 5460 (SHS), 2014 WL 12648510, at \*3 (S.D.N.Y. Mar. 24, 2014) (same), *aff'd sub nom. Cruz v. Walsh*, 633 F. App'x 794 (2d Cir. 2015); *see also Ramos-Nunez v. United States*, No. 14 Cr. 102 (VSB), 2019 WL 1300811, at \*3 n.4 (S.D.N.Y. Mar. 21, 2019) (same, with § 2255 petition).

---

**End of Document**                                         © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:21-cv-00174-AMN-ML    Document 47    Filed 01/23/24    Page 156 of 194

Moreno-Gratini v. Sticht, Not Reported in Fed. Supp. (2022)

2022 WL 1425712

2022 WL 1425712
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Merlin MORENO-GRATINI, Petitioner,

v.

Thomas STICHT, Respondent.

19-CV-05964 (GHW)(SN)
|
Signed 04/18/2022

**Attorneys and Law Firms**

Merlin Moreno-Gratini, Collins, NY, Pro Se.

Alyson Joy Gill, Margaret Ann Cieprisz, New York State Office of the Attorney General, New York, NY, Matthew B. Keller, Barket Epstein Kearon Aldea & LoTurco, LLP, Garden City, NY, for Respondent.

## REPORT AND RECOMMENDATION

SARAH NETBURN, United States Magistrate Judge.

**\*1  TO THE HONORABLE GREGORY H. WOODS:**
Pro se petitioner Merlin Moreno-Gratini seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to vacate his September 6, 2017 convictions of attempted murder in the second degree and assault in the first degree. Moreno-Gratini's petition should be denied. All of his claims are procedurally barred. Even if they were not, habeas relief is unavailable on the merits.

## BACKGROUND

### I. Moreno-Gratini's Arrest and Indictment
On May 18, 2016, Officers Gertrude Escobar and Marilyn Estrada responded to a 911 report of an assault at a building on West 139th Street. ECF No. 32-3 ("T.") at 188-89, 223. When they and other police officers arrived at the scene, they observed a woman, later identified as Moreno-Gratini's sister, Ingrid Moreno, lying in the street in front of the building. She was bleeding from a chest wound and several wounds to her hands. She and another woman with her, later identified as Moreno's and Moreno-Gratini's grandmother, Dolores Mauricio, both spoke Spanish, which Officers Escobar and Estrada spoke fluently.

According to the officers' testimony at trial, both Moreno and Mauricio told the police that Moreno's brother had stabbed Moreno and then directed the officers in the direction he had fled. Mauricio gave an officer an identification card with Moreno-Gratini's photograph and told Officer Escobar that he and Moreno had had an argument the prior night that continued into the morning when the stabbing occurred. Officer Escobar then accompanied Mauricio to her apartment in the building, where there was blood on the kitchen floor. Mauricio again said that Moreno and Moreno-Gratini had been arguing (over money) and that he had stabbed Moreno in the chest with a knife.

Another officer took Moreno-Gratini into custody shortly afterwards. On May 23, 2016, a grand jury indicted Moreno-Gratini for attempted murder in the second degree and assault in the first degree under N.Y. Penal Law §§ 125.25(1) and 120.10(1). ECF No. 32-2 ("R.") at 2-3.

2022 WL 1425712

## II. Relevant Trial Court Proceedings

Before the jury was selected, the court held a hearing on whether to admit out-of-court statements made by Moreno and Mauricio to Officer Gertrude Escobar, one of the prosecution's witnesses. The prosecution sought to introduce the statements because Moreno did not testify for the prosecution, only for the defense, and Mauricio did not testify at all due to her health. T. 2-3. Officer Escobar testified that when she arrived at the scene, she saw Moreno on the ground, crying and yelling not to let her die. T. 10-12. According to Officer Escobar, when she approached Moreno, Moreno said that her brother did it. T. 12-14. Officer Escobar also testified that, a couple of minutes later, she spoke to Mauricio, who was distraught and crying. T. 15. According to Officer Escobar, Mauricio said that Moreno was her granddaughter and that she was present when Moreno was stabbed. T. 16-17. Mauricio then took Officer Escobar to her apartment, where Mauricio told her that there had been a dispute the night before over money, and then in the morning, her grandson Moreno-Gratini came out of the room, took a knife, and stabbed Moreno in the chest. T. 17, 23.

**\*2**  The court admitted as excited utterances Moreno's statements to Officer Escobar, rejecting the defense's argument that there was time for reflection between when the incident occurred and when Moreno spoke to Officer Escobar. T. 32-33. The defense attorney asked the court to note his objection. T. 34.

The court also admitted as excited utterances Mauricio's statements to Officer Escobar, again rejecting the defense's arguments that there was time for Mauricio to reflect between when the incident occurred and when she spoke with Officer Escobar in the street and in the apartment. T. 36-39. The defense attorney again asked the court to note his objection. T. 39.

At voir dire, the presiding judge asked the panel of prospective jurors a series of questions to facilitate jury selection, including: whether the jurors or anyone close to them had ever been the victim of a crime or involved in the criminal justice system; whether any of the jurors were or had family members who were lawyers; whether the jurors accepted Moreno-Gratini's presumption of innocence and the government's duty to prove his guilt beyond a reasonable doubt; whether the jurors accepted that their task was to determine Moreno-Gratini's guilt but not his punishment; whether Moreno's refusal to testify for the prosecution would affect the jurors' ability to be fair; whether Moreno and Moreno-Gratini's familial relationship would lead the jurors to take the crime less seriously; whether any of the jurors' sibling relationships would affect their ability to be fair; whether the jurors would assess the police officer witnesses' credibility as though they were any other witness; and whether any of the jurors lived in the area where the crime took place. See T. 50-102. The court also asked the prospective jurors about their jobs, education, living situation, and hobbies, and whether anything troubled them about the case. See T. 102-125.

Given the scope of the court's questioning, the court instructed the attorneys not to be repetitious in their questioning of the jury. T. 125-26. The prosecuting attorney attempted to ask the jury whether they understood that the state, not the victim, had brought the case; the court stopped the attorney and said, "That's the rule. Move on. They know that." T. 127. The prosecuting attorney then attempted to ask whether the jury felt that any particular evidence was required; the court again stopped the attorney and said that the jury did not "have to answer questions like that." Id. The prosecuting attorney asked no further questions. T. 127-28. The defense attorney attempted to ask whether any members of the jury would not hold the prosecution to the burden of "beyond a reasonable doubt"; the court stopped the attorney and said, "Counsel, I promised them that you would not be repetitious. I went through that." T. 128. The defense attorney said, "The judge is killing me," and asked no further questions. T. 128-29.

At trial, Officer Escobar testified for the prosecution that, on May 18, 2016, she and Officer Estrada responded to a 911 call for an assault in progress at 602 139th Street. T. 188-89. When Officer Escobar arrived at the scene, she saw Moreno on the ground, crying and yelling not to let her die. T. 189. Officer Escobar testified that when she approached Moreno, Moreno said that her brother did it. T. 190-91. Defense counsel did not object to the statement's admission.

**\*3**  After Moreno was taken away in an ambulance, Officer Escobar spoke to Mauricio, who had been holding Moreno's head. T. 193. Mauricio was crying, shaken, and distraught. Id. Officer Escobar testified that Mauricio said that Moreno was her granddaughter, and that Mauricio was present when Moreno was stabbed, and that there had been an argument the night before

Case 9:21-cv-00174-AMN-ML   Document 47   Filed 01/23/24   Page 158 of 194

Moreno-Gratini v. Sticht, Not Reported in Fed. Supp. (2022)

2022 WL 1425712

that spilled over into the morning. T. 193. Mauricio took Officer Escobar to her apartment, where Officer Escobar saw blood on the kitchen floor. T. 193-94. According to Officer Escobar, when she was inside the apartment with Mauricio, Mauricio told her that there had been a dispute the night before over money, and in the morning, her grandson came out of the room, took a knife, and stabbed Moreno in the chest. T. 194. Officer Escobar recovered the knife and returned it to the precinct. T. 195. Defense counsel did not object to the statements' admission.

Officer Petra Anderson testified for the prosecution that she arrested Moreno-Gratini on May 18, 2016. T. 204. On that day, she received a call for an assault in progress with a knife. T. 205. When Officer Anderson arrived at the scene, she saw Officer Escobar in the street with Moreno. T. 205-06. As Officer Anderson walked in Officer Escobar's direction, an older woman, who Officer Anderson later learned was Mauricio, approached. T. 27-28. Mauricio appeared distraught and crying, and she was holding an identification card with Moreno-Gratini's photo on it, which she gave to Officer Anderson. T. 206-07. According to Officer Anderson, Mauricio said "hermano," or "brother" in Spanish, and pointed down 139th Street towards Riverside Drive. T. 207. Defense counsel did not object.

The court then held a hearing outside the jury's presence to determine whether Officer Estrada could also testify to identifying statements made by Moreno and Mauricio. At the hearing, she testified that when she arrived at the scene and approached Moreno, Moreno said that her brother did it and pointed with her finger going west on 139th Street. T. 217-18. Officer Estrada also spoke to the victim's grandmother, Mauricio, who said that Moreno's brother was responsible and, when asked which way the perpetrator went, pointed down 139th Street and the West Side Highway. T. 218. Finally, Officer Estrada testified that she asked Mauricio about the reason for the stabbing, and she said it was a fight over money. Id. When prompted by the court to make his argument as to the statement's admissibility, the defense attorney said, "Judge, we went over that before." T. 219. The prosecuting attorney then asked, "The Crawford issue, your Honor, the statements are nontestimonial in nature?" T. 220. The defense attorney said nothing. The court admitted both Moreno's and Mauricio's out-of-court statements as to the identity of the perpetrator as non-testimonial excited utterances but did not allow Officer Estrada to testify about Mauricio's stated reason for the stabbing. T. 220. Officer Estrada testified before the jury within the limitations set by the court, and defense counsel did not object.

Moreno testified for the defense that, on May 18, 2016, she was at home in the kitchen using a knife to eat her meal. T. 273-74. While she was telling her grandmother, Mauricio, about a disagreement she had with Moreno-Gratini about money she owed him, he overheard the conversation and came into the kitchen. T. 275-76. According to Moreno, she said that she was not going to pay him, got on top of him, and scratched him. T. 277. Moreno-Gratini then pushed her, and she grabbed the knife. T. 277-78. Moreno further testified that she fell against the wall, which caused her to get cut with the knife. T. 278. She said that she was not the one who called 911, that she was not crying when she was waiting for the ambulance, and that she did not speak to anyone. T. 281-82. Defense counsel also introduced a letter written by Moreno asking the District Attorney to drop the charges against Moreno-Gratini. T. 284-86.

**\*4** The jury found Moreno-Gratini guilty of attempted second-degree murder and first-degree assault. T. 382-83. Before sentencing, Moreno-Gratini hired a new attorney who moved to set aside the verdict pursuant to N.Y. CPL § 330.30(1). R. 6-10. The defense argued in relevant part that the court had improperly admitted into evidence multiple out-of-court statements in violation of Moreno-Gratini's Confrontation Clause rights, specifically Moreno's and Mauricio's statements about the identity of the perpetrator, his location, and the basis for the stabbing. The motion was denied on June 30, 2017. R. 49-52. The court found that, because trial counsel had not specifically objected to the statements' admission, Moreno-Gratini's challenge was unpreserved. In the alternative, the court ruled that his evidentiary and constitutional objections were without merit. On September 6, 2017, the court sentenced Moreno-Gratini on each count to six years in prison, to be served concurrently, and to be followed by five years of post-release supervision.

## III. Appellate Proceedings

Moreno-Gratini appealed to the Appellate Division, First Department, on three bases: (i) the trial court deprived him of a fair opportunity to question potential jury members during voir dire; (ii) the trial court erred by admitting Mauricio's out-

Case 9:21-cv-00174-AMN-ML    Document 47    Filed 01/23/24    Page 159 of 194

Moreno-Gratini v. Sticht, Not Reported in Fed. Supp. (2022)

2022 WL 1425712

of-court statements to Officer Escobar as excited utterances; and (iii) for a number of reasons, he was deprived of effective assistance of counsel. The Appellate Division affirmed the judgment on December 11, 2018. R. 170-73; People v. Moreno-Grantini, 167 A.D.3d 471 (1st Dep't 2018). The Appellate Division first found that Moreno-Gratini had not preserved his challenge to the court's alleged restriction of his counsel's voir dire, and, in the alternative, his counsel's decision not to ask questions on voir dire was neither compelled by the court nor prejudicial to him. 167 A.D.3d at 471. Similarly, the Appellate Division found that Moreno-Gratini had not preserved his claim that the admission of certain out-of-court statements violated the Confrontation Clause, and, in the alternative, that the statements were non-testimonial "because they were made to an officer whose primary purpose was to determine what had happened and to ensure the safety of other persons." Id. at 471-72. And finally, the Appellate Division held that Moreno-Gratini's ineffective assistance of counsel claim was unreviewable on direct appeal because it involved matters of trial strategy not in the record, and, in the alternative, to the extent permitted by the existing record, that he received effective assistance under state and federal standards. Id. at 472.

Moreno-Gratini sought leave to appeal to the New York Court of Appeals.[1] That application was denied on March 20, 2019. R. 178.

**IV. Moreno-Gratini's Federal Habeas Petition and CPL § 440.10 Motion**

On June 25, 2019, Moreno-Gratini filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Moreno-Gratini argued three grounds for relief: (i) during jury selection, the trial court improperly limited his counsel's ability to personally question prospective jurors; (ii) the trial court improperly admitted Mauricio's out-of-court statements to Officer Escobar in violation of his Confrontation Clause rights; and (iii) his trial counsel rendered ineffective assistance by not asserting a justification defense at trial.

Moreno-Gratini also requested that the Court hold the petition in abeyance while he returned to state court to exhaust his ineffective assistance of counsel claim. The Court granted his request on July 15, 2019. ECF No. 7.

**\*5** On August 7, 2019, Moreno-Gratini filed a *pro se* motion pursuant to CPL § 440.10 to vacate the judgment, arguing that his trial counsel was ineffective for failing to assert a justification defense at trial. R. 184; see id. 179-256. The trial court denied the motion in February 2020 "for all the reasons previously stated" in the June 2017 order denying Moreno-Gratini's CPL § 330.30 motion. R. 257. Respondent filed a letter on July 16, 2020, stating that Moreno-Gratini had not filed an application seeking leave to appeal. ECF No. 10. Accordingly, on July 24, 2020, the Court lifted the stay in this case.

Moreno-Gratini then filed letters indicating that he had sought leave to appeal the February 2020 order but had not received a response. See ECF Nos. 15, 17. The Court instructed him to supplement the record with proof of his application, but he did not. There is no evidence that Moreno-Gratini in fact sought leave to appeal the denial of his CPL § 440.10 motion.

**DISCUSSION**

**I. Legal Standards**

**A. *Pro Se* Filings**

Courts liberally construe pleadings prepared by pro se litigants and hold them "to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). It is appropriate to interpret *pro se* submissions to raise the strongest arguments that they suggest. Gomez v. Brown, 655 F. Supp. 2d 332, 342 (S.D.N.Y. 2009) (explaining that because of the right of self-representation, the court is obligated to make reasonable allowances to protect pro se litigants from "inadvertent forfeiture of important rights because of their lack of legal training" (quoting Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983))).

Case 9:21-cv-00174-AMN-ML   Document 47   Filed 01/23/24   Page 160 of 194

Moreno-Gratini v. Sticht, Not Reported in Fed. Supp. (2022)

2022 WL 1425712

**B. Habeas Standard of Review**

A state prisoner seeking habeas relief under Section 2254 must show by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); see Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997). Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the standard of review of a federal habeas corpus petition "depends upon whether the petitioner's claims have previously been 'adjudicated on the merits' by a state court." Spears v. Greiner, 459 F.3d 200, 203 (2d Cir. 2006); see 28 U.S.C. § 2254(d). An "adjudication on the merits" is one that "(1) disposes of the claim 'on the merits,' and (2) reduces its disposition to judgment." Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001); accord Bell v. Miller, 500 F.3d 149, 155 (2d Cir. 2007).

Before determining whether the state court's adjudication was on the merits, I first ascertain whether the petitioner has cleared all necessary procedural hurdles. As relevant here, the state court decision cannot have rested on independent and adequate state law grounds, and the petitioner must have exhausted each of his claims before bringing them in federal court.

**II. Adequate and Independent State Grounds**

"A federal habeas court will not review a claim rejected by a state court 'if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment.' " Walker v. Martin, 562 U.S. 307, 315 (2011) (quoting Beard v. Kindler, 558 U.S. 53, 55 (2009)) (alteration in Kindler). The state-law ground may be substantive or procedural. Id.; accord Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006). "Even where the state court has ruled on the merits of a federal claim 'in the alternative,' federal habeas review is foreclosed where the state court has also expressly relied on the petitioner's procedural default." Murden v. Artuz, 497 F.3d 178, 191 (2d Cir. 2007) (quoting Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005)). "To bar federal habeas review, however, the state court's decision must rest not only on an independent procedural bar under state law, but also on one that is 'adequate to support the judgment.' " Id. at 191-92 (quoting Jimenez, 458 F.3d at 138).

**\*6** A state procedural bar is "adequate" if it "is firmly established and regularly followed by the state in question" in the "specific circumstances presented in a case." Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006) (citation omitted); see Kindler, 558 U.S. at 60-61 (holding same); Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (citation omitted) (listing guideposts for determining adequacy of procedural rule).

The Appellate Division rejected Moreno-Gratini's jury selection and Confrontation Clause claims as unpreserved under N.Y. CPL § 470.05(2), New York's contemporaneous objection rule. The Court of Appeals has "held repeatedly that the contemporaneous objection rule is a firmly established and regularly followed New York procedural rule." Downs v. Lape, 657 F.3d 97, 104 (2d Cir. 2011). The preservation rule is an independent and adequate state law bar as to claims regarding jury selection, e.g., Richardson v. Greene, 497 F.3d 212, 219 (2d Cir. 2007) (Batson challenges); People v. Azaz, 10 N.Y.3d 873, 875 (2008) (trial court's voir dire instructions); People v. Amaro, 216 A.D.2d 172, 172-73 (1st Dep't 1995) (trial court's restrictions on juror questioning), appeal denied, 87 N.Y.2d 843 (1995), and Confrontation Clause claims, e.g., Chrysler v. Guiney, 806 F.3d 104, 119 (2d Cir. 2015) ("Under New York law, a defendant does not preserve a Confrontation Clause claim unless he specifically objects to the introduction of the relevant evidence on constitutional grounds."); People v. Cato, 22 A.D.3d 863 (2d Dep't 2005) (finding same).

"New York's highest courts uniformly instruct that to preserve a particular issue for appeal, defendant must *specifically focus on the alleged error.*" Richardson, 497 F.3d at 218 (quoting Garvey v. Duncan, 485 F.3d 709, 714-15 (2d Cir. 2007)) (emphasis in Richardson). At trial, Moreno-Gratini's attorney did not specifically object during voir dire to the trial court's curtailment of his questioning, or to the introduction of Mauricio's out-of-court statements to Officer Escobar on constitutional grounds. These two claims are therefore unpreserved.

A petitioner may overcome a procedural bar by "show[ing] 'cause' for the default and 'prejudice attributable thereto,' or demonstrat[ing] that failure to consider the federal claim will result in a 'fundamental miscarriage of justice,' " Harris v. Reed,

Case 9:21-cv-00174-AMN-ML    Document 47    Filed 01/23/24    Page 161 of 194

Moreno-Gratini v. Sticht, Not Reported in Fed. Supp. (2022)

2022 WL 1425712

489 U.S. 255, 262 (1989) (citations omitted), which requires demonstration of "actual innocence," Calderon v. Thompson, 523 U.S. 538, 559 (1998); accord Dretke v. Haley, 541 U.S. 386, 388 (2004) (citation omitted); Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002). Moreno-Gratini has neither demonstrated good cause to excuse his failure to preserve his claims nor presented "new," "credible," and "compelling" evidence of his innocence. Hyman v. Brown, 927 F.3d 639, 656-57 (2d Cir. 2019). The two letters Moreno submitted proclaiming his innocence, ECF Nos. 20, 26, only reiterate her trial testimony, which the jury rejected in finding Moreno-Gratini guilty.

I therefore recommend the Court find that Moreno-Gratini's jury selection and Confrontation Clause claims are procedurally barred because the Appellate Division's decision rested on the adequate and independent state ground of preservation.

## III. Exhaustion

Before a federal court can review a petition for a writ of habeas corpus, a petitioner must exhaust all state-provided remedies. 28 U.S.C. § 2254(b)(1)(A); see also O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (to exhaust a claim a petitioner must "invoke[ ] one complete round of the State's established appellate review process" before bringing the same claim in federal court). A claim is deemed exhausted if the petitioner: (i) "fairly presented" to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts; and (ii) presented his claim to the highest state court that could hear it. Baldwin v. Reese, 541 U.S. 27, 29 (2004); O'Sullivan, 526 U.S. at 844-48.

**\*7** In New York, a "defendant must first appeal ... to the Appellate Division, and then must seek further review ... by applying to the Court of Appeals for a certificate granting leave to appeal." Galdamez v. Keane, 394 F.3d 68, 74 (2d Cir. 2005). "New York procedural rules bar its state courts from hearing either claims that could have been raised on direct appeal but were not, or claims that were initially raised on appeal but were not presented to the Court of Appeals." Sparks v. Burge, No. 06-cv-6965 (KMK)(PED), 2012 WL 4479250, at \*4 (S.D.N.Y. Sept. 28, 2012); see also DiGuglielmo v. Smith, 366 F.3d 130, 135 (2d Cir. 2004) (affirming the "denial of [a] habeas petition on the grounds, inter alia, that [petitioner's] claims were not properly exhausted" where "they were not properly presented to New York's highest court"). For claims involving matters "not reflected in, or fully explained by, the record," Moreno-Grantini, 167 A.D.3d at 472, a petitioner must assert the claim in a N.Y. CPL § 440.10 motion. If that motion is denied, he must then seek leave to appeal to the Appellate Division in order to exhaust his state court remedies. See N.Y. CPL § 450.90; Cosey v. Lilley, 460 F. Supp. 3d 346, 370 (S.D.N.Y. 2020) (noting that, if Appellate Division denies leave to appeal the denial of a § 440.10 motion, no further appellate review under state law is available); accord Klein v. Harris, 667 F.2d 274, 284 (2d Cir. 1981).

A claim of ineffective assistance of counsel is properly exhausted only when the petitioner has asserted in state court the specific conduct giving rise to the claim. Caballero v. Keane, 42 F.3d 738, 740 (2d Cir. 1994) ("[T]o reach the merits of [an ineffective representation claim], all of [the] allegations must have been presented to the state courts." (alterations in original)); Castillo v. Walsh, 443 F. Supp. 2d 557, 566-67 (S.D.N.Y. 2006) (finding same). Moreno-Gratini's ineffective assistance claim is based on counsel's "failure to present a defense of justification" or to request a jury instruction on that defense. ECF No. 1 at 12. His direct appeal of his conviction did not discuss this ground. R. 97-102. Instead, as discussed above, Moreno-Gratini sought a stay specifically so that he could return to state court to exhaust his ineffective assistance claim.

Moreno-Gratini raised the justification defense in his § 440.10 motion, R. 184-86, but there is no proof that he ever sought leave from the Appellate Division to appeal the denial of that motion. He alleged that he sought leave but had not received a response, but despite the Court's urging, has failed to supplement the record with supporting evidence. His ineffective assistance claim is therefore unexhausted. As with his jury selection and Confrontation Clause claims, Moreno-Gratini could overcome this procedural bar by demonstrating good cause to excuse his failure to exhaust his claim or presenting new evidence of his innocence. Again, he has done neither.

Accordingly, I recommend the Court find Moreno-Gratini's ineffective assistance claim is procedurally barred because he did not exhaust it in state court.

2022 WL 1425712

## IV. Merits

Moreno-Gratini's claims are procedurally barred and therefore unreviewable. However, even if the Court could reach the merits of his claims, he cannot establish that federal habeas relief is warranted.

Where a claim has been "adjudicated on the merits" in state court, under the AEDPA standard, a federal court on habeas review must determine whether the state court's determination was (1) "contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts." 28 U.S.C. §§ 2254(d)(1)-(2); see Johnson v. Williams, 568 U.S. 289, 292 (2013); Spears, 459 F.3d at 203.

A state court decision is "contrary to [the Supreme Court's] clearly established precedents if it applies a rule that contradicts the governing law set forth in" Supreme Court precedent, "or if it confronts a set of facts that is materially indistinguishable from a decision of [the] Court but reaches a different result." Brown v. Payton, 544 U.S. 133, 141 (2005) (first citing Williams v. Taylor, 529 U.S. 362, 405 (2000); and then citing Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam)). A state court decision constitutes an "unreasonable application" of the Supreme Court's precedent if "the state court applies [that Supreme Court] precedents to the facts in an objectively unreasonable manner." Id. (first citing Williams, 529 U.S. at 405; and then citing Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) (per curiam)). Thus, in construing and applying federal law, even erroneous state court decisions that are deemed reasonable will survive habeas review. See Williams, 529 U.S. at 409-13. For federal habeas review, factual determinations made by a state court are presumed correct, and a petitioner bears the burden of rebutting this presumption "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**\*8** The Appellate Division alternatively addressed all three of Moreno-Gratini's claims on the merits, see 167 A.D.3d at 471-72, so AEDPA's standard of review applies. Zarvela v. Artuz, 364 F.3d 415, 417 (2d Cir. 2004). The Appellate Division's determination must have either been contrary to (or involved an unreasonable application of) clearly established federal law or have been based on an unreasonable determination of the facts.

With respect to his jury selection claim, Moreno-Gratini has offered no evidence that the Appellate Division's factual determination that "defense counsel's decision not to ask questions on voir dire was compelled by the court" was incorrect. 167 A.D.3d at 471. Having conducted a broad-ranging examination of the prospective panel, the court instructed counsel to avoid repetition and improper questioning, but nothing in the record suggests that the court would not have permitted questions on issues it had not already covered. Moreover, the Appellate Division's decision correctly applied clearly established federal law. The Sixth and Fourteenth Amendments' guarantee of an impartial jury necessitates leaving "a great deal" of the voir dire inquiry "to [the court's] sound discretion." Mu'Min v. Virginia, 500 U.S. 415, 422 (1991) (quoting Connors v. United States, 158 U.S. 408, 413 (1895)). That is, courts have a great deal of discretion in deciding how to conduct their voir dire. The trial court's voir dire conformed to both state and federal rules. See N.Y. CPL § 270.15(1)(c) ("[T]he court shall not permit questioning that is repetitious or irrelevant, or questions as to a juror's knowledge of rules of law."); Fed. R. Crim. P. 24(a)(2)(A) ("If the court examines the jurors, it must permit the attorneys for the parties to ask further questions that the court considers proper."). The trial court's thorough questioning of the potential panel satisfied its obligation to vet the jury for impartiality, and Moreno-Gratini's jury selection claim is therefore meritless.

So is Moreno-Gratini's Confrontation Clause claim, which the Appellate Division also alternatively addressed on the merits. 167 A.D.3d at 471-72. Because the Confrontation Clause provides criminal defendants the right to confront the witnesses against them, the state cannot introduce "testimonial" statements by a non-testifying witness unless the witness is unable to testify and the defendant had a prior opportunity for cross-examination. See Crawford v. Washington, 541 U.S. 36, 53-54 (2004). However, non-testimonial statements "made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency" are not subject to the Confrontation Clause. Ohio v. Clark, 576 U.S. 237, 244 (2015) (quoting Davis v. Washington, 547 U.S. 813, 822 (2006)). The Appellate Division held that Mauricio's out-of-court statements were made "to an officer whose primary purpose was to determine what had happened and to ensure the safety of other persons." 167 A.D.3d at 471-72. There is no evidence that

Moreno-Gratini v. Sticht, Not Reported in Fed. Supp. (2022)

2022 WL 1425712

Officer Escobar knew Moreno-Gratini had been arrested at the time she spoke with Mauricio, see id. at 472, and her questions were focused on what had happened and the weapon used in the stabbing. On the record, it is not possible to conclude that the trial judge's admission of Mauricio's statements as non-testimonial excited utterances (and the Appellate Division's affirmance thereof) was contrary to, or an unreasonable application of, Supreme Court precedent. See Brown v. Keane, 355 F.3d 82, 87 (2d Cir. 2004) (noting that excited utterances generally satisfy the Confrontation Clause); Branham v. Lee, No. 10-cv-3074 (NRB), 2011 WL 5979530, at *6 (S.D.N.Y. Nov. 29, 2011) ("Statements properly classified as excited utterances are an archetype of the off-hand, non-testimonial statements that do not implicate the Confrontation Clause.").

 **\*9**  Additionally, even if admitting Mauricio's statements *did* violate the Confrontation Clause, such admission would be subject to harmless-error analysis. Neder v. United States, 527 U.S. 1, 18 (1999) (citing Delaware v. Van Arsdall, 475 U.S. 673 (1986)). To show prejudice sufficient to warrant relief under habeas, Moreno-Gratini would need to demonstrate that admitting the statements had a "substantial and injurious effect or influence in determining the jury's verdict." Davis v. Ayala, 576 U.S. 257, 268 (2015) (citation omitted). Here, Mauricio's statements to Officer Escobar identifying Moreno-Gratini as the assailant were cumulative of Moreno's identification, and there is no evidence that Officer Escobar would not have recovered the weapon without Mauricio's statements about the knife. Excluding the statements would therefore not have affected the jury's deliberations or trial's outcome.

Finally, Moreno-Gratini's ineffective assistance claim is also meritless. To establish a claim of ineffective assistance of counsel, a petitioner must show that counsel's assistance fell below an objective standard of reasonableness and that, but for counsel's deficient conduct, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. Habeas review of ineffective assistance claims is "doubly deferential" "to afford both the state court and the defense attorney the benefit of the doubt." Woods v. Donald, 575 U.S. 312, 316-17 (2015) (cleaned up). The decision not to pursue a defense does not constitute deficient performance where "the lawyer has a reasonable justification for the decision," Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005) (citation omitted), and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," Strickland, 466 U.S. at 690. Given Moreno's testimony for the defense that her wounds were self-inflicted, Moreno-Gratini's counsel was justified in choosing to present a defense of innocence rather than justification or self-defense. The strategy's ultimate failure does not render it unreasonable. See United States v. DiTommaso, 817 F.2d 201, 215 (2d Cir. 1987). And, as Respondent notes, presenting the justification defense in the alternative is a risky tactic, and "foregoing [it] does not make counsel ineffective." Abraham v. Lee, No. 13-cv-2525 (RWS), 2014 WL 3630876, at *11 (S.D.N.Y. July 22, 2014).

In sum, should the Court find that Moreno-Gratini's claims are not procedurally barred and subject to review, I recommend the Court nevertheless find that they are without merit.


## CONCLUSION

I recommend denying Moreno-Gratini's petition as to all three of his claims because they are procedurally barred. His jury selection and Confrontation Clause claims are procedurally barred because the Appellate Division's decision rested on the adequate and independent state ground of preservation, and his ineffective assistance of counsel claim is procedurally barred because he failed to exhaust it in state court. Alternatively, on the merits, Moreno-Gratini cannot establish that habeas relief is warranted.


### NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's objections

within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Gregory H. Woods at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Woods. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).

**All Citations**

Not Reported in Fed. Supp., 2022 WL 1425712

**Footnotes**

1    The record does not include a copy of Moreno-Gratini's leave application. As Respondent notes, the leave opposition stated that he sought leave "on the same grounds" raised in the Appellate Division. R. 175. The Court therefore proceeds on the assumption that Moreno-Gratini's application raised all of the issues that he argued in the Appellate Division. Respondent does not argue that any of Moreno-Gratini's claims were unexhausted for failure to include them in the leave application.

**End of Document**                                                      © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:21-cv-00174-AMN-ML    Document 47    Filed 01/23/24    Page 165 of 194

Moreno-Gratini v. Sticht, Not Reported in Fed. Supp. (2022)

2022 WL 1423298

2022 WL 1423298
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Merlin MORENO-GRATINI, Plaintiff,

v.

Thomas STICHT. Defendant.

1:19-CV-5964-GHW

|

Signed 05/05/2022

**Attorneys and Law Firms**

Merlin Moreno-Gratini, Collins, NY, Pro Se.

Alyson Joy Gill, Margaret Ann Cieprisz, Matthew B. Keller, NYS Office of the Attorney General, New York, NY, for Defendant.

ORDER

GREGORY H. WOODS, United States District Judge:

**\*1** On April 18, 2022, Magistrate Sarah Netburn issued a Report and Recommendation ("R&R") recommending that the Court deny Petitioner Merlin Moreno-Gratini's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 because his claims were procedurally barred. Dkt. No. 42 at 18.

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Parties may raise specific, written objections to the report and recommendation within fourteen days of receiving a copy of the report. *Id.*; *see also* FED. R. CIV. P. 72(b)(2). The Court reviews for clear error those parts of the report and recommendation to which no party has timely objected. 28 U.S.C. § 636(b)(1)(A); *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008).

No objection to the R&R was submitted within the fourteen-day window. The Court has reviewed the R&R for clear error and finds none. *See Braunstein v. Barber*, No. 06 Civ. 5978 (CS) (GAY), 2009 WL 1542707, at \*1 (S.D.N.Y. June 2, 2009) (explaining that a "district court may adopt those portions of a report and recommendation to which no objections have been made, as long as no clear error is apparent from the face of the record."). The Court, therefore, accepts and adopts the R&R with respect to Petitioner's petition for a writ of habeas corpus. For the reasons articulated in the R&R, Petitioner Merlin Moreno-Gratini's petition for a writ of habeas corpus is denied.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2022 WL 1423298

Moreno-Grafini v. Sticht, Not Reported in Fed. Supp. (2022)

2022 WL 1423298

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 5675867
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Trevis RAGSDALE, pro se, Petitioner,

v.

WARDEN, Respondent.

No. 11–CV–1681 (DLI).
|
Signed Sept. 24, 2015.

**Attorneys and Law Firms**

Trevis Ragsdale, Malone, NY, pro se.

Thomas M. Ross, Brooklyn, NY, for Respondent.

*MEMORANDUM AND ORDER*

DORA L. IRIZARRY, District Judge.

**\*1** Pro se petitioner Trevis Ragsdale ("Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] (*See* Petition ("Pet."), Dkt. Entry No. 1). By letter dated April 22, 2011, Petitioner requested that this Court stay his Petition to allow him to exhaust his state remedies. (*See* Letter dated April 22, 2014, Dkt. Entry No. 3.) On June 22, 2011, this Court stayed the Petition and granted Petitioner leave to file an amended petition within ninety days of the completion of his state court proceedings. (*See* Order dated June 22, 2011.) As discussed below, Petitioner exhausted his state court proceedings and returned to this Court to renew his habeas application. (*See* Amended Petition ("Am.Pet."), Dkt. Entry No. 21.) For the reasons set forth below, Petitioner's habeas application is denied in its entirety.

**BACKGROUND**

**I. The Case against Petitioner**

The evidence adduced at trial indicates that, on June 28, 2002, after a day of drinking and smoking marijuana, Petitioner shot and killed Bobby Kareem Gibson ("Gibson"). A day earlier, Gibson had been named as an eyewitness in a New York State Supreme Court, Kings County ("Kings County Supreme Court") homicide trial against Wesley Sykes. (Transcript of Petitioner's Jury Trial ("Tr."), Dkt. Entry No. 23, 1049–50.) In sworn statements to the police, Petitioner admitted to shooting Gibson following an argument that arose when Gibson and his friend "Slay" refused to give Petitioner any beer. (Tr. 1256–61.) Petitioner claimed that he was drunk and only meant to scare Gibson. (*Id.*) According to Petitioner's statements, he did not even know he shot Gibson until someone told him so later in the evening. (*Id.*)

At trial, the prosecution presented an eyewitness who testified that he was with both Petitioner and Gibson the evening of the shooting. According to this eyewitness, Gibson was drinking with some friends on a stoop. (Tr. 902–04, 962, 976–77.) Gibson left to go buy beer from a bodega, and, shortly thereafter, Petitioner arrived at the stoop. (*Id.*) Petitioner told the eyewitness that as soon as a nearby police car left, he was going to "lay Slay and K." (Tr. 290–91, 375–76, 539.) Gibson went by the nickname "K." (Tr. 282–83.) The police car left a few minutes later and Petitioner walked in the direction of the bodega. (Tr. 283, 292–93,

Case 9:21-cv-00174-AMN-ML    Document 47    Filed 01/23/24    Page 168 of 194
Ragsdale v. Warden, Not Reported in F.Supp.3d (2015)
2015 WL 5675867

380, 465, 468–69, 520–21.) The eyewitness followed Petitioner and saw him fire multiple shots at Gibson. (Tr. 282–83, 295, 383, 521, 595–96.) Petitioner fled to North Carolina the next day. (Tr. 844–52.)

On July 9, 2002, Petitioner returned to New York and surrendered to police. (Tr. 713.) Petitioner was arrested and charged with Murder in the First Degree (N.Y. Penal Law § 125.27(1)(a)), two counts of Murder in the Second Degree (N.Y. Penal Law § 125.25(1)), Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03(2)), and Criminal Possession of a Weapon in the Third Degree (N.Y. Penal Law § 265.02(2)).

## II. The Trial and Verdict

**\*2**  On these facts, Petitioner was tried before a jury in Kings County Supreme Court. On June 29, 2004, Petitioner was found not guilty of Murder in the First Degree, and guilty of Murder in the Second Degree (N.Y. Penal Law § 125.25(1)). Petitioner was sentenced to an indeterminate prison term of twenty-five years to life.

## III. Direct Appeals

On December 8, 2009, the New York State Supreme Court Appellate Division, Second Department ("Appellate Division") unanimously affirmed Petitioner's judgment of conviction. *People v. Ragsdale*, 68 A.D.3d 897, 889 N.Y.S.2d 681 (2d Dep't 2009). On March 31, 2010, the New York State Court of Appeals denied Petitioner's application for leave to appeal. *People v. Ragsdale*, 14 N.Y.3d 804, 899 N.Y.S.2d 139, 925 N.E.2d 943 (2010). Accordingly, under 28 U.S.C. § 2244(d)(1)(A), Petitioner's conviction became final ninety days later on June 29, 2010.

## IV. The Instant Petition

On March 11, 2011, Petitioner timely applied to this Court for a writ of habeas corpus. Petitioner raised two claims of ineffective assistance of counsel: (1) that his counsel failed to call Leslie Cordero as a witness; and (2) that his counsel failed to seek the dismissal of a juror who allegedly fell asleep during trial. (Pet. at 6–10.) On April 22, 2011, Petitioner requested that the Court stay his Petition so that he could exhaust the claim related to the sleeping juror in state court. (*See* Letter dated April 22, 2014, Dkt. Entry No. 3.) The Court granted his request by order dated June 22, 2011. (*See* Order dated June 22, 2011.) Petitioner was granted leave to file an amended petition within ninety days after the completion of his state court proceedings. (*Id.*)

On June 22, 2011, Petitioner moved in Kings Country Supreme Court to vacate his conviction pursuant to New York Criminal Procedure Law § 440.10(1). Petitioner argued that his trial counsel was ineffective for failing to: (1) seek the discharge of an allegedly sleeping juror; (2) object to the lead detective's testimony that an eyewitness not called by the prosecution identified Petitioner in a lineup; (3) move to suppress Petitioner's statements and identification; (4) move to reopen the identification and probable cause hearings; and (5) call Leslie Cordero as a witness.

On June 10 and August 12, 2013, the Kings County Supreme Court held an evidentiary hearing limited to the issue of whether a juror was asleep during Petitioner's trial. The court heard testimony from two members of Mr. Ragsdale's family, the trial prosecutor, Mr. Ragsdale's trial counsel, Justice L. Priscilla Hall, who presided over the trial, and Petitioner himself. On February 4, 2014, the court denied Petitioner's motion to vacate the judgment, finding, among other things, that Petitioner failed to meet his burden of showing by a preponderance of the evidence that a juror slept during trial. The court denied all of Petitioner's remaining claims. (State Record, Ex. N, Decision and Order by Judge Ruth Shillingford dated February 4, 2014 ("Dec. & Order Feb. 4, 2014").)

**\*3**  On September 2, 2014, Petitioner returned to this Court and filed the Amended Petition. Petitioner alleges four claims in his Amended Petition: (1) that he was denied effective assistance of counsel when his trial counsel failed to call Leslie Cordero as a witness; (2) that his trial counsel was ineffective when counsel failed to seek the discharge of a juror who allegedly slept through some of the trial; (3) that he was denied due process when the prosecution engaged in misconduct by disobeying the trial court's *Molineux* ruling; and (4) that his statements and identification should have been suppressed because of an alleged violation of

the right to counsel. (Am.Pet.6–11.) Respondent, opposes each claim alleged in the Amended Petition. (*See generally* Affidavit of Thomas Ross in Opposition to Petition ("Ross Aff."), Dkt. Entry No. 23.) For the reasons set forth below, the Petition is denied in its entirety.

## STANDARD OF REVIEW

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, 28 U.S.C. § 2254(a) provides:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

A federal district court may grant a writ of habeas corpus to a state prisoner on a claim that was adjudicated on the merits in state court only if it concludes that the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412–413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). An "unreasonable application" is one in which "the state court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Id.* at 413. Finally, "a determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## DISCUSSION

### I. Counsel's Failure to Call Leslie Cordero

Petitioner claims that his trial counsel was ineffective by failing to call Leslie Cordero, an eyewitness who provided conflicting accounts of what she saw the night of the shooting. Under the Sixth Amendment, criminal defendants "shall enjoy the right ... to have the Assistance of Counsel for [their] defense." U.S. Const. amend. VI. Furthermore, "the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). To prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness" measured by "prevailing professional norms," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674, (1984). To satisfy this second prong of *Strickland,* a petitioner must demonstrate that there is a "probability sufficient to undermine confidence in the outcome." *Id.* at 694.

**\*4** The petitioner bears "[t]he burden of establishing both constitutionally deficient performance and prejudice." *U.S. v. Birkin,* 366 F.3d 95, 100 (2d Cir.2004) (citing *Strickland,* 466 U.S. at 687). Counsel is "strongly presumed to have rendered adequate

2015 WL 5675867

assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 690. A federal court's review on a habeas application focuses on whether the state court's denial of petitioner's ineffective assistance of counsel claim rested upon an objectively unreasonable application of *Strickland. See Bell v. Cone,* 535 U.S. 685, 698–99, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).

Petitioner raised this ineffective assistance of counsel claim in his C.P.L. § 440.10 motion. The state court determined that counsel made a "deliberate and strategic decision not to call Cordero." (Dec. & Order Feb. 4, 2014 at 13.) This determination was not objectively unreasonable. *See Pierre v. Ercole,* 560 F. App'x 81, 82–83 (2d Cir.2014) ("We cannot say that counsel was ineffective for electing not to call [witness], much less that the state court's decision not to afford relief on this ground was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.") In all her conflicting accounts of the evening, Cordero never indicated that someone other than Petitioner shot Gibson. Petitioner's counsel stated on the record that, had he called Cordero, she would have testified that the prosecution's main eyewitness told her at time of the shooting, "that's [Petitioner]!" and that counsel "[does not] want to bring that out ." (Tr. 1736–1742.)

This Court agrees with the state court's assessment that defense counsel's decision not to call an eyewitness who could not exculpate Petitioner was a tactical decision within the sound discretion of counsel. *See Marcus v. United States,* 2015 WL 3869689, at *11 (E.D.N.Y. June 22, 2015) (denying ineffective assistance claim on the basis that calling "a particular witness is the type of strategic choice that courts are ill-suited to second-guess.") Petitioner also fails to satisfy his burden of demonstrating that, but for his counsel's failure to call Cordero as a witness, the outcome of the proceeding likely would have been different. *See Grant v. Ricks,* 151 F. App'x 44, 45 (2d Cir.2005).

To the extent Petitioner alleges that he was denied his Sixth Amendment right to confront Cordero, that claim also is denied. According to Petitioner, a violation of the Confrontation Clause occurred when Detective John Kristoffersen testified that he had spoken with Cordero as part of his investigation, and that the detective focused on locating Petitioner after speaking with her. (Am.Pet.6.) The Appellate Division held that this claim was unpreserved for review because defense counsel failed to lodge a timely objection and that the detective's testimony was only admitted to show the detective's state of mind, and not admitted for its truth. (Dec. & Order Feb. 4, 2014 at 12.)

**\*5** Given that the Appellate Division denied this claim on state procedural grounds and Petitioner makes no attempt to argue that an exception to the procedural bar doctrine applies, this Court holds that this claim is procedurally barred. *See Gutierrez v. Smith,* 702 F.3d 103, 111 (2d Cir.2012) ("If a state appellate court refuses to review the merits of a criminal defendant's claim of constitutional error because of his failure to comply with such a 'contemporaneous objection' rule, a federal court generally may not consider the merits of the constitutional claim on habeas corpus review.") It would offend principles of comity and federalism for this Court to grant habeas review of Petitioner's procedurally barred claim and his claim is therefore denied. *See Walker v. Martin,* 562 U.S. 307, 315, 131 S.Ct. 1120, 179 L.Ed.2d 62 (2011) ("A federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment."); *see also Coleman v. Thompson,* 501 U.S. 722, 729–30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

## II. Counsel's Failure to Object to a Sleeping Juror
Petitioner argues that he was deprived of his right to effective assistance of counsel because his trial counsel failed to object to, or ask the court to remove, a juror who allegedly slept during portions of Petitioner's trial. Petitioner raised this claim in his C.P.L. § 440.10 motion, and was granted a hearing limited to the determination of the factual issue as to whether a juror was slept during the trial, and if so, whether Petitioner's trial counsel was ineffective in failing to address the sleeping juror. The state court heard testimony from Petitioner, Petitioner's trial counsel, Petitioner's mother, Petitioner's brother, the prosecutor who tried the case, and the trial judge. The court found that neither the judge nor the attorneys had any recollection that a juror slept during the trial. (Dec. & Order Feb. 4, 2014 at 10.) The court declined to credit Petitioner's witnesses and denied the 440.10 motion on this ground. *Id.*

Petitioner fails to overcome by clear and convincing evidence the presumption of correctness that attached to the state court's findings. *See* 28 U.S.C. § 2254(e)(1) ("a determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence"). Petitioner has not demonstrated that any juror in fact was asleep or missed any part of the trial.

Additionally, Petitioner does not claim that he was prejudiced as a result of any alleged juror misconduct. Petitioner does not argue that an allegedly sleeping juror "adversely affected the jury's deliberations or had a substantial and injurious effect on its ultimate conclusions." *Faria v. Perez,* 2012 WL 3800826, at *12 (E.D.N.Y. Sept.2, 2012). *See also Ciaprazi v. Senkowski,* 151 F. App'x 62, 63 (2d Cir.2005) (rejecting ineffective assistance claim predicated on sleeping juror because "trial counsel's decision not to object may well have been based on his desire to retain the inattentive juror rather than to seek to replace him with an alternate"). The Petition is denied as to this claim.

## III. Prosecutor's Violation of *Molineux* Ruling

 **\*6** Petitioner claims that the prosecutor deliberately disobeyed the trial court's ruling pursuant to *People v. Molineaux,* 168 N.Y. 264, 61 N.E. 286 (1901) precluding the admission of Petitioner's prior uncharged crime. Following the prosecutor's improper question, defense counsel immediately objected and moved for a mistrial. (Tr. 634–35.) The court sustained the objection and instructed the jury that questions are not evidence. The Appellate Division found that the prosecutor's remark was "isolated and brief," and did not deprive Petitioner of his right to a fair trial. *People v. Ragsdale,* 68 A.D.3d 897, 889 N.Y.S.2d 681 (2d Dep't 2009).

Because Petitioner seeks habeas relief based on a state court evidentiary ruling, he must demonstrate that the alleged error violated a constitutional right, and was so extremely unfair that it violates fundamental conceptions of justice. *See McKinnon v. Superintendent, Great Meadow Corr. Facility,* 422 F. App'x 69, 73 (2d Cir.2011) (holding that "unless the challenged evidentiary rulings in the state proceedings affect the fundamental fairness of those proceedings, the claims are not properly reviewable" in a habeas proceeding); *Zarvela v. Artuz,* 364 F.3d 415, 418 (2d Cir.2004); s*ee also Roldan v. Artuz,* 78 F.Supp.2d 260, 276–77 (S.D.N.Y.2000) ("A habeas claim asserting a right to relief on *Molineux* grounds must rise to the level of constitutional violation ... because *Molineux* is a state law issue.").

Petitioner does not establish an error of constitutional magnitude that warrants habeas relief. The Appellate Division found that the prosecutor's remark was "isolated and brief," and did not deprive Petitioner of his right to a fair trial. *People v. Ragsdale,* 68 A.D.3d 897, 889 N.Y.S.2d 681 (2d Dep't 2009). Petitioner fails to show that this finding is against clearly established federal law. Any prejudice to Petitioner resulting from the prosecutor's question was remedied by the court's prompt curative instructions. *See Moore v. Conway,* 476 F. App'x 928 (2d Cir.2012) (denying habeas relief on the basis that "any potential prejudice from the prosecutor's impropriety was remedied by the trial court's prompt curative instruction"). Petitioner's claim on this ground is denied.

## IV. Suppression of Petitioner's Statements and Identification

Petitioner also contends that his statements to police and the identification evidence against him should have been suppressed because his right to counsel attached at the time of the custodial interrogation. This claim was not raised in Petitioner's direct appeal; it was raised only in Petitioner's § 440.10 application, and raised only in the form of an ineffective assistance of counsel claim, which was denied by the Kings County Supreme Court. A claim for ineffective assistance of counsel for failing to raise an underlying claim does not exhaust the underlying claim. *Turner v. Artuz,* 262 F.3d 118, 123 (2d Cir.2001); *see also Bond v. Walker,* 68 F.Supp.2d 287, 296 (S.D.N.Y.1999), *aff'd* 242 F.3d 364 (2d Cir.2000) ("An ineffective assistance claim is separate and distinct from the substantive claim incorporated in the ineffective assistance claim, such that exhaustion of the ineffective assistance claim is not exhaustion of the underlying substantive claim."). Accordingly, Petitioner's new, freestanding claim is unexhausted.

2015 WL 5675867

**\*7** Generally, if a federal habeas petition contains unexhausted claims, the Court should dismiss the petition. *See Rose v. Lundy,* 455 U.S. 509, 510, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). Nevertheless, when the petitioner no longer has a remedy available in the state courts, the court may deem the claims exhausted because any attempt to pursue the claim in state court would be fruitless. *Bossett v. Walker,* 41 F.3d 825, 828–29 (2d Cir.1994) ("It would thus be fruitless to require [petitioners] to pursue these claims in state court, and we deem the claims exhausted.").

New York law "mandates that the state court deny any 440.10 motion where the defendant unjustifiably failed to argue such constitutional violation on direct appeal despite a sufficient record." *Reyes v. Keane,* 118 F.3d 136, 139 (2d Cir.1997). Petitioner unjustifiably failed to raise his suppression argument on direct appeal. Because of this procedural default, petitioner's attempt to return to state court to exhaust this claim would be fruitless. Consequently, the Court deems this claim unexhausted, but procedurally defaulted. *See Rush v. Lempke,* 500 F. App'x 12, 14 (2d Cir.2012) ("If a habeas applicant fails to exhaust state remedies by failing to adequately present his federal claim to the state courts so that the state courts would deem the claim procedurally barred, federal habeas courts must deem the claim procedurally defaulted.").

Petitioner's procedurally defaulted claim may be reviewed by this Court only if he can demonstrate either: (1) cause for the default and actual prejudice resulting therefrom; or (2) that the failure to consider the claims will result in a "fundamental miscarriage of justice." *Murray v. Carrier,* 477 U.S. 478, 485, 495 (1986); *see also Lampon v. LaValley,* 504 F. App'x 1, 1 (2d Cir.2012). The "fundamental miscarriage of justice" exception requires a showing of actual, not merely legal, innocence. *Murray,* 477 U.S. at 496.

Petitioner does not allege facts sufficient to avail himself of the miscarriage of justice exception. While ineffective assistance of counsel may constitute sufficient cause to overcome a procedural default where counsel's performance amounted to a constitutional violation, "attorney error short of ineffective assistance of counsel does not constitute cause and will not excuse a procedural default." *McCleskey v. Zant,* 499 U.S. 467, 494, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991).

Petitioner fails to make a valid showing of ineffective assistance of counsel. In its decision on Petitioner's § 440.10 application, the state court found that there was no error by counsel in failing to move to suppress Petitioner's statements to police because, contrary to Petitioner's argument, "the right to counsel does not attach to the issuance of a wanted card." (Dec. & Order Feb. 4, 2014 at 12.) This decision was not contrary to, nor an unreasonable application of, federal law. The right to counsel does not attach until formal judicial proceedings are initiated against the defendant. *Kirby v. Illinois,* 406 U.S. 682, 691, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). There was "no significant judicial involvement in this case until the issuance of the actual arrest warrant, which occurred after the defendant made his statements to the police." *People v. Walker,* 84 A.D.3d 842, 843, 922 N.Y.S.2d 497 (2d Dep't 2011). Petitioner's claim on this ground, therefore, is denied.


## CONCLUSION

**\*8** For the foregoing reasons, the Petition for a writ of habeas corpus is denied in its entirety. A certificate of appealability shall not issue because Petitioner has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2); Fed. R.App. 22(b); *Miller–El v. Cockrell,* 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); *Lucidore v. New York State Div. of Parole,* 209 F.3d 107, 112–13 (2d Cir.2000). The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from a judgment denying this habeas application would not be taken in good faith, and, therefore, *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).


SO ORDERED.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 5675867

2015 WL 5675867

## Footnotes

1       In reviewing Petitioner's pleadings, the Court is mindful that, "[a] document filed *pro se* is to be liberally construed and
        a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted
        by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). Accordingly, the Court
        interprets the Petition "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons,* 470
        F.3d 471, 474 (2d Cir.2006).

End of Document                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Case 9:21-cv-00174-AMN-ML    Document 47    Filed 01/23/24    Page 174 of 194

Wright v. Lamanna, Not Reported in Fed. Supp. (2021)

2021 WL 5095292

2021 WL 5095292
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ronald WRIGHT, Petitioner,

v.

Jamie LAMANNA, Superintendent; Green Haven Correctional Facility, Respondent.

9:18-cv-1063 (MAD/TWD)
|
Signed 04/21/2021

**Attorneys and Law Firms**

RONALD WRIGHT, Petitioner, pro se, 11-A-3130, Sing Sing Correctional Facility, 354 Hunter Street, Ossining, NY 10562.

LETITIA JAMES, Attorney General of the State of New York, OF COUNSEL: MARGARET A. CIEPRISZ, ESQ., Assistant Attorney General, Attorney for Respondent, 28 Liberty Street, New York, NY 10005.

## REPORT-RECOMMENDATION AND ORDER

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

 **\*1**  This matter has been referred for a Report and Recommendation by the Hon. Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and N.D.N.Y. Local Rule 72.3(c). Ronald Wright ("Wright" or "Petitioner"), a New York State prisoner proceeding *pro se*, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. No. 1.) Respondent has answered the petition, and Wright has replied. (Dkt. Nos. 13-15, 22.) For reasons explained below, the Court recommends that the petition be denied and dismissed.

## I. BACKGROUND/PRIOR PROCEEDINGS

On September 20, 2010, Wright, along with thirty-nine others, was charged in a 195-count indictment as a result of a wiretap and surveillance investigation the Organized Crime Task Force ("OCTF") conducted from April 8 through September 15, 2010, of the "Bloods Drug Distribution Operation," which allegedly trafficked narcotics throughout New York State. (Dkt. No. 15-1 at 75-131.[1] ) In particular, Wright was charged with twenty-eight felonies. He was charged with enterprise corruption (Count 1) based on his association with and participation in the Bloods Drug Distribution Enterprise. The indictment alleged twenty-seven pattern criminal acts committed by Wright. Each pattern act was also charged as a stand-alone felony offense: twenty counts of criminal sale of a controlled substance in the third degree (Counts 90, 92, 93, 95, 97, 99, 101, 103, 104, 106, 108, 110, 113, 115, 117, 118, 121, 123, 125, 127), and one count each of criminal sale of a controlled substance in the second degree (Count 112), attempted murder in the second degree (Count 129), conspiracy in the second degree (Count 194), criminal possession of a controlled substance in the third degree (Count 114), attempted criminal possession of a controlled substance in the third degree (Count 91), criminal possession of a weapon in the third degree (Count 156), and conspiracy in the fourth degree (Count 195).

On September 23, 2010, Wright was arraigned on the charges and entered a plea of not guilty. (Dkt. No. 15-2 at 7-11.) On October 25, 2010, Wright rejected the prosecution's proposal that he plead guilty to one count of enterprise corruption in full satisfaction of all charges in return for an indeterminate prison sentence of twelve to twenty-four years. *Id.* at 13-15. Subsequently, by Decision and Order dated January 11, 2011, the court partially granted Wright's omnibus motion and dismissed Count 156, the weapons possession count. (Dkt. No. 15-1 at 279-82.) Thereafter, Wright's counsel sought to withdraw from her representation

Wright v. Lamanna, Not Reported in Fed. Supp. (2021)

Case 9:21-cv-00174-AMN-ML    Document 47    Filed 01/23/24    Page 175 of 194

2021 WL 5095292

due to conflicts of interest. (Dkt. No. 15-2 at 20-23.) On March 23, 2011, the court assigned replacement counsel for Wright. *Id.* at 25-28.

On May 20, 2011, during a conference to address any remaining issues in advance of trial, the prosecution moved to dismiss one count of third degree criminal sale (Count 113) on venue grounds, which was granted. *Id.* at 59-60.

 **\*2** Wright and codefendant Eric Cochran (aka "E-Murder") were jointly tried in Albany County Court from May 23 through June 7, 2011. *Id.* at 72-1810. The People alleged that Wright, who was based in Long Island, was a heroin supplier for members of the Bloods gang, including Cochran, who shared the common purpose of selling narcotics, which were then sold to individuals in the Albany area.

During its case-in-chief, the prosecution presented approximately 200 intercepted telephone and text conversations, which were obtained pursuant to an eavesdropping warrant. Dennis Guiry, the lead OCTF investigator, testified about the purpose, structure, and hierarchy of the Bloods gang, the business of narcotics trafficking, the investigation, and interpreted many of the intercepted telephone calls and text messages admitted into evidence. Numerous other law enforcement witnesses testified as to their physical surveillance, seizure of heroin from Cochran's residence, and the shooting of Myles Jackson, a Bloods gang member suspected of being an informant. Four lay witnesses also testified pursuant to cooperating witness agreements: Benjamin Brook and Jason Lance, two of Cochran's heroin customers; Rachel Gagliardi, Cochran's girlfriend, and Ashlie Hudson, an acquaintance of Cochran.

At the close of the People's case, Wright sought a trial order of dismissal on the ground that the evidence was legally insufficient as to all counts against him. *Id.* at 1438; *see also id.* at 1474-75.

With respect to Count 90, selling heroin to Cochran on July 6, 2010, Wright argued that the People had produced no proof "that any drugs were actually sold" or "that [defendant] had the ability ... to complete the transaction." *Id.* at 1438-39. Similarly, with respect to Count 91, attempting to possess heroin with intent to sell it on July 6, 2010, Wright claimed an absence of proof "that [defendant] himself actually possessed the drugs." *Id.* at 1439.

As to Count 92, 93, 95, 97, 99, 101, 103, 104, 106, 108, and 110, selling heroin to Lance, Brooke, and others on various dates, Wright maintained that there was no proof "that [he] in any way acted in concert to consummate th[ese] sale[s]." *Id.* at 1440-41.

Wright sought dismissal of Count 112, selling at least ½ ounce of heroin to Cochran on July 12, 2010, arguing that there was insufficient proof of an "offer" or "agreement" to sell and there were "[n]o drugs ... produced here that were actually transferred." *Id.* at 1441-42. With respect to Count 114, possessing heroin with intent to sell it on July 13, 2010, Wright argued that, apart from telephone calls, there was no proof "that anyone possessed heroin." *Id.* at 1442-43.

As to Counts 115, 117, 118, 121, 123, 125 and 127, selling heroin to Brooke and Baxter on various dates, Wright contended there was no proof "that the heroin alleged to have come from [Wright] or a third party, even, ever made its way through [ ] E-Murder to any of those ... buyers." *Id.* at 1443-44.

Wright sought dismissal of Count 129, attempted murder in the second degree, arguing the lack of proof and emphasizing that the gun had been found on another individual and it was undisputed that Wright was not the shooter of Myles Jackson. *Id.* at 1444-45.

With respect to Count 194, conspiracy to commit a class A felony, Wright maintained the People had failed to prove "that a Class A felony has been committed and that he conspired with E-Murder to do that." *Id.* at 1445-46.

 **\*3** Lastly, as to Count 1, enterprise corruption, Wright argued the People had not established "a pattern of criminal activity," as opposed to "isolated incidents," or that Wright was "part of this criminal enterprise." *Id.* at 1446-47.

Wright v. Lamanna, Not Reported in Fed. Supp. (2021)

Case 9:21-cv-00174-AMN-ML    Document 47    Filed 01/23/24    Page 176 of 194

2021 WL 5095292

The trial court granted the motion as to Count 195, fourth degree conspiracy, and denied the motion as to all other counts. *Id.* at 1437-38. The court observed that the proof was sufficient to create an issue of fact for the jury as to whether Wright acted in concert with Cochran in selling heroin. *Id.* at 1448. In regard to Count 112, the court observed that defendant's conversations with Cochran were "clearly" legally sufficient evidence of "an agreement to sell." *Id.*

Neither Wright or Cochran called any witnesses, nor did they testify on their own behalf. *Id.* at 1475.

During the charge conference, the court, *inter alia*, denied Wright's request for an agency instruction with respect to the sale charges contained in Counts 90 and 112. *Id.* at 1467-68.

The jury found Wright and Cochran guilty of numerous crimes. Specifically, the jury acquitted Wright of Count 129, attempted murder in the second degree, and Counts 92 and 103, third degree criminal sale, and convicted him on all other counts. *Id.* at 1752-99. [2] On July 5, 2011, the trial court sentenced Wright, as a second felony offender, to an aggregate term of 141 ½ years' imprisonment, together with post-release supervision. *Id.* at 1812-19.

Through new counsel, Wright appealed arguing that: (1) his convictions were unsupported by legally sufficient evidence and were against the weight of the evidence; (2) the trial court erred in denying his request for a jury instruction on the agency defense; (3) he was denied the constitutional right to the effective assistance of counsel; and (4) his sentence was harsh and excessive and was imposed in retaliation for his exercise of his constitutional right to a trial. (Dkt. No. 15-1 at 1-68.) Wright also filed a *pro se* direct appeal brief in which he contended that: (1) the trial court's jury instruction on enterprise corruption constructively amended the indictment; (2) the prosecutor's redaction of the indictment violated his constitutional rights; and (3) trial counsel was ineffective for failing to object to the enterprise corruption instruction and to the prosecutor's redaction of the indictment. (Dkt. No. 15-1 at 502-17.)

The Appellate Division of the New York Supreme Court modified Petitioner's judgment by reversing his convictions of second degree criminal sale of a controlled substance, Count 112, and second degree conspiracy, Count 194, on sufficiency of the evidence grounds in a reasoned decision issued on May 5, 2016. *People v. Wright*, 31 N.Y.S.3d 633, 139 A.D.3d 1094 (N.Y. App. Div. 2016). The Appellate Division further held that Petitioner's sentence, subject to the 30-year sentencing cap given the reversal of his conviction for second degree criminal sale of a controlled substance, was neither harsh nor excessive. The Appellate Division otherwise unanimously affirmed the judgment of conviction.

**\*4** Wright sought leave to appeal to the New York Court of Appeals arguing: (1) the evidence supporting his drug conviction was legally insufficient because it consisted almost entirely of intercepted communications and no drugs had been recovered and tested; and (2) the prosecution presented insufficient evidence to convict him of enterprise corruption. (Dkt. No. 15-2 at 663-67). The Court of Appeals denied leave to appeal, but granted leave to renew the application after the court issued a decision in an unrelated pending case, *People v. Whitehead*. *Id.* at 670. Wright's renewed leave application was summarily denied by the Court of Appeals on June 12, 2017. *Id.* at 671-73, 676. This action followed. (Dkt. No. 1.)

## II. GROUNDS RAISED

Petitioner raises three grounds for habeas relief: (1) his convictions were based on legally insufficient evidence and were against the weight of the evidence (*id.* at 4-7); (2) the trial court erred in refusing to give a jury instruction on agency (*id.* at 8); and (3) his trial counsel was ineffective (a) for failing to request a geographic jury instruction and (b) not moving to suppress wiretap evidence (*id.* at 9-11).

## III. LEGAL STANDARDS FOR HABEAS RELIEF

### A. Exhaustion of State Court Remedies

Case 9:21-cv-00174-AMN-ML Document 47 Filed 01/23/24 Page 177 of 194
Wright v. Lamanna, Not Reported in Fed. Supp. (2021)
2021 WL 5095292

An application for a writ of habeas corpus may not be granted until a petitioner has exhausted all remedies available in state courts. *See Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir. 1991) ("Under 28 U.S.C. § 2254(b), applicants for habeas corpus relief must exhaust[ ] the remedies available in the courts of the State.") (internal quotation marks omitted). "The exhaustion requirement 'is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." *Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) (quoting *Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982)).

Proper exhaustion has both a procedural and a substantive component. *Trimm v. Sheahan*, No. 14-CV-905, 2014 WL 3670723, at *1 (N.D.N.Y. July 23, 2014). Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in a federal habeas corpus petition. *Rose*, 455 U.S. at 520, 102 S.Ct. 1198. Substantive exhaustion requires that a petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004) (citations omitted); *see also Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 808 (2d Cir. 2000). In other words, a petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999). Unexhausted claims are generally barred from habeas review by the rules concerning procedural default. *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).

### B. Procedural Default

Procedurally defaulted claims are not subject to habeas review unless a petitioner shows cause for the default and that actual prejudice results, or that the denial of habeas relief would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536-39, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006); *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). To meet the "cause" requirement, a petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. *Maples v. Thomas*, 565 U.S. 266, 280, 132 S.Ct. 912, 181 L.Ed.2d 807 (2012); *Coleman*, 501 U.S. at 753, 111 S.Ct. 2546. Prejudice requires a petitioner to show "not merely that the errors at ... trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray v. Carrier*, 477 U.S. 478, 494, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (quoting *United States v. Frady*, 456 U.S. 154, 170 (1982)).

**\*5** Additionally, there is an exception to the procedural bar in cases where a petitioner can prove actual innocence. *McQuiggin v. Perkins*, 569 U.S. 383, 392, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013) ("[A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims ... on the merits notwithstanding the existence of a procedural bar to relief."). "[A]ctual innocence means factual innocence, not mere legal insufficiency." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (quoting *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998)). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851; *see also Whitley v. Senkowski*, 317 F.3d 223, 225 (2d Cir. 2003). In addition, "prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.' " *House*, 547 U.S. at 536-37, 126 S.Ct. 2064 (quoting *Schlup*, 513 U.S. at 327, 115 S.Ct. 851); *see also Doe v. Menafee*, 391 F.3d 147, 160-62 (2d Cir. 2004).

### C. Standard of Review of State Court Decisions

Assuming a petitioner can successfully navigate his or her claims through the maze of rules governing exhaustion and procedural default, those claims are reviewed under the standard laid out in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2254(d). Under the AEDPA, a federal court may grant habeas relief with respect to a charge adjudicated on the merits in state court only if, based upon the record before the state court, the state court's decision: (1) was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the

Case 9:21-cv-00174-AMN-ML    Document 47    Filed 01/23/24    Page 178 of 194
Wright v. Lamanna, Not Reported in Fed. Supp. (2021)
2021 WL 5095292

United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 409-10, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A decision "involves an unreasonable application" of federal law where it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Williams*, 529 U.S. at 407-08, 120 S.Ct. 1495. A petitioner must therefore demonstrate that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). This is a "highly deferential standard," requiring that state courts "be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010) (citations omitted). However, "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Nevada v. Jackson*, 569 U.S. 505, 508-09, 133 S.Ct. 1990, 186 L.Ed.2d 62 (2013) (quoting *Harrington*, 562 U.S. at 102, 131 S.Ct. 770).

Additionally, federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with " 'clear and convincing evidence.' " *Schriro v. Landrigan*, 550 U.S. 465, 473-74, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007) (quoting § 2254(e)(1)). "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings." *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015).

Where a state court denies a claim on the merits without explaining its reasons, a petitioner still bears the burden to show "there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S. at 98, 131 S.Ct. 770. In those cases, "a habeas court must determine what arguments or theories ... could have supported[ ] the state court's decision," and then accord deference if "it is possible [that] fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* at 102, 131 S.Ct. 770; *see also Shinn v. Kayer*, ––– U.S. ––––, 141 S. Ct. 517, 524, 208 L.Ed.2d 353 (2020) ("[W]e must determine what arguments or theories ... could have supported the state court's determination.... Then, we must assess whether fairminded jurists could disagree on the correctness of the state court's decision if based on one of those arguments or theories") (internal quotation marks omitted).

 **\*6**  In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues *de novo* on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (applying a *de novo* standard to a federal claim not reached by the state court). In so doing, the Court presumes the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman*, 501 U.S. at 740, 111 S.Ct. 2546; *Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *see also Jimenez*, 458 F.3d at 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama*, 235 F.3d at 810-11 (same).

## IV. DISCUSSION

### A. Legal Sufficiency and Weight of the Evidence (Ground 1)

Wright first argues, as he did on direct appeal, that the verdict was against the weight of the evidence and unsupported by legally sufficient evidence. (Dkt. No. 1 at 4-7; *see also* Dkt. No. 22 at 18-29.) Generally, with respect to his drug convictions, Wright argues there was no proof that the substance he supplied to Cochran was heroin because "there was no heroin analyzed" and the evidence failed to establish that Wright supplied the heroin to Cochran. (Dkt. No. 1 at 4-6.) With respect to his enterprise conviction, Wright argues the evidence failed to establish a connection between him and the criminal enterprise, the Bloods Drug Distribution Enterprise. *Id.* at 6-7. Respondent argues Petitioner's challenge to the legal sufficiently of the evidence is partially barred from habeas review on an adequate and independent state law ground, partially unexhausted, and entirely without merit.

Case 9:21-cv-00174-AMN-ML    Document 47    Filed 01/23/24    Page 179 of 194

Wright v. Lamanna, Not Reported in Fed. Supp. (2021)
2021 WL 5095292

(Dkt. No. 13 at 31-45.) Respondent further contends Petitioner's weight of the evidence claim is not cognizable on habeas review. *Id.* at 45-46.

### 1. Weight of the Evidence

As an initial matter, claims that challenge verdicts as against the weight of the evidence are not cognizable on federal habeas review. *See McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011). "Unlike a sufficiency of the evidence claim, which is based upon federal due process principles, a weight of the evidence claim is an error of state law, for which habeas review is not available." *Garrett v. Perlman*, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006) (citation and internal quotation marks omitted). "A weight of the evidence argument is a pure state law claim grounded in [New York Criminal Procedure law ("CPL")] § 470.15(5) which empowers New York state intermediate appellate court[s] to make weight of the evidence determinations." *Id.* (citation and internal quotation marks omitted). Therefore, the Court recommends denying Wright's weight of the evidence claim on that basis.

### 2. Sufficiency of the Evidence

A convicted defendant seeking federal habeas review for sufficiency of evidence to support his conviction bears a heavy burden, given the considerable deference owed to a jury's verdict at both the state and federal levels. *Coleman v. Johnson*, 566 U.S. 650, 651, 132 S.Ct. 2060, 182 L.Ed.2d 978 (2012) (per curiam); *Fama*, 235 F.3d at 811 (2d Cir. 2000); *United States v. Brewer*, 36 F.3d 266, 268 (2d Cir. 1994). A petitioner invoking this ground is entitled to relief only if it is found "that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *see also Coleman*, 566 U.S. at 651, 132 S.Ct. 2060; *Cavazos v. Smith*, 565 U.S. 1, 7, 132 S.Ct. 2, 181 L.Ed.2d 311 (2011) (per curiam).

 **\*7**  When making its analysis concerning sufficiency of the evidence, a court is required to "consider the evidence in the light most favorable to the prosecution and make all inferences in its favor." *Fama*, 235 F.3d at 811. This inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993) (emphasis in original).

In response to a habeas petition, a federal court may overturn a state appellate court's finding of evidence sufficiency only if, when judged against this standard, the decision was objectively unreasonable, even though if considering the matter *de novo* the federal court may have reached a different result. *Coleman*, 566 U.S. at 651, 132 S.Ct. 2060; *Garbutt v. Conway*, 668 F.3d 79, 81 (2d Cir. 2012) (a legal sufficiency claim on federal habeas review is "doubly deferential"). Thus, where the state courts have denied on the merits a petitioner's legal sufficiency claim, a district court "may not grant the writ unless [it] conclude[s] that no reasonable court could have held that any reasonable jury could have read the evidence to establish petitioner's guilt beyond a reasonable doubt." *Garbutt*, 668 F.3d at 82.

### i. Legal Sufficiency of the Drug Convictions

Respondent first argues Petitioner's legal sufficiency claim as to his convictions for seventeen counts of third degree criminal sale is procedurally barred by an independent state law ground. (Dkt. No. 13 at 32-34.) The Court agrees.

"[A]n adequate and independent finding of procedural default will bar federal habeas review of the federal claim." *Harris*, 489 U.S. at 262, 109 S.Ct. 1038. Moreover, and contrary to Petitioner's assertion (*see* Dkt. No. 22 at 25), if a state court explicitly finds that a petitioner failed to preserve an argument for appellate review, but alternatively, or "in any event," rules the argument is without merit, the procedural bar still applies. *Fama*, 235 F.3d at 810 n.4.

Case 9:21-cv-00174-AMN-ML    Document 47    Filed 01/23/24    Page 180 of 194
Wright v. Lamanna, Not Reported in Fed. Supp. (2021)
2021 WL 5095292

Under New York Law, challenges to the sufficiency of the evidence must be properly preserved for appellate review. *People v. Hawkins*, 11 N.Y.3d 484, 872 N.Y.S.2d 395, 399, 900 N.E.2d 946 (N.Y. 2008) ("To preserve for [ ] review a challenge to the legal sufficiency of a conviction, a defendant must move for a trial order of dismissal, and the argument must be 'specifically directed' at the error being urged[.]" (citing, *inter alia, People v. Gray*, 86 N.Y.3d 10, 19 (N.Y. 1995))). Pursuant to New York's contemporaneous objection rule, CPL § 470.05(2),[3] which has long been an "adequate and independent ground" that bars federal habeas review, *Whitley v. Ercole*, 642 F.3d 278, 292 (2d Cir. 2011), "appellate courts will review only those errors of law that are presented at a time and in a manner that reasonably prompted a judge to correct them during criminal proceedings." *Downs v. Lape*, 657 F.3d 97, 103 (2d Cir. 2011).

Here, the Appellate Division rejected Petitioner's sufficiency of the evidence challenge as to his seventeen convictions for criminal sale of a controlled substance in the third degree due to his failure to preserve it. *Wright*, 31 N.Y.S.3d at 637-38. Specifically, the Appellate Division stated that with respect to the legal sufficiency of his drug convictions, Petitioner "preserved this contention at trial with the requisite 'specifically directed' argument *only* as to the criminal possession and attempted criminal possession charges (*People v. Gray*, 86 N.Y.2d 10, 19, 629 N.Y.S.2d 173, 652 N.E.2d 919 [1995] [internal quotation marks omitted])." *Id.* at 637 (emphasis added). As the record supports that defense counsel did not raise this particular contention before the trial court, the Appellate Division properly applied New York's adequate and independent contemporaneous objection rule, and Petitioner's claim must be denied on that basis.[4]

**\*8** This bar to federal review may be lifted, however, if Petitioner can show cause for the default and resulting prejudice, or that the failure to review the claim will result in a "miscarriage of justice," i.e., that he is actually innocent. *House*, 547 U.S. at 536-39, 126 S.Ct. 2064; *Maples*, 132 S. Ct. at 922, *Schlup*, 513 U.S. at 327, 115 S.Ct. 851. To establish cause, Petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. *Maples*, 132 S. Ct. at 922.

Here, Petitioner has not alleged or shown cause for the default of his sufficiency claim as to the seventeen convictions of third degree criminal sale of a controlled substance. (*See* Dkt. No. 22 at 26-29.) The Court notes that although Petitioner raises an ineffective assistance of counsel claim in his habeas petition, he does not identify his trial counsel's failure to preserve this aspect of his sufficiency claim as a basis for that claim. (Dkt. No. 1 at 9-11.) Furthermore, as discussed below, Petitioner's ineffective assistance of trial counsel claim is without merit, and therefore does not serve as "cause" for a procedural default.[5] *Murray v. Carrier*, 477 U.S. 478, 488-89, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Therefore, having failed to raise or demonstrate cause, the Court need not decide whether Petitioner suffered actual prejudice. *Id.* at 495-96, 106 S.Ct. 2639.

Additionally, on the record before the Court, there is no basis to conclude that the failure to consider the merits of Petitioner's procedurally defaulted claims would result in a fundamental miscarriage of justice. (*See* Dkt. No. 22 at 26-29.) Petitioner has not produced any new evidence that he is actually innocent. *Schlup*, 513 U.S. at 324, 115 S.Ct. 851; *Whitley*, 317 F.3d at 225. To the contrary, Petitioner's argument is that the "the evidence [at trial] simply was not sufficient." (Dkt. No. 22 at 26-29.)

Accordingly, the procedural default bars federal review of Petitioner's legal sufficiency claim as to the seventeen convictions of third degree sale of a controlled substance.[6] *House*, 547 U.S. at 536-39, 126 S.Ct. 2064; *Schlup*, 513 U.S. at 327, 115 S.Ct. 851. The Court recommends the Petition be denied and dismissed on this ground.

**\*9** Respondent next argues Petitioner did not exhaust one aspect of his legal sufficiency challenge to his drug convictions: that he supplied heroin to Cochran on July 6 and July 15, 2010. (Dkt. No. 13 at 34.) The Court agrees.

As set forth above, in his application for leave to appeal to the New York Court of Appeals, Wright only argued that the evidence supporting his drug convictions was insufficient because it was "based almost entirely upon intercepted electronic communications and lacking actual narcotics for testing and weighing...." (Dkt. No. 15-1 at 665-66.) Thus, Wright's failure to raise the claim the evidence was insufficient to show that he was Cochran's supplier in his leave application renders this claim

Case 9:21-cv-00174-AMN-ML    Document 47    Filed 01/23/24    Page 181 of 194
Wright v. Lamanna, Not Reported in Fed. Supp. (2021)
2021 WL 5095292

unexhausted. Petitioner cannot now exhaust this claim because he had the one leave application to which he was entitled, and CPL § 440.10(2)(c) bars him from raising a record-based claim in a post-conviction motion. Consequently, this aspect of his legal sufficiency claim is procedurally barred from habeas review.

Here, as set forth above, Petitioner does not identify any cause for his default and having failed to raise or demonstrate cause, the Court need not decide whether Petitioner suffered actual prejudice. *Murray*, 477 U.S. at 488-89, 106 S.Ct. 2639. Nor is there any basis to conclude that the failure to consider the merits of Petitioner's claim would result in a fundamental miscarriage of justice. *House*, 547 U.S. at 536-39, 126 S.Ct. 2064; *Schlup*, 513 U.S. at 327, 115 S.Ct. 851. Therefore, this aspect of Petitioner's legal sufficiency claim is partially procedurally defaulted and cannot be a basis for habeas relief.

Accordingly, the Court recommends denying Wright's sufficiency of the evidence claim on that basis.

Lastly, Respondent contends Petitioner's sufficiency of the evidence of his drug convictions is meritless. (Dkt. No. 15 at 35-42.) This Court agrees. As set forth above, Petitioner challenges the sufficiency of the evidence of his drug convictions on two grounds: (1) proof that the substance he supplied to Cochran was heroin was absent because "there was no heroin analyzed"; and (2) the evidence failed to established that Wright supplied the heroin to Cochran. (Dkt. No. 1 at 5-6.) The Appellate Division rejected this argument:

> As for the merits, the People are not required to recover drugs for testing in order to prove possession or sale of a controlled substance; rather, they may rely on other evidence that establishes the nature of the drugs in question beyond a reasonable doubt (*see People v. Whitehead*, 130 A.D.3d 1142, 1144–1145, 13 N.Y.S.3d 642 [2015], *lv. granted* 26 N.Y.3d 1043, 22 N.Y.S.3d 173, 43 N.E.3d 383 [2015]). Here, Guiry testified that Cochran and defendant used slang terms for heroin in the intercepted communications, negotiated prices that corresponded with the going prices for heroin, arranged to obtain a cutting agent used only with heroin, and referenced packaging methods used solely for that drug. Additionally, two customers who bought drugs from Cochran immediately after his transactions with defendant—both of whom were experienced users of heroin and other drugs—testified that the substance they purchased was heroin. Finally, lab analysis of a substance seized from one of the customers immediately after he purchased it confirmed that it was heroin. Accordingly, the People proved beyond a reasonable doubt that the substance possessed and sold by Cochran and defendant was heroin (*see People v. Williams*, 138 A.D.3d 1233, 1234, 29 N.Y.S.3d 647 [2016]; *People v. Whitehead*, 130 A.D.3d at 1145, 13 N.Y.S.3d).

**\*10** *Wright*, 31 N.Y.S.3d at 638 (unaltered text). As pointed out by Respondent, there is no categorical rule under New York law, much less Supreme Court law, that evidence of a drug sale or possession cannot be legally sufficient in the absence of direct evidence in the form of recovered drugs. (Dkt. No. 13 at 37-38 (citing *People v. Whitehead*, 29 N.Y.3d 956, 958, 73 N.E.3d 842 (N.Y. 2017), *People v. Samuels*, 99 N.Y.2d 20, 24, 750 N.Y.S.2d 828, 780 N.E.2d 513 (N.Y. 2002)). Indeed, the Supreme Court "ha[s] never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003). The *Jackson* standard may be satisfied "entirely by circumstantial evidence," *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996), including where the question is whether the defendant was dealing narcotics, *see United States v. Sureff*, 15 F.3d 225, 228 (2d Cir. 1994).

Although it might have been possible to draw a different inference from the evidence, this Court is required to resolve that conflict in favor of the prosecution. *See Jackson*, 443 U.S. at 326, 99 S.Ct. 2781. As set forth above, Wright bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous. 28 U.S.C. § 2254(e)(1). He has failed to carry such burden. The record does not compel the conclusion that no rational trier of fact could have found proof that

Wright was guilty of the crime of criminal sale of a controlled substance, especially considering the double deference owed under *Jackson* and the AEDPA.

Thus, the Court is satisfied the Appellate Division's ruling was neither contrary to, nor an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts in light of the entire record. (*See* Dkt. No. 13 at 38-42.)

Accordingly, in light of the foregoing, the Court recommends that Wright's petition be denied and dismissed on this ground.

### *ii. Legal Sufficiency of Enterprise Conviction*

Wright next argues that the prosecution failed to establish a connection between him and the criminal enterprise, the Bloods Drug Distribution Enterprise. (Dkt. No. 1 at 6-7.) Respondent argues this claim is meritless because the prosecution proved both the existence of the enterprise and Petitioner's knowing participation in it. (Dkt. No. 13 at 42-45.) The Court agrees with Respondent.

The crime of enterprise corruption is committed when a defendant, "having knowledge of the existence of a criminal enterprise and the nature of its activities, and being employed by or associated with such enterprise, ... intentionally conducts or participates in the affairs of an enterprise by participating in a pattern of criminal activity." N.Y. Penal Law § 460.20(1)(a). A criminal enterprise, in turn, is "a group of persons sharing a common purpose of engaging in criminal conduct, associated in an ascertainable structure distinct from a pattern of criminal activity, and with a continuity of existence, structure and criminal purpose beyond the scope of individual criminal incidents." Penal Law § 460.10(3).

In support of his claim, Wright avers that the People failed to present *any* information or evidence that connected him to the enterprise. (Dkt. No. 1 at 6, emphasis added.) Specifically, he argues "none of the surveillance captured recorded Petitioner participating in any activity with this enterprise: Petitioner never attended any meetings; or communicated with any of the leaders." *Id.* at 6-7, 132 S.Ct. 2. Wright points out that the "only person that the investigation had petitioner communicating with is Cochran during the three week period in July 2010." *Id.* at 7, 132 S.Ct. 2. The Appellate Division rejected this claim on the merits, stating:

> **\*11**  The People submitted proof of the activities and organizational structure of "G-Shine," a sect of the Bloods street gang that was engaged in the common purpose of making money through narcotics trafficking in and around Albany. Guiry described the customs, rules and organizational structure of the Albany group as revealed in intercepted communications among its members, including particular speech patterns, the use of the color red for identification, initiation requirements, a loyalty oath, scheduled meetings, and rules such as prohibitions against cooperation with law enforcement. Members of the Albany group had specialized functions in supplying and selling various drugs and obtaining customers, and certain members occupied leadership roles with the authority to schedule meetings, enforce rules and punish violations. This evidence established the existence of a distinct criminal entity with an ascertainable structure that went beyond "mere[ ] patterns of criminal conduct" (*People v. Western Express Intl., Inc.*, 19 N.Y.3d 652, 658, 954 N.Y.S.2d 763, 978 N.E.2d 1231 [2012]).

*Wright*, 31 N.Y.S.3d at 638-39 (unaltered text, alterations in original). The Appellate Division continued:

> Although defendant was not based in the Albany area and did not attend the Albany group's meetings, the People nevertheless established his participation with evidence that, among other things, he interacted with Cochran and other group members

Wright v. Lamanna, Not Reported in Fed. Supp. (2021)

Case 9:21-cv-00174-AMN-ML    Document 47    Filed 01/23/24    Page 183 of 194

2021 WL 5095292

in drug-trafficking activities, regularly used slang terms indicating his membership in the Bloods street gang, and was knowledgeable about the group's structure and leadership. In the intercepted calls, defendant referred to himself as a "Big Homie"—a term that, according to Guiry, means a boss within the rank structure of the Bloods; he further stated that it was his "job" to enforce the rule against cooperating with law enforcement and that he had the authority to kill other Bloods.

When one of the Albany group's leaders was shot in what the People alleged was retaliation for his suspected cooperation with law enforcement, someone who was involved in the shooting immediately reported it to defendant, who, in turn, discussed the ramifications of the shooting upon the Albany group's leadership structure with Cochran. In other conversations, defendant and Cochran discussed the evidence that this individual had been cooperating with law enforcement, as well as the effect upon the Albany group of another group leader's arrest. Guiry further described a call between defendant and another member of the Bloods who was allegedly a cocaine supplier for the Albany group, in which defendant told this individual that his suspected activities as a "snitch" had interfered with a drug transaction that defendant had authorized, reminded the individual of the prohibition against cooperating with law enforcement and warned that violations were "serious s* * *."

This evidence, as well as the previously-discussed evidence that defendant supplied narcotics to Albany group members for resale in the Albany area, was legally sufficient to establish defendant's knowing and intentional participation in a criminal enterprise and thus to support his conviction for enterprise corruption (*see* Penal Law § 460.20[1][a]; *People v. Keschner*, 25 N.Y.3d 704, 720-721, 16 N.Y.S.3d 187, 37 N.E.3d 690 [2015]; *People v. Kancharla*, 23 N.Y.3d 294, 305–306, 991 N.Y.S.2d 1, 14 N.E.3d 354 [2014]).

*Id.* at 639 (unaltered text but footnote omitted).

Here, Wright bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous. 28 U.S.C. § 2254(e)(1). He has failed to carry such burden. The record does not compel the conclusion that no rational trier of fact could have found proof that Wright committed the charged offense, especially considering the double deference owed under *Jackson* and the AEDPA. The evidence and testimony against Wright was more than sufficient to satisfy the *Jackson* standard. Wright therefore cannot prevail on his insufficiency of the evidence claim.

 **\*12**  After careful consideration, the Court is satisfied that the Appellate Division's ruling was neither contrary to, nor an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts. Therefore, the Court recommends habeas relief be denied on this ground.

### B. Jury Instruction on the Agency Defense (Ground 2)

Wright next avers that he was denied due process when the trial court refused his request for a jury instruction on the defense of agency. (Dkt. No. 1 at 8; Dkt. No. 22 at 30-37.) According to Wright, "[t]he evidence shows that Petitioner neither solicited nor initiated Cochran's efforts to obtain narcotics. The evidence shows that Cochran contacted Petitioner to allegedly purchase heroin [and that] Petitioner simply relayed purported prices, amounts and form of substance available from potential sources." (Dkt. No. 1 at 8.) In his traverse, Wright further explains:

> As to the agency defense, [the prosecution] stated that there were numerous calls where there was discussion about how much money Mr. Wright was going to make out of each particular transaction. In fact, there were no phone calls where any discussion or statement was made that shows where Petitioner was to profit off of any alleged transactions. Indeed, there was no proof of any profit made by Petitioner.

(Dkt. No. 22 at 5.)

2021 WL 5095292

The adequacy of a state court's jury instructions is generally a matter of state law. *Cupp v. Naughten*, 414 U.S. 141, 146, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). Habeas relief requires a petitioner to base his claims on a violation of the federal Constitution, and Petitioner must therefore show that the trial court's failure to give a certain jury instruction violated a right guaranteed to him by the Fourteenth Amendment. *Id.* at 146, 94 S.Ct. 396. "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Lanza v. Lewin*, No. 9:04-CV-0678 (LEK), 2008 WL 4104454, at *16 (N.D.N.Y. Sept. 3, 2008) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977) (other citation omitted)). A habeas petitioner carries an "especially heavy" burden in order to succeed on a claim that a jury instruction was erroneously refused because "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155, 97 S.Ct. 1730; *see Carroll v. Hoke*, 695 F. Supp. 1435, 1437 (E.D.N.Y. 1988) (noting that standard on habeas review is particularly rigid where claim of prejudice stems from failure to give an instruction), *aff'd*, 880 F.2d 1318 (2d Cir. 1989).

With regard to a claim of a refusal to instruct, the Second Circuit has established that a habeas petition under 28 U.S.C. § 2254 is warranted only when a petitioner satisfies three requirements. *See Harris v. Alexander*, 548 F.3d 200, 203 (2d Cir. 2008); *Jackson v. Edwards*, 404 F.3d 612, 621 (2d Cir. 2005) (citing *Davis v. Strack*, 270 F.3d 111, 124 (2d Cir. 2001)). First, the petitioner must show that he "was erroneously deprived of a jury instruction to which he was entitled under state law." *Jackson*, 404 F.3d at 621 (quoting *Strack*, 270 F.3d at 123). Second, the petitioner must demonstrate that the omitted instruction "so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quoting *Cupp*, 414 U.S. at 147, 94 S.Ct. 396 (1973)). In other words, an erroneous jury instruction under state law, without a due process violation, "is not a basis for habeas relief." *Id.* at 71-72, 112 S.Ct. 475. Finally, the petitioner must show that the relevant state appellate court's affirmance of his conviction in spite of the trial court's refusal to instruct the jury constituted an objectively unreasonable application of the Supreme Court's rulings on due process. *See Harris*, 548 F.3d at 203 (citing *Strack*, 270 F.3d at 124).

 **\*13** When deciding whether the evidence requires a jury instruction under state law, district courts must defer to state court interpretations of its own laws as long as the state court's interpretation is constitutional. *Davis*, 270 F.3d at 123 n.4. To find that the failure to give a jury instruction on a particular defense violated a petitioner's due process rights, "a court must first find that the habeas petitioner was 'erroneously deprived of a jury instruction to which he was entitled under state law.' " *Graham v. Lape*, 476 F. Supp. 2d 399, 404 (S.D.N.Y. 2007) (quoting *Davis*, 270 F.3d at 123). This occurs when the denial of the charge was "sufficiently harmful to make the conviction unfair." *Jackson*, 404 F.3d at 624 (quoting *Cupp*, 414 U.S. at 147, 94 S.Ct. 396). Of course, where a proposed jury instruction is not supported by the evidence, due process does not require that it be given. *See Blazic v. Henderson*, 900 F.2d 534, 541 (2d Cir. 1990).

Here, as Respondent correctly points out, and contrary to Wright's assertion in his reply, Petitioner's jury charge claim is unexhausted. (Dkt. No. 13 at 46-51; Dkt. No. 22 at 35.) First, although Wright raised his jury charge claim on direct appeal, he did not do so in federal terms; rather, he only argued that the failure to give the agency defense instruction violated state law. (*See* Dkt. No. 15-1 at 47-50.) Thus, Wright did not "fairly present" his due process claim in state court, and it is unexhausted. *See Baldwin*, 541 U.S. at 32, 124 S.Ct. 1347 ("A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.' ").

Second, Petitioner failed to raise his jury charge claim at all in his application for leave to appeal to the Court of Appeals. (Dkt. No. 15-1 at 663-67, 671-73. [7] ) *See Boerckel*, 526 U.S. at 845, 119 S.Ct. 1728 (holding a petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."); *see also Adsit v. Annucci*, No. 16-CV-0817, 2018 WL 1175090, at *7 (N.D.N.Y. Jan. 11, 2018) (explaining that any claims that were presented to the Appellate Division but omitted from the leave application were considered abandoned for exhaustion purposes); *see also Jordan v. Lefevre*, 206 F.3d 196, 199 (2d Cir. 2000) ("[c]ounsel may not transfer to the state courts the duty to comb through an applicant's appellate brief to seek and find arguments not expressly pointed out in the

Wright v. Lamanna, Not Reported in Fed. Supp. (2021)

2021 WL 5095292

application for leave."). As such, Petitioner did not "fairly present" his federal due process claim in each appropriate state court (including a state supreme court with powers of discretionary review), and it is unexhausted.

Further, the claim is procedurally defaulted because Petitioner can no longer raise it in any state forum. Petitioner already utilized the direct appeal to which he is entitled and, because the claim was reviewable from the record, he cannot raise it in a motion to vacate the judgment. *See Grey*, 933 F.2d at 120-21 (explaining that where "the one request for leave to appeal" was taken and additional collateral review would be barred because the issues could have been raised on direct appeal, the "petitioner no longer has 'remedies available' in the ... state courts ... and ... he had met the statutory exhaustion requirements ..."); *see also Aparicio*, 269 F.3d at 91.

**\*14** As set forth above, procedurally defaulted claims are not subject to habeas review unless a petitioner shows cause for the default and actual resulting prejudice, or shows that the denial of habeas relief would result in a fundamental miscarriage of justice. *House*, 547 U.S. 518, 536–39, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006); *see also Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002). Here, Petitioner does not identify any cause for his default, and he does not argue that he is actually innocent. Because cause was not established, no discussion of prejudice is necessary. Thus, there is nothing that can save Petitioner's procedurally defaulted claim, and habeas relief is precluded.

Traditionally, a mixed petition that contains both exhausted and unexhausted claims, is dismissed without prejudice to refiling another federal habeas corpus action after all claims have been exhausted. *See Slack v. McDaniel*, 529 U.S. 473, 486, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000). However, the Court is empowered to consider whether the unexhausted claims are unquestionably meritless and dismiss the petition with prejudice. *See Flores v. Officer in Charge, Buffalo Fed. Det. Facility*, No. 11 CIV. 7977 RA, 2014 WL 1568843, at \*2 (S.D.N.Y. Apr. 17, 2014); *Keating v. New York*, 708 F. Supp. 2d 292, 299 n.11 (E.D.N.Y. 2010) (collecting cases); *Rowe v. New York*, No. 99 CIV 12281 GEL, 2002 WL 100633, at \*5 (S.D.N.Y. Jan. 25, 2002) (citation omitted).

Here, even if Petitioner's jury charge claim was properly exhausted, and/or if he could show cause for his default, the Court agrees with Respondent that the claim lacks merit. (*See* Dkt. No.13 at 47-51.) Petitioner has failed to establish a violation of his federal constitutional rights and, as the Appellate Division found, the trial court "did not err in refusing defendant's request for an instruction regarding an agency defense, as there was no 'evidence, however slight, to support the inference that [defendant] was acting, in effect, as an extension of the buyer' (*People v. Argibay*, 45 N.Y.2d 45, 55, 407 N.Y.S.2d 664, 379 N.E.2d 191 [1978], *cert. denied* 439 U.S. 930, 99 S.Ct. 317, 58 L.Ed.2d 323 [1978]; *see People v. Ortiz*, 76 N.Y.2d 446, 448, 560 N.Y.S.2d 186, 560 N.E.2d 162 [1990]; *People v. Nowlan*, 130 A.D.3d 1146, 1147, 13 N.Y.S.3d 646 [2015])." *Wright*, 31 N.Y.S.3d at 639-40 (unaltered text).

Under New York law, the "agency defense" provides that "[o]ne who acts solely as the agent of his buyer cannot be convicted of the crime of selling narcotics." *People v. Chong*, 45 N.Y.2d 64, 73, 407 N.Y.S.2d 674, 379 N.E.2d 200 (1978) (quoting *People v. Branch*, 13 A.D.2d 714, 213 N.Y.S.2d 535 (N.Y. App. Div. 1961)). "[T]he underlying theory of the agency defense in drug cases is that one who acts as procuring agent for the buyer alone is a principal or conspirator in the purchase rather than the sale of the contraband." *People v. Roche*, 45 N.Y.2d 78, 82, 407 N.Y.S.2d 682, 379 N.E.2d 208 (1978). To be considered an agent, "a narcotics merchant must be a mere extension of the buyer"; that is, "[h]e may act to procure what the buyer wants because the buyer has asked him to do so, but not out of any independent desire or inclination to promote the transaction." *People v. Argibay*, 45 N.Y.2d 45, 53-54, 407 N.Y.S.2d 664, 379 N.E.2d 191 (1978).

The New York Court of Appeals has explained that an agency instruction is not automatic; it lends an element of flexibility to the resolution, by judge or jury, of the relationship to a particular drug transaction of a participant who does not fit neatly into the mold of buyer or seller. *See New York v. Roche*, 45 N.Y.2d 78, 407 N.Y.S.2d 682, 379 N.E.2d 208, 211 (N.Y. 1978). Thus, unless some reasonable view of the evidence supports the theory that the defendant was acting only on behalf of the buyer, a court is not required to instruct the jury on the agency defense. *New York v. Herring*, 83 N.Y.2d 780, 610 N.Y.S.2d 949, 632 N.E.2d 1272, 1273 (N.Y. 1994). A middleman who acts as a broker between a seller and buyer, largely for his own or the seller's

Wright v. Lamanna, Not Reported in Fed. Supp. (2021)

2021 WL 5095292

Case 9:21-cv-00174-AMN-ML    Document 47    Filed 01/23/24    Page 186 of 194

benefit, cannot properly be termed an agent of the buyer. *See New York v. Argibay*, 45 N.Y.2d 45, 407 N.Y.S.2d 664, 379 N.E.2d 191, 194-95 (N.Y. 1978) (noting that the defendant's degree of loyalty to the buyer is relevant).

**\*15** Here, despite Petitioner's claim that he was an agent, the Appellate Division found:

> The evidence clearly established that defendant and Cochran had previously engaged in drug transactions as part of a business relationship and that both parties expected that defendant would earn commissions for his assistance. Viewing the proof in the light most favorable to defendant, as we must (*see People v. Delaney*, 309 A.D.2d 968, 970, 765 N.Y.S.2d 696 [2003]), there was no reasonable view of the evidence that supported a possible finding of the agency defense (*see People v. Herring*, 83 N.Y.2d 780, 782-783, 610 N.Y.S.2d 949, 632 N.E.2d 1272 [1994]; *People v. Ortiz*, 76 N.Y.2d at 449-450, 560 N.Y.S.2d 186, 560 N.E.2d 162; *People v. Hamilton*, 135 A.D.3d 500, 501, 22 N.Y.S.3d 835 [2016]).

*Wright*, 31 N.Y.S.3d at 639-40 (unaltered text).

A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005); *see West v. AT&T*, 311 U.S. 223, 236, 61 S.Ct. 179, 85 L.Ed. 139 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law...."). A determination of state law by a state intermediate appellate court is also binding in a federal habeas action. *See Hicks v. Feiock*, 485 U.S. 624, 629-30 & n.3, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988) (noting that state appellate court's determination of state law is binding and must be given deference). Thus, the Court is bound by that determination.

Since the evidence at trial did not support an agency instruction under New York law, the trial court's failure to instruct the jury did not amount to a violation of due process. *See Blazic*, 900 F.2d at 541. Further, in holding that New York law did not require granting Wright's request for an agency instruction, the Appellate Division did not unreasonably apply the Supreme Court's ruling on due process in *Estelle*. In sum, the Appellate Division's rejection of Petitioner's procedurally barred jury charge claim was not contrary to, nor based on an unreasonable application of, Supreme Court precedent, nor was it based on an unreasonable application of the facts.

Accordingly, in light of the foregoing, the Court recommends denying the habeas petition on this ground.

### C. Ineffective Assistance of Counsel (Ground 3)

Finally, Wright argues trial counsel was ineffective. (Dkt. No. 1 at 9-11; Dkt. No. 22 at 37-41.) To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 566 U.S. 156, 132 S. Ct. 1376, 1385-86, 182 L.Ed.2d 398 (2012); *Glover v. United States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001); *Williams*, 529 U.S. at 393-95, 120 S.Ct. 1495. Thus, Wright must show that his counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697, 104 S.Ct. 2052 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

Case 9:21-cv-00174-AMN-ML    Document 47    Filed 01/23/24    Page 187 of 194

Wright v. Lamanna, Not Reported in Fed. Supp. (2021)
2021 WL 5095292

**\*16**  Further, when ineffective assistance claims are considered under AEDPA, the reviewing court affords a "doubly" deferential standard regarding the state court opinion. *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S.Ct. 1411, 173 L.Ed.2d 251 (2009). In other words, when § 2254(d) applies, "[t]he pivotal question" for the federal habeas court "is whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101, 131 S.Ct. 770.

Here, Wright avers counsel was ineffective for failing to request a geographic jurisdiction instruction and failing to challenge as improper the eavesdropping warrant issue for Cochran's cellular telephone. (Dkt. No. 1 at 9-11; Dkt. No. 22 at 37-41.) Respondent argues Petitioner's claim is unexhausted and procedurally barred and thus provides no basis for habeas relief and, in any event, is meritless. (Dkt. No. 13 at 52-61.)

### 1. Instruction on Geographic Evidence

According to Wright, counsel should have asked for an instruction on geographic jurisdiction because the evidence showed that he "was never in Albany County at any time relevant to any of the charges in question," and, after the jury posed a question to the trial court regarding venue for certain charges, counsel should have asked the court to read the venue instruction. (Dkt. No. 1 at 9.) The Appellate Division rejected this claim on direct appeal as follows:

Defendant finds fault with his trial counsel's failure to request an instruction on geographic jurisdiction. Notably, defense counsel argued in summation that defendant was never in Albany County, and objected when, immediately thereafter, the People asked County Court to instruct the jury that jurisdiction was obtained by defendant's participation in a telephone conversation with an individual in Albany County.

"[T]o prevail on a claim of ineffective assistance of counsel, it is incumbent upon a defendant to establish that alleged errors by counsel demonstrate the absence of a legitimate strategy or explanation" (*People v. Welch*, 137 A.D.3d 1313, 1313, 26 N.Y.S.3d 398 [2016]; *see People v. Benevento*, 91 N.Y.2d 708, 712, 674 N.Y.S.2d 629, 697 N.E.2d 584 [1998]). It appears that defendant's trial counsel may have reasonably chosen to avoid the instruction, as geographic jurisdiction is established when a preponderance of the evidence indicates that an element of the offense occurred in the jurisdiction—such as, here, a statement over the telephone to a person in Albany County in furtherance of a drug transaction (*see* CPL 20.40[1]; 20.60 [1]; *People v. Muniz*, 215 A.D.2d 881, 883, 627 N.Y.S.2d 115 [1995]). Thus, defendant's current disagreement with this strategy does not establish that he did not receive meaningful representation (*see People v. Hawkins*, 130 A.D.3d 1298, 1305, 15 N.Y.S.3d 485 [2015], *lv. denied* 26 N.Y.3d 968, 18 N.Y.S.3d 604, 40 N.E.3d 582 [2015]).

*Wright*, 31 N.Y.S.3d at 640 (unaltered text). However, as indicated above, this argument was not advanced by Petitioner in his counseled request for leave to appeal to the Court of Appeals. (Dkt. No. 15-2 at 663-67.) As such, this sub-claim of ineffective assistance of counsel is unexhausted.

Petitioner's unexhausted claim should be deemed exhausted but procedurally defaulted because Petitioner has no state court forum in which to raise it. Petitioner has already perfected the state court appeal to which he is entitled, and he cannot properly present his claim in a § 440.10 motion because it is record based and, therefore, could have been raised on direct appeal. *See Boerckel*, 526 U.S. at 845, 119 S.Ct. 1728; *see also Aparicio*, 269 F.3d at 91. Thus, this Court must determine whether cause and prejudice exists as a result of the procedural bar, or if the failure to consider Petitioner's claim will result in a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 750, 111 S.Ct. 2546.

**\*17**  Petitioner advances no cause for his default, and there is nothing in the record to suggest that Wright was precluded from appealing his attorney's allegedly deficient representation to the Court of Appeals relative to the failed request for instruction on geographic jurisdiction. Nor has Petitioner alleged that appellate counsel was ineffective for failing to raise this issue. Furthermore, Petitioner has not come forward with new evidence tending to demonstrate that he is factually innocent, and so cannot fulfill the requirements of the fundamental miscarriage of justice exception. *Schlup*, 513 U.S. at 324, 115 S.Ct. 851;

*Whitley*, 317 F.3d at 225. Accordingly, Petitioner's claim on this basis is subject to an unexcused procedural default and should be dismissed.

In any event, the Court agrees with Respondent that this sub-claim fails on the merits because Petitioner cannot make the required showing that no legitimate strategic or other reasons existed for counsel's decision not to request such an instruction before the jury was charged or to refuse a venue instruction when the jury submitted a note regarding venue, or any resulting prejudice. (Dkt. No. 13 at 53-55.) *See Strickland*, 466 U.S. at 690, 104 S.Ct. 2052 ("Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgement."); *see also Woods v. Etherton*, 578 U.S. 113, 136 S. Ct. 1149, 1151, 194 L.Ed.2d 333 ("[F]ederal courts are to afford both the state court and the defense attorney the benefit of the doubt.").

In sum, the foregoing ineffective assistance of counsel claim is unexhausted, procedurally defaulted, and meritless. [8] Therefore, the Court recommends that Wright's request for habeas relief on this ground be denied.

### 2. Eavesdropping Warrant

Wright also contends that counsel should have challenged the "improper issuance of the amended and extended eavesdropping warrants." (Dkt. No. 1 at 10-11; Dkt. No. 22 at 40-41.) Specifically, Petitioner argues the eavesdropping warrant issued for Cochran's cellular telephone was lacking in "probable cause" on the ground that the prosecution failed to follow "controlling legal authority, N.Y.C.P.L. 700.65 – for when a warrant can be retroactively amended to authorize interceptions related to inadvertently discovered crimes." *Id.* at 11, 629 N.Y.S.2d 173, 652 N.E.2d 919. The Appellate Division also rejected this claim on direct appeal:

> Further, defendant was not deprived of the effective assistance of counsel by the failure of both his initial assigned counsel and the subsequent trial counsel who later replaced her to challenge the eavesdropping warrants that authorized the interception of Cochran's telephone calls, as counsel will not be found to be ineffective for failing to make an argument that has little or no chance of succeeding (*see People v. Stultz*, 2 N.Y.3d 277, 287, 778 N.Y.S.2d 431, 810 N.E.2d 883 [2004]; *People v. Garcia*, 131 A.D.3d 732, 734-735, 14 N.Y.S.3d 809 [2015]).

> Here, the People discovered after obtaining an eavesdropping warrant for a telephone purportedly used by another individual that the telephone was actually used by Cochran and that his conversations with defendant referenced crimes beyond the scope of the original warrant. They sought to amend the warrant to retroactively authorize the interception of conversations related to these crimes and at the same time notified the court that the telephone was used by Cochran. Although captioned as an amendment, the contents of the People's application met the statutory and constitutional requirements to establish probable cause for an eavesdropping warrant on a new telephone and new telephone number (*see* CPL 700.20); accordingly, defendant did not establish that a challenge on this ground would have succeeded. Defendant's counsel provided vigorous representation that included, among other things, obtaining an acquittal upon a charge of attempted murder in the second degree and two other charges. Viewing the evidence as a whole, we find that defendant received meaningful representation (*see People v. Baldi*, 54 N.Y.2d 137, 147, 444 N.Y.S.2d 893, 429 N.E.2d 400 [1981]; *People v. Gokey*, 134 A.D.3d 1246, 1248, 21 N.Y.S.3d 462 [2015]).

**\*18** *Wright*, 31 N.Y.S.3d at 640-41 (unaltered text). Inasmuch as Petitioner did not present this argument in his counseled request for leave to appeal to the Court of Appeals (*see* Dkt. No. 15-2 at 663-67), this sub-claim of ineffective assistance is also unexhausted. *Aparicio*, 269 F.3d at 90.

As discussed above, Petitioner's unexhausted claim should be deemed exhausted but procedurally defaulted, because Petitioner has no state court forum in which to raise it. *See Boerckel*, 526 U.S. at 845, 119 S.Ct. 1728; *see also Aparicio*, 269 F.3d at 91. Again, Petitioner advances no cause for his default and has not produced any new evidence that he is actually innocent.

Wright v. Lamanna, Not Reported in Fed. Supp. (2021)

2021 WL 5095292

*Coleman*, 501 U.S. at 750, 111 S.Ct. 2546; *Schlup*, 513 U.S. at 324, 115 S.Ct. 851; *Whitley*, 317 F.3d at 225. Accordingly, Petitioner's claim on this basis is subject to an unexcused procedural default and should be dismissed.

In any event, the Court also agrees with Respondent that this sub-claim fails on the merits because the Appellate Division reasonably applied Supreme Court law in making this determination. (*See* Dkt. No. 13 at 55-61.) It is well established that, "[w]here an ineffective assistance of counsel claim is premised on counsel's failure to make a suppression motion, a showing of prejudice under *Strickland* requires that the underlying suppression claim was 'meritorious' and that 'there is a reasonable probability that the verdict would have been different absent the excludable evidence.' " *Parisi v. Artus*, No. 08-CV-1785 (ENV), 2010 WL 4961746, at *6 (E.D.N.Y. Dec. 1, 2010) (quoting *Maldonado v. Burge*, 697 F. Supp. 2d 516, 525 (S.D.N.Y. 2010)) (other citations omitted).

A defense attorney cannot be deemed ineffective for failing to pursue an unmeritorious defense or application. *See United States v. Kirsh*, 54 F.3d 1062, 1071 (2d Cir. 1995) ("[T]he failure to make a meritless argument does not rise to the level of ineffective assistance, *see United States v. Javino*, 960 F.2d 1137, 1145 (2d Cir.), *cert. denied*, 506 U.S. 979, 113 S.Ct. 477, 121 L.Ed.2d 383 (1992), and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052.

The state court's decision was reasonable and should not be disturbed. Specifically, the Appellate Division premised its decision on the conclusion that Wright could not satisfy the prejudice prong because there is no indication such a motion "would have succeeded." *Wright*, 31 N.Y.S.3d at 641. Moreover, the Appellate Division found no error of state law in the wiretap application at issue. *Id.* at 640-41. That finding is clearly not unreasonable and, in the context of a claim involving ineffective assistance of counsel, the Appellate Division determined that failure to file such a meritless motion provided no basis for ineffective assistance of counsel relief.

Counsel cannot now be deemed ineffective for failing to make an argument or objection that stood little chance of success. *See United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999) ("Failure to make a meritless argument does not amount to ineffective assistance."), *cert. denied*, 531 U.S. 811, 121 S.Ct. 33, 148 L.Ed.2d 13 (2000); *Maldonado*, 697 F. Supp. 2d at 530 ("Obviously, if the suppression motion was denied, the outcome of the trial could not have been different."). Thus, this sub-claim of ineffective assistance of counsel also fails on the merits.

**\*19** In sum, this sub-claim of ineffective assistance of counsel claim is also unexhausted, procedurally defaulted, and meritless. Therefore, the Court recommends that Wright's request for habeas relief on this ground be denied.

## V. CONCLUSION
After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons stated herein, it is hereby

**RECOMMENDED** that the petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED** and **DISMISSED**; and it is further

**RECOMMENDED** that no certificate of appealability should be issued with respect to any of the claims set forth in the petition as Petitioner has not made "a substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2); and it is further

**ORDERED** that the Clerk of the Court shall serve a copy of this Report-Recommendation and Order on Petitioner, along with copies of unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.[9] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO**

Wright v. Lamanna, Not Reported in Fed. Supp. (2021)

Case 9:21-cv-00174-AMN-ML    Document 47    Filed 01/23/24    Page 190 of 194

2021 WL 5095292

**THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**All Citations**

Not Reported in Fed. Supp., 2021 WL 5095292

# Footnotes

1    Citations to filings refer to the pagination CM/ECF automatically generates.

2    Cochran was also found guilty of enterprise corruption and numerous other charges. He received a statutorily-capped sentence of thirty years' imprisonment pursuant to N.Y. Penal Law § 70.30(1)(e). *People v. Cochran*, 34 N.Y.S.3d 189, 140 A.D.3d 1198 (N.Y. App. Div. 2016).

3    CPL § 470.05(2) is variously referred to as New York's "contemporaneous objection rule" or "preservation rule."

4    Petitioner has not argued the Appellate Division's application of the preservation rule was inadequate to preclude federal habeas review. Nor does the Court find anything in this record to conclude that the Appellate Division's application of the preservation rule in this case was an "exorbitant misapplication" that does not serve a "legitimate state interest." *Downs*, 657 F.3d at 102 (citing *Walker v. Martin*, 562 U.S. 307, 131 S.Ct. 1120, 179 L.Ed.2d 62 (2011); *Lee v. Kemna*, 534 U.S. 362, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002)); *see also Green v. Haggett*, No. 13-CV-0016, 2014 WL 3778587, at *5 (N.D.N.Y. July 31, 2014) (listing New York cases applying the preservation rule to parties arguing on appeal that the evidence was legally insufficient).

5    The ineffectiveness of counsel for not preserving a claim in state court may be sufficient to show cause for a procedural default, but only when counsel's performance was so ineffective that the representation violated the petitioner's Sixth Amendment right to counsel. *Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000).

6    In any event, the Court notes the Appellate Division considered "the evidence adduced as to each of the elements of the challenged crimes" for which Petitioner was convicted because he also raised a state-law weight of the evidence claim which, unlike sufficiency of the evidence, did not require preservation. *Wright*, 31 N.Y.S.3d at 638; *see also Parker v. Ercole*, 666 F.3d 8309, 833-34 (2d Cir. 2012) (sufficiency claim procedurally barred where state court held it was unpreserved, even though "to the extent the Appellate Division decided that [petitioner's] conviction was not against the weight of the evidence, it necessarily decided that there was sufficient evidence to support the verdict"). As set forth in Part IV.A.2, *supra*, Petitioner's weight of the evidence claim is not cognizable on federal habeas review. However, inasmuch as the Appellate Division ruled that the elements of each crime was proven, that ruling was not contrary to or an unreasonable application of clearly established Supreme Court precedent. *Jackson*, 443 U.S. at 324, 99 S.Ct. 2781.

7    Petitioner's assertion that this claim is exhausted because Respondent also addresses the merits is misplaced. (*See* Dkt. No. 22 at 35-37.) *See Davila v. Davis*, ––– U.S. ––––, 137 S. Ct. 2058, 2064, 198 L.Ed.2d 603 (2017) ("The exhaustion requirement is designed to avoid the 'unseemly' result of a federal court 'upset[ting] a state court conviction without' first according the state courts an 'opportunity to ... correct a constitutional violation.' ") (quoting *Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982)).

8    As discussed, *supra*, Section 2254 "prohibits federal courts from granting relief to an applicant who has not exhausted the remedies available in the courts of the State," but allows "federal courts to deny the petition, regardless of whether

Wright v. Lamanna, Not Reported in Fed. Supp. (2021)

2021 WL 5095292

the applicant exhausted his state court remedies." *Abuzaid v. Mattox*, 726 F.3d 311, 321 (2d Cir. 2013) (emphasis in original, internal quotation marks omitted) (citing 28 U.S.C. § 2254(b)(1)(A), (b)(2)).

9      If you are proceeding *pro se* and are served with this Report-Recommendation and Order and by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW     © 2024 Thomson Reuters. No claim to original U.S. Government Works.     18

2021 WL 4452094
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Ronald WRIGHT, Petitioner,

v.

Jamie LAMANNA, Superintendent; Green Haven Correctional Facility, Respondent.

9:18-cv-1063 (MAD/TWD)
|
Signed 09/29/2021

**Attorneys and Law Firms**

RONALD WRIGHT, 11-A-3130, Sing Sing Correctional Facility, 354 Hunter Street, Ossining, New York 10562, Petitioner, pro se.

OF COUNSEL: MARGARET A. CIEPRISZ, AAG, NEW YORK STATE ATTORNEY GENERAL, 28 Liberty Street, New York, New York 10005, Attorneys for Respondent.

## ORDER

Mae A. D'Agostino, United States District Judge:

**\*1** On September 6, 2018, Petitioner Ronald Wright, an inmate at Sing Sing Correctional Facility, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See* Dkt. No. 1. Petitioner claims that his conviction in Albany County Court was not supported by legally sufficient evidence, was against the weight of the evidence, violated his due process rights by failing to give a jury instruction for an agency defense, and violated his right to the effective assistance of counsel. *See id.* at 4-9.

In an April 21, 2021 Report-Recommendation and Order, Magistrate Judge Dancks recommended the denial and dismissal of the petition in its entirety. *See* Dkt. No. 27. On May 27, 2021, Petitioner filed objections to the report-recommendation. *See* Dkt. No. 30. For the reasons set forth below, the report-recommendation is adopted in its entirety.

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

"[I]n a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted). The Second Circuit has held that the court is obligated to " 'make reasonable allowances to protect *pro se* litigants' " from inadvertently forfeiting legal rights merely because they lack a legal education. *Govan*, 289 F. Supp. 2d at 295 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

Wright v. Lamanna, Not Reported in Fed. Supp. (2021)

Case 9:21-cv-00174-AMN-ML    Document 47    Filed 01/23/24    Page 193 of 194

2021 WL 4452094

Petitioner was convicted of enterprise corruption, third-degree criminal sale of a controlled substance, third-degree criminal possession of a controlled substance, and attempted third-degree criminal possession of a controlled substance.[1] *See* Dkt. No. 1 at 1. The petition for a writ of habeas corpus raises three grounds for relief: (1) Petitioner's convictions were not supported by legally sufficient evidence and were against the weight of the evidence; (2) Petitioner was denied due process by the trial court's refusal to give the jury an instruction for an agency defense; and (3) Petitioner's right to the effective assistance of counsel was denied. *See* Dkt. No. 1 at 4-9. Magistrate Judge Dancks recommended the denial of Petitioner's first claim because it was partially barred on independent state law grounds and was without merit. *See* Dkt. No. 27 at 14-22. Similarly, Magistrate Judge Dancks found Petitioner's claim regarding the jury instruction for an agency defense unexhausted and without merit. *See id.* at 22-29. Lastly, the report-recommendation finds that the ineffective assistance of counsel claim is unexhausted and meritless. *See id.* at 29-36.

**\*2** Petitioner objects to one part of the report-recommendation, only reasserting that his weight and sufficiency of the evidence claims are meritorious. Petitioner does not address Magistrate Judge Dancks' finding that parts of this claim were barred by an independent state law ground. Petitioner also does not object to the recommendation that his second and third grounds for relief be dismissed.

The Court agrees with Magistrate Judge Dancks that Petitioner's weight and insufficiency of evidence claims should be dismissed. First, there is no cognizable claim on federal habeas review to challenge verdicts as against the weight of the evidence. *See McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 Fed. Appx. 69, 75 (2d Cir. 2011).

Second, Magistrate Judge Dancks correctly determined that an independent state law grounds bars Petitioner's claim regarding his third-degree criminal sale conviction; namely, that the appellate court ruled that the issue was not properly preserved for appellate review. *See People v. Wright*, 139 A.D.3d 1094, 1096 (2016). The Second Circuit has held that "federal habeas review is precluded as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision." *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990) (internal quotations omitted).

Petitioner, however, does object to report-recommendation's findings of legally sufficient evidence to convict him of the drug charges. The Court agrees with Magistrate Judge Dancks that, in addition to the independent state law grounds, Petitioner's claims are also meritless. Petitioner objects because no heroin was recovered and argues that the state's corroboration and circumstantial evidence was insufficient to establish Petitioner possessed heroin. *See* Dkt. No. 27 at 7 (citing *United States v. Bryce*, 208 F.3d 346 (2d Cir. 1999)). The Court agrees with Magistrate Judge Dancks' review of the evidence. *See* Dkt. No. 27 at 37-42. A reasonable juror could have concluded that the more than 200 intercepted calls and texts, as well as the several witnesses that testified, established Petitioner's possession of heroin.

Petitioner also objects to the sufficiency of the evidence for the enterprise corruption conviction. The Court agrees with Magistrate Judge Dancks that there was ample evidence of the existence of a criminal enterprise and Petitioner's intentional participation in it. For example, Petitioner regularly discussed the drug distribution network. *See* Dkt. No. 27 at 44-45. The Court therefore adopts Magistrate Judge Dancks' recommendation to dismiss Petitioner's claim that there was insufficient evidence to convict him of enterprise corruption.

Petitioner does not object to the report-recommendation's finding that his jury charge claim is unexhausted and lacks merit. Similarly, Petitioner does not object to the report-recommendation's finding that his ineffective assistance of counsel claim is unexhausted and lacks merit. After reviewing the record and the report-recommendation, the Court adopts the findings of the report-recommendation and denies these claims as well.

28 U.S.C. § 2253(c)(1) provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from – (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]"[2] 28 U.S.C. § 2553(c)(1). A court may only issue a Certificate of Appealability "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2553(c)(2).

Wright v. Lamanna, Not Reported in Fed. Supp. (2021)
Case 9:21-cv-00174-AMN-ML    Document 47    Filed 01/23/24    Page 194 of 194
2021 WL 4452094

**\*3** Since Petitioner has failed to make such a showing with regard to any of his claims, the Court declines to issue a Certificate of Appealability in this matter. *See Hohn v. United States*, 524 U.S. 236, 239-40 (1998) (quotation omitted).

After carefully reviewing the Report-Recommendation and Order, the entire record in this matter, and the applicable law, the Court hereby

**ORDERS** that Magistrate Judge Dancks' Report-Recommendation and Order (Dkt. No. 27) is **ADOPTED** in its entirety for the reasons set forth herein; and the Court further

**ORDERS** that no Certificate of Appealability shall be issue with respect to any of Petitioner's claims; and the Court further

**ORDERS** that the petition (Dkt. No. 1) is **DENIED** and **DISMISSED;** and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Respondent's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2021 WL 4452094

### Footnotes

1    Petitioner was also convicted of second-degree criminal sale of a controlled substance and second-degree conspiracy, which were subsequently overturned by the New York State Appellate Division, Third Department. *People v. Wright*, 139 A.D.3d 1094 (3d Dep't 2016).

2    Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed in such actions "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1).

**End of Document**    © 2024 Thomson Reuters. No claim to original U.S. Government Works.